UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUALYN THORPE, *et al.*., <br><br> Plaintiffs, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 10-2250 (ESH) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant, the District of Columbia ("the District"), by and through its undersigned counsel, hereby moves to dismiss the Third Amended Complaint ("TAC") that was accepted for filing on March 28, 2013. The TAC should be dismissed because the proposed class advanced therein is unworkable and cannot be certified. In the absence of a certifiable class, the individual Plaintiffs lack standing to seek the systemic injunctive relief specified in the TAC. Indeed, even if Plaintiffs' class were certifiable, Plaintiffs would still lack standing to seek their requested relief based on the allegations in the TAC. Accordingly, the TAC should be dismissed.

Because this motion is dispositive, LCvR 7(m) does not require that the parties meet and confer in advance of the motion.

A Memorandum of Points and Authorities, as well as a Proposed Order, are attached hereto.

Dated:  April 11, 2013               IRVIN B. NATHAN
                                     Attorney General for the District of Columbia

                                     ELLEN EFROS
                                     Deputy Attorney General
                                     Public Interest Division

1

/s/ Grace Graham
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 442-9784
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

/s/ Bradford C. Patrick
BRADFORD C. PATRICK, D.C. Bar No. 1004979
Assistant Attorney General
441 Fourth Street, NW, Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-6627
Facsimile: (202) 741-0599
Email: bradford.patrick@dc.gov

/s/ Chad A. Naso
CHAD A. NASO, D.C. Bar No. 1001694
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-7854
Facsimile: (202) 741-8951
Email: chad.naso@dc.gov

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JACQUALYN THORPE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA, <br><br> Defendant. | Civil Action No. 10-2250 (ESH) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiffs are eleven current and former nursing facility residents who receive Medicaid benefits through the District of Columbia. Plaintiffs contend that the District is not in compliance with Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, as interpreted by the Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), yet Plaintiffs' theory of liability, class definition, and proposed remedy have progressively become less and less clear as this litigation has proceeded. While earlier iterations of their pleadings asserted that the District failed to serve individuals in the most integrated setting appropriate to their needs, the Third Amended Complaint ("TAC") is now focused on the District's provision of undefined "transition services" or "transition assistance" to individuals in nursing homes.

On the face of the TAC—before the Court even conducts the rigorous analysis required to certify a class under Fed. R. Civ. P. 23—the allegations presented by Plaintiffs make clear that class certification is inappropriate. As explained herein, there is substantial ambiguity regarding

1

what exactly Plaintiffs consider to be the scope of the "transition assistance" that the proposed class members allegedly need to move to less restrictive settings.  More importantly, though, Plaintiffs' re-framed class definition would require the Court to make impermissibly individualized membership determinations of which nursing home residents require assistance from the District and which could leave the nursing home of their own accord or with the assistance of privately-employed nursing home social workers.  Additionally, Plaintiffs' class definition ignores previous orders of the Court and continues to include nursing home residents who could be assisted by the Department of Mental Health ("DMH") and those who lack an identified housing option in the community.

Because of the definition's serious and fatal defects, no class can be certified here.  With or without a class, however, the individual Plaintiffs—all of whom allege they cannot move without so-called transition assistance—lack standing to seek the expansive, systemic relief outlined in the TAC.[1]

## BACKGROUND

The history of this litigation is well known to the Court and will not be summarized at length here.  The original Complaint in this action was filed on or about December 23, 2010, on behalf of four individual Plaintiffs.[2]  The District moved to dismiss the First Amended Complaint or, in the alternative, for summary judgment shortly thereafter, which was denied on February 14, 2012.

---

[1] The District in no way means to suggest that the claimed relief would satisfy Fed. R. Civ. P. 23(b)(2).  It does not.  Nevertheless, the District believes it more appropriate to address this issue in opposition to Plaintiff's forthcoming renewed motion for class certification.

[2] Only one of the original Plaintiffs, Larry McDonald, remains a party to this action.  Two of the original Plaintiffs moved to private apartments and another decided that he preferred to reside in a nursing facility.

The parties then briefed a motion for class certification based upon the allegations and proposed class definition in the Second Amended Complaint ("SAC").  After hearing from the parties on January 7, 2013, the Court denied Plaintiffs' motion without prejudice.  (*See* Jan. 17, 2013 Minute Order.)   The Court advised Plaintiffs that it would "not order relief at the generalized level of what [the] second amended complaint is; that everybody should be in a less restrictive environment with support services."  (Jan. 7, 2013 Hearing Transcript ("Tr."), Docket Entry No. 90, Ex. A, at 94:12-15.)  The Court recognized that entering such relief would be a "meaningless injunction."  (Tr. at 17:20-21.)

At the same hearing, the Court addressed the related issue of whether individuals who are part of the class in *Dixon v. Gray*, No. 74 Civ. 285 (TPH), which challenged the sufficiency of the District's provision of a community-based mental health system, may pursue relief in this litigation.  Based on the settlement of the *Dixon* case, the Court ruled that it "cannot and will not [ ] mak[e] any kinds of changes to the Department of Mental Health . . . I can't order more changes to a system that's been the subject of 40 years of litigation."  (Tr. at 86:14-15, 88:17-18.)  The Court instructed Plaintiffs to modify their class definition in a way that would not require any systemic relief from DMH.  (Tr. at 87:12-16.)  To accomplish this, the Court suggested that Plaintiffs conduct discovery to determine which District agency was responsible for which nursing home resident.  (Tr. at 96:3-8.)

Plaintiffs thereafter filed a motion to file the TAC, which included six newly named Plaintiffs.  The Court granted Plaintiffs' motion, and the TAC was accepted for filing on March 28, 2013.

## **STANDARD OF REVIEW**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, acceptable as true, to state a claim to relief that is plausible on its face." *Anderson v. Holder*, 691 F. Supp. 2d 57, 61 (D.D.C. 2010) (brackets omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (internal quotes omitted). A court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to plaintiffs and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). Where the well-pleaded facts do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679. In evaluating a Rule 12(b)(6) motion to dismiss, a court "'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice.'" *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

Additionally, the Court has the authority to strike class allegations in the context of a motion to dismiss without waiting for a motion for class certification from the plaintiff. *See* Fed. R. Civ. P. 23(d)(1)(D); LCvR 23.1(b); *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *Schilling v. Kenton County, Kentucky*, No. 10-143 (DLB), 2011 WL 293759, at *4-5 (E.D. Ky. Jan. 27, 2011); *Hylaszek v. Aetna Life Ins. Co.*, No. 94 C 5961, 1998 WL 381064, at *2 (N.D. Ill. July 1, 1998). For example, "[w]here it is facially apparent from the pleadings

4

that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John*, 501 F.3d at 445.

## ARGUMENT

I. **THE TAC'S PROPOSED CLASS IS NOT SUFFICIENTLY DEFINITE TO PERMIT CERTIFICATION**

The proposed class definition advanced by Plaintiffs in the TAC is even more problematic than the definition previously rejected by the Court in January of this year. (*See* Minute Order dated January 17, 2013.) According to Paragraph 153, Plaintiffs seek to certify the following class:

> All persons with physical disabilities who, now or during the pendency of this lawsuit: (1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days; (2) are eligible to live in the community; and (3) would live in the community instead of a nursing facility if the District of Columbia would provide transition assistance to facilitate their access to long-term care services in the community.

The class definition suffers from serious, fatal defects, each serving as an independent basis to strike the class allegations and to dismiss the TAC.

### A. The Proposed Class is Not Readily Ascertainable

The putative class is not readily ascertainable based on the class definition advanced in the TAC. Implicit to Rule 23's certification requirements, a class definition "must be sufficiently definite 'that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Pigford v. Glickman*, 182 F.R.D. at 346 (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1760 at 121); *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 287 F.R.D. 1, 28-29 (D.D.C. 2012). Where the proposed class definition is vague, overbroad, or requires individual assessments to determine membership in the class, certification should be denied. *In re Rail Freight Fuel*

5

*Surcharge Antitrust Litigation*, 287 F.R.D. at 29 (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) and *Johnson v. District of Columbia*, 248 F.R.D. 46, 52 (D.D.C. 1998)).  A proposed class is sufficiently definite only when membership can be determined by reference to objective criteria.  *See, e.g.*, *In re Fosamax Products Liability Litigation*, 248 F.R.D. 389, 398 (S.D.N.Y. 2008) (citations omitted).

Plaintiffs have attempted to limit the class to individuals who "would live in the community instead of a nursing facility if the District of Columbia would provide transition assistance to facilitate their access to long-term care services in the community."  (TAC ¶ 153.) Plaintiffs seemingly wish to exclude from the class those individuals who have transitioned or will transition with the assistance of privately-employed nursing home social workers, but who receive no real assistance with discharge planning from District employees.  The new definition also excludes individuals who, either by themselves or with the assistance of family members, are able to successfully move from nursing facilities to home- and community-based options such as the EPD Waiver.  Plaintiffs instead focus only on nursing home residents who require additional "transition assistance" from the District itself to access home- and community-based services.

Given that the large majority of individuals moving from nursing homes to the community do so with almost no assistance from District employees, the new definition ostensibly excludes a large number of nursing home residents from the class.[3] (*Compare* Declaration of Leyla Sarigol dated August 20, 2012, Docket Entry No. 61-4, at ¶ 9 (between October 2010 and August 2012, Money Follows the Person assisted 24 nursing home residents transition to the community), *with* Declaration of Ann Page dated August 17, 2012, Docket Entry

---

[3] For this reason, the proposed definition's arbitrary focus on a small portion of the nursing home population is unlikely to inform Court's understanding of the District's overall compliance with *Olmstead* with respect to its administration of Medicaid and home- and community-based services to individuals living in nursing facilities.

No. 61-1, at ¶ 6 (total of 174 Medicaid-funded nursing facility residents moved to less restrictive settings in fiscal year 2011), ¶ 8 (fiscal year 2012 claims paid as of June 15, 2012 indicated 116 Medicaid-funded nursing facility residents moved to less restrictive settings in fiscal year 2012).) But it would be impossible for the Court, the District, or an individual living in a nursing facility to determine precisely whom without an individualized determination of which nursing home residents could—hypothetically—move to the community with the assistance of private social workers or their own friends and families (who would not be a part of the proposed class) versus those who could not move without additional assistance from the District (who would be part of the proposed class). The TAC offers no objective criteria by which such an individualized, speculative determination could be made, and the District is aware of none. To determine membership, the Court and parties would be required to predict, based on unknown criteria, which nursing home residents cannot leave without assistance from the District as opposed to other available avenues for transition. Class certification cannot be granted in such circumstances. *See Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567-78 (N.D. Cal. 2009) (class of "would-be" auction winners could not be determined without reference to objective criteria); *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233-34 (W.D. Pa. 2001) (proposed class of employees terminated "to interfere with their benefits" would require mini-hearings on the reasons for each employee's termination and was thus unascertainable for purposes of class certification).

      To complicate matters, Plaintiffs do not define the term "transition assistance," a phrase that has a variety of meanings in this context. Strictly speaking, transition assistance or transition services refers to the payment of start-up costs of up to $5,000 for items such as furniture, kitchen supplies, security deposits and moving expenses through the District's Money Follows the Person Demonstration. (*See* Affidavit of Leyla Sarigol dated April 26, 2011, Docket

Entry No. 19-3, at ¶ 19.) However, the parties have informally used the term to mean several things in their filings in this litigation, including assistance lining up community-based providers to give home health and personal care services. In defining the term "transition services" for purposes of Plaintiffs' depositions taken pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs took a much more expansive view, including outreach and education of available home- and community-based services; soliciting nursing home residents' preferences regarding where they wish to receive their care; assessing residents' eligibility for home- and community-based alternatives; assisting individuals obtain identification documents, such as social security cards, birth certificates, etc.; and assisting individuals with housing applications. (Notice of Deposition, Ex. B.)

      The effect of this ambiguity for purposes of determining membership in the class is significant. The Court could determine that certain of the panoply of "transition services" Plaintiffs refer to in their 30(b)(6) Deposition Notice definition are relevant to its resolution of this case and that others are not. For example, the District believes that any contention that *Olmstead* imposes a requirement on the District government to obtain social security cards or birth certificates for nursing home residents borders on frivolous. If the Court agrees, it would be pointless to include in the class those individuals who will not move to the community unless the District obtains such documents on their behalves.

      Moreover, if Plaintiffs do not delineate what activities are part of the so-called transition services, the District cannot effectively know what specific forms of assistance Plaintiffs are challenging. For example, the definition could be read in a way that effectively asks the District to provide new or expanded services beyond what the District currently offers. This is impermissible under *Olmstead*, which only requires that States "adhere to the ADA's

nondiscrimination requirement with regard to the services they in fact provide." *Olmstead*, 527 U.S. at 603 n.14, 607.  Stated another way, the District is not obligated to provide everything that is necessary for individuals to move to less restrictive settings, but only to administer those services that it already offers with an even hand.  *See Rodriguez v. City of New York*, 197 F.3d 611, 619 (2d Cir. 1999) (neither the ADA, Rehabilitation Act, nor *Olmstead* require provision of new benefits); *see also Olmstead*, 527 U.S. at 613 (Kennedy, J., concurring) ("[A] State may not be forced to create a community-treatment program where none exists."); *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012) ("Accordingly, claims by qualified individuals who both meet the eligibility requirements for a particular program and are willing participants may properly allege a claim for a denial of the services provided by a program, but not a claim for providing inadequate services."); *M.K. v. Sergi*, 554 F. Supp. 2d 175, 197-98 (D. Conn. 2008).

Because the class is not readily ascertainable, the Court should dismiss the class action allegations.

### B. The Class Definition is Overly Broad

Courts will not certify a class where the definition includes a substantial number of individuals who have no claim to relief.  *See Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.RD. at 235 (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)).  The class advanced by Plaintiffs is fatally overbroad in two important respects.

In violation of the Court's recent ruling, the proposed class definition continues to include nursing home residents who would be assisted by DMH.  The Court has already ruled that, as a result of the settlement of *Dixon v. Gray*, relief targeted toward DMH must be carved out of this litigation.  (Tr. at 86:14-15, 88:17-18.)  According to the Court, *Dixon* class members either released their claims as a condition of settlement or, alternatively, because the *Dixon*

9

settlement already addressed the need for DMH to provide community-based mental health services, no further relief could be obtained through this suit.  In light of its ruling, the Court directed Plaintiffs to revise their proposed class definition to exclude *Dixon* class members and/or individuals who would receive assistance from DMH.

Despite the clarity of the Court's order regarding individuals with serious mental illnesses, Plaintiffs' new definition does not eliminate individuals who could receive assistance from DMH to move to less restrictive settings.   Instead, Plaintiffs have only refined the definition to include individuals with "physical disabilities."  Under this new definition, while nursing home residents who *solely* have mental impairments would be excluded from the proposed class (assuming that there are any), individuals who have both serious mental illness *and* some form of physical disability would continue to be members of the proposed class, even if DMH would be responsible for assisting them in moving to a less restrictive setting.[4]  But the Court already determined that such individuals could not be part of the class here.  (Tr. at 88.)  For example, Donald Dupree remains a Plaintiff, even after DMH assisted him with his successful discharge to assisted living.  That Plaintiffs continue to consider Dupree to fall within

---

[4] Counsel for Plaintiffs acknowledged this proposition during the January 7, 2013 hearing:

> THE COURT: And does [the Second Amended Complaint's proposed class definition] include somebody whose primary diagnosis is mental health?
> MS. BAGBY: It could include a person who has both a mental health diagnosis and physical disability.
> THE COURT: So it has to be both.
> MS. BAGBY: Yes. You'd have to have a disability in order to—and no one—I hope no one is in a nursing home in DC that only has mental illness. They're in nursing homes because of physical disabilities, generally.

(Tr. 5:7-15.)

10

the new class definition despite his alleged serious and persistent mental illness highlights Plaintiffs' failure to abide by the Court's rulings.[5]

Further, the TAC's proposed definition continues to include the many nursing home residents who lack a housing option in the community. While *Olmstead* imposes certain obligations on states with respect to the provision of home- and community-based services, *Olmstead* does not require the District to provide the home itself. The Court will recall from previous briefing that a substantial majority of individuals identified by the District as interested in leaving nursing facilities lack housing. (Defendant's Opposition to Plaintiffs' Motion for Class Certification, Docket No. 61, at 22-23.) In fact, the Court previously ruled that the District has no obligation under the ADA or *Olmsted* to provide housing (Memorandum Opinion, Docket Entry No. 41 at 53), and Plaintiffs previously represented they were not seeking housing as part of their relief (Tr. at 18:13-16). Therefore, individuals who lack an available housing option in which to receive home- and community-based services cannot receive relief and cannot be part of a class.

After two-and-half years of litigation, Plaintiffs have had ample opportunity to refine their theory of the case to present a class definition capable of certification. That Plaintiffs continue to fail in that exercise indicates that certification of a class in this lawsuit would be inappropriate. *See Dudo v. Schaffer*, 91 F.R.D. 128, 138 (E.D. Pa. 1981) ("At this stage, well over three years after filing of the complaint, when the plaintiff still cannot state with certainty the precise theory of liability which he is advancing, there is certainly no reason to multiply the

---

[5] Notwithstanding the Court's urging at the January 7, 2013 hearing for Plaintiffs to utilize discovery to determine how DMH consumers could effectively be removed from the class definition, Plaintiffs conducted no such discovery so far as the District can tell. In fact, Plaintiffs did not ask any of the eight District witnesses they deposed any questions that appeared targeted at the inquiry of which individuals are served by DMH and which individuals are served by the Department of Health Care Finance and/or the Office on Aging's Aging and Disability Resource Center.

11

confusion by granting class action certification."). The Court should therefore dismiss the class action allegations from the TAC.

## II. ABSENT A CLASS, THE THIRD AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1) BECAUSE THE INDIVIDUAL PLAINTIFFS LACK STANDING TO PURSUE THE REQUESTED RELIEF

As a result of the deficiencies in Plaintiffs' proposed class definition, the Court must dismiss the TAC in its entirety because the named Plaintiffs, in their individual capacities, lack standing to pursue the system-wide injunctive relief set forth therein. (*See* TAC, Request for Relief.) To establish the "irreducible constitutional minimum" of Article III standing, a plaintiff must demonstrate: (1) that he has suffered a concrete and particularized injury-in-fact, the cause of which is (2) fairly traceable to the defendants' challenged conduct and (3) is likely to be redressed by a judicial decision granting the plaintiff the relief it seeks. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). These requirements serve to assure that "the judiciary is the proper branch of government to hear the dispute." *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc). As the Supreme Court has noted:

> It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

*Lewis v. Casey*, 518 U.S. 343, 349 (1996).

The requirements of Article III standing necessarily limit the scope of the remedy that a federal plaintiff may seek. Indeed, the Supreme Court has recognized that the injury requirement of standing would fail to serve its purpose if "once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration." *Lewis*, 518 U.S. at 357 (emphasis in original).

12

Accordingly, "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Id*. Further, it is well-established that a court cannot grant class-wide relief in the absence of a certified class. *See, e.g.*, *Zepeda v. U.S. INS*, 753 F.2d 719, 728 n. 1 (9th Cir. 1983) (vacating a preliminary injunction purporting to apply to an uncertified class, noting that the individual plaintiffs "are not entitled to relief for people whom they do not represent"); *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974).

Here, the TAC alleges that the named Plaintiffs have been unnecessarily confined in nursing facilities, in violation of their rights under Title II of the ADA and the Section 504 of the Rehabilitation Act, as a result of the District's failure to assist them transition to the community. (*See* TAC ¶¶ 46, 54, 70, 76, 81, 88, 96, 102.)[6] To remedy this alleged failure, the TAC seeks a broad, system-wide injunction directing the District to: (i) "[d]evelop a working system of transition assistance" serving all "DC Medicaid-funded nursing facility residents[7]"; (ii) "[e]nsure sufficient capacity of community-based long-term care services" to serve the named Plaintiffs and class members;[8] (iii) successfully transition set numbers of class members from nursing facilities to the community over the next four years; and (iv) publicly report, on a semi-annual basis, "the total number of DC Medicaid-funded nursing facility residents who do not oppose

---

[6] The TAC does not specifically allege any action or inaction on the part of the District that has prevented Plaintiff Jacqualyn Thorpe from transitioning to the community. (*See* TAC ¶¶ 26-30.) In addition, the TAC concedes that Plaintiffs Donald Dupree and Curtis Wilkerson have successfully discharged from the nursing facilities in which they previously resided. (*Id.* ¶¶ 35, 62.)

[7] Ostensibly, Plaintiffs' relief extends to all nursing home residents, regardless of whether they have serious mental illness, developmental disabilities, or intellectual disabilities.

[8] To the extent this element of Plaintiffs' requested relief demands that the District regulate the private market in such a way to ensure that there is a private, community-based provider that is able to accommodate any conceivable need any nursing home resident might have in the community, the relief well exceeds the requirements of *Olmstead*, which only requires that States "adhere to the ADA's nondiscrimination requirement with regard to the services *they in fact provide*." *Olmstead*, 527 U.S. at 603 n. 14, 607 (emphasis added).

living in the community; the number of those individuals assisted by Defendant to transition to the community with long-term care services; and the aggregate dollars Defendant saves (or fails to save) by serving individuals in the community rather than in nursing facilities." (TAC, Request for Relief.)

This system-wide injunctive relief goes much further than simply remedying the alleged failure of the District to assist the named Plaintiffs' transition to the community.[9] For example, there are no allegations in the TAC suggesting that the alleged injuries of the named Plaintiffs would be remedied if the District were to publicly report "the total number of DC Medicaid-funded nursing facility residents who do not oppose living in the community," "inform[] DC Medicaid-funded nursing facility residents, upon admission and at least every three months thereafter, about community-based long-terms care alternatives to nursing facilities," or even transition a minimum number of class members to community-based settings in each of the next four years.[10] *Id.*; *see Lujan*, 504 U.S. at 560-61 (to establish standing a plaintiff must show that the alleged injury is likely to be redressed by a judicial decision granting the relief she seeks). Further, such class-wide relief is inappropriate in the absence of a certifiable class—which, as discussed above, does not exist here. *See Zepeda*, 753 F.2d at 728 n.1. Therefore, because the relief sought in the TAC is not "limited to the inadequacy that produced the injury in fact," the named Plaintiffs lack standing to prosecute the TAC. *See Lewis*, 518 U.S. at 357. Accordingly,

---

[9] The District does not concede, and expressly contests, that Plaintiffs have a right to "transition assistance" under the ADA, the Rehabilitation Act, or the Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999).

[10] With the exception of one case that was reversed on appeal, the District is not aware of any cases in which a court has ordered a State or municipality to move a set number of individuals from an institutional to a community-based setting in a given time period. Moreover, this Court previously has advised Plaintiffs' counsel on multiple occasions that it will not order such relief here. (*See* Tr., at 19:14-21.) Yet, Plaintiffs *continue* to assert a right to such relief.

14

the Court must dismiss the TAC pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

### III. EVEN IF A CLASS WERE CERTIFIABLE, PLAINTIFFS WOULD STILL LACK STANDING TO PURSUE THE RELIEF REQUESTED IN THE TAC

Even if Plaintiffs' proposed class could be certified, the broad systemic relief requested in the TAC still far exceeds the specific injuries alleged by the named Plaintiffs. Accordingly, even with a certifiable class, Plaintiffs lack standing to pursue their requested relief.

The principle that a "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established," is no less true when it comes to class actions. As the Supreme Court has recognized:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40 n. 20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

For example, in *Lewis v. Casey*, 22 inmates brought a class action on behalf of prisoners incarcerated by the State of Arizona Department of Corrections ("ADOC"), alleging that they had been deprived of their constitutional right to adequate, effective and meaningful access to the courts. *Lewis*, 518 U.S. at 346. After a bench trial, the court held in favor of Plaintiffs, and issued a system-wide injunction addressing numerous shortcomings that it had found in the ADOC system. *Id.* at 346-48. The Supreme Court, however, applied the standing principles discussed above to vacate this injunction to the extent that it addressed inadequacies in the ADOC system that were not found to have harmed any of the named Plaintiffs. *Id*. at 358.

As discussed above, as was the case in *Lewis*, the TAC seeks relief to address purported inadequacies of the District's long-term care system that are not even alleged to have injured the named Plaintiffs. Accordingly, even if the proposed class could be certified, Plaintiffs would lack standing to pursue the far reaching relief requested in the TAC on behalf of that class. *See id.* at 346. The Court therefore should dismiss the TAC for lack of subject matter jurisdiction regardless of viability of Plaintiffs' class allegations.

## CONCLUSION

Plaintiffs have failed for a second time to articulate with adequate precision a class capable of certification. The definition proffered by the TAC would require individualized inquiries to determine its membership and runs afoul of prior orders of this Court with respect to the scope of nursing home residents that could obtain relief from the District. Further, the individual Plaintiffs lack standing to seek the systemic relief specified therein. The Court must therefore dismiss the TAC.

Dated: April 11, 2013

IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN EFROS
Deputy Attorney General
Public Interest Division

/s/ Grace Graham
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 442-9784
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

/s/ Bradford C. Patrick
BRADFORD C. PATRICK, D.C. Bar No. 1004979
Assistant Attorney General

> 441 Fourth Street, NW, Sixth Floor South
> Washington, DC 20001
> Telephone: (202) 724-6627
> Facsimile: (202) 741-0599
> Email: bradford.patrick@dc.gov
>
> /s/ Chad A. Naso
> CHAD A. NASO, D.C. Bar No. 1001694
> Assistant Attorney General
> 441 Fourth Street, N.W., 6th Floor South
> Washington, D.C. 20001
> Telephone: (202) 724-7854
> Facsimile: (202) 741-8951
> Email: chad.naso@dc.gov
>
> *Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUALYN THORPE, *et al.* | )<br>)<br>) |
| Plaintiffs, | )  Civil Action No. 10-2250 (ESH) |
| v. | )<br>)<br>) |
| THE DISTRICT OF COLUMBIA, | )<br>) |
| Defendant. | )<br>) |

**ORDER**

Upon consideration of Defendant's Motion to Dismiss the Third Amended Complaint, any opposition thereto, and in consideration of the entire record herein, it is hereby **ORDERED** that the Motion is **GRANTED** and that the Third Amended Complaint is **DISMISSED.**

**SO ORDERED.**

Dated: _____                                       _____
                                                                                        Hon. Ellen S. Huvelle
                                                                                        United States District Court Judge

1