UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUALYN THORPE, *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 10-2250 (ESH) |
| v. | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO THE STATEMENT OF INTEREST FILED BY THE UNITED STATES DEPARTMENT OF JUSTICE**

Defendant, the District of Columbia ("the District"), by and through undersigned counsel, files this Response to the Statement of Interest of the United States of America ("Statement of Interest"), filed by the United States Department of Justice ("DOJ"). (Docket Entry No. 109.) The Statement of Interest is largely redundant of Plaintiffs' briefing on their Renewed Motion for Class Certification (Docket Entry Nos. 103 and 108). As the District does not wish to repeat itself, it limits this filing to a few points raised in the Statement of Interest.

I. **THE COURT SHOULD NOT GIVE WEIGHT TO DOJ'S FILING BECAUSE DOJ DOES NOT HAVE AN INTEREST IN THE DISPOSITION OF THIS MOTION**

The Court should not give any weight to DOJ's Statement of Interest because it is well beyond DOJ's professed expertise. Though it is unclear upon what basis DOJ has chosen to file the Statement of Interest, DOJ claims in the most general of terms that it has an interest in ensuring that violations of the Americans with Disabilities Act ("ADA") are remedied. True, DOJ is the executive agency tasked with enforcing the ADA and promulgating its implementing regulations, and as such has an interest in ensuring uniform constructions of those statutes and

1

regulations in the courts. But the interpretation of those statutes and regulations is not directly implicated by Plaintiffs' Motion for Class Certification. Rather, Plaintiffs' Motion concerns the interpretation of Fed. R. Civ. P. 23 as applied to the factual record before the Court. DOJ has no particular expertise in Rule 23's interpretation, nor is it charged with enforcing the Rule.

The District did not take the sweeping position in its Opposition that ADA claims are generally not amenable to class certification, nor has the District argued that violations of the integration mandate as interpreted by the Supreme Court in *Olmstead* cannot be certified as class actions. Such across-the-board positions might arguably implicate DOJ's interest in ensuring that a class action is an available mechanism to pursue alleged violations of the ADA. But here, the District has argued only that Rule 23's criteria have not been satisfied as applied to the District's administration of Medicaid with respect to the proposed class definition advanced by Plaintiffs. It is inappropriate for DOJ to attempt to tip the scale in Plaintiffs' favor on the issue of class certification based upon a generalized interest in the underlying statutory basis of Plaintiffs' claims.

This is not the first time DOJ has filed a Statement of Interest in this matter; it previously supported Plaintiffs' positions in connection with the District's Motion to Dismiss or, in the Alternative, for Summary Judgment. (See Docket Entry No. 32.) At various points in DOJ's previous filing, DOJ advocated for its interpretation of the ADA's implementing regulations. (*See generally id.* at 9-22.) Tellingly, nowhere in the current Statement of Interest does DOJ explain how either the ADA or relevant provisions of the Code of Federal Regulations should be interpreted. The omission of such discussion demonstrates that the disposition of the Motion for

Class Certification depends on the application of Rule 23, rather than the ADA itself.[1]  There is thus no need for the Court to defer to or even consider DOJ's position on whether Rule 23 has been satisfied.

Moreover, highlighting its lack of expertise in the District's administration of Medicaid, DOJ relies upon factual assertions that are demonstrably contradicted by the record.  For example, in urging the Court to find commonality, DOJ states that the Money Follows the Person Demonstration ("MFP") is the only program within the District that offers assistance to nursing facility residents who wish to move to less restrictive settings.  (Statement of Interest, at 11.) DOJ is simply wrong.  The record before the Court shows that, in addition to the 43 individuals MFP has assisted (Docket Entry No. 106-6, at 24), the Office on Aging's Aging and Disability Resource Center has helped 11 nursing facility residents move to community-based settings (Docket Entry No. 106-9, at 2), and the Department of Mental Health has assisted another 12 (Docket Entry No. 106-10, at 13).[2]  Thus, three District agencies provide assistance to nursing facility residents seeking to transition out of institutionalized settings: the Department of Health Care Finance, the Office on Aging's Aging and Disability Resource Center, and the Department of Mental Health.  This misstatement underscores DOJ's lack of familiarity with this case and why the Court should give no credence to the substantive arguments in its Statement of Interest.

---

[1] The District additionally notes that DOJ did not claim an interest in the disposition of Plaintiffs' first Motion for Class Certification.

[2] As noted in the District's Opposition, significantly more individuals are able to transition to home- and community-based care with the assistance of a nursing home social worker, with the help of their family and/or friends, or through their own efforts.  (*See* Docket Entry No. 106-3, Response No. 11, Supp. Ex. 1 (total of 328 D.C. Medicaid beneficiaries discharged from nursing facilities and began receiving community-based long-term care services in the community funded by the Medicaid State Plan and/or the EPD Waiver since 2010).)

## II. EVEN IF THE COURT CONSIDERS THE STATEMENT OF INTEREST, DOJ HAS MISAPPLIED THE LAW GOVERNING CLASS CERTIFICATION

### A. Numerosity

Initially, the District notes that DOJ does not refute or address the several problems identified by the District in the proposed class definition. For example, DOJ, like Plaintiffs, offers no mechanism by which the parties and/or the Court could identify nursing home residents who would be able to move to less restrictive settings with the assistance of social workers employed by private nursing homes. These individuals do not satisfy the class definition, which among other limitations, extends only to those nursing facility residents who could transition with the assistance of the District itself. (*See* Third Am. Compl., Docket Entry No. 98, at ¶ 153.) Nor does DOJ propose a method from excluding from the class those residents who would be assisted by the Department of Mental Health in a transition to the community. Without objective criteria for such inquiries, it is impossible to conclude, as DOJ does, that numerosity has been satisfied. The case for numerosity is further weakened if the Court concludes, as it should, that individuals without an identified housing option in the community may not be members of the putative class.

### B. Commonality

DOJ claims that Plaintiffs have identified a common policy affecting all class members: "'the District's failure to establish or implement a system of transition assistance for those unnecessarily segregated in nursing facilities to transition to more integrated, community settings.'" (Statement of Interest, at 8.) But this is no more than a reformulation of the injury-based commonality analysis the Supreme Court rejected in *Wal-Mart*—it focuses on the alleged wrongful institutionalization of class members and the District's alleged failure to correct it. Thus, instead of identifying a specific policy within the transition process that *causes* individuals

to remain in nursing facilities, DOJ argues that commonality may be satisfied merely by vaguely pointing to an inability to remedy an injury, which may be caused by any number of factors—operating either together or in isolation—between the time an individual is identified as a candidate for community living and when he or she actually moves into the less restrictive setting.  This is contrary to the Supreme Court's admonitions in *Wal-Mart*.  131 S. Ct. 2514, 2552 (2011) ("Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question why was I disfavored.").  Were DOJ's position adopted, the female employee plaintiffs in *Wal-Mart* could have shown commonality merely by demonstrating a pervasive pattern of sexual harassment and imputing that pattern onto Wal-Mart's corporate leadership.

     Of course, there is no District policy of refusing to provide assistance to nursing facility residents seeking to transition—there are several entities that provide such assistance depending on the needs of the particular resident. Thus, contrary to DOJ's suggestion (Statement of Interest, at 9), Judge Edwards' hypothetical in his concurring opinion in *DL* (a government who had a "stopped at the door" policy blocking children from the child-find requirements or IDEA benefits) is inapposite here.  *See DL v. District of Columbia*, 713 F.3d 120, 131 (D.C. Cir. 2013). It is beyond dispute that the District has assisted numerous nursing home residents to transition to less restrictive settings and is currently working with many others to accomplish community living.  But unless a particular policy can be identified that is shown to commonly impede class members' discharge to the community, Rule 23's commonality element will not be satisfied.  *See id.* at 128 (finding commonality lacking "in the absence of a uniform policy or practice that affects all class members").  Neither DOJ nor Plaintiffs have identified a particular, uniform

deficiency in the transition assistance available through the various relevant agencies, and thus certification must be denied.

DOJ also incorrectly asserts that "the Plaintiffs here are not asking the District to identify and evaluate people with disabilities." (Statement of Interest, 9-10.) To the contrary, Plaintiffs have stated that they consider the identification of residents appropriate for transition and the evaluation of the services necessary to achieve the transition to be part of the "transition assistance" referenced in their proposed class definition. (*See* Plaintiffs' Opposition to the Defendant's Motion to Dismiss the Third Amended Complaint, Docket No. 102, at 10.) Thus, similar to the IDEA requirements at issue in *DL*, Plaintiffs are complaining of disparate failures in the identification of potential candidates, the assessment of those candidates' individualized needs, lining up the services necessary to meet those needs, and the coordination of the discharge from the nursing facility to the community. *See DL*, 713 F.3d at 126.

### C. Typicality

DOJ's arguments regarding typicality are duplicative of Plaintiffs' and have all been rebutted by the District in its opposition. (*See* Opposition Brief, Docket Entry No. 106, at 24-28.) DOJ does not engage or respond to the District's several arguments regarding the multiple named Plaintiffs who do not satisfy the class definition or for whom the District has unique defenses. (*Id.* at 26-28.)

### D. Adequacy

Similarly, DOJ does not address the large majority of the District's arguments regarding the adequacy of the named Plaintiffs as representatives of a class. The one item with which DOJ takes issue is the District's argument that the interests of the named Plaintiffs are in tension with those of absent class members because damages are not sought in this case. In response, DOJ

cites several ADA discrimination cases where Rule 23(b)(2) classes seeking solely injunctive and declaratory relief were certified. (Statement of Interest, at 16.) But in *none of those cases* did the Court consider the possibility that certifying a class may have preclusive effect on subsequent suits brought by absent class members and therefore are of little value in evaluating the issue.

DOJ further points out that the D.C. Circuit previously has held that claims for damages by members of a Rule 23(b)(2) class are not waived in a subsequent lawsuit. (*Id.*) While the District does not contest that the Circuit so held—indeed, the District explicitly pointed out this fact in its Opposition brief (Docket Entry No. 106, at 31)—the Supreme Court has not ruled on the issue. Thus, the possibility remains that Plaintiffs may jeopardize a subsequent claim for damages by operation of *res judicata*. *See Rouse v. Caruso*, 2013 WL 588916, at *5-6 (E.D. Mich. Jan. 7, 2013); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 562-65 (C.D. Cal. 2012). Moreover, DOJ does not dispute that—regardless of whether the damages claim is entirely barred by *res judicata*—issues of law or fact decided in the District's favor may be given collateral estoppel effect in any future litigation brought by absent class members. *See Rouse*, 2013 WL 588916, at *6 n.3. This risk creates an impermissible conflict between the proposed class representatives and the remainder of the class.

### E. Rule 23(b)(2)

Lastly, DOJ claims in conclusory fashion that Plaintiffs have satisfied Rule 23(b)(2) because injunctive relief may be applied commonly to the entire class. At no point in its Statement of Interest does DOJ indicate what kind of injunction would remedy the violations Plaintiffs allege. In other words, and in contrast to the cases cited by DOJ, there is no specific indication of what, in DOJ's view, the District must change or do differently to come into

compliance with the integration mandate of the ADA, other than a generalized notion of providing the assistance the District currently provides more efficiently.  However, injunctive relief aimed at the adequacy of services provided is not available to individuals seeking relief under *Olmstead*.  *See Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012) (*Olmstead* claim can survive "only if it truly alleges a 'discriminatory denial of services' and must be dismissed if it instead concerns the 'adequacy' of the services provided."); *Buchanan v. Maine*, 469 F.3d 158, 174-75 (1st Cir. 2006) (holding that plaintiff failed to state a claim under the ADA or Olmstead where he asserted that the services he was provided by the State were inadequate to "assist him to understand and to obtain the help he needed to continue to live with some independence and dignity in the community"); *see also Olmstead v. L.C. ex. rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities.") (internal quotation marks and citation omitted).  Without specifically identifying the injunctive relief that would commonly redress the class members' injuries, the Court should not certify a Rule 23(b)(2) class.

## CONCLUSION

The Court should not consider DOJ's Statement of Interest because the issue of whether a class should be certified is beyond DOJ's interest in assuring uniform interpretation of the ADA. Moreover, even if the Court considers its arguments, class certification should be denied for the reasons set forth herein and in the District's Opposition to Plaintiffs' Renewed Motion for Class Certification.

Dated: July 17, 2013                       IRVIN B. NATHAN
                                           Attorney General for the District of Columbia

ELLEN EFROS
Deputy Attorney General
Public Interest Division

/s/ Grace Graham
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
Telephone: (202) 442-9784
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

/s/ Bradford C. Patrick
BRADFORD C. PATRICK, D.C. Bar No. 1004979
Assistant Attorney General
441 Fourth Street, NW, Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-6627
Facsimile: (202) 741-0599
Email: bradford.patrick@dc.gov

/s/ Chad A. Naso
CHAD A. NASO, D.C. Bar No. 1001694
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-7854
Facsimile: (202) 741-8951
Email: chad.naso@dc.gov

*Counsel for Defendant*