UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IVY BROWN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-2250 (PLF) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Currently before the Court is the issue of whether the District of Columbia must

produce to plaintiffs certain documents that the District claims are privileged and has submitted

for in camera review pursuant to this Court's July 29, 2021 order.  Upon careful consideration of

the documents submitted for in camera review, the parties' filings, the relevant legal authorities,

and the entire record in this case, the Court concludes that all of the documents are shielded from

discovery by the deliberative process privilege.[1]

---

[1]     The documents reviewed in connection with this matter include:  Plaintiffs'
Fourth Amended Complaint ("Fourth Am. Compl.") [Dkt. No. 162]; Plaintiffs' Motion to
Compel ("Mot. to Compel") [Dkt. No. 363]; Plaintiffs' Second Request for Documents ("Pl.
Second Req. for Docs.") [Dkt. No. 363-4]; Plaintiffs' Second Set of Interrogatories ("Pl. Second
Interrog.") [Dkt. No. 363-5]; Defendant's Opposition to Plaintiff's Motion to Compel ("Opp.")
[Dkt. No. 364]; Plaintiffs' Memorandum of Law for July 8, 2021 Status Conference ("Pl.
Mem.") [Dkt. No. 384]; Email attaching Defendant's June 1, 2021 Production and Privilege Log
("June 1, 2021 Email") [Dkt. No. 384-10]; June 2, 2021 Email attaching Declaration by Laura
Newland ("June 2, 2021 Email") [Dkt. No. 384-11]; Defendant's Memorandum of Law
Regarding Discovery Disputes ("Def. Mem.") [Dkt. No. 386]; Email Exchange Regarding June 1
and July 1 Privilege Logs ("Privilege Log Email Exchange") [Dkt. No. 386-1]; Declaration of
Adam Mingal Attesting to Claims of Deliberative Process Privilege ("Mingal Decl.") [Dkt. No.
386-2]; July 28, 2021 Joint Status Report ("July 28, 2021 JSR") [Dkt. No. 387]; the Court's July
29, 2021 Order Memorializing Agreement Between the Parties ("July 29, 2021 Order") [Dkt.

## I.  BACKGROUND

Plaintiffs are a class of physically disabled individuals who have been living in nursing facilities but who seek to transition to community-based care.  Plaintiffs allege that the District of Columbia has failed to provide adequate services to assist class members with this transition, which has caused them to remain in nursing facilities in violation of the integration mandate of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.  See Fourth Am. Compl. ¶ 3. Plaintiffs seek a number of changes, also referred to as "accommodations," to the District's transition and community-based long-term care services.  See id. at 31-32; see also Brown v. District of Columbia, 928 F.3d 1070, 1082 (D.C. Cir. 2019) ("Plaintiffs have requested four separate accommodations, reflected in the four provisions of the proposed injunction.").

## II.  PROCEDURAL HISTORY

In 2016, Judge Ellen Segal Huvelle presided over a nine-day bench trial in this case, after which she entered judgment for the District of Columbia.  Brown v. District of Columbia, 322 F.R.D. 51, 96 (D.D.C. 2017).[2]  Plaintiffs appealed, and the court of appeals reversed, holding that the district court had improperly "require[d] Plaintiffs to meet a burden they should not have been made to shoulder."  See Brown v. District of Columbia, 928 F.3d at 1079.   The D.C. Circuit's opinion laid out clear instructions for this Court.  See id. at 1083-84.  It stated that on remand, "this litigation boils down to resolution of [one] question:

---

No. 388]; and the transcript of the July 22, 2021 Status Conference ("July 22, 2021 Tr.") [Dkt. No. 390].

[2]        Judge Huvelle presided over this case until her retirement, at which time the case was reassigned to this Court.

are the requested accommodations reasonable?" Id. at 1083.  In other words:  are the changes requested by plaintiffs to the District's transition and community-based long-term care services reasonable?  The District "bears the burden of proving the unreasonableness of a requested accommodation." Id. at 1077.  The District can meet its burden "in one of two ways." Id. at 1084.  It can "establish that it has a comprehensive, effectively working plan for transitioning the individuals to the community and a waiting list [for transition to the community] that move[s] at a reasonable pace, i.e., an adequate *Olmstead* Plan." Id. (internal quotation marks omitted).  If such a plan is in place, "every requested accommodation [would be] categorically unreasonable." Id.  If the District "cannot demonstrate the existence of an adequate *Olmstead* Plan, the District can establish, *seriatim*, that each of the four provisions of Plaintiffs' requested injunction would be so costly as to require an unreasonable transfer of the District's limited resources from other disabled individuals." Id. (internal quotation marks omitted).

Since remand, the parties have engaged in discovery on the issues identified by the D.C. Circuit.  See Brown v. District of Columbia, Civil Action No. 10-2250, 2021 WL 1439741, *2-3 (D.D.C. Apr. 16, 2021) (summarizing the history of recent discovery disputes).  As relevant here, plaintiffs have sought production of documents related to the planning of the forthcoming 2021-2024 Olmstead Plan. Id. at *3.  After making various informal requests of the District, plaintiffs filed a motion to compel production of documents related to the planning of the 2021-2024 Olmstead Plan. Id. at *2-3.  The District argued that the documents are protected by the deliberative process privilege. Id. at *4.  Plaintiffs responded that the District had waived the deliberative process privilege by failing to produce a privilege log and thereby failing to properly invoke the privilege.  See id. at *5.  The District initially responded

that it was not required to submit a privilege log because "the documents sought by plaintiffs are 'inherently' or 'by definition' protected by the privilege." Id. at *5 (quoting Opp. at 4).

This Court disagreed.  It held that, pursuant to well-established case law in this circuit, the District was required to produce a privilege log in order to adequately assert the deliberative process privilege. Brown v. District of Columbia, 2021 WL 1439741, at *5 (citing Landry v. Fed. Deposit Ins. Corp., 204 F.3d 1125, 1135 (D.C. Cir. 2000)).  By failing to produce the required privilege log, the District had not "provided any information that would enable either plaintiffs or the Court to determine whether each requested document or set of documents is pre-decisional, deliberative, memorializes the agency's final policy, was shared with the public, or can be produced in a redacted form." Id.  The Court therefore granted plaintiffs' motion to compel and ordered the District to supplement its discovery responses with all documents related to the 2021 Olmstead Plan that were responsive to plaintiffs' discovery requests. Id. at *6.  The Court concluded, however, that the District had not waived the deliberative process privilege. Id. at *5.  It therefore permitted the District the opportunity to properly assert the privilege.  The Court ordered the District to "produce a privilege log that identifies each document that is responsive to plaintiffs' requests, specifies the information within each document for which the privilege is claimed, and explains why each document falls within the scope of the privilege." Id. at *6.  It further ordered that the privilege log be accompanied by "supporting affidavits from the proper authorities." Id.

On June 1, 2021, the District produced a privilege log, which listed almost 1,500 documents withheld pursuant to the deliberative process privilege or other privileges. See June 1, 2021 Email.  On June 2, 2021, following a demand by plaintiffs, the District produced a declaration by Laura Newland, Director of the District of Columbia's Department on Aging and

Community Living.  See June 2, 2021 Email.  Two weeks later, plaintiffs requested a status

conference to resolve several outstanding discovery issues, including plaintiffs' argument that

the District's June 1 production failed to comply with the Court's April 16 opinion and order.

The Court scheduled a status conference for July 8, 2021 and directed the parties to file, in

advance of that status conference, formal memoranda of law setting forth a description of the

issues in dispute.  See June 24, 2021 Minute Orders.  On July 1, 2021, the District produced to

plaintiffs an updated privilege log in response to specific objections raised by plaintiffs.

Privilege Log Email Exchange at 1.  The District did not produce an updated declaration with

their July 1 production, but it subsequently filed a detailed declaration by Adam Mingal, General

Counsel for the District of Columbia Department on Aging and Community Living, on

July 6, 2021.  See Mingal Decl.

    At the status conference on July 8, 2021, the Court asked plaintiffs to review the

Mingal Declaration alongside the District's July 1 privilege log and determine whether they

agreed that some or all categories of documents as described in that declaration were properly

withheld pursuant to the deliberative process privilege.  See July 22 Tr. at 4:16-25.  The Court

explained that if the parties could come to an agreement on most of the documents in the

privilege log, the Court would review the remaining documents in camera.  See id. at 5:1-10.

    The parties appeared for another status conference on July 22, 2021 and informed

the Court that they had narrowed their disagreements to 137 documents.  July 22 Tr. at 6:14-21.

The Court agreed to review those remaining documents in camera.  See July 22 Tr.

at 29:11-17, 50:12-15.  At the conclusion of the status conference, the Court ordered the parties

to submit a joint status report memorializing their agreements, which the parties filed on

July 28, 2021.  See id. at 50-51; July 28, 2021 JSR.   Based on the representations of the parties

at the July 22, 2021 status conference and the parties' joint status report, the Court ordered the District to "produce to the Court by July 30, 2021 for in camera review the challenged documents withheld under the deliberative process privilege."  July 29, 2021 Order.  On July 29, 2021, the District produced 111 documents to the Court for its review.  The District stated that some previously-withheld documents were no longer in dispute, either because plaintiffs withdrew their challenge or because the District opted to produce the documents, rather than submit them for review.  The District also submitted a redlined version of the Mingal Declaration, which shows which documents are no longer in dispute.  The Court's review therefore has been limited to the 111 documents produced after further discussions and agreements between the parties.

### III.  LEGAL STANDARDS

The deliberative process privilege protects material that is "predecisional" and "deliberative."  In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).  "Predecisional materials are those that predate an agency's decision or adoption of a policy and which comprise part of a process by which the Government reached that decision or policy."  In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d 150, 161 (D.D.C. 2017) (citing Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006) and In re Sealed Case, 121 F.3d at 737).  And a document is deliberative if it "is intended to facilitate or assist development of the agency's final position on the relevant issue."  Nat'l Sec. Archive v. CIA, 752 F.3d 460, 463 (D.C. Cir. 2014).  "To be 'deliberative,' a document must reflect 'part of the agency give-and-take by which the decision itself is made.'"  In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 161 (quoting Hinckley v. United States, 140 F.3d 277, 284 (D.C. Cir. 1998)).

Documents that are protected by the deliberative process privilege include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 2 (2001). "The deliberative process privilege does not[, however,] shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." In re Sealed Case, 121 F.3d at 737. "[T]he legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011)

The deliberative process privilege is a qualified privilege that can be "overcome by a sufficient showing of need." In re Sealed Case, 121 F.3d at 737. "This need determination is to be made flexibly on a case-by-case, ad hoc basis." Id. Each time the deliberative process privilege is asserted, a court "must undertake a fresh balancing of the competing interests." Id. (quotation omitted). The court must weigh the public interest in "prevent[ing] injury to the quality of agency decisions" against the "need of the party seeking privileged evidence." Id. at 737, 746; see In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 159 ("[P]rivileged materials may be ordered disclosed if the court concludes the private need for disclosure outweighs the public interest in non-disclosure.").

To determine whether a party has made a sufficient showing of need, courts consider such factors as "the relevance of the evidence, the availability of other evidence, the

seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees" should the materials be released.  In re Sealed Case, 121 F.3d at 737-38. This list of factors is not exhaustive.  See id. at 746 (stating that the "balancing is . . . ad hoc in the context of the deliberative process privilege").  "The party seeking the documents bears the burden of demonstrating that the balance of interests tips in his or her favor."  In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 159; see also Mannina v. District of Columbia, Case No.: 1:15-cv-931, 2019 WL 1993780, *6 (D.D.C. May 6, 2019).

IV.  DISCUSSION

A.  The Relevant Olmstead Plan

For some time, the parties disputed which version of the Olmstead Plan will be at issue at trial.  In their motion to compel, plaintiffs represented that the plan in effect from 2017 to 2020 "ended by its own terms on December 31, 2020."  Mot. to Compel at 1.  In their memorandum of law submitted in advance of the July 8, 2021 status conference, plaintiffs stated that "the District chose to allow its Olmstead 2017-2020 plan to expire."  Pl. Mem. at 10.  The District did not dispute this assertion in its opposition to plaintiffs' motion to compel.  See Opp. But in its memorandum of law submitted in advance of the July 8, 2021 status conference, the District clarified that the plan had not expired.  Instead, it explained, "the reporting requirements of [the 2017-2020 Olmstead Plan] would continue '[p]ending development of the next Plan.'" Def. Mem. at 7 (citing 66 D.C. Reg. 53 at 16711 (Dec. 27, 2019) and 68 D.C. Reg. 18 at 4687 (Apr. 30, 2021)).  The District further stated that "it is entirely speculative whether a new plan will be in place before the trial [in this case] is complete."  Id.

At the July 22, 2021 status conference, the Court sought clarification concerning which version of the Olmstead Plan would be at issue at trial.  Counsel for the plaintiffs

8

represented that the District did not have a finalized Olmstead Plan, see July 22 Tr.

at 10:5-9, 13:20-22, and that "a plan that's dated 2021 through 2024 . . . is the plan that is going

to be in effect when [the Court] writes [its] opinion," id. at 11:18-20.  Counsel for the District,

however, again stated that "[t]here is an Olmstead Plan in place" – the 2017-2020 Olmstead Plan

– and "[i]t was finalized shortly after the last trial."  July 22 Tr. at 10:18-19.  Counsel noted that

the District has "a formal notice in the D.C. Register stating that the [2017-2020] plan is in effect

until the next one is released."  Id. at 14:13-15; see 68 D.C. Reg. 18 at 4687.  Therefore, the

District's counsel stated, the 2017-2020 Olmstead Plan "is the focus of this trial," id. at 10:22-23,

and the District is "prepared to go forward based on [that] plan," id. at 12:6-7.  In response,

plaintiffs' counsel stated that "if the Defendants are willing to agree . . . that [the 2017-2020

Olmstead Plan is] the operative plan and the implementation of that plan is what's at issue at

trial, then maybe we could do this."  Id. at 11:9-13.

> The Court expressed concern that the trial would be futile if the District is "going

to come up with a new plan after the trial is over."  July 22 Tr. at 12:8-9.  Ultimately, however,

the Court concluded that "this is Plaintiff's lawsuit," so "if Plaintiff wants to go ahead to trial

based on what now exists, then we'll do it."  Id. at 14:17-24.  In response, plaintiffs' counsel

stated:  "The Plaintiff definitely wants to go ahead to trial in October."  Id. at 15:2-3.  Plaintiffs'

counsel further stated that "liability [can] be determined based on whether or not they work

effectively under the old plan."  Id. at 16:11-13.

> The parties therefore now agree that the 2017-2020 Olmstead Plan is the operative

plan and the only plan at issue at trial.  The trial will focus on whether the 2017-2020 Olmstead

Plan is "'comprehensive,' 'effectively working,' and contains a waiting list that moves at a

'reasonable' pace."  See Brown v. District of Columbia, 928 F.3d at 1086.  The

forthcoming 2021-2024 <u>Olmstead</u> Plan, and any deliberations related to it, are not relevant to these questions.

## B.  Analysis of Documents

### 1.  Deliberative and predecisional

The Court concludes that all of the documents submitted to it <u>in camera</u> are predecisional.  <u>See In re Sealed Case</u>, 121 F.3d at 737.  They all concern the 2021-2024 <u>Olmstead</u> Plan, and a final version of that plan has not yet been adopted as the official policy of the District.  <u>See</u> July 22 Tr. at 12:2-3 ("So the District is right now every day continuing to finalize the next plan."); 68 D.C. Reg. 18 at 4687 (Apr. 30, 2021) (stating that, during the development of the 2021-2024 <u>Olmstead</u> Plan, the 2017-2020 <u>Olmstead</u> Plan "will remain in effect").  The documents the Court has reviewed therefore necessarily are predecisional because they "predate" the adoption of a final 2021-2024 <u>Olmstead</u> Plan and "comprise part of [the] process by which" the District will issue a final plan.  <u>In re Anthem, Inc. Data Breach Litig.</u>, 236 F. Supp. 3d at 161; <u>see also</u> <u>U.S. Fish & Wildlife Service v. Sierra Club, Inc.</u>, 141 S. Ct. 777, 788 (2021) (stating that "a draft document will typically be predecisional").

A review of the documents shows that they are also deliberative.  <u>See In re Sealed Case</u>, 121 F.3d at 737.  The District submitted to the Court the following types of documents related to the 2021-2024 <u>Olmstead</u> Plan:  drafts or partial drafts of the plan; email correspondence between District employees regarding the plan; memoranda regarding revisions or additions to the plan; and documents related to the logistics of creating the plan.  These documents include or consist entirely of deliberations, comments, and exchanges between and among District employees.  They therefore reflect the "give-and-take" by which the 2021-2024 <u>Olmstead</u> Plan is being developed.  <u>See In re Anthem, Inc. Data Breach Litig.</u>, 236 F. Supp. 3d

at 161.  Moreover, because the deliberations contained within these documents concern issues

such as metrics to include in the plan, deadlines by which certain sections of the plan would be

complete, or revisions to the plan, the documents were plainly produced in order to facilitate the

development of the final 2021-2024 Olmstead Plan.  See Nat'l Sec. Archive v. CIA, 752 F.3d

at 463; Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. at 2.  And revealing

earlier drafts of the 2021-2024 Olmstead Plan inevitably reveals the District's "selection or

organization of facts," which is part of the deliberative process.  See Ancient Coin Collectors

Guild v. U.S. Dep't of State, 641 F.3d at 513; In re Sealed Case, 121 F.3d at 737.

These documents do not state or explain a decision that the District has already

made because, as the Court has explained, the 2021-2024 Olmstead Plan has not yet been

finalized.  See In re Sealed Case, 121 F.3d at 737.  And, as discussed in the next section, any

"purely factual" information has already been produced to plaintiffs.  Id.  All of the documents

submitted for in camera review therefore are subject to the deliberative process privilege.  But

those documents may still be produced to the plaintiffs if plaintiffs have made a "sufficient

showing of need."  In re Sealed Case, 121 F.3d at 737.

## 2.  In re Sealed Case

Plaintiffs argue that their "need for [the withheld documents] outweighs the

District's qualified invocation of the deliberative process privilege."  See Mot. to Compel at 8;

see also Pl. Mem. at 7 ("[T]he Court should order production of the withheld documents under

the balancing test articulated by the DC Circuit in In re Sealed Case.").  Plaintiffs contend that

the withheld documents are "central to this case" because "[d]ocuments relating to the

development of the 2021 Olmstead Plan are key to [the] issues on remand."  Mot. to Compel

at 1, 9.  They argue that in order to "prepare for trial, present and rebut evidence about the extent

to which the District has implemented a comprehensive, effectively working Olmstead Plan, and challenge the District's affirmative fundamental alteration defense," plaintiffs require all documents related to the development of the 2021-2024 Olmstead Plan.  Reply at 4.

The District disagrees, arguing that plaintiffs cannot make a sufficient showing of need to overcome the deliberative process privilege.  The District contends that "none of the documents withheld or produced are relevant, let alone central" to the issues at trial because the withheld documents concern the pending 2021-2024 Olmstead Plan, which is not yet operative. Def. Mem. at 6-8.  In support of its position, the District submitted the declaration of Adam Mingal, General Counsel for the District of Columbia Department on Aging and Community Living.  In his declaration, Mr. Mingal divided the documents for in camera review into thirteen categories and explained the facts underlying the assertion of privilege for each category.  The Court's analysis therefore follows the groupings in the Mingal Declaration.

### a.  Paragraphs 7 and 8

The documents listed in paragraphs 7 and 8 are drafts or partial drafts of the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  Since the parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22 Tr. at 10:22-23, 15:2-3, 16:11-13, these documents are not relevant to the plan at issue at trial, see In re Sealed Case, 121 F.3d at 737.  Moreover, the drafts contain tracked changes and comments by District employees.  Releasing these documents therefore may damage the District's decision-making processes by chilling employee discussions and deliberations.  See id. at 738.

Plaintiffs argue that future timidity by government officials can be mitigated by the protective order in this litigation, which plaintiffs state will "prevent the public dissemination

of documents obtained in discovery."  Pl. Mem. at 11.  But that order only protects the

confidentiality of information that "includes Protected Health Information ("PHI") and Mental

Health Information ("MHI")."  Protective Order at 1.  It therefore does not protect the documents

listed in paragraphs 7 and 8 of the Mingal Declaration.  Plaintiffs also contend that the chilling of

government employees is less relevant where, as here, "the decision-making process . . . involves

collaboration with individuals and organizations outside of the government."  Mot. to Compel.

at 11; Pl. Mem. at 11.  But the District's internal deliberations do not lose their protection simply

because the District has consulted with non-governmental stakeholders.

　　　　　To the extent that plaintiffs seek to identify potential differences between

the 2017-2020 and 2021-2024 Olmstead Plans, a draft version of the 2021-2024 Olmstead Plan

was published for public comment on April 30, 2021 and is available for their review.  See 68

D.C. Reg. 18 at 4687 (Apr. 30, 2021) (soliciting comments on a draft of the 2021-2024 Olmstead

Plan).  Plaintiffs therefore already understand the District's thinking with respect to changes to

the 2017-2020 Olmstead Plan; there is no need to review earlier drafts of a now-public draft

plan.  Moreover, much of the factual information contained within the withheld drafts can be

found in the final draft published for public comment.  See In re Sealed Case, 121 F.3d at 738

(requiring courts to consider the availability of other evidence).

　　　　　Even if drafts of the 2021-2024 Olmstead Plan were somehow relevant to the

2017-2020 Olmstead Plan, plaintiffs still cannot show that the drafts are relevant to the legal

questions before the Court.  At trial, the Court must determine whether the District has an

adequate Olmstead Plan in place and, if not, whether the accommodations requested by plaintiffs

are unreasonable.  See Brown v. District of Columbia, 928 F.3d at 1083-84.  The Court's

analysis therefore will focus in large part on how and whether the District's existing Olmstead

Plan works.  This question cannot be answered by knowing what commitments were considered but ultimately rejected by the District for a different, forthcoming plan.  The salient issue is whether the commitments that <u>were</u> adopted help form an <u>Olmstead</u> Plan that is "effectively working."  <u>Id</u>. at 1084.

The DOJ guidance cited by plaintiffs supports this conclusion.  That guidance states that an <u>Olmstead</u> Plan "must contain concrete and reliable commitments to expanded integrated opportunities."  U.S. Dep't of Justice, Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C. ("DOJ Statement") (Feb. 25, 2020), https://www.ada.gov/olmstead/q&a_ olmstead.htm.  A final plan that contains those types of commitments might be considered adequate, while a plan that does not might be considered inadequate.  But the process by which any such plan was developed is irrelevant.  Plaintiffs' reliance on <u>Doe 2 v. Esper</u> therefore is misplaced.  In that case, the court held that the deliberative process privilege did not apply to documents that concerned "Defendants' decision-making processes and intent" because "the extent and scope of that decision-making process [was] a central issue in [that] lawsuit."  <u>Doe 2 v. Esper</u>, Civil Action No. 17-1597, 2019 WL 4394842, *7 (D.D.C. Sept. 13, 2019).  Here, by contrast, the processes by which the District develops a plan have no bearing on whether the plan that is ultimately adopted is effectively working.  More importantly, plaintiffs are seeking documents related to the development of a plan that is not yet operative.  Even if the planning process was somehow relevant, therefore, it would only be relevant as to the plan currently in effect – the 2017-2020 <u>Olmstead</u> Plan.  The balance of interests favors withholding the documents listed in paragraphs 7 and 8 of the Mingal Declaration.

The same reasoning applies to documents with the following ID numbers:

- DC_IBrown_00154121
- DC_IBrown_00151331
- IVYB051_0000001271.0001
- IVYB051_0000001284.0001
- IVYB051_0000001293.0001
- IVYB051_0000003095.0001
- IVYB051_0000003095.0002
- IVYB051_0000003096.0001

These documents are not listed in the Mingal Declaration, but they were withheld pursuant to the deliberative process privilege and therefore were submitted to the Court for in camera review.

### b.  Paragraph 9

The documents listed in paragraph 9 are email correspondence concerning the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  Since the parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22 Tr. at 10:22-23, 15:2-3, 16:11-13, the documents are not relevant to the plan at issue at trial, see In re Sealed Case, 121 F.3d at 737.  Moreover, these documents are direct communications between District employees and contain the deliberations and thought processes of those employees.  Releasing these documents therefore may damage the District's decision-making processes by chilling employee discussions and deliberations.  See id. at 138.  For the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand.  The balance of interests favors withholding the documents listed in paragraph 9 of the Mingal Declaration.

c.  Paragraph 10

The documents listed in paragraph 10 are copies of a short memorandum noting areas for additional information and improvements to a draft of the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  Since the parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22 Tr. at 10:22-23, 15:2-3, 16:11-13, the documents are not relevant to the plan at issue at trial, see In re Sealed Case, 121 F.3d at 737.  Moreover, these documents are direct communications between District employees.  Releasing these documents therefore may damage the District's decision-making processes by chilling employee discussions and deliberations.  See id. at 738.  And for the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand.  The balance of interests therefore favors withholding the documents listed in paragraph 10 of the Mingal Declaration.

d.  Paragraphs 12 and 13

Paragraphs 12 and 13 list thirty-three documents that "convey suggestions for metrics that might be included in the next plan.  Mingal Decl. ¶ 11.  The documents are either tables listing or email correspondence concerning proposed metrics for inclusion in the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  Since the parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22 Tr. at 10:22-23, 15:2-3, 16:11-13, the documents are not relevant to the plan at issue at trial, see In re Sealed Case, 121 F.3d at 737.

Plaintiffs argue that these documents are

relevant to the Court's determination of whether the plan reflects that the District "is providing services in the most integrated setting and whether the plan contains concrete and reliable commitments to expand integrated opportunities, specific and reasonable timeframes and measurable goals for which the public entity may be held accountable."

Pl. Mem. at 8-9 (quoting DOJ Statement).  But the metrics being discussed have not yet been adopted by the District because they have not yet been incorporated into a final version of the 2021-2024 Olmstead Plan.  Even if they had been or subsequently are incorporated, the metrics will remain irrelevant to the question before the Court, that is, whether the current plan – the 2017-2020 Olmstead Plan – is effectively working.

Moreover, some of these documents are direct communications between District employees.  Releasing these documents therefore may damage the District's decision-making processes by chilling employee discussions and deliberations.  See In re Sealed Case, 121 F.3d at 738.  For the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand.  The balance of interests favors withholding these documents.

The same reasoning applies to documents with the following ID numbers:

- IVYB051_0000000653.0001
- IVYB051_0000000653.0003
- IVYB051_0000000735.0001
- IVYB051_0000000735.0003
- IVYB051_0000000746.0001
- IVYB051_0000000957.0001
- IVYB051_0000000957.0003

These documents are not listed in the Mingal Declaration, but they were withheld pursuant to the deliberative process privilege and therefore were submitted to the Court for in camera review.

### e.  Paragraph 14

The documents listed in paragraph 14 are three copies of email correspondence, two of which are unredacted and one of which is redacted.  The emails concern proposed metrics for inclusion in the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  The parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan.  See July 22 Tr. at 10:22-23, 15:2-3, 16:11-13.  For this reason, and for the reasons discussed in Section IV(B)(2)(d), supra, the documents are not relevant to the plan at issue at trial.  See In re Sealed Case, 121 F.3d at 737.

Moreover, because these documents are direct communications between District employees, releasing these documents may damage the District's decision-making processes by chilling employee discussions and deliberations.  See In re Sealed Case, 121 F.3d at 738.  For the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand.  Finally, copies of these emails have been produced to plaintiffs in redacted form to show the factual information contained therein.  See In re Sealed Case, 121 F.3d at 738.  The balance of interests therefore favors withholding the documents in paragraph 14 of the Mingal Declaration.

### f.  Paragraph 16

The documents listed in paragraph 16 are three memoranda outlining a proposed strategy for completion of the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  Since the parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22

Tr. at 10:22-23, 15:2-3, 16:11-13, the documents are not relevant to the plan at issue at trial, see In re Sealed Case, 121 F.3d at 737.

Plaintiffs initially argued that these documents are "relevant because the District chose to allow its *Olmstead* 2017-2020 plan to expire." Pl. Mem. at 10. But, as explained above, the 2017-2020 plan did not expire. Instead, the District extended operation of that plan until the forthcoming 2021-2024 Olmstead Plan can be finalized. See 66 D.C. Reg. 53 at 16711 (Dec. 27, 2019); 68 D.C. Reg. 18 at 4687 (Apr. 30, 2021). Plaintiffs also state that "[i]nformation relating to the timing of the next plan is directly relevant to whether the District has a genuine commitment to deinstitutionalization." Pl. Mem. at 10. But plaintiffs misunderstand the meaning of "commitment" in this context. The commitments that are relevant here are the concrete, specific commitments contained within the existing Olmstead Plan – not the abstract commitments that the District may have to equity or inclusion of disabled people. See, e.g., DOJ Statement; see also Day v. District of Columbia, 894 F. Supp. 2d 1, 28 (D.D.C. 2012) ("[T]here is wide-spread agreement that one essential component of an 'effectively working' plan is a measurable commitment to deinstitutionalization.") (emphasis added); Frederick L. v. Dep't of Pub. Welfare of Com. of Pa., 364 F.3d 487, 500 (3d Cir. 2004) (holding that the governmental agency must "make a commitment to action in a manner for which it can be held accountable by the courts") (emphasis added). The timing of the forthcoming 2021-2024 Olmstead Plan is not at all relevant to whether the operative plan, the 2017-2020 Olmstead Plan, includes measurable commitments to deinstitutionalization.

Moreover, because these documents are direct communications between District employees, releasing these documents may damage the District's decision-making processes by chilling employee discussions and deliberations. See In re Sealed Case, 121 F.3d at 738. For the

same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand.  The balance of interests therefore favors withholding the documents in paragraph 16 of the Mingal Declaration.

g.  Paragraph 17

The documents listed in paragraph 17 are timelines for developing the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  The parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan.  See July 22 Tr. at 10:22-23, 15:2-3, 16:11-13.  For this reason and others discussed in Section IV(B)(2)(f), supra, these documents are not relevant to the plan at issue at trial.  See In re Sealed Case, 121 F.3d at 737. The balance of interests favors withholding the documents in paragraph 17 of the Mingal Declaration.

The same reasoning applies to the document with the following ID number:

- DC_IBrown_00153857

This document is not listed in the Mingal Declaration, but it was withheld pursuant to the deliberative process privilege and was therefore submitted to the Court for in camera review.

h.  Paragraph 18

The documents listed in paragraph 18 are email correspondence concerning the role of the Department of Health Care Finance in developing the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  Since the parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22 Tr. at 10:22-23, 15:2-3, 16:11-13, the documents are not relevant to the plan at issue at trial, see In re Sealed Case, 121 F.3d at 737.  Because these

20

documents are direct communications between District employees, releasing these documents

may damage the District's decision-making processes by chilling employee discussions and

deliberations.  See id. at 738.  And for the same reasons discussed in Section IV(B)(2)(a), supra,

plaintiffs have failed to show that the thought processes of District employees are relevant to the

legal questions before the Court on remand.  The balance of interests therefore favors

withholding the documents in paragraph 18 of the Mingal Declaration.

### i.  Paragraph 19

The documents listed in paragraph 19 are email correspondence regarding

agendas for group meetings, assignments and next steps, a town hall meeting, and other issues

related to the development of the 2021-2024 Olmstead Plan, which is not yet in effect.  Plaintiffs

have failed to make a sufficient showing of need for these documents.  Since the parties agree

that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22

Tr. at 10:22-23, 15:2-3, 16:11-13, the documents are not relevant to the plan at issue at trial, see

In re Sealed Case, 121 F.3d at 737.  And because these documents are direct communications

between District employees, releasing these documents may damage the District's

decision-making processes by chilling employee discussions and deliberations.  See id. at 738.

For the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that

the thought processes of District employees are relevant to the legal questions before the Court

on remand.  The balance of interests therefore favors withholding these documents.

### j.  Paragraph 20

The documents listed in paragraph 20 are drafts of and email correspondence

related to a letter and notice issued to the public in December 2019 regarding the 2021-2024

Olmstead Plan, which is not yet in effect.  Plaintiffs have failed to make a sufficient showing of need for these documents.  Since the parties agree that the trial will concern the operative plan, which is the 2017-2020 Olmstead Plan, see July 22 Tr. at 10:22-23, 15:2-3, 16:11-13, these documents are not relevant to the plan at issue at trial, see In re Sealed Case, 121 F.3d at 737. Releasing the email correspondence may damage the District's decision-making processes by chilling employee discussions and deliberations.  See id. at 738.  Moreover, a final version of the announcement was ultimately published publicly.  Plaintiffs therefore can only hope to discover the thought processes of District employees.  For the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand.  The balance of interests therefore favors withholding the documents in paragraph 20 of the Mingal Declaration.

### k.  Paragraph 21

The document listed in paragraph 21 is a spreadsheet showing content from quarterly reports issued under the current plan, the 2017-2020 Olmstead Plan.  Plaintiffs have failed to make a sufficient showing of need for this document.  The spreadsheet includes comments from District employees concerning what information might be included in a forthcoming report under the current plan.  The District has already produced a version of the spreadsheet with the comments redacted.  Plaintiffs therefore can only hope to discover the thought processes of District employees.  For the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand.  The balance of interests therefore favors withholding the document in paragraph 21 of the Mingal Declaration.

22

l.  Paragraph 22

The two documents listed in paragraph 22 are protected by the deliberative process privilege.  The first document is a draft of the District's Statewide Transition Plan.  This document provides a comprehensive assessment of the District's compliance with a 2014 regulation issued by The Centers for Medicare & Medicaid Services establishing requirements for supporting and integrating people receiving Medicaid Home and Community-Based Services. The second document is a draft of the District's Policy and Procedures Manual for the D.C. Department of Health Care Finance's Long Term Care Administration.  That document shows comments and tracked changes by District employees.

Neither party has explained how these documents are relevant to either the 2017-2020 Olmstead Plan or the 2021-2024 Olmstead Plan.  Even assuming, however, that either or both documents are relevant to the questions before the Court on remand, final versions of these documents have already been produced to plaintiffs or published publicly.  Plaintiffs therefore can only hope to discover the thought processes of District employees.  For the same reasons discussed in Section IV(B)(2)(a), supra, plaintiffs have failed to show that the thought processes of District employees are relevant to the legal questions before the Court on remand. The balance of interests therefore favors withholding the document in paragraph 22 of the Mingal Declaration.

m.  Other factors

When determining whether the deliberative process privilege is overcome by a showing of need, courts must also consider the seriousness of the litigation and the role of the government.  In re Sealed Case, 121 F.3d at 138.  The Court recognizes and appreciates the seriousness of this litigation.  "[T]he unjustified segregation of disabled individuals in

institutions is a form of disability discrimination barred by federal law."  <u>Brown v. District of Columbia</u>, 928 F.3d at 1073.  In addition, the role of the government in this litigation is of central importance, as the primary question for the Court is whether the District of Columbia has an adequate <u>Olmstead</u> Plan in place.  <u>See id</u>. at 1084.  These two factors therefore might in some cases weigh in favor of disclosure, but not here.  The Court concludes that these two factors do not overcome the central issue of relevance.

Plaintiffs bear the burden of demonstrating sufficient need for the withheld documents.  They cannot make that showing of need where, as here, the documents are irrelevant to the legal questions before the Court on remand:  whether the current <u>Olmstead</u> Plan – the 2017-2020 <u>Olmstead</u> Plan – is adequate and, if not, whether the plaintiffs' requested accommodations would require an unreasonable transfer of resources from other disabled individuals.  Those questions can only be answered using evidence concerning the currently operative plan.

## V.  CONCLUSION

For the foregoing reasons, the Court will sustain the District of Columbia's claims of deliberative process privilege for the documents submitted <u>in camera</u> pursuant to this Court's July 29, 2021 order.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  August 31, 2021