UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IVY BROWN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 10-2250 (PLF) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

OPINION AND ORDER

Plaintiffs have offered in evidence Plaintiffs' Exhibits 879 ("Pl. Ex. 879" or "OIG Report"), a September 2021 report prepared by the District of Columbia Office of the Inspector General ("Inspector General"). See Plaintiffs' Brief Seeking the Admission of Certain Exhibits ("Pl. Brief") [Dkt. No. 427] at 1-6; see also Plaintiffs' Reply in Support of Their Brief Seeking the Admission of Certain Exhibits [Dkt. No. 431]. The District objects to the admission of the OIG Report, arguing that it is both irrelevant and inadmissible hearsay. See District's Response to Plaintiffs' Brief Seeking the Admission of Certain Exhibits [Dkt. No. 430] at 1-4. After careful consideration of the OIG Report and the parties' written and oral arguments, the Court concludes that Plaintiffs' Exhibit 879 should not be admitted in evidence.

I.  THE OIG REPORT

The OIG Report at issue is entitled "Department of Housing and Community Development [("DHCD")]: DHCD Did Not Effectively and Efficiently Use the Housing Production Trust Fund [("HPTF")] to Produce Affordable Housing Units for Extremely

Low-Income [("ELI")] Households." Pl. Ex. 879 at 1.  The Inspector General issued the OIG Report after conducting an audit to assess the "production and preservation of affordable housing in the District of Columbia."  Id. at 3.[1]  In the OIG Report, the Inspector General makes multiple factual findings and offers twenty recommendations for DHCD to "identify and address noncompliance and control weaknesses."  Id. at 3-4, 12-22.  For example, the OIG Report notes that "DHCD missed its statutory goals for disbursing HPTF resources to produce and preserve affordable housing units for ELI households," improperly allocating $81.7 million in HPTF resources to produce and preserve affordable housing units for very-low income ("VLI") and low-income ("LI") households instead of ELI households.  Id. at 3-4, 14-15.[2]  The OIG Report also notes that DHCD occasionally disbursed additional resources for housing projects without ensuring that a commensurate number of additional affordable housing units were built, that "monthly rents for some reserved HPTF units improperly exceeded the maximum allowable rent limits that DHCD published," and that in some instances "reserved units set aside for one targeted population [e.g., LI households] were utilized by a different targeted population [e.g., ELI households]."  See id. at 4, 15, 18-20.

       Plaintiffs argue that the OIG Report is relevant to the issues before the Court because the District of Columbia defends against plaintiffs' claims "in part by raising housing issues" and because the OIG Report shows "that the District has failed to carry out its mandate requiring affordable housing for members of the Plaintiff class."  Pl. Brief at 3.  To be sure, the

---

[1]    Page number citations to the OIG Report refer to the pages of the PDF document provided to the Court.

[2]    "According to D.C. Code §§ 42-2802(b-1)(1)-(2), at least 50 percent of the funds disbursed from the HPTF during a fiscal year shall be used to fund the creation and preservation of affordable housing units for extremely low-income (ELI) households."  Pl. Ex. 879 at 3.

District has argued that both named plaintiffs, Ivy Brown and Larry McDonald, have been unable to transition to the community not through any fault of the District's but rather because they have been unable to secure adequate, affordable housing.  See District's Trial Memorandum ("Def. Trial Memo.") [Dkt. No. 412] at 2-3; see also Trial Transcript at 603:22-604:10, 719:24-720:14, 932:6-19 (testimony of Director Laura Newland, explaining that lack of suitable housing may justify case closure for individuals receiving transition care assistance from the D.C. Department of Aging and Community Living).  And, as plaintiffs note, the District has argued and "elicited testimony that Plaintiffs' request for a minimum number of transitions in each of the next four years is unreasonable due to an inadequate supply of affordable housing." Pl. Brief at 3; see, e.g., Trial Transcript at 3944:4-24.  With that as the rationale for admitting the OIG Report in evidence, the first – and most basic – question is whether the OIG Report is relevant to the issues on remand.

## II.  RELEVANCE

### A.  Legal Standard

"'Relevant evidence is admissible,' unless an applicable authority provides otherwise, whereas '[i]rrelevant evidence is not admissible.'" Democracy Partners, LLC v. Project Veritas Action Fund, Civil Action No. 17-1047, 2021 WL 4785853, at *2 (D.D.C. Oct. 14, 2021) (alteration in original) (quoting FED. R. EVID. 402).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  The proponent of admitting an item of evidence has the initial burden of establishing relevance.  See Dowling v. United States, 493 U.S. 342, 351 n.3 (1990); United States v. Gonzalez, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).  A court "may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "[W]eighing any factors counseling against admissibility is a matter first for the district court's sound judgment." Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A., 315 F. Supp. 3d 101, 128 (D.D.C. 2018) (alteration in original) (quoting Spring/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)). The OIG Report's relevance therefore turns on whether it – or any portions of it – proves a "fact of consequence" in the action. FED. R. EVID. 401; see also FED. R. EVID. 401 advisory committee notes to 1972 proposed rules ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.").

        The relevance inquiry is simplified here because the D.C. Circuit has instructed that the availability of affordable and accessible housing is a "fact of consequence." In remanding the case to this Court, the court of appeals noted that "[t]he lack of housing is relevant to whether the pace of movement from the waiting list is 'reasonable,' which, in turn, is relevant to whether the District has an 'adequate Olmstead Plan' in place." Brown v. District of Columbia, 928 F.3d 1070, 1087 (D.C. Cir. 2019). And as the District noted in its pretrial brief, see Def. Trial Memo at 14, the D.C. Circuit also provided that a finding of a lack of available housing would likely render plaintiffs' third provision of their proposed injunction "so costly as to be unreasonable." Brown v. District of Columbia, 928 F.3d at 1085 n.13; see also id. at 1078 (describing the "fundamental alteration" defense). Thus, to the extent that the OIG Report – or any portion of it – tends to prove or disprove a lack of available housing in the District of Columbia, it is relevant.

4

*B. Certain Portions of the OIG Report Are Plainly Irrelevant to the Issues on Remand*

A careful review of the OIG Report makes clear that the vast majority of its findings and recommendations is wholly unrelated to the question before the Court on remand. For example, the OIG Report faults DHCD for failing to document certain decisionmaking and loan portfolio records, for failing to adopt policies and procedures for DHCD employees' disclosure of potential conflicts of interest, for failing to compare proposed project cash flows to actual cash flows, for failing to implement periodic compliance reviews of disbursed loans and tenant income eligibility reviews, and for failing to timely collect on outstanding loans. See Pl. Ex. 879 at 12-13, 15-21. Although these findings may relate to DHCD's internal processes and its proper administration of the HPTF, they do not make it more or less probable that there is a lack of affordable housing in the District of Columbia.

Even the OIG Report's major finding – that "DHCD missed its statutory goals for disbursing HPTF resources to produce and preserve affordable housing units for ELI households," Pl. Ex. 879 at 3, 14-15 – is only tangentially related to a lack of housing available to class members. The HPTF is "a special revenue fund . . . that provides gap financing for projects affordable to low and moderate income households." Housing Production Trust Fund, DEP'T OF HOUS. & CMTY. DEV., https://dhcd.dc.gov/page/housing-production-trust-fund (last visited Jan. 10, 2022). DHCD administers the HPTF to develop affordable housing in the District of Columbia. See 2021-2024 Olmstead Plan [Dkt. No. 406-1] at 11-12. Assuming that the findings in the OIG Report are accurate, the fact that DHCD disbursed fewer funds than statutorily required to develop housing opportunities for extremely low-income households does not help to prove that there is a lack of affordable housing or – most relevant – that there is less housing available to plaintiff class members. Indeed, the OIG Report does not speak to the

5

actual quantity of affordable housing in the District of Columbia at all. Moreover, as the OIG Report notes, some ELI households may rent units that are not specifically "set aside" for ELI households by using housing vouchers. See Pl. Ex. 879 at 18-20.

In sum, whether DHCD's decision to fund some housing projects over others does not tend to establish that there is a lack of housing available to class members. Instead, the conclusion that there is a lack of available housing depends on a chain of inferences and assumptions, including (i) that there are no other new sources of affordable housing for class members; (ii) that ELI households are by and large precluded from accessing LI and VLI housing units funded by DHCD; and (iii) that the Inspector General's audit of a limited period of time and a single agency is demonstrative of the general availability of affordable and accessible housing in the District of Columbia.

Given the above, the Court will exclude without further comment the following recommendations and their related findings because they are plainly irrelevant to the issues before the Court: Recommendations 1, 3, 4, 7-10, 12-14, and 16-20. See FED. R. EVID. 402. The Court now turns to those recommendations and related factual findings in the OIG Report that were discussed at trial as being arguably relevant to the issues on remand: Recommendations 2, 5, 6, 11, and 15. See Trial Transcript at 4002:17-19, 4006:5-16.

### C. Arguably Relevant Portions of the OIG Report

Recommendation 2 provides: "Develop a plan to evaluate DHCD's current selection criteria to better align selection criteria with statutory requirements to produce and preserve more units for extremely low-income households." Pl. Ex. 879 at 14. This recommendation is based on the finding that DHCD did not exclusively follow the recommendation generated by the application of competitive selection criteria to project

proposals when choosing which projects to fund. See id. at 12-13 (noting that for the eight housing proposals selected for funding by DHCD in FY 2020, "DHCD selected low-scored proposals over higher-scored proposals" in each instance). As the OIG Report notes, this departure from the selection criteria was made by the final decisionmaker, who treated the "recommendations, scoring, and supporting documentation . . . [as] just some of the evaluative factors" used to make the final decision. Id. at 13. According to the OIG Report, "[a]s a result of DHCD not following its competitive process to select housing proposals, final housing proposal selections were not made based on objective criteria included in the RFP process designed to promote accountability and transparency." Id. Rather than tending to prove a lack of affordable housing, this section of the OIG Report merely summarizes a dispute within DHCD about whether subjective or objective criteria are ultimately preferable to determine which affordable housing projects should be funded. It therefore is irrelevant to the issues on remand, and the Court will exclude Recommendation 2 and its related factual findings.

Recommendation 5 provides: "Develop procedures to request and obtain a required waiver from the Council [of the District of Columbia] prior to selecting and funding projects when proposals received do not meet statutory funding requirements." Pl. Ex. 879 at 15. Recommendation 5 relates to the Inspector General's major finding, namely, that DHCD did not fulfill its statutory obligations to disburse at least 50% of the Housing Production Trust Fund to produce housing opportunities for ELI households for four years. See id. at 14. DHCD defended this outcome by arguing that it chose not to approve certain project proposals that would have satisfied the statutory funding requirement because "[d]oing so would simply recreate failed housing policy of old by concentrating deeply affordable units in certain parts of the city." Id. In the Court's view, this recommendation and the factual findings upon which it is

based pertain to the funding of housing development projects, not to the related but attenuated issue of the availability of affordable housing in the District of Columbia. As discussed above, whether DHCD's decision to fund certain development projects over others tends to prove that there is a general lack of available housing – let alone housing for class members – requires the Court to make several assumptions and inferences that are arguably specious. See supra Section II.B. The Court therefore finds that Recommendation 5 and its underlying factual findings are irrelevant.

   Even assuming that Recommendation 5 and the related findings of fact are relevant, however, their probative value is limited and is substantially outweighed by the danger of confusing the issues on remand in this case. See FED. R. EVID. 403. The D.C. Circuit has instructed that the availability of housing is relevant to the extent that it is a limiting factor for the pace of transitioning class members to the community and insofar as it would make plaintiffs' requested accommodations "so costly as to be unreasonable." Brown v. District of Columbia, 928 F.3d at 1085 n.13; see also id. at 1087. Yet plaintiffs seek to use the OIG Report to argue a different point: that the District does not have an effectively working Olmstead plan because the District has "fail[ed] to effectively and efficiently use the HPTF to produce affordable housing units for extremely low-income households[,] demonstrat[ing] a lack of commitment to utilize available resources to build or cause to be built affordable housing for the Plaintiff class." Pl. Brief at 3. This argument is far afield from plaintiffs' stated claim that the District has violated its obligations under Olmstead by failing to provide sufficient outreach and transition care assistance – including assistance in finding suitable housing – to nursing home residents. See Fourth Amended Complaint [Dkt. No. 162] at ¶ 135. Simply put, it would transform plaintiffs' claim from one about services and support provided to individuals seeking

to transition out of nursing homes to one about DHCD's administration of a housing development fund. The Court therefore will exclude Recommendation 5 and its corresponding factual findings.

Recommendation 6 provides: "Develop policies and procedures to ensure additional affordable housing units are produced when project funding is increased." Pl. Ex. 879 at 15. This recommendation is based on a finding that in some instances "DHCD substantially increased the funding amount (after selection based on all submitted proposals) but did not comparably increase the number of units being produced or preserved by that proposal." Id. In response, a DHCD official noted that the increase in cost was due to "construction cost increases between the application and loan closing dates," suggesting that the increase of funding was necessary to maintain the number of affordable housing units initially proposed. Id. Thus, rather than tending to prove a lack of available housing in the District of Columbia, Recommendation 6 instead seems to address the challenge DHCD faces to accurately estimate the costs of housing development when granting project proposals. It therefore is irrelevant and will be excluded.

Recommendation 11 provides: "Recoup from the landlord $114,528 per year in unauthorized excess rents." Pl. Ex. 879 at 19. This recommendation is based on a finding that "monthly rents for some reserved HPTF units improperly exceeded the maximum allowable rent limits that DHCD published." Id. at 18 (noting, as an example, that a landlord charged and collected higher rents on fourteen of nineteen affordable housing units in an apartment complex). Setting aside whether this finding is accurate, see id. at 18-19 (DHCD responding that the landlord correctly charged rent from the fourteen households, which were paying using tenant-based housing vouchers), Recommendation 11 pertains to DHCD's oversight of affordable

9

housing landlords who have received HPTF funds, not to a lack of affordable housing. It therefore is irrelevant and will be excluded.

Recommendation 15 provides: "Develop procedures to ensure units are reserved for specific targeted populations and are utilized by their intended population." Pl. Ex. 879 at 20. This recommendation is in response to the Inspector General's finding that "[l]andlords did not always follow annually published income and rent limits when approving tenant residency in reserved [HPTF] units." Id. On occasion, this resulted in individuals from certain income classes using units produced for other income classes. Id. (noting instance where an ELI three-person household resided in a unit reserved for a LI household). Again, this recommendation addresses DHCD's oversight of landlords who operate HPTF-funded housing; it does not directly speak to the lack of affordable housing in the District of Columbia and therefore is irrelevant. The Court will exclude Recommendation 15 and its underlying factual finding.[3]

In summary, having canvassed the OIG Report, the Court concludes that the factual findings and recommendations are inadmissible under Rules 401, 402, and 403 of the Federal Rules of Evidence. The Court also concludes that the remainder of Plaintiffs' Exhibit 879, including the OIG Report's executive summary, cover letter, and appendices are similarly inadmissible. The Court therefore will exclude all of Plaintiffs' Exhibit 879 from evidence.[4]

---

[3]  If anything, Recommendation 15 tends to show that there is more housing available for ELI households because they are not limited to ELI housing units. But what little probative value Recommendation 15 may have to that end is substantially outweighed by the danger of confusing the issues in this case. See FED. R. EVID. 403.

[4]  Because the Court finds that the OIG Report is inadmissible under Rules 401, 402, and 403 of the Federal Rules of Evidence, it need not address the plaintiffs' argument that the OIG Report is admissible under the hearsay exemption for party admissions or the public records exception. See FED. R. EVID. 801(d)(2)(D), 803(8)(C).

## III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiffs' Exhibit 879 is inadmissible and shall be excluded from evidence in this case.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 12, 2022