**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IVY BROWN, *et al.*,<br><br>    **Plaintiffs,**<br><br>  **v.**<br><br>**DISTRICT OF COLUMBIA,**<br><br>    **Defendant.** | No. 1:10-cv-02250-PLF |

## DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT

Defendant District of Columbia moves the Court to alter or amend its judgment of December 31, 2024. *See* Fed. R. Civ. P. 59(e). After years of litigation, the Court entered judgment for Plaintiffs and three of their four requested ADA accommodations, verbatim, as relief. Although, before issuing that relief, the Court considered whether the District had shown those requests were so costly as to be unreasonable—a standard applicable to the question of *liability*—it appears the Court did not consider whether the facts proven at trial warranted such relief under traditional equitable principles. Specifically, it is Plaintiffs' burden to show that equitable relief is warranted, and any such relief must be narrowly tailored to the harms the *Plaintiff Class* will prospectively suffer, as supported by the Court's findings of fact. As discussed in the accompanying memorandum of points and authorities, each of the three subparts of the Court's injunction are manifestly erroneous, in whole or in part, because they are not narrowly tailored to prevent harms proven at trial. Subpart two is also fatally vague under Federal Rule of Civil Procedure 65(d). Accordingly, the District respectfully requests the Court alter or amend the order. A proposed order is also attached.

Dated: January 28, 2025.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*

FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Mateya B. Kelley*

MATEYA B. KELLEY [888219451]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 724-7854
Email: mateya.kelley@dc.gov

*Counsel for Defendant District of Columbia*


## RULE 7(m) CERTIFICATION

On January 25, 2025, counsel for Defendant contacted Plaintiffs' counsel via email regarding this Motion. On January 27, 2025, Plaintiffs responded they do not consent.

*/s/ Mateya B. Kelley*

MATEYA B. KELLEY [888219451]
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IVY BROWN**, *et al.*, <br><br>       **Plaintiffs,** <br><br>   **v.** <br><br> **DISTRICT OF COLUMBIA,** <br><br>       **Defendant.** | **No. 1:10-cv-02250-PLF** |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT**

**INTRODUCTION**

Defendant District of Columbia (District) moves the Court to alter or amend its judgment of December 31, 2024 because the scope of relief ordered is manifestly erroneous. The District accepts that the Court has devoted extensive time and thought to finding facts in this case, and to their consequences. The District does not challenge those findings—or the finding of liability against the District—in this Motion. But the District is compelled to move for relief because the injunction the Court ordered is not narrowly tailored to the harms *the Plaintiff Class* will prospectively suffer, as supported by the Court's findings of fact. Indeed, none of the three subparts of the injunctive relief entered here are appropriately tailored to prospective harms to the Plaintiff Class. Accordingly, to avoid unjust results, including the potential expenditure or misdirection of millions of dollars in public funds as well as scarce human resources, the injunction should be vacated in part and amended in part, as discussed below.

## BACKGROUND

Having recently issued an opinion and final judgment, the District assumes the Court's familiarity with the facts of this case and only briefly summarizes its procedural history.  *See* Opinion, Findings of Fact, and Conclusions of Law, [505] (hereinafter, Opinion or Findings of Fact).  The Court's Opinion follows a 20-day bench trial in the Fall of 2021.  *Id*. at 1.  That was the second trial of this case.  *Id*. at 8–9.  In 2017, Judge Ellen Huvelle ruled in favor of the District, but the D.C. Circuit reversed, finding that she had applied an erroneous legal standard, and improperly shifted some of the burden to Plaintiffs.  *Id*.  Specifically, the Circuit found that the District "should bear the burden of proving the unreasonableness of plaintiffs' requested accommodations . . . ."  *Id*. at 9 (quoting *Brown v. District of Columbia*, 928 F.3d 1070, 1079 (D.C. Cir. 2019) (cleaned up)).  It identified two ways the District could carry its burden, and emphasized that, if the District failed in both ways, the District "*must* make every [reasonable] modification to its policies and procedures requested by an institutionalized disabled individual who wishes to, and could, be cared for in the community."  *Id*. at 9–10 (quoting 928 F.3d at 1078) (emphasis in original, alteration in Opinion).

The Circuit also said, however, that it did *not* mean that if the District failed to carry its burden, this Court was bound to enter all of Plaintiffs' proposed "accommodations," *ipso facto*, as an injunction.  It stated:

> As set forth above, the district court should concentrate on the accommodations that Plaintiffs in fact request—that is, the proposed injunction—when deciding the District's liability.  If liability is established, however, the district court retains its usual discretion to enter the appropriate declaratory or injunctive relief.  *See Olmstead* [*v. Zimring*], 527 U.S. [581] at 590 & n.4 [(1999)] ("Remedies both at law and in equity are available for violations of the statute."); *see also Disabled in Action v. Board of Elections in City of New York*, 752 F.3d 189, 198 (2d Cir. 2014) ("If local authorities 'fail in their affirmative obligations' under federal law, 'the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies." (quoting *Swann v. Charlotte-Mecklenburg Bd.*

of Educ., 402 U.S. 1, 15 (1971))).  In other words, the district court is not ultimately bound to enter the proposed injunction as a remedy; if it wishes to, it may focus its ultimate injunction on the six "key components of an effective system of transition assistance" that it has gleaned from other Olmstead cases. See Thorpe [v. District of Columbia], 303 F.R.D. [120] at 148 [(D.D.C. 2014)].

928 F.3d at 1083 n.10.  Thus, the Circuit was careful to emphasize that the "usual" rules of equity still apply to any relief the Court might order, regardless of how the Circuit phrased the test and placed the burdens for liability considerations.  Id.

Nonetheless, the Court entered three of Plaintiffs' four proposed accommodations as injunctive relief without any tailoring to account for the Court's own detailed findings.  Opinion at 102–03.  The District will refer to that part of the Opinion as the Injunction.  Id.  The Injunction has three subparts.  Subpart One directs the District to "develop and implement a working system of transition assistance," and it has four additional subparts (a, b, c, and d).  Id. at 102.  Three of those subparts require District-employee-led transition efforts to begin "upon admission."  Id.  Subpart Two directs the District to "ensure sufficient capacity of community-based long-term care services for plaintiffs under the EPD, MFP, and PCA programs, and other long-term care service programs, to serve plaintiffs in the most integrated setting appropriate to their needs, as measured by enrollment in these long-term care programs."  Id.  Subpart Three directs the District to "demonstrate its ongoing commitment to deinstitutionalization by publicly reporting" three specified metrics.  Id. at 102–03.

The Injunction is entered on behalf of a Plaintiff Class defined as follows:

All persons with physical disabilities who, now or during the pendency of this lawsuit: (1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days; (2) are eligible for Medicaid-covered home and community-based long-term care services that would enable them to live in the community; and (3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community.

Opinion at 101.

## STANDARD OF REVIEW

Rule 59(e) of the Federal Rules of Civil Procedure provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Although district courts have substantial discretion in ruling on motions under Rule 59(e), courts may reconsider their orders based on "the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Nat'l Trust v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)); *see also*, *e.g.*, *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (same); 11 Fed. Prac. & Proc. Civ. § 2810.1 (noting that "four basic grounds" for a Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "to prevent manifest injustice," and "intervening change in controlling law").

## ARGUMENT

### I.    Equitable Principles Guide the Court's Usual Discretion To Enter Injunctive Relief.

It is well established that a plaintiff bears the burden to prove that injunctive relief is warranted.  *E.g.*, *Anatol Zukerman & Charles Krause Reporting, LLC v. USPS*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (describing "well-established principles of equity" requiring plaintiffs to "satisfy a four-factor test" including showing of irreparable harm and the balance of hardships and public interest in their favor)); Pls.' Proposed Findings of Fact and Conclusions of Law, [441] ¶ 581.

It is also well established that plaintiffs are not entitled to relief for non-parties or relief that goes beyond what is needed to remedy the harms they have shown.  The Supreme Court has recognized the "general rule"—rooted in traditional equitable principles—that "injunctive relief

should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (internal quotations and citation omitted); *Bd. of Cnty. Commissioners of Weld Cnty., Colorado v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023) (same). The injunction should not reach beyond the plaintiffs: The "relief should be limited to the parties before the Court." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995) (reversing order for injunctive relief that applied to all Executive Branch employees in favor of order benefitting only the class of plaintiffs before the Court); *see also Horne v. Flores*, 557 U.S. 433, 470 (2009) (suggesting statewide relief for claim brought against local subunit was overbroad and raising standing concerns). Nor should it reach beyond "the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Lewis v. Casey*, 518 U.S. 343, 348–60 (1996) (considering whether the "findings of injury" were adequate to justify the systemic relief afforded and finding they were not).

In other words, relief "must be narrowly tailored to remedy the specific harm shown" to plaintiffs. *Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (reversing order for injunctive relief that swept broader than plaintiff's harms); *Salazar v. District of Columbia*, 896 F.3d 489, 499–500 (D.C. Cir. 2018) (same); *see also, e.g.*, *Anatol*, 64 F.4th at 1365 ("The 'complete relief' principle holds . . . that a court should not supply *more* than complete relief in forming an injunction."); *United States v. Alaw*, 327 F.3d 1217, 1221 (D.C. Cir. 2003) (remanding insufficiently tailored injunction); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972–73 (D.C. Cir. 1990) (same); *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842 (D.C. Cir. 1985) (same).

The appropriate scope of injunctive relief is a matter of discretion, *e.g.*, *Brown*, 928 F.3d at 1083 n.10, but it echoes foundational, threshold considerations of plaintiffs' standing to seek

injunctive relief *vel non*.  *E.g.*, *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (finding lack of standing and indicating identification of injury is required in part because a "plaintiff's remedy must be narrowly tailored to redress the plaintiffs' particular injury"); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) ("[T]he discrete factual context within which the concrete injury occurred or is threatened insures the framing of relief no broader than required by the precise facts to which the court's ruling would be applied. This is especially important when the relief sought produces a confrontation with one of the coordinate branches of the Government . . . .").[1]

In *Lewis v. Casey*, for example, the Supreme Court reversed a systemic injunction, entered on behalf of a class, when the evidence at trial did not support the sweeping relief entered.  518 U.S. 343.  There, "the court found actual injury on the part of only one named plaintiff" and "the cause of that injury—the inadequacy which the suit empowered the court to remedy—was the failure of the [one] prison to provide the special services that" plaintiff needed. *Id*. at 358.  Beyond that, in "all" of the state's prison facilities, trial established only one other example in which a particular inmate had experienced a similar issue.  *Id*.  Citing *Califano* and similar cases, the *Lewis* Court held this was a "patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief."  *Id*. at 359–60.  The Court further explained that the standing inquiry's "actual-injury requirement would hardly serve" its "purpose—of preventing courts from undertaking tasks assigned to the political branches—if once a plaintiff demonstrated harm from one particular inadequacy in government

---

[1]      And, of course, standing doctrine encompasses consideration of not only whether the plaintiff has suffered an injury in fact, but also whether that injury is fairly traceable to the Defendant's conduct at issue, and whether that injury is redressable by court order.  *E.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

administration, the court were authorized to remedy *all* inadequacies in that administration." *Id.* at 358. "The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Id.* "This is no less true with respect to class actions than with respect to other suits." *Id.*

## II.    The Relief Ordered Commits Manifest Error Because It Is Not Tailored to The Plaintiff Class or To the Violations Described In The Court's Findings of Fact.

The Injunction as entered evinces manifest errors of law because it is overbroad in multiple ways. First, it affords relief to non-Parties—not as a collateral benefit, but as an additional requirement and burden upon the District. Second, the relief afforded to Plaintiffs is not connected to or tailored to redress the conduct identified as problematic in the Findings of Fact. Indeed, Subpart Two orders the District to "ensure sufficient capacity" of certain services after expressly finding no issue, problem, or deficiency *at all* on that point. Similarly, Subpart Three directs the District to publicly report certain data without consideration of how that relief connects to any harm identified in the Opinion or how it would benefit the Plaintiff Class (as opposed to the public at large). Subpart One commands the District to duplicate work that the District and federal government already pay nursing facility staff to do, at great expense, without finding that, in fact, those facility employees are doing their job incorrectly, and when, even if they were, a much narrower remedy could provide complete relief for the concerns identified by the Court.

### A.    Subpart Part One Improperly Orders Relief for Non-Parties.

Subpart One improperly extends relief to non-parties because it requires District-employee-led transition efforts to begin "upon admission," even though the Class is defined to include only persons who have been in a nursing home for "90 or more consecutive days." Specifically, the Injunction requires the District to (a) inform residents about community-based

7

long-term care alternatives to nursing facilities, (b) elicit their placement preferences, and (c) begin discharge planning, all "upon admission." Order at 102. But someone who has just been admitted to a nursing facility has not been in that nursing facility for "90 or more consecutive days," Order at 101 (defining class), and that person is therefore, definitively, not a member of the Class.

As explained above, injunctive relief must be fit tight to the *Plaintiffs*' proven harms, and relief that extends *beyond* the Plaintiffs is erroneous. Sometimes injunctive relief issued to a class, or even to an individual plaintiff, also benefits non-parties, as a collateral effect, and that does not make it improper. *E.g.*, *Brown v. Plata*, 563 U.S. 493, 531 (2011) ("[T]he precedents do not suggest that a narrow and otherwise proper remedy . . . is invalid simply because it will have collateral effects [on non-parties].");  *District of Columbia v. U.S. Dep't of Agriculture*, 444 F. Supp. 3d 1, 48–50 (D.D.C. 2020) (finding invalidation of agency rule was tailored to harm shown because plaintiff proved it was invalidly promulgated). The Injunction at issue here, however, does not just *collaterally* benefit non-parties—it requires dedication of specific and unique District resources to speak and work with residents who are not parties, that is, people who have been in nursing facilities less than 90 days. That is manifest error warranting relief under Rule 59. *E.g.*, *Nat'l Treasury Emps. Union*, 513 U.S. at 478; *Salazar*, 896 F.3d at 500 (reversing and remanding injunction when, among other issues, the relief afforded plainly swept beyond the plaintiff class); *City & Cnty. of San Francisco v. Barr*, 965 F.3d 753, 765 (9th Cir. 2020) (reversing nationwide injunction where "extending . . . relief to non-party jurisdictions . . . does nothing to remedy the specific harms alleged by the Plaintiffs in this case"); *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 569 F. Supp. 3d 347, 356 (E.D. La. 2021) (granting Rule 59 motion to correct inadvertent overreach in order on summary judgment); *L.I. Head Start Child*

*Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 409 (E.D.N.Y. 2013) ("Courts enjoy broad discretion to correct clerical errors in previously issued orders in order to conform the record to the intentions of the court and the parties.") (quoting *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009)).

At the very least, the Court should alter the Injunction to specify that the requirements of Subpart One do not begin "upon admission," Injunction at 101, but rather begin around a resident's 90th day of residence.  This substitution would easily tailor the order to meet the confines of the class definition.  Subparts (a)–(c) of Subpart One could be altered as follows:

> (1) develop and implement a working system of transition assistance for plaintiffs whereby defendant, at a minimum, (a) informs D.C. Medicaid-funded nursing facility residents, ~~upon admission and~~ at least every three months ~~thereafter~~ a resident's 90th consecutive day of residence in a nursing facility, about community based long-term care alternatives to nursing facilities; (b) elicits D.C. Medicaid-funded nursing facility residents' preferences for community or nursing facility placement ~~upon admission and~~ at least every three months ~~thereafter~~ a resident's 90th consecutive day of residence in a nursing facility; (c) beginning upon D.C. Medicaid-funded nursing facility residents' 90th consecutive day of residence in a nursing facility, reviews the progress made on ~~begins D.C. Medicaid-funded nursing facility~~ residents' discharge planning ~~upon admission and reviews~~ at least every month ~~the progress made on that plan~~;

*See* Injunction at 102.  The District further suggests that use of the term "plaintiffs" instead of "D.C. Medicaid-funded nursing facility residents" more clearly ties the relief request to the Class.  *See* Proposed Order attached (making similar substitution in current Subpart One (d)). (But the full text of this proposal is not included in the District's proposed order because it does not believe such relief is warranted.  *See* Section II.B.1, *infra*).

That said, as discussed below, the District further believes that subparts of Subpart One are manifestly erroneous because they are not tailored to address the harms actually described by the Court.  Thus, Subpart One should not *only* be altered to address this problem.

**B.**     **Subparts One, Two, and Three Are Not Narrowly Tailored to Remedy the Violations Described in the Court's Findings of Fact.**

**1.**     **Subpart One Is Not Narrowly Tailored.**

Subpart One requires the District—through DACL employees rather than nursing facility staff—to (a) inform nursing facility residents of the availability of community-based long-term care; (b) elicit their preferences for placement in the facility or community; (c) begin and review discharge plans; and (d) provide them with "assistance accessing all appropriate resources available in the community." Injunction at 102. The first two requirements activate "upon admission" and "at least every three months thereafter." *Id.* The third activates upon admission and every month thereafter, for those persons who need DACL assistance. *Id. See* Opinion at 101 (defining Class to include persons who "need" assistance); Findings of Fact ¶ 88 ("Not every nursing facility resident who seeks to transition . . . requires DACL's assistance to do so . . . ."). The fourth also appears to apply as needed. *Id*.

Subparts (a) and (b) of Subpart One are not narrowly tailored to redress harms to the Plaintiffs identified in the Findings of Fact. The Court did determine that Subpart One should issue, in part, because the District's *Olmstead* Plan "fails to comprehensively assess how many nursing facility residents are willing and able to transition to the community or have expressed an interest in talking to someone about the possibility of leaving the nursing facility and transitioning to the community." Opinion at 95–96. But even assuming that is a valid consideration with respect to the District's liability—that is, whether or not the District has an adequate Plan—it does not immediately follow that this deficiency causes harm *to Plaintiffs* and warrants injunctive relief. *Cf. Brown*, 928 F.3d at 1083 n.10. As discussed below, Subparts (a) and (b) are not narrowly tailored, even clearly connected, to findings of fact showing harms that will be suffered by the Plaintiffs Class in their absence. Rather, they would primarily benefit

10

residents who may be, but are not yet, members of the Class, and offer little benefit to Class

members.  They should thus be vacated, as manifestly erroneous.  *See* Section I, *supra*; *Cobell v.*

*Norton*, 391 F.3d 251, 259 (D.C. Cir. 2004) (vacating injunction where plaintiffs did not meet

"their burden as the moving party to demonstrate the necessity of the . . . injunction to safeguard

. . . their interests").  Alternatively, the harms identified by the Court could be addressed by

much less burdensome relief.  *See Madsen, Inc.*, 512 U.S. at 765.

### i.    Subpart (a) of Subpart One Should Be Vacated.

Start with Subpart (a), which requires the District to inform nursing home residents of the

availability of community-based services "at least every three months."  There is no finding of

fact supporting a need for District-led periodic reminders, *every three months*, about the

existence of "community-based long-term care alternatives to nursing facilities."  Subpart (a).

Certainly the Named Plaintiffs were aware of this alternative and worked extensively with

District employees, over a period of years, to explore them.  Findings of Fact ¶¶ 128–146.  There

is no finding they suffered any harms because of insufficient initial outreach.  *See generally id*.

There is no finding that they, or *any* actual nursing home resident who is interested in

community living, does *not* know that community-based services exist, or that they could call

DACL for help accessing those services.  *See generally id*.[2]

To the contrary, the Findings of Fact state that if a resident indicates interest in receiving

---

[2]    The Court does cite federal guidance documents that indicate many nursing facility residents do not know what alternatives to inpatient care exist.  Opinion at 86.  Even if these statements can somehow be taken for the truth of the matters asserted, they are national in scope and do not show that there are, in fact, Class members with this problem in the District, particularly in light of the Court's District-specific findings described in the paragraph below.  Indeed, one of the exhibits cited, Def. Ex. 113, is the handbook designed to guide nursing facility staff through administration of the MDS Section Q questions, which are designed to address that very problem.  *Id*.

information about community living, that resident is provided with "brochures or flyers explaining home- and community-based services and DACL's transition coordination services." *Id*. at 30. And the Court found that nursing facilities are "required by federal law to periodically administer" a set of questions, called the MDS, to every resident; that a section of this survey, called Section Q, uses a "person-centered approach to ensure that all individuals have the opportunity to learn about home- and community-based services and to receive long term care in the least restrictive setting possible;" and that the questions are asked within 14 days after admission, quarterly, and "whenever there is a significant change in the resident's status" (with some limited exceptions). *Id*. at 28–29. There is no finding of fact indicating that nursing facility staff are not doing this or that their provision of information is inadequate. *See generally* Findings of Fact.

Even if there were some evidence that this relief is in fact needed by someone in the District, it is unclear how this requirement would benefit the Class, which is defined to include *only* residents who "would *prefer* to live in the community instead of a nursing facility but *need* the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community." Opinion at 101. This is especially true when the District is separately ordered to aid those residents in discharge planning (with reviews at least *monthly*) and to provide "assistance accessing all appropriate resources available in the community," *see* Subparts (c) and (d). Discharge planning and transition assistance undoubtedly includes provision of information about what resources are available, *see* Findings of Fact ¶ 44 (explaining discharge planning), and these requirements are more frequent and more expansive than the one found Subpart (a). Indeed, Subpart (a) only makes sense if it is assumed to benefit persons who are *not yet*, but who *may be* members of the Class in the future—persons who do

12

not yet know if they prefer to live in the community or if they need the District's assistance to do so.

What is more, the requested relief is based upon expert assumptions the Court expressly discredited—and, as a result, it is *designed* to afford relief to persons the Court has held are not necessarily members of the Class. Plaintiffs' proposed findings of fact include seven pages under the heading "To Comply with *Olmstead*'s Integration Mandate, the District Must Provide, At Regular Intervals, Meaningful Information to People with Disabilities in Nursing Facilities About the Availability of Services in the Community and the Fact That Transition Assistance is Available to Assist Them to Make Informed Decisions About Whether They Want to Access Those Services." [441] at 81–87. The proposed findings focus exclusively on residents who answered "Yes" to MDS Section Q-500, but who were not referred to (a particular subset of) employees at DACL. *Id*. But the Court expressly discredited expert testimony opining that every person who answered "Yes" to Q-500 prefers to live in the community and needs DACL's assistance, and the idea that those persons are all Class members. Findings of Fact ¶¶ 100–101.

Subpart (a) of Subpart One is thus manifestly erroneous because it is not narrowly tailored to address, or even connected to, any harms to Plaintiffs identified by the Court. *E.g.*, *Lewis*, 518 U.S. at 357–60; *Salazar*, 896 F.3d at 499–500; *McCarthy v. Fuller*, 810 F.3d 456, 460–61 (7th Cir. 2015) (remanding injunction as overbroad and not narrowly tailored to harms in evidence); *M. D. v. Abbott*, 907 F.3d 237, 274 (5th Cir. 2018) (vacating portions of injunction that "do not directly address the problems giving rise to the . . . violation); *Barr*, 965 F.3d at 765; *see also* Section I, *supra*. The Court should therefore amend the Injunction to exclude Subpart (a) entirely.

### ii.      Subpart (b) of Subpart One Should Be Vacated.

Subpart (b) of Subpart One is manifestly erroneous for similar reasons.  Subpart (b)
requires the District to "elicit" residents' preferences for facility versus community living upon
admission and every three months.  Opinion at 102.  On its face, as above, it is unclear how this
service would be useful to Class members, who are defined to include persons who affirmatively,
already "prefer" to the live in the community.  No finding of fact explains why asking those
individuals, over and over, if they prefer to live in the community is necessary to provide relief,
especially when the District is separately and more frequently obliged to work with them on
discharge planning and to provide assistance accessing appropriate resources.  *See generally id*.
(no findings) and *id*. at 105 (Injunction).

Moreover, as above, the Court affirmatively found that nursing facilities are obliged
under federal law to periodically administer the MDS to every resident, including questions
designed to elicit preferences for where to live, and which, "if followed correctly, gives the
resident a direct voice in expressing preference . . . ."  *Id*. at 28.  With limited exceptions, those
questions are asked within 14 days of admission, quarterly, and at least annually.  *Id.* at 28–29.
The Court made no finding of fact that nursing facilities are not complying with this obligation.

Accordingly, Subpart (b) of Subpart One is manifestly erroneous because it is not
narrowly tailored to address, or even connected to, any harms to Plaintiffs identified by the
Court.  *E.g.*, *Lewis*, 518 U.S. at 357–60; *Salazar*, 896 F.3d at 499–500; *McCarthy*, 810 F.3d at
460–61; *M. D.*, 907 F.3d at 274; *Barr*, 965 F.3d at 765; *see also* Section I, *supra*.  The Court
should therefore amend the Injunction to exclude Subpart (b) entirely.

### iii.      Alternatively, Subparts (a) and (b) Should Be Altered.

Alternatively, to the extent Subparts (a) and (b) represent an attempt to redress

14

deficiencies identified in the Findings of Fact concerning *referrals* from nursing homes to DACL, the Court could provide complete relief from those deficiencies with a much narrower order.

The Findings of Fact indicate that when a resident answers "Yes" to Q-500, the facility should connect that resident to DACL, Findings of Fact ¶¶ 40–41, but, in most instances, those individuals are not ultimately connected to the Nursing Home Transition Team inside DACL, *id*. ¶¶ 67, 80–82.[3] They also show that DACL double-checks facility referrals by obtaining a list of the names of people who said "Yes" to Q-500, cross-checking those names with people who have been referred to the nursing home transition team, and then asking nursing facilities if any of the people who said "Yes" but who have not been referred should be referred. Findings of Fact ¶¶ 80–81. DACL's outreach coordinator does not reach out to those residents directly; she relies on the information provided by nursing staff to decide if she should connect with those residents. *Id*. ¶ 81.

In finding the District liable for disability discrimination, the Court faulted the District for failing to ensure that all residents who answer "Yes" to Q-500 (whether or not Class members) are connected to someone at DACL who would directly provide information about community living, help that individual to understand the resources available to address their specific needs, and provide assistance accessing those resources. Opinion at 84–87, 96. Instead of ordering the District to implement relief that will require it to create a team of employees to go directly ask

---

[3]     There is no evidence those individuals are *not* referred, or connected, to other teams inside DACL who provide less intensive or targeted forms of transition assistance, including, for example, teams that provide "options counseling" or assistance applying for actual medical services in the community. Findings of Fact ¶¶ 63, 65 (describing other services teams inside DACL who provide transition assistance); *see also* Findings of Fact ¶ 42 (outlining situations in which referral to DACL is not required even if the resident says "Yes").

every resident every three months if, after learning about their options, they need help, the Court could—and instead should—simply direct the District to contact every person who says "Yes" to Q-500 directly, without depending upon a referral or input from the nursing facility, and ask if they need DACL's assistance to transition to the community. This would of course be limited to residents who have been in the facility for 90 or more consecutive days, Opinion at 101, and who are not *already* actively working with the nursing home transition team. And anyone who said yes, they need DACL assistance, would then be identified as a member of the Class, and Subparts (c) and (d) of Subpart One would apply. Such an amended order would provide complete relief for the deficiencies the Court actually identified, that is, the District's purported failure to connect with residents who say "Yes" to Q-500. Thus an order well beyond that, such as the Injunction, is not narrowly tailored, and is manifestly erroneous. *See* Section I, *supra*.[4]

A narrowly tailored order addressing the Court's concern about referrals could read as follows: "The District will determine which nursing facility residents are members of the plaintiff class by speaking directly with each Medicaid-funded nursing facility resident who indicates in response to federally mandated surveys that he or she is interested in talking to someone about the possibility of leaving the facility and receiving services in the community." (This proposal is not included in the District's proposed order because it does not believe such

---

[4]    Indeed, when rejecting the District's estimates of the cost to implement Subpart One, the Court's Opinion itself suggests that this *more limited* remedy is adequate, even intended: "Ensuring that individuals who respond affirmatively to the MDS question . . . are personally visited by a District employee who can provide personalized information about the possibility of transition to the community does not require an army of transition care specialists." Opinion at 96. The District agrees with that statement; but it does not believe that is the relief currently ordered. *See, e.g.*, Trial Transcript (Def.'s Closing) at 3937 ("Mr. Webster's testimony confirmed that plaintiffs want the District to hire its own staff to make contact with approximately 3,600 nursing facility residents every three months. . . . So this testimony also, therefore, confirms that Subpart I is designed to apply to all district Medicaid beneficiaries and not just the class.").

relief is warranted.  *See* Section II.B.1.(i)-(ii), *supra.*)

### 2.    Subpart Two Is Not Narrowly Tailored.

Subpart Two directs the District to "ensure sufficient capacity of community-based long-term care services for plaintiffs under the EPD, MFP, and PCA programs, and other long-term care service programs . . . ."  Injunction at 102.

Subpart Two is not narrowly tailored to redress harms to the Plaintiffs identified in the Findings of Fact.  The Court entered extensive findings describing the District's community-based, long-term care medical services.  *E.g.*, Findings of Fact ¶¶ 46–59.  In considering whether to enter Subpart Two as a remedy, the Court found that the "evidence establishes that there currently is sufficient capacity for nursing facility residents interested in transitioning to receive . . . long-term care services in the community; and there is no indication that the District would be unable to provide those services to class members if they were to transition to the community."  Opinion at 97.  The Court concluded that "implementing this subpart . . . would not be 'so costly as to be unreasonable,'" but it did not consider whether entering this order was narrowly tailored to relieve any harms shown, or warranted at all under basic equitable principles.  *Id.*  Where, as here, there is expressly no harm shown, equitable relief is not warranted.  *E.g.*, *eBay Inc.*, 547 U.S. at 391; Section I, *supra*.  Subpart Two should thus be vacated as manifestly erroneous.  *Id.*

### 3.    Subpart Three Is Not Narrowly Tailored.

Subpart Three requires the District to demonstrate its "ongoing commitment to deinstitutionalization by publicly reporting on at least a semi-annual basis the total number of D.C. Medicaid-funded nursing facility residents who do not oppose living in the community; the number of those individuals assisted by defendant to transition to the community with long-term

care services through each of the MFP, EPD, and PCA, and other long-term care programs; and the aggregate dollars defendant saves (or fails to save) by serving individuals in the community rather than in nursing facilities." Injunction at 103. As with Subpart Two, when considering whether to enter Subpart Three as an injunction, the Court determined that the District "had not shown that reporting such supplemental data would be unreasonable," but it did not consider whether the relief was narrowly tailored to address any harms shown, let alone harms to the Plaintiffs. Opinion at 100. As explained by the Court, even Plaintiffs did not connect this relief to any harm that would befall the Plaintiffs without it—rather, they argued it would permit "the public" to "assess the District's ongoing commitment to deinstitutionalization." *Id.*[5]

The public interest is an equitable consideration, *eBay Inc.*, 547 U.S. at 391, but the public is not a party to this case and there is no basis to impose relief strictly for its benefit. *Cf. Lewis v. Becerra*, 111 F.4th 65, 72 (D.C. Cir. 2024) (rejecting interest in class certification as impermissible generalized grievance that would benefit plaintiffs "'no more directly and tangibly' than it would benefit 'the public at large'") (quoting *Lujan*, 504 U.S. at 574); *id.* ("Even sincere concern about the government's treatment of others cannot support Article III standing.") (quotation marks omitted); *see also*, *e.g.*, *Schlesinger*, 418 U.S. at 220 ("[S]tanding to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share.").

---

[5] The total disconnect from the Plaintiff Class can also be seen in the impossibility of setting an end-time on this order—it would appear to endure forever. Subparts One and Two would end when all members of the Class have either transitioned out of nursing facilities or passed away, because they at least relate to providing services to people in nursing homes. *See* Opinion at 101 (defining Class as persons who meet certain criteria during the pendency of this lawsuit). Subpart Three has no such logical limitation because it addresses an abstract public interest.

Subpart Three should be vacated because it is not narrowly tailored to address any harms shown. *E.g.*, *Lewis*, 518 U.S. at 357–60; *Salazar*, 896 F.3d at 499–500; *Neb. Dep't of Health & Human Servs*, 435 F.3d at 330; Section I, *supra*.

## III.    The Relief Ordered Commits Manifest Error Because Subpart Two is Vague.

Finally, the terms of Subpart Two are also fatally vague.  Subpart Two requires the District "to promptly take the following steps that are necessary to serve plaintiffs in the most integrated settings appropriate to their needs: . . . (2) ensure sufficient capacity of community-based long-term care services for plaintiffs under the EPD, MFP, and PCA programs, and other long-term care service programs, to serve plaintiffs in the most integrated setting appropriate to their needs, as measured by enrollment in these long-term care programs."  Injunction at 102.

Any injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(C).  These are "no mere technical requirements," but rather are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  For instance, "injunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65."  *Shook v. Cnty of El Paso*, 543 F.3d 597 (10th Cir. 2008) (internal quotations omitted); *see also S.E.C. v. Wash. Inv. Network*, 475 F.3d 392, 407 (D.C. Cir. 2007) (reversing order that simply required future compliance with the law).  Such injunctions "might subject defendants to contempt for activities having no resemblance to the activities that led to the injunction," *S.E.C.*, 475 F.3d at 407, that is, the misconduct they supposedly redress.

The Court must apply Rule 65's "fair notice requirement 'in the light of the circumstances surrounding (the injunction's) entry: the relief sought by the moving party, the

evidence produced at the hearing on the injunction, and the mischief that the injunction seeks to prevent.'" *United States v. Philip Morris USA Inc*., 566 F.3d 1095, 1137–38 (D.C. Cir. 2009) (quoting *Common Cause v. NRC*, 674 F.2d 921, 927 (D.C. Cir. 1982) and collecting cases finding Rule 65 violations).

Here, the terms of the Subpart are not specific or reasonably detailed—what does "sufficient capacity" mean? What does it mean to measure "sufficient capacity" by "enrollment" in "long-term care programs"? *See* Injunction at 102. Is the District supposed to freeze in place and maintain indefinitely all of its community-based long-term care services and programs? *Cf. Schmidt*, 414 U.S. at 476 (finding order prohibiting enforcement of "the present Wisconsin scheme" fatally vague).

"While the context of the litigation itself may sometimes be specific enough to provide notice to the parties of the acts the court seeks to restrain, the circumstances of this case do not provide such a cure." *Gulf Oil Corp.*, 778 F.2d at 843. Here, as in *Gulf Oil Corp.*, there are no findings of fact or explanations of the legal violation giving rise to the relief that would permit inference of what conduct was—and will be—illegal. *See* Section II.B.2, *supra*. *Gulf Oil Corp.*, 778 F.2d at 843; *Common Cause*, 674 F.2d at 926–27.

Subpart Two commits manifest error because it does not comply with Rule 65(d)(1)(C). The subpart should be vacated, or altered to cure the defect. In the absence of concrete facts showing a need for relief on this point, the District cannot suggest a proper alteration. *See* Section I.B.2, *supra*.

**IV.    The District Could Not Have Offered These Arguments Earlier in the Case Because the Misfit Between the Court's Findings of Fact and Injunction Was Not Apparent Until the Court Issued Its Opinion And Order, Which Should Be Corrected.**

Rule 59 provides a "limited exception to the rule that judgments are to remain final,"

*Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018), and is to be used

sparingly. It does not permit a second bite at the apple. *E.g.*, *Flores-Hernandez v. United States*,

944 F. Supp. 2d 26, 28–29 (D.D.C. 2013) ("Nor is a Rule 59 motion a means by which to

'reargue facts and theories upon which a court has already ruled,' *New York v. United States*, 880

F.Supp. 37, 38 (D.D.C. 1995), or 'a chance . . . to correct poor strategic choices,' *SEC v.

Bilzerian*, 729 F.Supp.2d 9, 15 (D.D.C. 2010)."). But it does provide relief, as stated above, for

manifest error. *E.g.*, *Firestone*, 76 F.3d at 1208; *Forman v. Meridian Bioscience, Inc.*, 387 F.

Supp. 3d 791, 797 (S.D. Ohio 2019) (granting motion for reconsideration upon finding court

erred as a matter of law); *Lopez-Rosario v. Programa Seasonal Head Start*, 140 F. Supp. 3d 214,

221 (D.P.R. 2015) (same); *City of Dover v. United States Env't Prot. Agency*, 40 F. Supp. 3d 1, 7

(D.D.C. 2013) (same, noting failure to explain why dismissal was with prejudice); *cf. Uzoukwu

v. Metro. Washington Council of Governments*, 983 F. Supp. 2d 67, 82 (D.D.C. 2013) (granting

motion to prevent "manifest injustice" where opinion did not reach issue that was raised in the

record).

  In pre-trial, trial, and post-trial statements and briefings, both sides argued and assumed

that basic equitable principles would be applied in this case. *E.g.*, Pls.' Trial Brief, [411] at 14

(arguing that injunctive relief is necessary, and quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200

(1973) as to courts' discretion to shape "necessary" "equitable remedies"); Def.'s Trial Brief,

[412] at 15 (quoting *Brown*, 928 F.3d at 1102 (Wilkins, J., concurring) ("[I]t is inequitable to

require the government to change its programming if the change is futile."); Parties' Joint

Pretrial Statement, [413] at 9 (listing District's defenses including that the "injunctive relief

requested by Plaintiffs exceeds the scope of their claims," citing *Lewis*, and the relief requested

violates Rule 65(d)); Pls.' Proposed Findings of Fact and Conclusions of Law, [441] ¶¶ 581–86;

Def.'s Proposed Findings of Fact and Conclusions of Law, [447] at 52 ("There is no evidence that with 'the benefits of the requested relief,' any member of 'the Plaintiff class'—including either of the named plaintiffs—will be more likely to transition to the community. *Compare* ¶ 582 *with* Def.'s FOF ¶¶ 171–200, COL ¶¶ 221-236.") (quoting Plaintiffs' filing); *id*. ("It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 207 (D.D.C. 2014)).

And the District argued, in many ways and across many opportunities, that the fundamental problem with Plaintiffs' case is that it is not tied to resolving problems that the Plaintiffs face as a result of the District's conduct and which can be solved by their requested relief (the proposed accommodations). *E.g.*, Trial Transcript at (Def.'s Closing) at 3900–02, 3936–38, 3940–42; *Brown v. District of Columbia*, 322 F.R.D. 51, 96 (D.D.C. 2017) ("Mindful that 'the remedy must be limited to a proven inadequacy,' [and that] the 'inadequacy [must be] widespread enough to justify systemwide relief,' the Court concludes that plaintiffs have failed to carry their burden to prove that class-wide relief is appropriate under Rule 23(b)(2). *See id.* [*Thorpe v. District of Columbia*, 303 F.R.D. 120,] at 143 [D.D.C. 2014] (quoting *Lewis*, 518 U.S. at 359)"), *rev'd*, 928 F.3d 1070 (reversing improper application of burdens as to *liability*).

But prior arguments were necessarily always at a high level.  The District could not present the arguments set forth here—that the specific relief *actually ordered* does not fit the facts *actually* found, and/or is fatally vague in light the Court's *actual* findings—until the Court issued its Opinion, Findings of Fact, and final relief in this case.  And, having reviewed those findings and the order, it appears the Court erroneously concluded, contrary to language in the Circuit's remand instructions, that any accommodations that were not so costly as to be

unreasonable, under the ADA, should be entered verbatim as relief. *E.g.*, Opinion at 96 (considering burden of relief on the District, but not necessity of Subpart One to relieve Plaintiffs' proven, prospective harms); *id*. at 97 (same, Subpart Two) at 100 (same, Subpart Three). That is manifestly erroneous, *see* Section I, and the Court should correct the error now by tailoring the injunction to the harms the Court found based on the facts proven at trial. Doing so now is vital, to avoid unjust results as well as the potential expenditure or misdirection of millions of dollars in public funds as well as scarce human resources. This course would also be efficient, as granting the Motion could obviate or (at least) narrow any grounds of appeal, and reduce uncertainty for the Parties after years of hard-fought litigation.

## CONCLUSION

For all of these reasons, the Court should alter or amend its judgment to correct the manifest errors identified in this Motion. A proposed order is attached.

Dated: January 28, 2025.                    Respectfully submitted,

                                            BRIAN L. SCHWALB
                                            Attorney General for the District of Columbia

                                            STEPHANIE E. LITOS
                                            Deputy Attorney General
                                            Civil Litigation Division

                                            */s/ Fernando Amarillas*
                                            FERNANDO AMARILLAS [974858]
                                            Assistant Deputy Attorney General

                                            */s/ Mateya B. Kelley*
                                            MATEYA B. KELLEY [888219451]
                                            Assistant Attorney General
                                            400 6th Street, NW
                                            Washington, D.C. 20001
                                            Phone: (202) 724-7854
                                            Email: mateya.kelley@dc.gov

                                            *Counsel for Defendant District of Columbia*