APPEAL,TYPE–L

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:10–cv–02250–PLF</u>
### *Internal Use Only*

| | |
|---|---|
| BROWN, et al v. DISTRICT OF COLUMBIA | Date Filed: 12/23/2010 |
| Assigned to: Judge Paul L. Friedman | Jury Demand: Defendant |
| Case in other court:  USCA, 17–07152 | Nature of Suit: 446 Civil Rights: |
| Cause: 42:12188 Americans With Disabilities Act | Americans with Disabilities – Other |
| | Jurisdiction: Federal Question |

**<u>Plaintiff</u>**

**EDWARD DAY**
*TERMINATED: 04/02/2012*

represented by **Kelly Riseden Bagby**
AARP FOUNDATION LITIGATION
601 E Street, N.W.
District of Columbia, DC 20049
202–434–2103
Email: kbagby@aarp.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marjorie Lynn Rifkin**
N/A
1801 Calvert Street NW
Apartment 507
Washington, DC 20009
202–997–3201
Email: marjrif@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Barbara S. Wahl**
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
(202) 857–6415
Fax: (202) 857–6395
Email: barbara.wahl@afslaw.com
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
202–857–6000
Email: brian.schneider@afslaw.com
*TERMINATED: 09/16/2019*

**Bruce B. Vignery**

1

AMERICAN ASSOCIATION OF
RETIRED PERSONS
601 E Street, NW
Suite A4–170
Washington, DC 20049–0001
(202) 434–2137
Fax: (202) 434–6424
Email: bvignery@aarp.org
*TERMINATED: 07/05/2012*

**Jennifer Rachel Lav**
NATIONAL HEALTH LAW PROGRAM
1444 I Street, NW
Suite 1105
Washington, DC 20005
(202) 289–7661 ext.319
Fax: (202) 547–2662
Email: lav@healthlaw.org
*TERMINATED: 04/12/2017*

**Victoria L. Thomas**
UNIVERSITY LEGAL SERVICES
220 I Street, NE
Suite 130
Washington, DC 20002
(202) 547–0198 X 102
Email: vthomas@uls–dc.org
*TERMINATED: 10/14/2014*

**Plaintiff**

**LARRY MCDONALD**                    represented by    **Iris Y. Gonzalez**
AARP FOUNDATION
601 E Street, NW
B4–208
Washington, DC 20049
(202) 434–6289
Fax: (202) 434–6424
Email: igonzalez@aarp.org
*TERMINATED: 08/29/2019*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly Riseden Bagby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marjorie Lynn Rifkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Martha Geron Gadd**
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
984–278–7660
Email: gadd@healthlaw.org
*TERMINATED: 02/24/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael L. Huang**
TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW
Suite 303
Washington, DC 20009–4422
202–204–8479
Email: mhuang@tpmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison L. Andersen**
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006–5344
202–857–6191
Email: alison.andersen@afslaw.com
*TERMINATED: 09/16/2019*

**Barbara S. Wahl**
(See above for address)
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Bruce B. Vignery**
(See above for address)
*TERMINATED: 07/05/2012*

**Jennifer Rachel Lav**
(See above for address)
*TERMINATED: 04/12/2017*

**Kathleen Lillian Millian**
TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW
Suite 303
Washington, DC 20009
(202) 682–2100
Fax: (202) 289–6795

Email: kmillian@tpmlaw.com
*ATTORNEY TO BE NOTICED*

**Kristina J. Majewski**
AARP LEGAL COUNSEL FOR THE
ELDERLY
601 F Street, NW
Washington, DC 20049
(202) 434–2134
Fax: 202–434–6464
Email: kmajewski@aarp.org
*TERMINATED: 08/22/2019*

**Lyndsay Ayanna Niles**
DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street, NE
Suite 130
Washington, DC 20002
202–527–7032
Fax: 202–547–2662
Email: lniles@uls–dc.org
*ATTORNEY TO BE NOTICED*

**Patrick Andre Sheldon**
TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW
Suite 303
Washington, DC 20009
(202) 682–2100
Email: psheldon@tpmlaw.com
*ATTORNEY TO BE NOTICED*

**Rebecca Juliet Rodgers**
AARP FOUNDATION LITIGATION
601 E Street NW
Washington, DC 20049
202–434–6983
Email: rrodgers@aarp.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stacy Jane Canan**
AARP FOUNDATION
601 E Street, NW
Washington, DC 20049
(202) 434–2130
Fax: (202) 434–6424
Email: scanan@aarp.org
*TERMINATED: 10/17/2012*

**Todd A. Gluckman**

TERRIS, PRAVLIK & MILLIAN, LLP
1816 12th Street, NW
Suite 303
Washington, DC 20009−4422
(202) 682−2100
Email: tgluckman@tpmlaw.com
*ATTORNEY TO BE NOTICED*

**Victoria L. Thomas**
(See above for address)
*TERMINATED: 10/14/2014*

**Plaintiff**

**VIETRESS BACON**                    represented by    **Kelly Riseden Bagby**
*TERMINATED: 04/02/2012*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Marjorie Lynn Rifkin**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Barbara S. Wahl**
                                                        (See above for address)
                                                        *TERMINATED: 09/16/2019*

                                                        **Brian D. Schneider**
                                                        (See above for address)
                                                        *TERMINATED: 09/16/2019*

                                                        **Bruce B. Vignery**
                                                        (See above for address)
                                                        *TERMINATED: 07/05/2012*

                                                        **Jennifer Rachel Lav**
                                                        (See above for address)
                                                        *TERMINATED: 04/12/2017*

                                                        **Victoria L. Thomas**
                                                        (See above for address)
                                                        *TERMINATED: 10/14/2014*

**Plaintiff**

**BONITA JACKSON**                    represented by    **Kelly Riseden Bagby**
*On behalf of themselves and all others*               (See above for address)
*similarly situated*                                   *LEAD ATTORNEY*
*TERMINATED: 04/02/2012*                               *ATTORNEY TO BE NOTICED*

                                                        **Marjorie Lynn Rifkin**
                                                        (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Barbara S. Wahl**
(See above for address)
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Bruce B. Vignery**
(See above for address)
*TERMINATED: 07/05/2012*

**Jennifer Rachel Lav**
(See above for address)
*TERMINATED: 04/12/2017*

**Victoria L. Thomas**
(See above for address)
*TERMINATED: 10/14/2014*

**Plaintiff**

**ROY FOREMAN**                          represented by    **Iris Y. Gonzalez**
*TERMINATED: 01/17/2017*                                   (See above for address)
                                                           *TERMINATED: 08/29/2019*
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

**Alison L. Andersen**
(See above for address)
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Jennifer Rachel Lav**
(See above for address)
*TERMINATED: 04/12/2017*

**Kristina J. Majewski**
(See above for address)
*TERMINATED: 08/22/2019*

**Lyndsay Ayanna Niles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stacy Jane Canan**

(See above for address)
*TERMINATED: 10/17/2012*

**Victoria L. Thomas**
(See above for address)
*TERMINATED: 10/14/2014*

**Plaintiff**

**JUDITH MILLER**                    represented by    **Brian D. Schneider**
*TERMINATED: 09/17/2012*                              (See above for address)
                                                      *TERMINATED: 09/16/2019*

                                                      **Jennifer Rachel Lav**
                                                      (See above for address)
                                                      *TERMINATED: 04/12/2017*

                                                      **Lyndsay Ayanna Niles**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stacy Jane Canan**
                                                      (See above for address)
                                                      *TERMINATED: 10/17/2012*

                                                      **Victoria L. Thomas**
                                                      (See above for address)
                                                      *TERMINATED: 10/14/2014*

**Plaintiff**

**DONALD DUPREE**                    represented by    **Iris Y. Gonzalez**
*on behalf of themselves and all other*               (See above for address)
*similary situated*                                   *TERMINATED: 08/29/2019*
*TERMINATED: 12/01/2021*                              *LEAD ATTORNEY*
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kelly Riseden Bagby**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Martha Geron Gadd**
                                                      (See above for address)
                                                      *TERMINATED: 02/24/2022*
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Michael L. Huang**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Alison L. Andersen**
(See above for address)
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Jennifer Rachel Lav**
(See above for address)
*TERMINATED: 04/12/2017*

**Kathleen Lillian Millian**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristina J. Majewski**
(See above for address)
*TERMINATED: 08/22/2019*

**Lyndsay Ayanna Niles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Andre Sheldon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stacy Jane Canan**
(See above for address)
*TERMINATED: 10/17/2012*

**Todd A. Gluckman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Victoria L. Thomas**
(See above for address)
*TERMINATED: 10/14/2014*

**Plaintiff**

**CURTIS WILKERSON**                    represented by     **Iris Y. Gonzalez**
*TERMINATED: 01/21/2015*                                   (See above for address)
                                                           *TERMINATED: 08/29/2019*
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Alison L. Andersen**
                                                           (See above for address)
                                                           *TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Jennifer Rachel Lav**
(See above for address)
*TERMINATED: 04/12/2017*

**Lyndsay Ayanna Niles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stacy Jane Canan**
(See above for address)
*TERMINATED: 10/17/2012*

**Victoria L. Thomas**
(See above for address)
*TERMINATED: 10/14/2014*

**Plaintiff**

**JACQUALYN THORPE**
*TERMINATED: 09/11/2015*

represented by **Iris Y. Gonzalez**
(See above for address)
*TERMINATED: 08/29/2019*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marjorie Lynn Rifkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison L. Andersen**
(See above for address)
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Jennifer Rachel Lav**
(See above for address)
*TERMINATED: 04/12/2017*

**Kristina J. Majewski**
(See above for address)
*TERMINATED: 08/22/2019*

**Lyndsay Ayanna Niles**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Stacy Jane Canan**
(See above for address)
*TERMINATED: 10/17/2012*

**Victoria L. Thomas**
(See above for address)
*TERMINATED: 10/14/2014*

<u>Plaintiff</u>

**LAVONDIA CARTER**                    represented by    **Kristina J. Majewski**
*TERMINATED: 09/11/2015*                                 (See above for address)
                                                        *TERMINATED: 08/22/2019*

<u>Plaintiff</u>

**ROBERT COLLINS**                     represented by    **Jennifer Rachel Lav**
*TERMINATED: 09/11/2015*                                 (See above for address)
                                                        *TERMINATED: 04/12/2017*

                                                        **Kristina J. Majewski**
                                                        (See above for address)
                                                        *TERMINATED: 08/22/2019*

<u>Plaintiff</u>

**WINIFRED GOINES**
*TERMINATED: 04/14/2014*

<u>Plaintiff</u>

**TANITA SANDERS**                     represented by    **Martha Geron Gadd**
*on behalf of themselves and all others*                 (See above for address)
                                                        *TERMINATED: 02/24/2022*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Alison L. Andersen**
                                                        (See above for address)
                                                        *TERMINATED: 09/16/2019*

                                                        **Brian D. Schneider**
                                                        (See above for address)
                                                        *TERMINATED: 09/16/2019*

<u>Plaintiff</u>

**DENISE RIVERS**                      represented by    **Martha Geron Gadd**
                                                        (See above for address)
                                                        *TERMINATED: 02/24/2022*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Alison L. Andersen
(See above for address)
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Plaintiff**

JAMES BUMPASS                    represented by    **Martha Geron Gadd**
(See above for address)
*TERMINATED: 02/24/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison L. Andersen**
(See above for address)
*TERMINATED: 09/16/2019*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Plaintiff**

IVY BROWN                        represented by    **Kelly Riseden Bagby**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marjorie Lynn Rifkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Martha Geron Gadd**
(See above for address)
*TERMINATED: 02/24/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael L. Huang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alison L. Andersen**
(See above for address)
*TERMINATED: 09/16/2019*

**Andrew Braxton Strickland**
AARP FOUNDATION

601 E Street, NW
Washington, DC 20049
(202) 434–2217
Email: astrickland@aarp.org
*TERMINATED: 06/07/2017*

**Brian D. Schneider**
(See above for address)
*TERMINATED: 09/16/2019*

**Kathleen Lillian Millian**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristina J. Majewski**
(See above for address)
*TERMINATED: 08/22/2019*

**Lyndsay Ayanna Niles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maame Gyamfi**
AARP FOUNDATION
601 E Street NW
Suite B4–270
Washington, DC 20049
202–434–6291
Fax: 202–434–6424
Email: mgyamfi@aarp.org
*ATTORNEY TO BE NOTICED*

**Patrick Andre Sheldon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca Juliet Rodgers**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Todd A. Gluckman**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DISTRICT OF COLUMBIA**          represented by   **Amanda J. Montee**
*a municipal Corporation*                          OFFICE OF THE ATTORNEY
                                                   GENERAL FOR THE DISTRICT OF

COLUMBIA
441 4th Street, NW
Suite 630 South
Washington, DC 20001
(202) 724–5691
Fax: (202) 741–8934
Email: amanda.montee@dc.gov
*TERMINATED: 09/11/2019*

**Bradford Collins Patrick**
D.C. Department of Consumer and
Regulatory Affairs
Office of the General Counsel
1100 4th St. SW
5th Floor
Washington, DC 20024
(202) 724–6627
Fax: (202) 741–0599
Email: bradford.patrick@dc.gov
*TERMINATED: 04/21/2016*

**Chad Wayne Copeland**
OFFICE OF THE ATTORNEY
GENERAL FOR THE DISTRICT OF
COLUMBIA
441 4th Street, NW
Suite 630 South
Washington, DC 20001
(202) 724–6623
Fax: (202) 741–8880
Email: chad.copeland@dc.gov
*TERMINATED: 03/18/2020*

**Chad Alan Naso**
OFFICE OF THE ATTORNEY
GENERAL, DISTRICT OF COLUMBIA
Public Interest Division, Equity Section
441 Fourth Street, NW
600 South
Washington, DC 20001
(202) 724–7854
Email: chad.naso@dc.gov
*TERMINATED: 05/19/2016*

**Conrad Z. Risher**
OFFICE OF THE ATTORNEY
GENERAL FOR THE DISTRICT OF
COLUMBIA
400 6th Street NW
Washington, DC 20001
202–417–5394
Email: conrad.risher@dc.gov

*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Duane Gordon Blackman**
CALEBANDONIAN PLLC
1100 H Street, N.W.
Suite 315
Washington, DC 20005
202–953–9854
Email: dblackman@sivinandmiller.com
*TERMINATED: 09/24/2021*

**Mateya Beth Kelley**
OFFICE OF THE ATTORNEY
GENERAL FOR THE DISTRICT OF
COLUMBIA
400 Sixth Street, NW
Suite 10100
Washington, DC 20001–2703
202–724–7854
Email: Mateya.Kelley@dc.gov
*ATTORNEY TO BE NOTICED*

**Melissa Baker**
DEPARTMENT OF JUSTICE
PO Box 7611
Washington, DC 20044
202–532–5559
Email: melissa.baker@usdoj.gov
*TERMINATED: 07/20/2012*

**Pamela A. Disney**
OFFICE OF THE ATTORNEY
GENERAL FOR THE DISTRICT OF
COLUMBIA
400 Sixth Street NW
Suite 10100
Washington, DC 20001
(202) 807–0371
Email: pamela.disney@dc.gov
*TERMINATED: 08/10/2024*
*ATTORNEY TO BE NOTICED*

**Sarah Ann Sulkowski**
OFFICE OF THE ATTORNEY
GENERAL, DC
441 Fourth Street, NW
6th Floor North
Washington, DC 20001
(202) 724–6627
Fax: (202) 730–1454
Email: sarah.sulkowski@dc.gov

*TERMINATED: 05/13/2011*

**Scott Patrick Kennedy**
OREGON DEPARTMENT OF JUSTICE
100 SW Market St.
Portland, OR 97201
971–673–1880
Email: scott.kennedy@doj.oregon.gov
*TERMINATED: 04/16/2020*

**Shermineh C Jones**
TROUTMAN PEPPER LOCKE LLP
401 9th Street, N.W.
Suite 1000
Washington, DC 20004
202–274–2892
Email: shermineh.jones@troutman.com
*TERMINATED: 11/17/2016*

**Toni Michelle Jackson**
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
202–624–2723
Fax: 202–628–5116
Email: tjackson@crowell.com
*TERMINATED: 03/24/2021*

**Defendant**

**ADRIAN M. FENTY**
*in his official capacity as Mayor of the*
*District of Columbia*
*TERMINATED: 03/30/2011*

represented by **Melissa Baker**
(See above for address)
*TERMINATED: 07/20/2012*

**Pamela A. Disney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Ann Sulkowski**
(See above for address)
*TERMINATED: 05/13/2011*

**Defendant**

**JULIE A. HUDMAN**
*in her official capacity as Director of the*
*District of Columbia Department of*
*Health Care Finance*
*TERMINATED: 03/30/2011*

represented by **Melissa Baker**
(See above for address)
*TERMINATED: 07/20/2012*

**Pamela A. Disney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Ann Sulkowski**

(See above for address)
*TERMINATED: 05/13/2011*

**Defendant**

**STEPHEN BARON**                    represented by    **Bradford Collins Patrick**
*in his official capacity as Director of the*                (See above for address)
*District of Columbia Department of*                         *TERMINATED: 04/21/2016*
*Mental Health*
*TERMINATED: 04/02/2012*                                   **Melissa Baker**
                                                          (See above for address)
                                                          *TERMINATED: 07/20/2012*

                                                          **Pamela A. Disney**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Sarah Ann Sulkowski**
                                                          (See above for address)
                                                          *TERMINATED: 05/13/2011*

**Defendant**

**VINCENT C. GRAY**                  represented by    **Bradford Collins Patrick**
*in his official capacity as Mayor of the*                 (See above for address)
*District of Columbia*                                     *TERMINATED: 04/21/2016*
*TERMINATED: 04/02/2012*
                                                          **Melissa Baker**
                                                          (See above for address)
                                                          *TERMINATED: 07/20/2012*

                                                          **Pamela A. Disney**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**WAYNE M. TURNAGE**                 represented by    **Bradford Collins Patrick**
*in his official capacity as Director of the*                (See above for address)
*District of Columbia Department of*                         *TERMINATED: 04/21/2016*
*Health Care Finance*
*TERMINATED: 04/02/2012*                                   **Melissa Baker**
                                                          (See above for address)
                                                          *TERMINATED: 07/20/2012*

                                                          **Pamela A. Disney**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Interested Party**

**UNITED STATES OF AMERICA**         represented by

**Christopher Charles Hair**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
601 D Street, NW
Washington, DC 20530
202–252–2543
Email: christopher.hair@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joy Levin Welan**
U.S. DEPARTMENT OF JUSTICE
Civil Rights Division, Disability Rights
Section
150 M Street, NE
Room 9.125
150 M Street NE, Ste 9.125
Washington, DC 20530
202–532–5490
Email: joy.welan@usdoj.gov
*TERMINATED: 05/13/2025*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**DCHA**                          represented by  **David Adam Rosen**
DISTRICT OF COLUMBIA HOUSING
AUTHORITY
Office of General Counsel
300 7th Street, SW, 10th Floor
Washington, DC 20024
202–535–1005
Email: drosen@dchousing.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2010 | 1 | COMPLAINT against STEPHEN BARON, DISTRICT OF COLUMBIA, ADRIAN M. FENTY, JULIE A. HUDMAN ( Filing fee $ 350, receipt number 4616035159) filed by BONITA JACKSON, LARRY MCDONALD, EDWARD DAY, VIETRESS BACON. (Attachments: # 1 Civil Cover Sheet)(rdj) (Entered: 12/23/2010) |
| 12/23/2010 | | Summons (4) Issued as to STEPHEN BARON, DISTRICT OF COLUMBIA, ADRIAN M. FENTY, JULIE A. HUDMAN. (rdj) (Entered: 12/23/2010) |
| 01/21/2011 | 2 | NOTICE of Appearance by Melissa Lael Baker on behalf of All Defendants (Baker, Melissa) (Entered: 01/21/2011) |
| 01/21/2011 | 3 | MOTION for Extension of Time to File Answer by STEPHEN BARON, DISTRICT OF COLUMBIA, ADRIAN M. FENTY, JULIE A. HUDMAN (Baker, Melissa) (Entered: 01/21/2011) |

| 01/24/2011 | | MINUTE ORDER granting <u>3</u> Consent Motion for Extension of Time to Answer: it is hereby ORDERED that defendants' Answer is due by 3/26/2011. Signed by Judge Ellen S. Huvelle on January 24, 2011. (AG) (Entered: 01/24/2011) |
|---|---|---|
| 01/25/2011 | <u>4</u> | NOTICE of Appearance by Sarah Ann Sulkowski on behalf of All Defendants (Sulkowski, Sarah) (Entered: 01/25/2011) |
| 01/28/2011 | <u>5</u> | ENTERED IN ERROR.....NOTICE of Appearance by Brian D. Schneider on behalf of All Plaintiffs (Schneider, Brian) Modified on 1/31/2011 (jf, ). (Entered: 01/28/2011) |
| 01/31/2011 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re <u>5</u> Notice of Appearance was entered in error and counsel was instructed to refile said pleading. (Counsel should review LCvR(b) OBTAINING AND USING ELECTRONIC FILING PASSWORD; SIGNATURE; CONSENT TO SERVICE BY ELECTRONIC MEANS (1) An attorney must obtain a CM/ECF password from the Clerk in order to file documents with the Court or to receive copies of opinions and orders) (jf, ) (Entered: 01/31/2011) |
| 01/31/2011 | <u>6</u> | NOTICE of Appearance by Jennifer Rachel Lav on behalf of All Plaintiffs (Lav, Jennifer) (Entered: 01/31/2011) |
| 01/31/2011 | <u>7</u> | NOTICE of Appearance by Marjorie Lynn Rifkin on behalf of All Plaintiffs (Rifkin, Marjorie) (Entered: 01/31/2011) |
| 01/31/2011 | <u>8</u> | NOTICE OF RELATED CASE by All Defendants. Case related to Case No. 74–cv–285. (Baker, Melissa) Modified on 2/1/2011 to correct misidentified related case. (jf, ). (Entered: 01/31/2011) |
| 02/01/2011 | <u>9</u> | ERRATA *Notice of Related Case* by STEPHEN BARON, DISTRICT OF COLUMBIA, ADRIAN M. FENTY, JULIE A. HUDMAN <u>8</u> Notice of Related Case filed by JULIE A. HUDMAN, STEPHEN BARON, ADRIAN M. FENTY, DISTRICT OF COLUMBIA. (Baker, Melissa) (Entered: 02/01/2011) |
| 02/01/2011 | <u>10</u> | NOTICE of Appearance by Bruce B. Vignery on behalf of VIETRESS BACON, EDWARD DAY, BONITA JACKSON, LARRY MCDONALD (Vignery, Bruce) (Entered: 02/01/2011) |
| 02/04/2011 | <u>11</u> | NOTICE of Appearance by Barbara S. Wahl on behalf of All Plaintiffs (Wahl, Barbara) (Entered: 02/04/2011) |
| 02/07/2011 | <u>12</u> | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. STEPHEN BARON served on 1/19/2011; DISTRICT OF COLUMBIA served on 12/28/2010; ADRIAN M. FENTY served on 12/28/2010; JULIE A. HUDMAN served on 12/27/2010. (znmw, ) (Entered: 02/08/2011) |
| 02/10/2011 | <u>13</u> | RESPONSE re <u>8</u> Notice of Related Case *Objection to Defendants' Notice* filed by VIETRESS BACON, EDWARD DAY, BONITA JACKSON, LARRY MCDONALD. (Lav, Jennifer) (Entered: 02/10/2011) |
| 02/15/2011 | <u>14</u> | REPLY re <u>8</u> Notice of Related Case filed by DISTRICT OF COLUMBIA. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3)(Sulkowski, Sarah) (Entered: 02/15/2011) |
| 02/16/2011 | | MINUTE ORDER re <u>8</u> Notice of Related Case filed by JULIE A. HUDMAN, STEPHEN BARON, ADRIAN M. FENTY, DISTRICT OF COLUMBIA: Upon |

| | | |
|---|---|---|
| | | consideration of defendants' Notice of Related Case, plaintiffs' response thereto, and defendants' reply, and after consultation with Judge Hogan, the Court concludes that the above–captioned matter is not related to Dixon v. Fenty, Case No. 74–cv–285. Signed by Judge Ellen S. Huvelle on February 16, 2011. (AG) (Entered: 02/16/2011) |
| 03/09/2011 | 15 | Joint MOTION for Extension of Time to *Extend Deadlines* by VIETRESS BACON, EDWARD DAY, BONITA JACKSON, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Schneider, Brian) (Entered: 03/09/2011) |
| 03/09/2011 | | MINUTE ORDER granting 15 Joint Motion for Extension of Time: Upon review of the Joint Motion for Extension of Time dated March 9, 2011, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the following deadlines will apply: (1) Plaintiffs will file an Amended Complaint by March 30, 2011; (2) Defendants will file a response to the Amended Complaint by April 20, 2011; and (3) Plaintiffs will file a motion for class certification by April 28, 2011. Signed by Judge Ellen S. Huvelle on March 9, 2011. (AG) (Entered: 03/09/2011) |
| 03/10/2011 | | Set/Reset Deadlines: Plaintiffs will file an Amended Complaint by 3/30/2011, Defendants will file a response to the Amended Complaint by 4/20/2011, and Plaintiffs will file a Motion for class certification by 4/28/2011. (jth) (Entered: 03/10/2011) |
| 03/28/2011 | 16 | NOTICE of Appearance by Kelly R. Bagby on behalf of All Plaintiffs (Bagby, Kelly) (Entered: 03/28/2011) |
| 03/30/2011 | 17 | FIRST AMENDED COMPLAINT against STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE filed by BONITA JACKSON, LARRY MCDONALD, EDWARD DAY, VIETRESS BACON, ROY FOREMAN.(znmw, ) (Entered: 03/30/2011) |
| 04/18/2011 | 18 | Joint MOTION for Extension of Time to *and to Set Briefing Schedule* by VIETRESS BACON, STEPHEN BARON, EDWARD DAY, DISTRICT OF COLUMBIA, ROY FOREMAN, VINCENT C. GRAY, BONITA JACKSON, LARRY MCDONALD, WAYNE M. TURNAGE (Baker, Melissa) (Entered: 04/18/2011) |
| 04/18/2011 | | MINUTE ORDER granting in part and denying in part 18 Motion for Extension of Time: it is hereby ORDERED that defendants' response to the Amended Complaint is due by April 27, 2011; it is further ORDERED that a Status Conference is set for 4/29/2011 at 11:00 AM in Courtroom 23A before Judge Ellen S. Huvelle; and it is further ORDERED that the remainder of the briefing schedule will be addressed at the Status Conference on 4/29/2011. Signed by Judge Ellen S. Huvelle on April 18, 2011.(AG) (Entered: 04/18/2011) |
| 04/27/2011 | 19 | MOTION for Summary Judgment, MOTION to Dismiss by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE (Attachments: # 1 Affidavit, # 2 Affidavit, # 3 Affidavit, # 4 Exhibit, # 5 Declaration, # 6 Affidavit, # 7 Exhibit, # 8 Exhibit)(Baker, Melissa) (Entered: 04/27/2011) |
| 04/29/2011 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 4/29/2011. Discovery Plan due by 5/13/2011, Discovery completed by 7/1/2011, Response to motion for summary judgment and cross motion due by 8/1/2011, Reply to motion for summary judgment and response to cross motion due by 9/1/2011. (Court Reporter Bryan Wayne) (gdf) (Entered: 04/29/2011) |
| 04/29/2011 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: As discussed during today's status conference, it is hereby ORDERED that plaintiffs are excused from filing a motion for class certification as provided by the Local Rules; it is further ORDERED that plaintiffs shall not file a motion for class certification until the Court orders them to do so; it is further ORDERED that the parties shall file a discovery plan by May 13, 2011; it is further ORDERED that discovery related to defendants' motion for summary judgment shall be completed by July 1, 2011; it is further ORDERED that plaintiffs shall file their opposition to defendants' motion to dismiss or for summary judgment and any cross–motion for summary judgment by August 1, 2011; and it is further ORDERED that defendants shall file their reply and opposition to any cross–motion by September 1, 2011. Signed by Judge Ellen S. Huvelle on April 29, 2011. (AG) (Entered: 04/29/2011) |
| 05/05/2011 | 20 | RESPONSE TO ORDER OF THE COURT re Order,,, *Joint Discovery Plan* filed by VIETRESS BACON, STEPHEN BARON, EDWARD DAY, DISTRICT OF COLUMBIA, ADRIAN M. FENTY, ROY FOREMAN, VINCENT C. GRAY, JULIE A. HUDMAN, BONITA JACKSON, LARRY MCDONALD, WAYNE M. TURNAGE. (Lav, Jennifer) (Entered: 05/05/2011) |
| 05/06/2011 | | MINUTE ORDER re 20 Joint Discovery Plan: it is hereby ORDERED that the Joint Discovery Plan is approved and adopted. Signed by Judge Ellen S. Huvelle on May 6, 2011. (AG) (Entered: 05/06/2011) |
| 05/13/2011 | 21 | NOTICE OF WITHDRAWAL OF APPEARANCE as to STEPHEN BARON, DISTRICT OF COLUMBIA, ADRIAN M. FENTY, VINCENT C. GRAY, JULIE A. HUDMAN, WAYNE M. TURNAGE. Attorney Sarah Ann Sulkowski terminated. (Sulkowski, Sarah) (Entered: 05/13/2011) |
| 06/01/2011 | 22 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 4/29/11; Page Numbers: 1 – 34. Date of Issuance:6/1/11. Court Reporter/Transcriber Bryan A. Wayne, Telephone number 202–354–3186, Court Reporter Email Address : bryanawayne@yahoo.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 6/22/2011. Redacted Transcript Deadline set for 7/2/2011. Release of Transcript Restriction set for 8/30/2011.(Wayne, Bryan) (Entered: 06/01/2011) |
| 06/01/2011 | 23 | WITHDRAWN PURSUANT TO NOTICE FILED 6/15/2011..... MOTION for Extension of Time to Complete Discovery *pursuant to Fed. R. Civ. P. 56* by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE (Baker, Melissa) Modified on 6/16/2011 (znmw, ). (Entered: 06/01/2011) |
| 06/15/2011 | 24 | STATUS REPORT *to revise the joint discovery plan* by VIETRESS BACON, STEPHEN BARON, EDWARD DAY, DISTRICT OF COLUMBIA, ROY FOREMAN, VINCENT C. GRAY, BONITA JACKSON, LARRY MCDONALD, |

| | | |
|---|---|---|
| | | WAYNE M. TURNAGE (Baker, Melissa) Modified event title on 6/16/2011 (znmw, ). (Entered: 06/15/2011) |
| 06/15/2011 | 25 | NOTICE OF WITHDRAWAL OF MOTION by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE re 23 MOTION for Extension of Time to Complete Discovery *pursuant to Fed. R. Civ. P. 56* (Baker, Melissa) (Entered: 06/15/2011) |
| 06/16/2011 | | MINUTE ORDER granting 24 Joint Motion for Revised Joint Discovery Plan Related to Plaintiffs' Response to Defendants' Motion for Summary Judgment and the entire record herein, it is hereby ORDERED that the Revised Joint Discovery Plan hereby is, approved and adopted, as follows: Discovery will be completed by August 1, 2011; Plaintiffs' Opposition to Defendants' Motion to Dismiss and any Cross–Motion for Summary Judgment is due by September 1, 2011; Defendants' Reply, if any, is due by 9/22/2011. Signed by Judge Ellen S. Huvelle on June 16, 2011. (AG) (Entered: 06/16/2011) |
| 06/16/2011 | | Set/Reset Deadlines: Discovery due by 8/1/2011. (AG, ) (Entered: 06/16/2011) |
| 06/17/2011 | 26 | NOTICE of Appearance by Victoria L. Thomas on behalf of All Plaintiffs (Thomas, Victoria) (Entered: 06/17/2011) |
| 06/20/2011 | 27 | NOTICE of Appearance by Bradford Collins Patrick on behalf of STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE (Patrick, Bradford) (Entered: 06/20/2011) |
| 09/01/2011 | 28 | Memorandum in opposition to re 19 MOTION for Summary Judgment MOTION to Dismiss filed by VIETRESS BACON, EDWARD DAY, ROY FOREMAN, BONITA JACKSON, LARRY MCDONALD. (Attachments: # 1 Statement of Facts, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M)(Schneider, Brian) (Entered: 09/01/2011) |
| 09/19/2011 | 29 | Consent MOTION for Extension of Time to File Response/Reply as to 19 MOTION for Summary Judgment MOTION to Dismiss by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE (Patrick, Bradford) (Entered: 09/19/2011) |
| 09/20/2011 | | MINUTE ORDER granting 29 Consent Motion for Extension of Time to File Reply re 19 MOTION for Summary Judgment and/or MOTION to Dismiss: Upon consideration of Defendants' consent motion to enlarge the time to file a Reply in further support of their Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment (Docket No. 19), it is hereby ORDERED that Defendants shall file a Reply on or before October 3, 2011. Signed by Judge Ellen S. Huvelle on September 20, 2011. (AG) (Entered: 09/20/2011) |
| 10/03/2011 | 30 | REPLY to opposition to motion re 19 MOTION for Summary Judgment MOTION to Dismiss filed by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Baker, Melissa) (Entered: 10/03/2011) |
| 10/03/2011 | 31 | NOTICE *Regarding the Statement of Interest Filed by the United States* by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE |

| | | |
|---|---|---|
| | | M. TURNAGE (Baker, Melissa) (Entered: 10/03/2011) |
| 10/03/2011 | 32 | NOTICE of Statement of Interest by UNITED STATES OF AMERICA re 28 Memorandum in Opposition, 19 MOTION for Summary Judgment MOTION to Dismiss (Attachments: # 1 Exhibit AA, # 2 Exhibit BB, # 3 Exhibit CC, # 4 Exhibit DD)(znmw, ) (Entered: 10/03/2011) |
| 10/07/2011 | 33 | MOTION to Strike 32 Notice (Other) by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE (Baker, Melissa) (Entered: 10/07/2011) |
| 10/19/2011 | 34 | Consent MOTION for Leave to File *A Memorandum in Opposition to the Defendants Motion to Strike the United States Statement of Interest (ECF No. 33)* by UNITED STATES OF AMERICA (Welan, Joy) (Entered: 10/19/2011) |
| 10/19/2011 | | MINUTE ORDER granting 34 Consent Motion for Leave to File: Upon consideration of the Consent Motion of the United States for Leave to File a Memorandum in Opposition to the Defendants' Motion to Strike the United States' Statement of Interest (ECF No. 33), and the entire record, it is hereby ORDERED that the United States' Consent Motion for Leave to File a Memorandum in Opposition to the Defendants' Motion to Strike the United States' Statement of Interest is hereby GRANTED; and it is FURTHER ORDERED that the United States shall file its opposition on or before October 24, 2011.Signed by Judge Ellen S. Huvelle on October 19, 2011. (AG) (Entered: 10/19/2011) |
| 10/24/2011 | | Set/Reset Deadlines: Response due by 10/24/2011 (gdf) (Entered: 10/24/2011) |
| 10/24/2011 | 35 | Memorandum in opposition to re 33 MOTION to Strike 32 Notice (Other) filed by VIETRESS BACON, EDWARD DAY, ROY FOREMAN, BONITA JACKSON, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Schneider, Brian) (Entered: 10/24/2011) |
| 10/24/2011 | 36 | Memorandum in opposition to re 33 MOTION to Strike 32 Notice (Other) *Statement of Interest* filed by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Welan, Joy) (Entered: 10/24/2011) |
| 10/31/2011 | 37 | MOTION for Leave to File *Motion for Class Certification* by VIETRESS BACON, EDWARD DAY, ROY FOREMAN, BONITA JACKSON, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Schneider, Brian) (Entered: 10/31/2011) |
| 11/02/2011 | 38 | REPLY to opposition to motion re 33 MOTION to Strike 32 Notice (Other) filed by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE. (Baker, Melissa) (Entered: 11/02/2011) |
| 11/16/2011 | 39 | Memorandum in opposition to re 37 MOTION for Leave to File *Motion for Class Certification* filed by STEPHEN BARON, DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE. (Baker, Melissa) (Entered: 11/16/2011) |
| 12/01/2011 | | MINUTE ORDER denying 33 defendants' Motion to Strike 32 the Statement of Interest of the United States of America: upon consideration of defendants' motion, plaintiffs' opposition, and the entire record, it is hereby ORDERED that defendants' motion to strike is DENIED; and it is further ORDERED that defendants may file a response to that Statement of Interest, limited to 15 pages and not duplicative of any filings already made, on or before December 19, 2011. Signed by Judge Ellen S. Huvelle on December 1, 2011. (AG) (Entered: 12/01/2011) |

| 12/19/2011 | 40 | RESPONSE re 32 Notice (Other) *of Department of Justice's Statement of Interest* filed by DISTRICT OF COLUMBIA, VINCENT C. GRAY, WAYNE M. TURNAGE. (Attachments: # 1 Exhibit Supplemental Declaration of L. Sarigol)(Baker, Melissa) (Entered: 12/19/2011) |
|---|---|---|
| 02/14/2012 | 41 | MEMORANDUM AND OPINION re defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. Signed by Judge Ellen S. Huvelle on February 14, 2012. (AG) (Entered: 02/14/2012) |
| 02/14/2012 | 42 | ORDER granting in part and denying in part 19 defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ; denying 37 plaintiffs' Motion for Leave to File Motion for Class Certification; Telephone Conference Call set for 2/28/2012 at 2:00 PM; Status Conference set for 3/13/2012, at 9:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. Signed by Judge Ellen S. Huvelle on February 14, 2012. (AG) . (Entered: 02/14/2012) |
| 02/24/2012 | 43 | NOTICE of Appearance by Chad Alan Naso on behalf of DISTRICT OF COLUMBIA (Naso, Chad) (Entered: 02/24/2012) |
| 02/28/2012 | 44 | ANSWER to 17 Amended Complaint by DISTRICT OF COLUMBIA. Related document: 17 Amended Complaint filed by LARRY MCDONALD, BONITA JACKSON, VIETRESS BACON, ROY FOREMAN, EDWARD DAY.(Patrick, Bradford) (Entered: 02/28/2012) |
| 03/08/2012 | 45 | MEET AND CONFER STATEMENT. (Thomas, Victoria) (Entered: 03/08/2012) |
| 03/13/2012 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 3/13/2012. Amended Complaint due by 4/2/2012. Joint Status Report and Discovery Proposal due by 4/5/2012. Status Conference set for 4/10/2012 at 10:00 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporter Chantal Geneus) (gdf) (Entered: 03/13/2012) |
| 04/02/2012 | 46 | SECOND AMENDED COMPLAINT against DISTRICT OF COLUMBIA filed by ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, DONALD DUPREE, CURTIS WILKERSON, JACQUALYN THORPE.(znmw, ) (Entered: 04/03/2012) |
| 04/05/2012 | 47 | Joint MOTION for Scheduling Order by DISTRICT OF COLUMBIA, DONALD DUPREE, ROY FOREMAN, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON (Schneider, Brian) (Entered: 04/05/2012) |
| 04/06/2012 | 48 | NOTICE *of Filing of Olmstead Community Integration Initiative* by DISTRICT OF COLUMBIA (Naso, Chad) (Entered: 04/06/2012) |
| 04/10/2012 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 4/10/2012. Merits Discovery start by 7/9/2012, Discovery due by 11/30/2012, Motion for class certification due by 5/15/2012, Response to motion due by 8/6/2012, Reply due by 9/6/2012. (Scheduling Order to be presented) (Court Reporter Chantal Geneus) (gdf) Modified on 4/10/2012 (gdf, ). (Entered: 04/10/2012) |
| 04/10/2012 | 49 | ORDER granting 47 Motion for Scheduling Order and setting discovery and briefing schedule. Telephone Conference call, to be initiated by counsel, is set for 4/16/2012, at 10:00 AM. See order for additional details. Signed by Judge Ellen S. Huvelle on April 10, 2012. (AG) (Entered: 04/10/2012) |
| 04/10/2012 | | Set/Reset Hearings: Telephone Conference set for 4/16/2012 at 10:00 AM in Chambers before Judge Ellen S. Huvelle. (gdf) (Entered: 04/11/2012) |

| 04/11/2012 | 50 | Consent MOTION to Continue *Telephone Conference Scheduled for April 16, 2012* by DISTRICT OF COLUMBIA (Patrick, Bradford) (Entered: 04/11/2012) |
|---|---|---|
| 04/11/2012 | | MINUTE ORDER granting 50 Consent Motion to Continue: it is hereby ORDERED that the telephone conference presently set for 4/16/2012 is CONTINUED until Thursday, 4/19/2012, at 10:30 AM. Signed by Judge Ellen S. Huvelle on April 11, 2012.(AG) (Entered: 04/11/2012) |
| 04/17/2012 | 51 | ANSWER to 46 Amended Complaint by DISTRICT OF COLUMBIA. Related document: 46 Amended Complaint filed by CURTIS WILKERSON, LARRY MCDONALD, DONALD DUPREE, JUDITH MILLER, JACQUALYN THORPE, ROY FOREMAN.(Patrick, Bradford) (Entered: 04/17/2012) |
| 04/19/2012 | | ORDER REFERRING CASE to a Magistrate Judge. Based upon the parties' request that this case be referred for mediation before a United States Magistrate Judge, it is hereby ORDERED this matter is referred to Magistrate Judge Alan Kay for settlement discussions to begin on or after May 14, 2012. On any filing related to settlement discussions, the parties shall place the initials of Judge Ellen Segal Huvelle and the initials of Judge Alan Kay following the case number in the caption. On any other filings in this case, the parties shall only place the initials of Judge Ellen Segal Huvelle after the case number. The parties are to jointly contact the Magistrate Judge in order to schedule the conference. SO ORDERED. Signed by Judge Ellen S. Huvelle on April 19, 2012.(AG) (Entered: 04/19/2012) |
| 04/19/2012 | 52 | CASE REFERRED to Magistrate Judge Alan Kay for Settlement purpose. (ls, ) (Entered: 04/19/2012) |
| 04/26/2012 | 53 | ORDER setting a Settlement Conference for 5/14/2012, at 10:00 AM in Chambers [room 2333] before Magistrate Judge Alan Kay. Signed by Magistrate Judge Alan Kay on 04/26/12. (DM) (Entered: 04/26/2012) |
| 04/26/2012 | | Set/Reset Hearings: Settlement Conference set for 5/14/2012 10:00 AM in Chambers (room 2333) before Magistrate Judge Alan Kay. (ldc, ) (Entered: 04/26/2012) |
| 05/14/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 5/14/2012. (DM) (Entered: 05/14/2012) |
| 05/14/2012 | | MINUTE ORDER setting a second Settlement Conference for 6/14/2012, at 10:00 AM in Chambers [room 2333]before Magistrate Judge Alan Kay. Mediation may be held in another location but parties should assemble in chambers at 10:00 AM. Signed by Magistrate Judge Alan Kay on 05/14/12. (DM) (Entered: 05/14/2012) |
| 05/15/2012 | 54 | MOTION to Certify Class *PLAINTIFFS'* by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L)(Schneider, Brian) (Entered: 05/15/2012) |
| 06/14/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 6/14/2012. (DM) (Entered: 06/26/2012) |
| 07/02/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 7/2/2012. (DM) (Entered: 07/02/2012) |
| 07/02/2012 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER setting a Settlement Conference for 7/9/2012, at 10:00 AM in Chambers before Magistrate Judge Alan Kay. Signed by Magistrate Judge Alan Kay on 07/02/12. (DM) (Entered: 07/02/2012) |
| 07/03/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 7/3/2012. (DM) (Entered: 07/11/2012) |
| 07/05/2012 | 55 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON. Attorney Bruce B. Vignery terminated. (Vignery, Bruce) (Entered: 07/05/2012) |
| 07/05/2012 | 56 | Joint MOTION for Protective Order by VIETRESS BACON, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON (Attachments: # 1 Text of Proposed Order)(Lav, Jennifer) (Entered: 07/05/2012) |
| 07/05/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 7/5/2012. (DM) (Entered: 07/11/2012) |
| 07/06/2012 | 57 | NOTICE of Appearance by Stacy Jane Canan on behalf of All Plaintiffs (Canan, Stacy) (Entered: 07/06/2012) |
| 07/06/2012 | 58 | PROTECTIVE ORDER setting forth procedures for handling confidential material; allowing designated material to be filed under seal. Signed by Judge Ellen S. Huvelle on 7/5/12. (Attachment:#(1) Exhibit A) (gdf) (Entered: 07/06/2012) |
| 07/09/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 7/9/2012. (DM) (Entered: 07/11/2012) |
| 07/11/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 7/11/2012. (DM) (Entered: 07/12/2012) |
| 07/12/2012 | 59 | Consent MOTION for Extension of Time to *the Court's April 10, 2012 Scheduling Order* by DISTRICT OF COLUMBIA (Patrick, Bradford) (Entered: 07/12/2012) |
| 07/14/2012 | | MINUTE ORDER granting 59 Consent Motion for Extension of Time: Upon consideration of the District's motion to extend this Court's April 10, 2012 Scheduling Order, it is hereby ORDERED that the District's motion is GRANTED; and it is further ORDERED that: (1) Discovery on the merits of this action shall commence on July 23, 2012; (2) All discovery shall be completed by December 14, 2012; (3) The District shall file its opposition to Plaintiffs' Motion for Class Certification on or before August 20, 2012; (4) Plaintiffs shall file any Reply to the District's Opposition to Plaintiffs' Motion for Class Certification on or before September 19, 2012; (5) Expert reports shall be exchanged by October 18, 2012; and (6) Rebuttal experts, if any, shallbe exchanged by November 15, 2012. Signed by Judge Ellen S. Huvelle on July 14, 2012. (AG) (Entered: 07/14/2012) |
| 07/17/2012 | | Set/Reset Deadlines: Discovery due by 12/14/2012; Responses due by 8/20/2012; Reply due by 9/19/2012; Expert reports shall be exchanged by October 18, 2012; and Rebuttal experts, if any, shallbe exchanged by November 15, 2012. (gdf) (Entered: 07/17/2012) |
| 07/20/2012 | 60 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Melissa Lael Baker terminated. (Baker, Melissa) (Entered: 07/20/2012) |

| 08/20/2012 | 61 | Memorandum in opposition to re 54 MOTION to Certify Class *PLAINTIFFS'* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Declaration of Ann Page, # 2 Exhibit B – EPD Waiver Application, # 3 Exhibit C – Declaration of Robin Exton, # 4 Exhibit D – Declaration of Leyla Sarigol, # 5 Exhibit E – Declaration of Dr. Chantelle Teasdell, # 6 Exhibit F – Declaration of Hammere Gebreyes)(Patrick, Bradford) (Entered: 08/20/2012) |
| 08/24/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 8/24/2012. (DM) (Entered: 09/05/2012) |
| 09/17/2012 | 62 | SUGGESTION OF DEATH Upon the Record as to Plaintiff Judith Miller by DISTRICT OF COLUMBIA. (Patrick, Bradford) (Entered: 09/17/2012) |
| 09/18/2012 | 63 | Consent MOTION for Extension of Time to File Response/Reply *to Opposition to Class Certification* by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Thomas, Victoria) (Entered: 09/18/2012) |
| 09/18/2012 | 64 | MOTION to Dismiss for Lack of Jurisdiction *the Claims of Plaintiff Donald Dupree* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Exhibit A – Dupree Interrogatory Responses, # 3 Exhibit B – Declaration of Jana Berhow, # 4 Text of Proposed Order)(Naso, Chad) (Entered: 09/18/2012) |
| 09/18/2012 | 65 | MOTION to Amend/Correct 51 Answer to Amended Complaint by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit A – Proposed Amended Answer, # 2 Exhibit B – Dixon Order Granting Preliminary Approval of Settlement, # 3 Exhibit C – Dixon Plaintiffs' Surreply in Opposition to the District's Motion to Vacate, # 4 Exhibit D – Dixon Amicus Brief in Opposition to the District's Motion to Vacate, # 5 Exhibit E – Dixon 1993 Order, # 6 Exhibit F – Dixon 1980 Consent Order, # 7 Exhibit G – Dixon 2012 Consent Order)(Patrick, Bradford) (Entered: 09/18/2012) |
| 09/18/2012 | | MINUTE ORDER granting 63 Consent Motion for Extension of Time to File Reply re 54 Motion to Certify Class: Upon consideration of the Plaintiffs' Motion to Extend Deadline to File Reply to Opposition to Class Certification, it is hereby ORDERED that Plaintiffs' motion is GRANTED; and it is furtherORDERED that Plaintiffs will file their Reply on or before September 24, 2012. Signed by Judge Ellen S. Huvelle on September 18, 2012. (AG) (Entered: 09/18/2012) |
| 09/18/2012 | 66 | ERRATA by DISTRICT OF COLUMBIA 65 MOTION to Amend/Correct 51 Answer to Amended Complaint filed by DISTRICT OF COLUMBIA. (Patrick, Bradford) (Entered: 09/18/2012) |
| 09/18/2012 | | Set/Reset Deadlines: Reply due by 9/24/2012. (gdf) (Entered: 09/18/2012) |
| 09/19/2012 | 67 | ENTERED IN ERROR.....SUPPLEMENTAL MEMORANDUM to re 54 MOTION to Certify Class *PLAINTIFFS'* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Document Requests, # 2 Exhibit B – Dixon Order Granting Preliminary Approval of Settlement, # 3 Exhibit C – Dixon 2012 Consent Order)(Patrick, Bradford) Modified on 9/20/2012 (jf, ). (Entered: 09/19/2012) |
| 09/20/2012 | | NOTICE OF ERROR re 67 Supplemental Memorandum; emailed to bradford.patrick@dc.gov, cc'd 12 associated attorneys –– The PDF file you docketed contained errors: 1. Incorrect event used, 2. Please refile document, 3. using the Opposition to Motion event (zjf, ) (Entered: 09/20/2012) |

| 09/20/2012 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 67 Supplemental Memorandum, was entered in error and counsel was instructed to refile said pleading using the correct docket event "Memorandum in Opposition" (jf, ) (Entered: 09/20/2012) |
|---|---|---|
| 09/20/2012 | 68 | Memorandum in opposition to re 54 MOTION to Certify Class *PLAINTIFFS' (Supplemental Memorandum)* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Document Requests, # 2 Exhibit B – Dixon Order Granting Preliminary Approval of Settlement, # 3 Exhibit C – Dixon 2012 Consent Order)(Patrick, Bradford) (Entered: 09/20/2012) |
| 09/21/2012 | 69 | Consent MOTION for Extension of Time to File Response/Reply *to Opposition to Class Certification* by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Thomas, Victoria) (Entered: 09/21/2012) |
| 09/21/2012 | | MINUTE ORDER granting 69 Consent Motion for Extension of Time to File Reply re 54 MOTION to Certify Class: Upon consideration of the Plaintiffs' Second Motion to Extend Deadline to File Reply to Opposition to Class Certification, it is hereby ORDERED that Plaintiffs' motion is GRANTED; and it is further ORDERED that Plaintiffs will file their Reply on or before October 1, 2012. Signed by Judge Ellen S. Huvelle on September 21, 2012. (AG) (Entered: 09/21/2012) |
| 09/28/2012 | 70 | REPLY to opposition to motion re 54 MOTION to Certify Class *PLAINTIFFS'* filed by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON. (Attachments: # 1 Exhibit, # 2 Exhibit)(Schneider, Brian) (Entered: 09/28/2012) |
| 09/28/2012 | 71 | Memorandum in opposition to re 65 MOTION to Amend/Correct 51 Answer to Amended Complaint filed by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON. (Attachments: # 1 Exhibit)(Schneider, Brian) (Entered: 09/28/2012) |
| 09/28/2012 | 72 | Memorandum in opposition to re 64 MOTION to Dismiss for Lack of Jurisdiction *the Claims of Plaintiff Donald Dupree* filed by DONALD DUPREE. (Attachments: # 1 Exhibit)(Schneider, Brian) (Entered: 09/28/2012) |
| 10/02/2012 | 73 | NOTICE of Appearance by Lyndsay Ayanna Niles on behalf of All Plaintiffs (Niles, Lyndsay) (Entered: 10/02/2012) |
| 10/04/2012 | 74 | Consent MOTION for Extension of Time to File Response/Reply *to Opposition to re 64 Motion to Dismiss for Lack of Jurisdiction the Claims of Plaintiff Donald Dupree* by DISTRICT OF COLUMBIA (Naso, Chad) (Entered: 10/04/2012) |
| 10/05/2012 | | MINUTE ORDER granting 74 Motion for Extension of Time to File Reply re 64 MOTION to Dismiss for Lack of Jurisdiction the Claims of Plaintiff Donald Dupree: UPON CONSIDERATION of Defendant's Consent Motion to Enlarge Its Time to File a Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss the Claims of Plaintiff Dupree as Moot, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that Defendant shall file its Reply by October 12, 2012. Signed by Judge Ellen S. Huvelle on October 5, 2012. (AG) (Entered: 10/05/2012) |
| 10/05/2012 | | Set/Reset Deadlines: Reply due by 10/12/2012. (gdf) (Entered: 10/09/2012) |

| 10/09/2012 | 75 | REPLY to opposition to motion re 65 MOTION to Amend/Correct 51 Answer to Amended Complaint filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit H – Settlement Agreement)(Patrick, Bradford) (Entered: 10/09/2012) |
| 10/12/2012 | 76 | REPLY to opposition to motion re 64 MOTION to Dismiss for Lack of Jurisdiction *the Claims of Plaintiff Donald Dupree* filed by DISTRICT OF COLUMBIA. (Naso, Chad) (Entered: 10/12/2012) |
| 10/17/2012 | 77 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON. Attorney Stacy Jane Canan terminated. (Canan, Stacy) (Entered: 10/17/2012) |
| 10/18/2012 | 78 | WITHDRAWN PURSUANT TO DOCUMENT 79 .....Consent MOTION for Extension of Time to Complete Discovery by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Naso, Chad) Modified on 10/19/2012 (jf, ). (Entered: 10/18/2012) |
| 10/19/2012 | 79 | NOTICE OF WITHDRAWAL OF re 78 MOTION for Extension of Time to Complete Discovery by DISTRICT OF COLUMBIA (Naso, Chad) (Entered: 10/19/2012) |
| 10/19/2012 | 80 | Consent MOTION for Extension of Time to Complete Discovery by DISTRICT OF COLUMBIA (Naso, Chad) (Entered: 10/19/2012) |
| 10/19/2012 | | MINUTE ORDER setting a Settlement Conference for 10/26/2012, at 09:45 AM in Chambers [room 2333] before Magistrate Judge Alan Kay. Signed by Magistrate Judge Alan Kay on 10/19/12. (DM) (Entered: 10/19/2012) |
| 10/22/2012 | | MINUTE ORDER granting 80 Consent Motion for Extension of Time to Complete Discovery: Upon consideration of the District's motion to extend and modify the discovery schedule in this matter, it is hereby ORDERED that the District's motion is GRANTED; and it is further ORDERED that: 1. The parties shall complete all document productions by January 31, 2013; 2. All fact discovery shall be completed by February 21, 2013; 3. The parties shall designate affirmative experts by February 15, 2013; 4. The parties shall exchange affirmative expert reports by February 28, 2013; 5. The parties shall designate and exchange rebuttal expert reports, if any, by March 15, 2013; 6. All expert discovery shall be completed by April 1, 2013. Signed by Judge Ellen S. Huvelle on October 22, 2012. (AG) (Entered: 10/22/2012) |
| 10/25/2012 | | Set/Reset Deadlines: Fact Discovery closes by 2/21/2013. Parties designate affirmative experts due by 2/15/2013. (gdf) (Entered: 10/25/2012) |
| 10/26/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 10/26/2012. (DM) (Entered: 10/26/2012) |
| 11/14/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 11/14/2012. (DM) (Entered: 12/11/2012) |
| 11/15/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 11/15/2012. (DM) (Entered: 12/11/2012) |
| 11/27/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 11/27/2012. (DM) (Entered: 12/11/2012) |
| 12/10/2012 | | |

| | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 12/10/2012. (DM) (Entered: 12/11/2012) |
|---|---|---|
| 12/11/2012 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Settlement Conference held on 12/11/2012. (DM) (Entered: 01/02/2013) |
| 12/13/2012 | 81 | MOTION to Dismiss for Lack of Jurisdiction *the claims of Curtis Wilkerson* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit A)(Patrick, Bradford) (Entered: 12/13/2012) |
| 12/27/2012 | 82 | Memorandum in opposition to re 81 MOTION to Dismiss for Lack of Jurisdiction *the claims of Curtis Wilkerson* filed by CURTIS WILKERSON. (Attachments: # 1 Exhibit Wilkerson Decl., # 2 Exhibit Wilkerson Interrogatories, # 3 Text of Proposed Order)(Schneider, Brian) (Entered: 12/27/2012) |
| 12/31/2012 | | MINUTE ORDER: Pursuant to the telephone conference call with counsel on December 20, 2012, it is hereby ORDERED that a hearing is scheduled for January 7, 2013, at 2:30 p.m. in Courtroom 23A. Signed by Judge Ellen S. Huvelle on December 31, 2012. (AG) (Entered: 12/31/2012) |
| 01/04/2013 | 83 | REPLY to opposition to motion re 81 MOTION to Dismiss for Lack of Jurisdiction *the claims of Curtis Wilkerson* filed by DISTRICT OF COLUMBIA. (Patrick, Bradford) (Entered: 01/04/2013) |
| 01/07/2013 | | MINUTE ORDER granting 65 defendant's Motion to Amend/Correct Answer: for the reasons stated today in open court, it is hereby ORDERED that defendant's motion to amend its answer to the Second Amended Complaint is GRANTED. Signed by Judge Ellen S. Huvelle on January 7, 2013. (AG) (Entered: 01/07/2013) |
| 01/07/2013 | | MINUTE ORDER: as stated today in open court, it is hereby ORDERED that a Status Conference is scheduled for Thursday, January 17, 2013, at 2:15 p.m.; and it is further ORDERED that by 5:00 p.m. on Tuesday, January 15, 2013, the parties shall confer and file a joint proposal for additional discovery, amending pleadings and filing an amended motion for class certification. Signed by Judge Ellen S. Huvelle on January 7, 2013. (AG) (Entered: 01/07/2013) |
| 01/07/2013 | 84 | Amended ANSWER to 1 Complaint, by DISTRICT OF COLUMBIA.(td, ) (Entered: 01/08/2013) |
| 01/07/2013 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Motion Hearing held on 1/7/2013. Order to be presented. Status Conference set for 1/17/2013 at 2:15 PM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporter Vicki Eastvold) (gdf) (Entered: 01/08/2013) |
| 01/08/2013 | | NOTICE TO COUNSEL: the Clerk of Court has been directed to change the case caption in the above–captioned matter to reflect that plaintiff Thorpe is the lead plaintiff according to the Second Amended Complaint. Signed by Judge Ellen S. Huvelle on January 8, 2013. (AG) (Entered: 01/08/2013) |
| 01/09/2013 | 85 | MEMORANDUM OPINION AND ORDER denying 64 defendant's Motion to Dismiss for Lack of Jurisdiction the Claims of Plaintiff Donald Dupree and denying 81 defendant's Motion to Dismiss for Lack of Jurisdiction the Claims of Plaintiff Curtis Wilkerson. Signed by Judge Ellen S. Huvelle on January 9, 2013. (AG) (Entered: 01/09/2013) |
| 01/15/2013 | 86 | |

| | | |
|---|---|---|
| | | Revised Case Management Order by DISTRICT OF COLUMBIA, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON (Schneider, Brian) Modified on 1/16/2013 to correct docket event/text (jf, ). (Entered: 01/15/2013) |
| 01/17/2013 | | MINUTE ORDER denying without prejudice 54 plaintiffs' Motion to Certify Class: for the reasons stated today in open court, it is hereby ORDERED that plaintiffs' motion to certify a class is DENIED WITHOUT PREJUDICE. Signed by Judge Ellen S. Huvelle on January 17, 2013. (AG) (Entered: 01/17/2013) |
| 01/17/2013 | | MINUTE ORDER: it is hereby ORDERED that this matter is referred to Magistrate Judge Kay for all discovery disputes. On any filing related to discovery disputes, the parties shall place the initials of Judge Ellen Segal Huvelle and the initials of Judge Kay following the case number in the caption. On any other filings in this case, the parties shall only place the initials of Judge Ellen Segal Huvelle after the case number. Signed by Judge Ellen S. Huvelle on January 17, 2013. (AG) (Entered: 01/17/2013) |
| 01/17/2013 | 87 | AMENDED SCHEDULING ORDER. Signed by Judge Ellen S. Huvelle on January 17, 2013. (AG) (Entered: 01/17/2013) |
| 01/17/2013 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Motion Hearing held on 1/17/2013 re 54 MOTION to Certify Class *PLAINTIFFS'* filed by CURTIS WILKERSON, LARRY MCDONALD, DONALD DUPREE, JUDITH MILLER, JACQUALYN THORPE, ROY FOREMAN. (Court Reporter Lisa Griffith) (gdf, ) (Entered: 01/28/2013) |
| 01/17/2013 | 88 | CASE DIRECTLY REFERRED to Magistrate Judge Alan Kay for all discovery disputes. (kb) (Entered: 01/31/2013) |
| 01/18/2013 | | MINUTE ORDER re 87 Amended Scheduling Order: it is hereby ORDERED that the Amended Scheduling Order filed on January 7, 2013, is AMENDED to clarify that the parties shall have until April 1, 2013, to complete all discovery, including depositions. Signed by Judge Ellen S. Huvelle on January 18, 2013. (AG) (Entered: 01/18/2013) |
| 02/14/2013 | 89 | Consent MOTION for Extension of Time to *Supplement the District's Response to Plaintiffs' Interrogatory No. 11* by DISTRICT OF COLUMBIA (Patrick, Bradford) (Entered: 02/14/2013) |
| 02/14/2013 | | MINUTE ORDER granting 89 Consent Motion for Extension of Time: Upon consideration of the District's Motion to Enlarge its Time to Supplement Its Response to Interrogatory Number 11, the Plaintiffs' consent thereto, and in consideration of the entire record herein, it is hereby ORDERED that the District's Motion be GRANTED; and it is further ORDERED that the District shall supplement its response to Interrogatory Number 11 no later than February 22, 2013. Signed by Judge Ellen S. Huvelle on February 14, 2013. (AG) (Entered: 02/14/2013) |
| 02/21/2013 | 90 | TRANSCRIPT OF MOTION HEARING before Judge Ellen S. Huvelle held on 1/7/2013; Page Numbers: 1–108. Date of Issuance:2/21/2013. Court Reporter Vicki Eastvold, Telephone number 202–354–3242, Court Reporter Email Address : vicki_eastvold@dcd.uscourts.gov.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be |

| | | |
|---|---|---|
| | | purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 3/14/2013. Redacted Transcript Deadline set for 3/24/2013. Release of Transcript Restriction set for 5/22/2013.(Eastvold, Vicki) (Entered: 02/21/2013) |
| 03/05/2013 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 3/5/2013. (DM) (Entered: 03/12/2013) |
| 03/08/2013 | 91 | MEMORANDUM by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON. (Lav, Jennifer) (Entered: 03/08/2013) |
| 03/08/2013 | 92 | MOTION to Amend/Correct *Complaint* by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Text of Proposed Order)(Schneider, Brian) (Entered: 03/08/2013) |
| 03/11/2013 | 93 | MEMORANDUM re 91 Memorandum filed by CURTIS WILKERSON, LARRY MCDONALD, DONALD DUPREE, JACQUALYN THORPE, ROY FOREMAN by DISTRICT OF COLUMBIA. (Patrick, Bradford) (Entered: 03/11/2013) |
| 03/12/2013 | | Minute Entry for proceedings held before Magistrate Judge Alan Kay: Telephone Conference held on 3/12/2013. (DM) (Entered: 03/12/2013) |
| 03/14/2013 | 94 | MEMORANDUM ORDER regarding the issue of production of a list of documents prior to depositions. Signed by Magistrate Judge Alan Kay on 03/14/13. (DM) (Entered: 03/14/2013) |
| 03/22/2013 | 95 | Memorandum in opposition to re 92 MOTION to Amend/Correct *Complaint* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – 1/7/13 Hearing Excerpts)(Patrick, Bradford) (Entered: 03/22/2013) |
| 03/25/2013 | 96 | REPLY to opposition to motion re 92 MOTION to Amend/Correct *Complaint filed by PLAINTIFFS* filed by JACQUALYN THORPE. (Rifkin, Marjorie) (Entered: 03/25/2013) |
| 03/27/2013 | 97 | ORDER granting 92 plaintiffs' Motion to Amend Complaint. Third Amended Complaint shall be docketed by the Clerk as filed today. Discovery and briefing schedule for motion for class certification altered. See order for details. Signed by Judge Ellen S. Huvelle on March 27, 2013. (AG) (Entered: 03/27/2013) |
| 03/27/2013 | | Set/Reset Deadlines: Motions due by 5/6/2013. Responses due by 5/28/2013 Replies due by 6/7/2013. (gdf) (Entered: 03/27/2013) |
| 03/27/2013 | 98 | THIRD AMENDED COMPLAINT against DISTRICT OF COLUMBIA filed by ROY FOREMAN, JACQUALYN THORPE, CURTIS WILKERSON, LARRY MCDONALD, DONALD DUPREE.(jf, ) (Entered: 03/27/2013) |
| 04/11/2013 | 99 | MOTION to Dismiss by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit A – Jan. 7, 2013 Hearing Transcript, # 2 Exhibit B – 30(b)(6) Deposition Notice)(Patrick, Bradford) (Entered: 04/11/2013) |

| 04/23/2013 | 100 | Consent MOTION for Extension of Time to *File Opposition to Defendant's Motion to Dismiss Third Amended Complaint* by JACQUALYN THORPE (Attachments: # 1 Text of Proposed Order)(Schneider, Brian) (Entered: 04/23/2013) |
| --- | --- | --- |
| 04/23/2013 | | MINUTE ORDER granting 100 Consent Motion for Extension of Time: Upon review of the Plaintiffs' Consent Motion for Extension of Time dated April 23, 2013, it is hereby ORDERED that the Plaintiffs' motion is GRANTED; and it is further ORDERED that Plaintiffs may file their opposition to Defendant's Motion to Dismiss the Third Amended Complaint (Docket No. 99) by May 6, 2013, and Defendant's reply, if any, will be due by May 28, 2013. Signed by Judge Ellen S. Huvelle on April 23, 2013. (AG) (Entered: 04/23/2013) |
| 04/24/2013 | | Set/Reset Deadlines: Response due by 5/6/2013. Reply due by 5/28/2013. (gdf) (Entered: 04/24/2013) |
| 05/02/2013 | 101 | NOTICE of Appearance by Alison L. Andersen on behalf of All Plaintiffs (Andersen, Alison) (Entered: 05/02/2013) |
| 05/06/2013 | 102 | Memorandum in opposition to re 99 MOTION to Dismiss *the Thrid Amended Complaint* filed by VIETRESS BACON, EDWARD DAY, DONALD DUPREE, ROY FOREMAN, BONITA JACKSON, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Schneider, Brian) (Entered: 05/06/2013) |
| 05/06/2013 | 103 | MOTION to Certify Class – *Renewed* by VIETRESS BACON, EDWARD DAY, DONALD DUPREE, ROY FOREMAN, BONITA JACKSON, LARRY MCDONALD, JUDITH MILLER, JACQUALYN THORPE, CURTIS WILKERSON (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Errata D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH, # 36 Exhibit II, # 37 Exhibit JJ, # 38 Exhibit KK, # 39 Exhibit LL, # 40 Exhibit MM)(Schneider, Brian) (Entered: 05/06/2013) |
| 05/21/2013 | 104 | Consent MOTION for Extension of the Scheduling Order by DISTRICT OF COLUMBIA (Naso, Chad) Modified on 5/21/2013 to correct docket event (jf, ). (Entered: 05/21/2013) |
| 05/22/2013 | | MINUTE ORDER granting 104 Consent Motion for Extension of Time: Upon consideration of the District's motion to extend and modify the discovery schedule in this matter, it is hereby ORDERED that the District's motion is GRANTED; and it is further ORDERED that (1) the District shall file its opposition to Plaintiffs' Motion for Class Certification and its reply in support of its Motion to Dismiss the Third Amended Complaint no later than June 4, 2013; (2) Plaintiffs shall file their reply in support of their Motion for Class Certification no later than June 26, 2013. Signed by Judge Ellen S. Huvelle on May 22, 2013. (AG) (Entered: 05/22/2013) |
| 05/22/2013 | | Set/Reset Deadlines: Response to Plaintiffs' Motion for Class Certification and Reply in Support of Motion to Dismiss Third Amended Complaint due by 6/4/2013. Plaintiffs' Reply in Support of Motion for Class Certification due by 6/26/2013. (zmm, ) (Entered: 05/22/2013) |

| 05/28/2013 | 105 | NOTICE of Death of Plaintiff Lavondia Carter by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON (Thomas, Victoria) (Entered: 05/28/2013) |
|---|---|---|
| 06/04/2013 | 106 | Memorandum in opposition to re 103 MOTION to Certify Class – Renewed filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25)(Naso, Chad) (Entered: 06/04/2013) |
| 06/04/2013 | 107 | REPLY to opposition to motion re 99 MOTION to Dismiss filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit C – MDS Survey Tool, # 2 Exhibit D – 2.5.13 Letter)(Patrick, Bradford) (Entered: 06/04/2013) |
| 06/26/2013 | 108 | REPLY to opposition to motion re 103 MOTION to Certify Class – Renewed filed by JACQUALYN THORPE. (Attachments: # 1 Exhibit Exhibit NN, # 2 Exhibit Exhibit OO, # 3 Exhibit Exhibit PP, # 4 Exhibit Exhibit QQ, # 5 Exhibit Exhibit RR, # 6 Exhibit Exhibit SS, # 7 Exhibit Exhibit TT, # 8 Exhibit Exhibit UU, # 9 Exhibit Exhibit VV, # 10 Exhibit Exhibit WW, # 11 Exhibit Exhibit XX, # 12 Exhibit Exhibit YY, # 13 Exhibit Exhibit ZZ, # 14 Exhibit Exhibit AAA)(Schneider, Brian) (Entered: 06/26/2013) |
| 06/26/2013 | 109 | NOTICE of Statement of Interest by UNITED STATES OF AMERICA re 103 MOTION to Certify Class – Renewed (Lee, Nicholas) (Entered: 06/26/2013) |
| 07/17/2013 | 110 | MOTION for Leave to File Response to the Statement of Interest filed by the United States Department of Justice by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit Proposed Response to DOJ's Statement of Interest)(Patrick, Bradford) (Entered: 07/17/2013) |
| 07/18/2013 | | MINUTE ORDER granting 110 Motion for Leave to File: Upon consideration of Defendant's Motion for Leave to File a Response to the Statement of Interest Filed by the United States Department of Justice, plaintiffs' representation that no opposition will be filed, and in consideration of the entire record herein, it is hereby ORDERED that Defendant's Motion is GRANTED; it is further ORDERED that Defendant's Response to the Statement of Interest Filed by the United States Department of Justice, which is attached to Defendants Motion, is accepted for filing. Signed by Judge Ellen S. Huvelle on July 18, 2013. (AG) (Entered: 07/18/2013) |
| 07/18/2013 | 111 | RESPONSE to the Statement of Interest filed by UNITED STATES OF AMERICA. (rdj) (Entered: 07/18/2013) |
| 09/23/2013 | 112 | NOTICE OF SUPPLEMENTAL AUTHORITY by JACQUALYN THORPE (Attachments: # 1 Exhibit A)(Schneider, Brian) (Entered: 09/23/2013) |
| 10/11/2013 | 113 | RESPONSE re 112 NOTICE OF SUPPLEMENTAL AUTHORITY filed by DISTRICT OF COLUMBIA. (Naso, Chad) (Entered: 10/11/2013) |
| 10/31/2013 | 114 | MOTION for Scheduling Conference by JACQUALYN THORPE (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Exhibit A, Declaration of Roy L. Foreman)(Rifkin, Marjorie) Modified on 10/31/2013 (jf, ). (Entered: 10/31/2013) |
| 11/05/2013 | 115 | NOTICE of Appearance by Iris Y. Gonzalez on behalf of JACQUALYN THORPE (Gonzalez, Iris) (Entered: 11/05/2013) |

| 11/08/2013 | 116 | RESPONSE re 114 MOTION for Scheduling Conference filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit Declaration of Leyla Sarigol)(Patrick, Bradford) (Entered: 11/08/2013) |
| --- | --- | --- |
| 11/22/2013 | 117 | ORDER granting 114 plaintiff's motion for scheduling conference and setting hearing on plaintiffs' motion for class certification on December 11, 2013, at 10 a.m. in Courtroom 23A. Parties shall have until December 6, 2013, to file supplemental memorandum re class certification decision in DL v. DC, No. 05–1437–RCL (D.D.C. Nov. 8, 2013) and defendant shall have until December 6, 2013, to file updated data for 2013. See order for details. Signed by Judge Ellen S. Huvelle on November 22, 2013. (AG) (Entered: 11/22/2013) |
| 12/06/2013 | 118 | NOTICE *of Data In Response to the Court's Order of November 22, 2013* by DISTRICT OF COLUMBIA re 117 Order on Motion for Miscellaneous Relief,, (Attachments: # 1 Exhibit, # 2 Exhibit)(Naso, Chad) (Entered: 12/06/2013) |
| 12/06/2013 | 119 | SUPPLEMENTAL MEMORANDUM to re 117 Order on Motion for Miscellaneous Relief,, *relating to the applicability of the recent decision in D.L. v. District of Columbia* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit 1 – Notice of Appeal in D.L. v. District of Columbia)(Patrick, Bradford) (Entered: 12/06/2013) |
| 12/06/2013 | 120 | SUPPLEMENTAL MEMORANDUM to *Address relevancy of DL v. Dist. of Columbia class recertification* filed by JACQUALYN THORPE. (Schneider, Brian) (Entered: 12/06/2013) |
| 12/09/2013 | 121 | NOTICE of Voluntary Dismissal re Carl Magby (Thomas, Victoria) (Entered: 12/09/2013) |
| 12/11/2013 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Motion Hearing held on 12/11/2013 re 99 MOTION to Dismiss filed by DISTRICT OF COLUMBIA, 103 MOTION to Certify Class – *Renewed* filed by CURTIS WILKERSON, DONALD DUPREE, BONITA JACKSON, JACQUALYN THORPE, VIETRESS BACON, ROY FOREMAN, LARRY MCDONALD, JUDITH MILLER, EDWARD DAY. Motions heard and taken under advisement. (Court Reporter Chantal Geneus) (zmm, ) (Entered: 12/11/2013) |
| 12/13/2013 | 122 | NOTICE *in Response to Court's Oral Order During the December 11, 2013 Hearing* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit FY 2013 Olmstead Community Integration Plan)(Naso, Chad) (Entered: 12/13/2013) |
| 12/18/2013 | 123 | SUPPLEMENTAL MEMORANDUM to re 122 Notice (Other) *Responding to Defendant's Supplemental Nursing Facility Data* filed by JACQUALYN THORPE. (Schneider, Brian) (Entered: 12/18/2013) |
| 12/20/2013 | 124 | Consent MOTION for Leave to File *Reply* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit Proposed Reply)(Patrick, Bradford) (Entered: 12/20/2013) |
| 12/20/2013 | | MINUTE ORDER granting 124 Consent Motion for Leave to File Reply. Signed by Judge Ellen S. Huvelle on December 20, 2013. (AG) (Entered: 12/20/2013) |
| 12/20/2013 | 125 | REPLY re 123 Response to Supplemental Memorandum of Nursing Facility Data filed by DISTRICT OF COLUMBIA. (jf, ) (Entered: 12/23/2013) |
| 01/30/2014 | 126 | NOTICE OF SUPPLEMENTAL AUTHORITY by JACQUALYN THORPE (Attachments: # 1 Exhibit DL ORDER)(Rifkin, Marjorie) (Entered: 01/30/2014) |

| 03/11/2014 | 127 | NOTICE *Of The District Of Columbia's Public Release Of Fiscal Year 2014 Agency Olmstead Goals* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit 1 – FY 2014 Olmstead Goals)(Patrick, Bradford) (Entered: 03/11/2014) |
|---|---|---|
| 03/29/2014 | 128 | MEMORANDUM OPINION. Signed by Judge Ellen S. Huvelle on March 29, 2014. (AG) (Entered: 03/29/2014) |
| 03/29/2014 | 129 | ORDER denying 99 defendant's Motion to Dismiss; granting 103 plaintiffs' Motion to Certify Class; and setting status conference for April 23, 2014, at 9:30 a.m. Signed by Judge Ellen S. Huvelle on March 29, 2014. (AG) (Entered: 03/29/2014) |
| 03/29/2014 |  | Set/Reset Deadlines/Hearings: Joint Status Report due by 4/16/2014. Status Conference set for 4/23/2014 at 9:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. (cdw) (Entered: 03/31/2014) |
| 04/01/2014 |  | Set/Reset Deadlines: Joint Status Report due by 4/16/2014. (zmm, ) (Entered: 04/01/2014) |
| 04/01/2014 |  | Set/Reset Hearings: Status Conference set for 4/23/2014 09:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. (zmm, ) (Entered: 04/01/2014) |
| 04/14/2014 | 130 | NOTICE of Voluntary Dismissal re Winifred Goines (Rifkin, Marjorie) (Entered: 04/14/2014) |
| 04/14/2014 | 131 | ANSWER to 98 Amended Complaint by DISTRICT OF COLUMBIA. Related document: 98 Amended Complaint filed by CURTIS WILKERSON, LARRY MCDONALD, DONALD DUPREE, JACQUALYN THORPE, ROY FOREMAN.(Patrick, Bradford) (Entered: 04/14/2014) |
| 04/15/2014 | 132 | NOTICE *THAT THE DISTRICT OF COLUMBIA HAS SOUGHT PERMISSION TO APPEAL THIS COURT'S MARCH 29, 2014 ORDER* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit Rule 23(f) Petition)(Patrick, Bradford) (Entered: 04/15/2014) |
| 04/15/2014 | 133 | STATUS REPORT *JOINT by District of Columbia and* by JACQUALYN THORPE. (Attachments: # 1 Exhibit Joint Proposed Litigation Schedule)(Rifkin, Marjorie) (Entered: 04/15/2014) |
| 04/17/2014 | 134 | MOTION to Stay *Pursuant to Fed. R. Civ. P. 23(f)* by DISTRICT OF COLUMBIA (Patrick, Bradford) (Entered: 04/17/2014) |
| 04/23/2014 |  | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 4/23/2014. Defendant's 134 Motion to Stay Proceedings granted in part and denied in part. Next Status Conference set for 7/17/2014 @ 2:30 p.m. in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporter William Zaremba) (zmm, ) (Entered: 04/24/2014) |
| 04/24/2014 | 135 | ORDER granting in part and denying in part 134 Motion to Stay, staying expert discovery, and setting fact discovery deadlines. Next status conference is set for July 17, 2014, at 2:30 p.m. in Courtroom 23A. Signed by Judge Ellen S. Huvelle on April 24, 2014. (AG) (Entered: 04/24/2014) |
| 04/24/2014 |  | Set/Reset Deadlines: Fact Discovery to be completed by 12/31/2014. Joint Status Report due by 7/10/2014. (zmm, ) (Entered: 04/24/2014) |
| 04/28/2014 | 136 | NOTICE *of Plaintiffs' 132 Response Opposing Defendant's 23(f) Petition for Interlocutory Review* by JACQUALYN THORPE (Attachments: # 1 Exhibit |

| | | |
|---|---|---|
| | | Response Opposing Defendant's 23(f) Petition)(Gonzalez, Iris) . (Entered: 04/28/2014) |
| 06/24/2014 | 137 | ORDER as to the USCA; ORDERED, on the court's own motion, that the petition be referred to a merits panel. USCA No. 14–8001. (md, ) (Entered: 06/25/2014) |
| 06/26/2014 | 138 | MOTION to Stay *(Renewed)* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit 1 – State Long–Term Services and Supports Scorecard)(Patrick, Bradford) (Entered: 06/26/2014) |
| 06/26/2014 | 139 | NOTICE *Concerning Screening Tool* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit 1 – Screening Tool)(Patrick, Bradford) (Entered: 06/26/2014) |
| 07/10/2014 | 140 | STATUS REPORT *(JOINT)* by JACQUALYN THORPE. (Schneider, Brian) (Entered: 07/10/2014) |
| 07/10/2014 | 141 | RESPONSE re 139 Notice (Other) *Concerning Screening Tool* filed by JACQUALYN THORPE. (Schneider, Brian) (Entered: 07/10/2014) |
| 07/14/2014 | 142 | Memorandum in opposition to re 138 MOTION to Stay *(Renewed)* filed by JACQUALYN THORPE. (Rifkin, Marjorie) (Entered: 07/14/2014) |
| 07/15/2014 | | MINUTE ORDER: It is hereby ORDERED that the Status Conference presently set for July 17, 2014 is CANCELED. Signed by Judge Ellen S. Huvelle on July 15, 2014. (AG) (Entered: 07/15/2014) |
| 07/16/2014 | 143 | REPLY to opposition to motion re 138 MOTION to Stay *(Renewed)* filed by DISTRICT OF COLUMBIA. (Patrick, Bradford) (Entered: 07/16/2014) |
| 07/16/2014 | 144 | REPLY re 141 Response to Document filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit 1 – May 30, 2014 Email)(Patrick, Bradford) (Entered: 07/16/2014) |
| 08/08/2014 | 145 | MEMORANDUM OPINON AND ORDER denying 138 defendant's Motion to Stay Discovery and referring any discovery disputes that arise to Magistrate Judge Alan Kay for resolution. Signed by Judge Ellen S. Huvelle on August 8, 2014. (AG) (Entered: 08/08/2014) |
| 08/15/2014 | 146 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on April 23, 2014; Page Numbers: 1–47. Date of Issuance: August 4, 2014. Court Reporter/Transcriber: William Zaremba; Telephone number: (202)354–3249; Email Address: William_Zaremba@dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter. NOTICE RE REDACTION OF TRANSCRIPTS: The parties have twenty–one days to file with the Court and the Court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 9/5/2014. Redacted Transcript Deadline set for 9/15/2014. Release of Transcript Restriction set for 11/13/2014.(Zaremba, William) (Entered: 08/15/2014) |
| 09/10/2014 | 147 | |

| | | |
|---|---|---|
| | | NOTICE *Concerning Supplemental Discovery* by DISTRICT OF COLUMBIA (Patrick, Bradford) (Entered: 09/10/2014) |
| 10/14/2014 | 148 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ROBERT COLLINS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON. Attorney Victoria L. Thomas terminated. (Thomas, Victoria) (Entered: 10/14/2014) |
| 10/24/2014 | 149 | NOTICE of Change of Address by Brian D. Schneider (Schneider, Brian) (Entered: 10/24/2014) |
| 11/21/2014 | 150 | Consent MOTION for Extension of Time to Complete Discovery by JACQUALYN THORPE (Attachments: # 1 Text of Proposed Order)(Schneider, Brian) (Entered: 11/21/2014) |
| 11/21/2014 | | MINUTE ORDER granting 150 Consent Motion for Extension of Time to Complete Discovery: Having considered the Consent Motion to Modify Discovery Schedule, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Court's April 24, 2014 Order regarding the discovery schedule is modified as follows: (1) fact discovery will conclude on April 30, 2015; and (2) the parties will supplement responses to discovery requests pursuant to Fed. R. Civ. P. 26 (e) no later than February 16, 2015. All other parts of the Court's April 24, 2014 Order will remain in effect. Signed by Judge Ellen S. Huvelle on November 21, 2014. (AG) (Entered: 11/21/2014) |
| 11/24/2014 | | Set/Reset Deadlines: Fact Discovery to conclude by 4/30/2015. Parties to supplement responses to discovery requests by 2/16/2015. (zmm, ) (Entered: 11/24/2014) |
| 01/21/2015 | 151 | NOTICE *OF DEATH OF PLAINTIFF CURTIS WILKERSON* by JACQUALYN THORPE (Rifkin, Marjorie) (Entered: 01/21/2015) |
| 01/28/2015 | 152 | NOTICE of Appearance by Chad Wayne Copeland on behalf of DISTRICT OF COLUMBIA (Copeland, Chad) (Entered: 01/28/2015) |
| 02/10/2015 | 153 | Consent MOTION to Modify *DISCOVERY SCHEDULE* by ROBERT COLLINS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE (Attachments: # 1 Text of Proposed Order)(Lav, Jennifer) (Entered: 02/10/2015) |
| 02/11/2015 | | MINUTE ORDER granting 153 Consent Motion to Modify: Having considered the Consent Motion to Modify Discovery Schedule dated February 10, 2015, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Court's April 24, 2014 Order, as modified by the Courts Minute Order of November 21, 2014, regarding the discovery schedule is modified as follows:The parties will supplement responses to discovery requests pursuant to Fed. R. Civ. P. 26(e) no later than March 2, 2015. All other parts of the Court's April 24, 2014 Order, as modified by the Court's Minute Order of November 21, 2014, will remain in effect. Signed by Judge Ellen S. Huvelle on February 11, 2015. (AG) (Entered: 02/11/2015) |
| 02/11/2015 | | Set/Reset Deadlines: Parties to supplement responses to discovery requests pursuant to FRCP 26(e) by 3/2/2015. (zmm, ) (Entered: 02/11/2015) |
| 03/02/2015 | 154 | NOTICE *of Death of Plaintiff Joseph Gray* by JACQUALYN THORPE (Rifkin, Marjorie) (Entered: 03/02/2015) |
| 04/08/2015 | 155 | |

| | | |
|---|---|---|
| | | Joint MOTION for Extension of Time to Complete Discovery by JACQUALYN THORPE (Gonzalez, Iris) (Entered: 04/08/2015) |
| 04/29/2015 | | MINUTE ORDER granting 155 Consent Motion for Extension of Time to Complete Discovery. Fact discovery deadline of April 30, 2015, is VACATED. All other scheduling decisions will be deferred until after the Court of Appeals rules on the pending petition to appeal this Court's ruling granting class certification. Signed by Judge Ellen S. Huvelle on April 29, 2015. (AG) (Entered: 04/29/2015) |
| 06/29/2015 | | MINUTE ORDER: It is hereby ORDERED that a Status Conference in the above−captioned case is set for Wednesday, July 15, 2015, at 2:00 p.m. in Courtroom 23A; and it is further ORDERED that the parties shall confer and file a joint proposed schedule for further proceedings by July 13, 2015. Signed by Judge Ellen S. Huvelle on June 29, 2015. (AG) (Entered: 06/29/2015) |
| 06/30/2015 | | Set/Reset Deadlines/Hearings: Parties to file joint proposed schedule for further proceedings by 7/13/2015. Status Conference set for 7/15/2015 02:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. (zmm) (Entered: 06/30/2015) |
| 06/30/2015 | 156 | ORDER of USCA (certified copy) in re: District of Columbia, a Municipal Corporation. ORDERED that the petition be denied for the reasons stated in the opinion issued herein this date.USCA Case Number 14−8001. (rd) (Entered: 07/01/2015) |
| 07/13/2015 | 157 | Joint MOTION to Modify *Schedules for Further Proceedings* by JACQUALYN THORPE (Attachments: # 1 Exhibit DRAFT Notice of 30b6 Deposition, # 2 Text of Proposed Order Plaintiffs Proposed Order., # 3 Text of Proposed Order Defendants Proposed Order)(Schneider, Brian) (Entered: 07/13/2015) |
| 07/15/2015 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 7/15/2015. Scheduling order to follow. (Court Reporter: Lisa Griffith) (cdw) (Entered: 07/15/2015) |
| 07/15/2015 | 158 | SCHEDULING ORDER. Fact discovery to be completed by November 1, 2015. Expert discovery to be completed by March 1, 2016. Status conference set for April 5, 2016, at 2:30 p.m. See order for details. Signed by Judge Ellen S. Huvelle on July 15, 2015. (AG) (Entered: 07/15/2015) |
| 07/15/2015 | | Set/Reset Deadlines/Hearings: Motion to amend the complaint due by 9/1/2015. Fact discovery closes 11/1/2015. Plaintiffs' Rule 26(a)(2)(B) reports due by 11/15/2015. Defendant's Rule 26(a)(2)(B) reports due by 12/15/2015. Plaintiff's rebuttal reports due by 1/22/2016. Document re Summary Judgment motions submisson due by 3/28/2016. Status Conference set for 4/5/2016 at 2:30 PM in Courtroom 23A before Judge Ellen S. Huvelle. (cdw) Modified on 7/17/2015 (zcdw). (Entered: 07/16/2015) |
| 08/10/2015 | 159 | NOTICE of Appearance by Kristina J. Majewski on behalf of All Plaintiffs (Majewski, Kristina) (Entered: 08/10/2015) |
| 09/01/2015 | 160 | Consent MOTION to Amend/Correct 98 Amended Complaint *and Memorandum in Support thereof* by DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, JACQUALYN THORPE, CURTIS WILKERSON (Attachments: # 1 Exhibit A − Fourth Amended Complaint, # 2 Exhibit 1 − WSComparison_Thorpe − Third Amended Complaint to Fourth Amended Compaint, # 3 Text of Proposed Order)(Schneider, Brian) (Entered: 09/01/2015) |
| 09/01/2015 | 161 | |

| | | |
|---|---|---|
| | | NOTICE by DISTRICT OF COLUMBIA re <u>160</u> Consent MOTION to Amend/Correct <u>98</u> Amended Complaint *and Memorandum in Support thereof* (Patrick, Bradford) (Entered: 09/01/2015) |
| 09/10/2015 | | MINUTE ORDER granting <u>160</u> plaintiffs' Motion to Amend Complaint: Upon consideration of plaintiffs' Motion to Amend Complaint, defendant's partial lack of consent, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further ORDERED that Plaintiffs' Fourth Amended Class Action Complaint for Declaratory and Injunctive Relief will be placed on the docket and amend all prior–filed Complaints in this action. Signed by Judge Ellen S. Huvelle on September 10, 2015. (AG) (Entered: 09/10/2015) |
| 09/10/2015 | <u>162</u> | FOURTH AMENDED COMPLAINT against DISTRICT OF COLUMBIA filed by ROY FOREMAN, LARRY MCDONALD, DONALD DUPREE, TANITA SANDERS, DENISE RIVERS, JAMES BUMPASS, IVY BROWN.(jf) (Entered: 09/11/2015) |
| 09/15/2015 | <u>163</u> | NOTICE *Regarding 30(b)(6) and Other Depositions* by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D)(Schneider, Brian) (Entered: 09/15/2015) |
| 09/15/2015 | | NOTICE OF ERROR re <u>163</u> Notice (Other); emailed to schneider.brian@arentfox.com, cc'd 18 associated attorneys –– The PDF file you docketed contained errors: 1. Do not file Discovery (LcvR 5.2), 2. Incorrect document/case, 3. See LCvR 5.1 (jf, ) (Entered: 09/15/2015) |
| 09/15/2015 | <u>164</u> | STATUS REPORT *and Request for Status Conference* by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D)(Schneider, Brian) (Entered: 09/15/2015) |
| 09/16/2015 | <u>165</u> | RESPONSE re <u>164</u> Status Report, filed by DISTRICT OF COLUMBIA. (Patrick, Bradford) (Entered: 09/16/2015) |
| 09/16/2015 | | MINUTE ORDER: It is hereby ORDERED that a Status Conference to address the discovery issues raised in <u>164</u> plaintiffs' Status Report and <u>165</u> defendant's response thereto is set for September 29, 2015, at 11:00 a.m. in Courtroom 23A. Signed by Judge Ellen S. Huvelle on September 16, 2015. (AG) (Entered: 09/16/2015) |
| 09/17/2015 | | Set/Reset Hearings: Status Conference set for 9/29/2015 11:00 AM in Courtroom 23A before Judge Ellen S. Huvelle. (zmm) (Entered: 09/17/2015) |
| 09/24/2015 | <u>166</u> | ANSWER to <u>162</u> Amended Complaint by DISTRICT OF COLUMBIA. Related document: <u>162</u> Amended Complaint filed by LARRY MCDONALD, DENISE RIVERS, JAMES BUMPASS, DONALD DUPREE, IVY BROWN, ROY FOREMAN, TANITA SANDERS.(Patrick, Bradford) (Entered: 09/24/2015) |
| 09/29/2015 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 9/29/2015. Further Status Conference set for 4/22/2016 @ 2:00 p.m. in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporter Linda Kinkade) (zmm) (Entered: 09/29/2015) |
| 09/30/2015 | <u>167</u> | AMENDED SCHEDULING ORDER. See order for details. Status conference presently set for April 22, 2015, is moved to April 20, 2015, at 2:00 p.m. Signed by Judge Ellen S. Huvelle on September 30, 2015. (AG) (Entered: 09/30/2015) |

| 10/01/2015 | | Set/Reset Deadlines/Hearings: Defendant's supplemental response to plaintiff's interrogatory due by 10/20/2015. Fact Discovery to be completed by 12/4/2015. Plaintiff's expert reports pursuant to Rule 26(a)(2)(B) due by 12/20/2016. Defendant's expert reports pursuant to Rule 26(a)(2)(B) due by 1/20/2016. Status Conference set for 4/20/2016 02:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. (zmm) Modified on 10/2/2015 (zmm). (Entered: 10/01/2015) |
|---|---|---|
| 10/02/2015 | | Set/Reset Deadlines: Defendant's supplemental response to plaintiff's interrogatory due by 10/20/2015. (zmm) (Entered: 10/02/2015) |
| 10/05/2015 | 168 | NOTICE *of Death of Plaintiff Tanita Sanders* by IVY BROWN (Majewski, Kristina) (Entered: 10/05/2015) |
| 01/14/2016 | 169 | Consent MOTION for Extension of Time to *Serve Expert Reports* by DISTRICT OF COLUMBIA (Patrick, Bradford) (Entered: 01/14/2016) |
| 01/14/2016 | | MINUTE ORDER granting 169 Consent Motion for Extension of Time: Upon consideration of Defendant's Consent Motion for an Extension of Time and the entire record, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that Defendant shall designate its experts and serve any expert reports in accordance with Fed. R. Civ. P. 26(a)(2)(B) no later than February 4, 2016. Plaintiffs shall designate any rebuttal experts and file any rebuttal reports by February 29, 2016. Expert depositions shall be completed by April 15, 2016. All other provisions of this Court's September 15, 2015 Scheduling Order remain in effect. Signed by Judge Ellen S. Huvelle on January 14, 2015. (AG) (Entered: 01/14/2016) |
| 01/15/2016 | | Set/Reset Deadlines: Defendant's Rule 26(a)(2)(B) expert disclosures due 2/4/2016. Plaintiff's rebuttal expert designation and rebuttal reports due 2/29/2016. (zmm) (Entered: 01/15/2016) |
| 04/14/2016 | 170 | NOTICE *Regarding Summary Judgment* by DISTRICT OF COLUMBIA (Patrick, Bradford) (Entered: 04/14/2016) |
| 04/15/2016 | 171 | NOTICE *of Proposal for a Motion for Summary Judgment* by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS (Andersen, Alison) (Entered: 04/15/2016) |
| 04/16/2016 | | MINUTE ORDER: It is hereby ORDERED that Defendant shall file a response to re 171 Plaintiffs' Notice of Proposal re Motion for Summary Judgment by no later than Tuesday, April 19, 2016 at 12:00 p.m. Defendant's response should (1) indicate whether there is a dispute on the issues identified by Plaintiffs as the possible issues to address in a motion for summary judgment; and (2) if there is a dispute, whether defendant agrees that summary judgment briefing is the best option for resolving those disputes. Signed by Judge Ellen S. Huvelle on April 16, 2016. (AG) (Entered: 04/16/2016) |
| 04/18/2016 | 172 | NOTICE of Appearance by Amanda Montee on behalf of DISTRICT OF COLUMBIA (Montee, Amanda) (Entered: 04/18/2016) |
| 04/18/2016 | | Set/Reset Deadlines: Responses due by 4/19/2016 (gdf) (Entered: 04/18/2016) |
| 04/19/2016 | 173 | RESPONSE re 171 Notice (Other) *pursuant to the Court's April 16, 2016 Minute Order* filed by DISTRICT OF COLUMBIA. (Naso, Chad) (Entered: 04/19/2016) |
| 04/19/2016 | 174 | |

| | | |
|---|---|---|
| | | MOTION Exclude Expert, Suzanne Crisp by IVY BROWN (Attachments: # 1 Affidavit Dowd Declaration – 2016_04_19, # 2 Exhibit 1 – Crisp Report – 2016_02_03, # 3 Exhibit 2 – Crisp Deposition – 2016_04_01, # 4 Exhibit 3 – Newland Deposition – 2015_11_19 – Excerpts, # 5 Exhibit 4 – Sarigol Deposition – 2015_11_12 – Excerpts)(Schneider, Brian) (Entered: 04/19/2016) |
| 04/19/2016 | | NOTICE TO COUNSEL: the Clerk of Court has been directed to change the case caption in the above–captioned matter to reflect that plaintiff Ivy Brown is the lead plaintiff according to the fourth Amended Complaint. Signed by Judge Ellen S. Huvelle on April 19, 2016. (AG) (Entered: 04/19/2016) |
| 04/20/2016 | 175 | PRETRIAL SCHEDULING ORDER. See order for details. Signed by Judge Ellen S. Huvelle on April 20, 2016. (AG) (Entered: 04/20/2016) |
| 04/20/2016 | | Set/Reset Deadlines/Hearings: Pretrial Statement due by 6/20/2016. Final Pretrial Conference set for 7/5/2016 at 02:00 PM before Judge Ellen S. Huvelle. (AG) (Entered: 04/20/2016) |
| 04/20/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 4/20/2016. Joint Pretrial Statements due 6/20/16. Bench Trial set for 8/23/2016 at 10:00 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporter Lisa Griffith) (gdf) (Entered: 04/20/2016) |
| 04/21/2016 | 176 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Bradford Collins Patrick terminated. (Patrick, Bradford) (Entered: 04/21/2016) |
| 05/09/2016 | 177 | Consent MOTION to Modify *the Pretrial Scheduling Order*, Consent MOTION to Clarify*the Pretrial Scheduling Order* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Naso, Chad) (Entered: 05/09/2016) |
| 05/09/2016 | 178 | ORDER granting 177 defendant's Consent Motion to Modify and Clarify the Pretrial Scheduling Order. Pretrial Statement due by 8/8/2016. Pretrial Conference CONTINUED to 8/23/2016 at 02:30 PM. Bench Trial set for 8/23, 8/24, and 8/26 CONTINUED to 10/4, 10/5, and 10/7. See order for details. Signed by Judge Ellen S. Huvelle on May 9, 2016. (AG) (Entered: 05/09/2016) |
| 05/19/2016 | 179 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Chad Alan Naso terminated. (Naso, Chad) (Entered: 05/19/2016) |
| 05/25/2016 | 180 | NOTICE of Appearance by Maame Gyamfi on behalf of IVY BROWN (Gyamfi, Maame) (Entered: 05/25/2016) |
| 05/30/2016 | 181 | Consent MOTION for Extension of Time to *Supplement Discovery* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Montee, Amanda) (Entered: 05/30/2016) |
| 05/31/2016 | | MINUTE ORDER granting 181 Consent Motion for Extension of Time: Upon consideration of Defendant's Consent Motion for an Extension of Time for the District of Columbia to Supplement Discovery, and for good cause shown, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the Pretrial Scheduling Order [ECF No. 178] is amended as follows: The District shall produce responsive emails generated from October 2015 to April 22, 2016, on or by June 21, 2016. All other supplemental discovery shall be produced by June 1, |

| | | |
|---|---|---|
| | | 2016. SO ORDERED. Signed by Judge Ellen S. Huvelle on May 31, 2016. (AG) (Entered: 05/31/2016) |
| 05/31/2016 | | Set/Reset Deadlines: Supplemental discovery produce by 6/1/2016. (gdf) (Entered: 05/31/2016) |
| 06/28/2016 | 182 | ENTERED IN ERROR. . . . .Consent MOTION for Leave to File *Motion for Summary Judgment* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit Motion for Summary Judgment, # 4 Exhibit Memorandum in Support of Motion for Summary Judgment, # 5 Exhibit Attachment to Memorandum in Support of Motion for Summary Judgment, # 6 Exhibit Statement of Material Facts for Summary Judgment, # 7 Exhibit Proposed Order Granting Summary Judgment)(Montee, Amanda) Modified on 6/28/2016 (td). (Entered: 06/28/2016) |
| 06/28/2016 | | NOTICE OF CORRECTED DOCKET ENTRY: re 182 Consent MOTION for Leave to File *Motion for Summary Judgment* was entered in error and counsel was instructed to refile said pleading in the correct case number. (ztd) (Entered: 06/28/2016) |
| 06/29/2016 | 183 | NOTICE of Appearance by Conrad Risher on behalf of DISTRICT OF COLUMBIA (Risher, Conrad) (Entered: 06/29/2016) |
| 07/19/2016 | 184 | NOTICE of Appearance by Andrew Braxton Strickland on behalf of IVY BROWN (Strickland, Andrew) (Entered: 07/19/2016) |
| 08/03/2016 | 185 | MOTION in Limine *to Exclude Evidence Related to the Districts Department of Behavioral Health* by IVY BROWN (Attachments: # 1 Exhibit A – Excerpts of 1–7–13 Hearing Tr., # 2 Exhibit B – Excerpt of Def's Interrogatory Responses 2–15–13, # 3 Exhibit C – Excerpts of 4–23–14 Hearing Tr., # 4 Exhibit D – Excerpts of 9–29–15 Hearing Tr.)(Schneider, Brian) (Entered: 08/03/2016) |
| 08/03/2016 | 186 | Memorandum in opposition to re 174 MOTION Exclude Expert, Suzanne Crisp filed by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 08/03/2016) |
| 08/03/2016 | 187 | TRIAL BRIEF by DISTRICT OF COLUMBIA. (Montee, Amanda) (Entered: 08/03/2016) |
| 08/03/2016 | 188 | TRIAL BRIEF by IVY BROWN. (Attachments: # 1 Exhibit DOJ Olmstead Statement)(Schneider, Brian) (Entered: 08/03/2016) |
| 08/05/2016 | 189 | Memorandum in opposition to re 185 MOTION in Limine *to Exclude Evidence Related to the Districts Department of Behavioral Health* filed by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 08/05/2016) |
| 08/08/2016 | 190 | PRETRIAL STATEMENT by IVY BROWN. (Attachments: # 1 Appendix A – Joint Stipulations, # 2 Appendix B – Plaintiff's Witness Schedule, # 3 Appendix C – Defendant's Witness Schedule, # 4 Appendix D – Plaintiff's Exhibit List, # 5 Appendix E – Defendants Exhibit List, # 6 Appendix F – Deposition Designations, # 7 Appendix G – Plaintiff's Demonstrative Exhibit List)(Schneider, Brian) (Entered: 08/08/2016) |
| 08/08/2016 | 191 | ENTERED IN ERROR.....TRIAL BRIEF *in Opposition to Defendant's Trial Brief* by IVY BROWN. (Attachments: # 1 Exhibit A – Report of Roger Auerbach)(Schneider, Brian) Modified on 8/9/2016 (jf). (Entered: 08/08/2016) |

| 08/09/2016 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 191 Trial Brief was entered in error and counsel was instructed to refile said pleading using the correct event. Response to non–motion is the correct event to be selected. (jf) (Entered: 08/09/2016) |
|---|---|---|
| 08/09/2016 | 192 | REPLY re 187 Trial Brief *of Defendant* filed by IVY BROWN. (Attachments: # 1 Exhibit A – Report of Roger Auerbach)(Schneider, Brian) (Entered: 08/09/2016) |
| 08/22/2016 | 193 | NOTICE of Appearance by Shermineh C. Jones on behalf of DISTRICT OF COLUMBIA (Jones, Shermineh) (Entered: 08/22/2016) |
| 08/22/2016 | 194 | NOTICE *of Filing Amended Exhibit Lists – Joint* by IVY BROWN re 190 Pretrial Statement, (Attachments: # 1 Appendix D – Plaintiffs' Amended Exhibit List – 2016_08_22, # 2 Appendix E – Defendant's Amended Exhibit List – 2016_08_22, # 3 Appendix G –Plaintiffs' Amended List of Demonstratives)(Schneider, Brian) (Entered: 08/22/2016) |
| 08/23/2016 | 195 | MOTION for Order *for Reasonable Accommodation* by IVY BROWN (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Declaration Exhibit A, # 4 Declaration Exhibit B)(Majewski, Kristina) (Entered: 08/23/2016) |
| 08/23/2016 | 196 | PRETRIAL ORDER denying 174 plaintiffs' motion in limine re Suzanne Crisp; denying 185 plaintiffs' motion in limine re the Department of Behavioral Health; granting in part and denying in part 195 plaintiffs' motion for order re demonstrative video; setting forth additional pretrial rulings; and setting additional Bench Trial dates for 11/8/2016 and 11/9/2016, at 10:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. See order for details. Signed by Judge Ellen S. Huvelle on August 23, 2016. (AG) (Entered: 08/23/2016) |
| 08/23/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Final Pretrial Conference held on 8/23/2016. Bench Trial remain set for 9/13/16 at 10:00 AM, before Judge Ellen Segal Huvelle (Court Reporter Lisa Griffith) (zgdf) (Entered: 08/31/2016) |
| 08/25/2016 | | Set/Reset Hearings: Bench Trial set for 9/13/2016 at 10:00 AM in Courtroom 23A before Judge Ellen S. Huvelle. Bench Trial set for 9/14/2016, 9/16/2016, 10/4/2016, 10/5/2016, 10/7/2016, 11/8/2016 and 11/9/2016 at 10:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. (gdf) (Entered: 08/25/2016) |
| 08/30/2016 | 197 | NOTICE *of Filing of Plaintiffs' Amended Exhibit List* by IVY BROWN re 190 Pretrial Statement, (Attachments: # 1 Appendix Amended Ex. D to Pretrial Statement (Plaintiffs' Exhibit List))(Schneider, Brian) (Entered: 08/30/2016) |
| 09/01/2016 | 198 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 8–23–16; Page Numbers: 1–57. Date of Issuance:9–1–16. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 2023543247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the |

| | | |
|---|---|---|
| | | transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 9/22/2016. Redacted Transcript Deadline set for 10/2/2016. Release of Transcript Restriction set for 11/30/2016.(Griffith, Lisa) (Entered: 09/01/2016) |
| 09/01/2016 | 199 | MOTION to Quash *Subpoenas of District of Columbia Employees* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Risher, Conrad) (Entered: 09/01/2016) |
| 09/06/2016 | 200 | Memorandum in opposition to re 199 MOTION to Quash *Subpoenas of District of Columbia Employees* filed by IVY BROWN. (Attachments: # 1 Affidavit Declaration in Support of Opposition)(Schneider, Brian) (Entered: 09/06/2016) |
| 09/06/2016 | 201 | ORDER directing plaintiffs, if necessary, to file final live witness list, and, if necessary, setting hearing on motion to quash. See attachment for details. Signed by Judge Ellen S. Huvelle on September 6, 2016. (lcesh1) (Entered: 09/06/2016) |
| 09/06/2016 | 202 | NOTICE *of Filing of Defendant's Objections to Plaintiffs' Amended Exhibit List* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit)(Montee, Amanda) (Entered: 09/06/2016) |
| 09/07/2016 | 203 | NOTICE *Regarding Plaintiffs' Witness List* by IVY BROWN re 201 Order on Motion to Quash (Schneider, Brian) (Entered: 09/07/2016) |
| 09/07/2016 | 204 | REPLY *to Plaintiffs' Notice Regarding Plaintiffs' Witness List (203)* filed by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 09/07/2016) |
| 09/07/2016 | 205 | ORDER confirming September 8, 2016, hearing and requiring plaintiffs to bring to the hearing exhibits to which there are existing objections. See order for details. Signed by Judge Ellen S. Huvelle on September 7, 2016. (lcesh1) (Entered: 09/07/2016) |
| 09/08/2016 | | Minute Order: Motion Hearing held before Judge Ellen S. Huvelle on 9/8/2016, granting 199 Motion to Quash Subpoena. (Court Reporter Patricia Kaneshiro–Miller) (nbn) (Entered: 09/08/2016) |
| 09/08/2016 | 206 | ORDER granting 199 defendant's motion to quash subpoenas, ruling on 202 defendant's objections to plaintiffs' amended exhibit list, setting plaintiffs' witness schedule for trial, and setting other deadlines. See Order for details. Signed by Judge Ellen S. Huvelle on September 8, 2016. (lcesh1) (Entered: 09/08/2016) |
| 09/09/2016 | 207 | NOTICE *of examination plans* by DISTRICT OF COLUMBIA (Risher, Conrad) (Entered: 09/09/2016) |
| 09/10/2016 | 208 | NOTICE *Regarding Anticipated Witness Schedule* by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS (Andersen, Alison) (Entered: 09/10/2016) |
| 09/12/2016 | 209 | NOTICE *of Filing Plaintiffs' Exhibit List* by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS (Attachments: # 1 Revised Exhibit List)(Andersen, Alison) (Entered: 09/12/2016) |
| 09/12/2016 | 210 | NOTICE by DISTRICT OF COLUMBIA re 196 Order on Motion for Miscellaneous Relief, Order on Motion in Limine, Order on Motion for Order, Set/Reset |

| | | Deadlines/Hearings,,,,,,,, (Jones, Shermineh) (Entered: 09/12/2016) |
|---|---|---|
| 09/13/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial begun and held on 9/13/2016. Plaintiff's Witnesses: Larry McDonald, Orit Simhoni, Tijuana Tucker and Randy Smith. Bench Trial continued to 9/14/2016 at 10:15 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporters: Lisa Griffith,AM; Jeff Hook,PM) (zgdf) (Entered: 09/13/2016) |
| 09/14/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and held on 9/14/2016. Plaintiff's Witnesses: Ivy Brown, Randy Smith and Leyla Sarigol. Bench Trial continued to 9/16/2016 at 10:15 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporters: Lisa Griffith,AM; Jeff Hook,PM) (gdf) (Entered: 09/14/2016) |
| 09/16/2016 | 211 | SCHEDULING ORDER: Setting deadlines for filing of defendant's exhibit list, defendant's witness list, and plaintiffs' objections to defendant's exhibits. Setting additional trial dates for November 15, 16, and 18, 2016, at 10:00 AM in Courtroom 23A. See Order for details. Signed by Judge Ellen S. Huvelle on September 16, 2016. (lcesh1) (Entered: 09/16/2016) |
| 09/16/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and held on 9/16/2016. Plaintiff's Witnesses: Leyla Sarigol and Claudia Schlosberg. Bench Trial continued to 10/4/2016 at 10:15 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporters: Lisa Griffith,AM; Jeff Hook,PM) (gdf) (Entered: 09/19/2016) |
| 09/20/2016 | 212 | AFFIDAVIT *of Plaintiffs' Expert Witness Roger Auerbach* by IVY BROWN. (Schneider, Brian) (Entered: 09/20/2016) |
| 09/22/2016 | 213 | Joint MOTION Seal Exhibit Lists re 190 Pretrial Statement, 194 Notice (Other), by IVY BROWN (Attachments: # 1 Text of Proposed Order)(Andersen, Alison) (Entered: 09/22/2016) |
| 09/22/2016 | 214 | NOTICE *of Witness Schedule* by DISTRICT OF COLUMBIA (Montee, Amanda) (Entered: 09/22/2016) |
| 09/22/2016 | 215 | ORDER granting 213 Joint Motion to Seal Filings. See Order for details. Signed by Judge Ellen S. Huvelle on September 22, 2016. (lcesh1) (Entered: 09/22/2016) |
| 09/22/2016 | 216 | NOTICE *of Filing of Defendant's Exhibit List* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit List)(Montee, Amanda) (Entered: 09/22/2016) |
| 09/28/2016 | 217 | NOTICE *of Filing of Amended Witness List* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit)(Montee, Amanda) (Entered: 09/28/2016) |
| 09/30/2016 | 218 | NOTICE *of Plaintiffs' Objections to Defendant's Exhibits and Witness Schedule* by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, DENISE RIVERS (Attachments: # 1 Plaintiffs' Objections to Defendant's Exhibits)(Schneider, Brian) (Entered: 09/30/2016) |
| 09/30/2016 | 219 | NOTICE *of Plaintiffs' Amended Objections to Defendant's Exhibits and Witness Schedule* by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, ROY FOREMAN, LARRY MCDONALD, DENISE RIVERS (Attachments: # 1 Plaintiffs' Amended Objections to Defendant's Exhibits)(Schneider, Brian) (Entered: 09/30/2016) |

| | | |
|---|---|---|
| 10/04/2016 | 220 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on Septeber 8, 2016; Page Numbers: 1–50. Date of Issuance:October 4, 2016. Court Reporter/Transcriber Pat Kaneshiro–Miller, Telephone number 202–354–3243, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court report er referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/25/2016. Redacted Transcript Deadline set for 11/4/2016. Release of Transcript Restriction set for 1/2/2017.(pk) (Entered: 10/04/2016) |
| 10/04/2016 | 221 | ORDER on 219 plaintiffs' objections to defendant's exhibits and witness schedule and setting time and subject–matter limitations for defense witnesses. See order for details. Signed by Judge Ellen S. Huvelle on October 4, 2016. (lcesh1) (Entered: 10/04/2016) |
| 10/04/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and held on 10/4/2016. Plaintiff Witnesses: Brenda Fisher and Jennifer Crawley. Bench Trial set for 10/5/2016 at 10:15 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporters: Lisa Griffith, AM; Barbara DeVico, PM.) (gdf) (Entered: 10/04/2016) |
| 10/05/2016 | 222 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 10–4–16; Page Numbers: 1–99. Date of Issuance:10–5–16. Court Reporter/Transcriber Barbara DeVico, Telephone number 202–354–3118, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 10/26/2016. Redacted Transcript Deadline set for 11/5/2016. Release of Transcript Restriction set for 1/3/2017.(DeVico, Barbara) (Entered: 10/05/2016) |
| 10/05/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and held on 10/5/2016. Plaintiff Witnesses: Gerald Kasunic and Roger Auerbach. Bench Trial continued to 10/7/16 at 10:30 AM in Courtroom 23A, before Judge Ellen Segal Huvelle. (Court Reporters: Lisa Griffith,AM; Jeff Hook,PM) (gdf) |

| | | (Entered: 10/11/2016) |
|---|---|---|
| 10/06/2016 | 223 | MOTION for Judgment as a Matter of Law by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Montee, Amanda) (Entered: 10/06/2016) |
| 10/07/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and held on 10/7/2016. Defense Witness: Laura Newland. Bench Trial set for 11/8/2016 at 10:15 AM in Courtroom 23A before Judge Ellen S. Huvelle. Defendant shall, by October 14, 2016, identify the sources underlying the data to its demonstrative exhibits (119 and 120). Plaintiff's response due by 10/28/2016. Reply due by 11/4/2016. (Court Reporters: Lisa Griffith,AM; Jeff Hook,PM.) (gdf) (Entered: 10/11/2016) |
| 10/28/2016 | 224 | MOTION for Leave to File Excess Pages by IVY BROWN (Rifkin, Marjorie) (Entered: 10/28/2016) |
| 10/28/2016 | 225 | Memorandum in opposition to re 223 MOTION for Judgment as a Matter of Law filed by IVY BROWN. (Attachments: # 1 Exhibit EPD Waiver Renewal 2016)(Rifkin, Marjorie) (Entered: 10/28/2016) |
| 10/31/2016 | | MINUTE ORDER: It is hereby ORDERED that 224 plaintiffs' Motion for Leave to File Excess Pages is GRANTED. Signed by Judge Ellen S. Huvelle on October 31, 2016. (AG) (Entered: 10/31/2016) |
| 11/04/2016 | 226 | REPLY to opposition to motion re 223 MOTION for Judgment as a Matter of Law filed by DISTRICT OF COLUMBIA. (Montee, Amanda) (Entered: 11/04/2016) |
| 11/08/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and held on 11/8/2016. Defense Witnesses: Laura Newland, Dr. Sharon Lewis and Hammere Gebreyes. Bench Trial continued to 11/9/2016 at 10:00 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporters: Barbara DeVico,AM; Jeff Hook,PM) (gdf) (Entered: 11/09/2016) |
| 11/09/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and held on 11/9/2016. Defense Witnesses: Ron McCoy and Claudia Schlosberg. Bench Trial continued to 11/15/2016 at 10:00 AM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporters: Jeff Hook,AM; Barbara DeVico,PM) (gdf) (Entered: 11/09/2016) |
| 11/14/2016 | | Set/Reset Hearings: Bench Trial reset for 11/15/2016 at 01:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. (hs) (Entered: 11/14/2016) |
| 11/15/2016 | 227 | SCHEDULING ORDER. Simultaneous submission of Findings of Fact and Conclusions of Law, not to exceed 40 pages per side, due January 30, 2017. Simultaneous replies, not to exceed 20 pages per side, due March 10, 2017. Two (2) courtesy copies and USB containing electronic briefs and PDF files of evidence and case law cited. See Order for details. Signed by Judge Ellen S. Huvelle on November 15, 2016. (lcesh1) (Entered: 11/15/2016) |
| 11/15/2016 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Bench Trial resumed and concluded on 11/15/2016. Defense Witness: Nathan Bovelle. (Court Reporter: Barbara DeVico) (gdf) (Entered: 11/16/2016) |
| 11/15/2016 | 228 | Trial Exhibit List of the Plaintiff, Defendant and Court. (gdf) (Entered: 11/16/2016) |

| 11/17/2016 | | Set/Reset Deadlines: Finding of Facts and Conclusions of Law due by 1/30/2017. Replies due by 3/10/2017. (gdf) (Entered: 11/17/2016) |
|---|---|---|
| 11/17/2016 | 229 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Shermineh C. Jones terminated. (Jones, Shermineh) (Entered: 11/17/2016) |
| 11/18/2016 | 230 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 11–15–16; Page Numbers: 1–94. Date of Issuance:11–18–16. Court Reporter/Transcriber Barbara DeVico, Telephone number 202–354–3118, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/9/2016. Redacted Transcript Deadline set for 12/19/2016. Release of Transcript Restriction set for 2/16/2017.(DeVico, Barbara) (Entered: 11/18/2016) |
| 01/17/2017 | 231 | NOTICE *of Death* by ROY FOREMAN (Rifkin, Marjorie) (Entered: 01/17/2017) |
| 01/30/2017 | 232 | Proposed Findings of Fact by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. (Schneider, Brian) (Entered: 01/30/2017) |
| 01/30/2017 | 233 | Proposed Findings of Fact by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 01/30/2017) |
| 01/31/2017 | 234 | MOTION to Strike 233 Proposed Findings of Fact by IVY BROWN (Attachments: # 1 Memorandum in Support Memo, # 2 Text of Proposed Order Proposed Order)(Bagby, Kelly) (Entered: 01/31/2017) |
| 01/31/2017 | 235 | MOTION for Leave to File Excess Pages *nunc pro tunc* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Risher, Conrad) (Entered: 01/31/2017) |
| 01/31/2017 | 236 | Memorandum in opposition to re 235 MOTION for Leave to File Excess Pages *nunc pro tunc* filed by IVY BROWN. (Bagby, Kelly) (Entered: 01/31/2017) |
| 01/31/2017 | 237 | Memorandum in opposition to re 234 MOTION to Strike 233 Proposed Findings of Fact filed by DISTRICT OF COLUMBIA. (See Docket Entry 235 to view document). (znmw) (Entered: 02/01/2017) |
| 02/01/2017 | 238 | ORDER DENYING 234 plaintiffs' Motion to Strike and GRANTING 235 defendant's Motion for Leave to File Excess Pages. The parties shall comply with the |

| | | |
|---|---|---|
| | | 227 November 15, 2016 Scheduling Order and all Local Rules when submitting their simultaneous replies. See Order for details. Signed by Judge Ellen S. Huvelle on February 1, 2017. (lcesh1) (Entered: 02/01/2017) |
| 03/10/2017 | 239 | RESPONSE re 233 Proposed Findings of Fact filed by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. (Andersen, Alison) (Entered: 03/10/2017) |
| 03/10/2017 | 240 | RESPONSE re 232 Proposed Findings of Fact filed by DISTRICT OF COLUMBIA. (Montee, Amanda) (Entered: 03/10/2017) |
| 03/28/2017 | 241 | NOTICE OF SUPPLEMENTAL AUTHORITY by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit AARP PPI Promising Practices paper)(Risher, Conrad) (Entered: 03/28/2017) |
| 03/28/2017 | 242 | RESPONSE re 241 NOTICE OF SUPPLEMENTAL AUTHORITY filed by IVY BROWN. (Rifkin, Marjorie) (Entered: 03/28/2017) |
| 04/12/2017 | 243 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN. Attorney Jennifer Rachel Lav terminated. (Lav, Jennifer) (Entered: 04/12/2017) |
| 06/07/2017 | 244 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN. Attorney Andrew Braxton Strickland terminated. (Strickland, Andrew) (Entered: 06/07/2017) |
| 06/20/2017 | 245 | NOTICE OF SUPPLEMENTAL AUTHORITY by DISTRICT OF COLUMBIA (Attachments: # 1 Supplement, # 2 Supplement, # 3 Supplement, # 4 Supplement)(Montee, Amanda) (Entered: 06/20/2017) |
| 06/20/2017 | 246 | REPLY to Notice of Supplemental Authority filed by IVY BROWN. (Attachments: # 1 Exhibit Number 1)(Bagby, Kelly) (Entered: 06/20/2017) |
| 06/23/2017 | 247 | NOTICE OF SUPPLEMENTAL AUTHORITY by IVY BROWN (Attachments: # 1 Exhibit DL Decision, # 2 Exhibit DL Order)(Rifkin, Marjorie) (Entered: 06/23/2017) |
| 07/07/2017 | | MINUTE ORDER: It is hereby ORDERED that the parties shall appear for oral argument on the parties' proposed findings of fact and conclusions of law at 2:30 p.m. on Thursday, July 20, 2017, in Courtroom 23A. The Court will provide the parties with specific questions and/or areas of interest prior to the hearing. SO ORDERED. Signed by Judge Ellen S. Huvelle on July 7, 2017. (lcesh1) (Entered: 07/07/2017) |
| 07/07/2017 | | Set/Reset Hearings: Oral Argument set for 7/20/2017 at 02:30 PM in Courtroom 23A before Judge Ellen S. Huvelle. (hs) (Entered: 07/07/2017) |
| 07/12/2017 | 248 | NOTICE TO COUNSEL with topics of inquiry for July 20, 2017 Hearing. See Notice for details. Signed by Judge Ellen S. Huvelle on July 12, 2017. (lcesh1) Modified on 7/12/2017 to correct date of hearing(AG). (Entered: 07/12/2017) |
| 07/18/2017 | 249 | NOTICE OF SUPPLEMENTAL AUTHORITY by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit Opinion)(Risher, Conrad) (Entered: 07/18/2017) |
| 07/20/2017 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Oral arguments held and heard on 7/20/2017 re 223 MOTION for Judgment as a Matter of Law. (Court Reporter Lisa Griffith) (jl) (Entered: 07/21/2017) |
| 07/21/2017 | 250 | ORDER directing the District to file case citations and the "inactive list" (as of November 8, 2016) by 5:00 p.m. on July 24, 2017. See Order for details. Signed by Judge Ellen S. Huvelle on July 21, 2017. (lcesh1) (Entered: 07/21/2017) |

| 07/21/2017 | | Set/Reset Deadlines: Case citations and the "inactive list" due by 7/24/2017, by 5:00 pm. (gdf) (Entered: 07/21/2017) |
|---|---|---|
| 07/24/2017 | 251 | NOTICE by DISTRICT OF COLUMBIA (Montee, Amanda) (Entered: 07/24/2017) |
| 07/24/2017 | 252 | RESPONSE TO ORDER OF THE COURT by DISTRICT OF COLUMBIA re 250 Order (Attachments: # 1 Declaration)(Risher, Conrad) Modified event title on 7/25/2017 (znmw). (Entered: 07/24/2017) |
| 07/28/2017 | 253 | RESPONSE *to Defendant's Supplemental Submissions to the Court* filed by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS. (Andersen, Alison) (Entered: 07/28/2017) |
| 08/01/2017 | 254 | RESPONSE re 253 Response to Document *Submitted to the Court* filed by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 08/01/2017) |
| 08/21/2017 | 255 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 7–20–17; Page Numbers: 1–108. Date of Issuance:8–21–17. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354–3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 9/11/2017. Redacted Transcript Deadline set for 9/21/2017. Release of Transcript Restriction set for 11/19/2017.(Griffith, Lisa) (Entered: 08/21/2017) |
| 09/13/2017 | 256 | ORDER dismissing Counts I and II of Plaintiffs' Fourth Amended Complaint; denying as moot 223 defendant's Motion for Judgment as a Matter of Law; and directing the Clerk to enter final judgment for defendant. An accompanying Memorandum Opinion will be filed (ECF No. 257 ). Signed by Judge Ellen S. Huvelle on September 13, 2017. (AG) (Entered: 09/13/2017) |
| 09/13/2017 | 257 | MEMORANDUM OPINION accompanying 256 Order. Signed by Judge Ellen S. Huvelle on September 13, 2017. (AG) (Entered: 09/13/2017) |
| 09/18/2017 | 258 | CLERK'S JUDGMENT in favor of Defendant District of Columbia against Plaintiffs Ivy Brown, et al. Entered by the Deputy Clerk on 9/18/17. (gdf) (Entered: 09/18/2017) |
| 10/06/2017 | 259 | BILL OF COSTS by DISTRICT OF COLUMBIA. (Montee, Amanda) (Entered: 10/06/2017) |
| 10/18/2017 | 260 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 258 Clerk's Judgment by IVY BROWN. Filing fee $ 505, receipt number 0090–5164237. Fee Status: Fee Paid. Parties have been notified. (Bagby, Kelly) (Entered: 10/18/2017) |
| 10/19/2017 | 261 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 260 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 10/19/2017) |

| 10/20/2017 | 262 | RESPONSE re 259 Bill of Costs filed by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Schneider, Brian) (Entered: 10/20/2017) |
|---|---|---|
| 10/25/2017 | 263 | REPLY re 262 Response to Document 259 filed by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 10/25/2017) |
| 10/30/2017 | | USCA Case Number 17−7152 for 260 Notice of Appeal to DC Circuit Court filed by IVY BROWN. (zrdj) (Entered: 10/31/2017) |
| 12/01/2017 | 264 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 4−20−16; Page Numbers: 1−23. Date of Issuance:12−1−17. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. Af ter 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/22/2017. Redacted Transcript Deadline set for 1/1/2018. Release of Transcript Restriction set for 3/1/2018.(Griffith, Lisa) Modified date of hearing on 12/4/2017 (znmw). (Entered: 12/01/2017) |
| 01/11/2018 | 265 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 9−13−16 A.M.; Page Numbers: 1−160. Date of Issuance:1−11−18. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/1/2018. Redacted Transcript Deadline set for 2/11/2018. Release of Transcript Restriction set for 4/11/2018.(Griffith, Lisa) (Entered: 01/11/2018) |
| 01/11/2018 | 266 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 9−14−16 a.m.; Page Numbers: 1−80. Date of Issuance:1−11−18. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order |

| | | |
|---|---|---|
| | | Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/1/2018. Redacted Transcript Deadline set for 2/11/2018. Release of Transcript Restriction set for 4/11/2018.(Griffith, Lisa) (Entered: 01/11/2018) |
| 01/11/2018 | 267 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 9−16−16 a.m.; Page Numbers: 1−118. Date of Issuance:1−11−18. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/1/2018. Redacted Transcript Deadline set for 2/11/2018. Release of Transcript Restriction set for 4/11/2018.(Griffith, Lisa) (Entered: 01/11/2018) |
| 01/11/2018 | 268 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 10−4−16 a.m.; Page Numbers: 1−173. Date of Issuance:1−11−18. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/1/2018. Redacted Transcript Deadline set for 2/11/2018. Release of Transcript Restriction set for 4/11/2018.(Griffith, Lisa) (Entered: 01/11/2018) |
| 01/11/2018 | 269 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 10−5−16 a.m.; Page Numbers: 1−158. Date of Issuance:1−11−18. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court |

| | | |
|---|---|---|
| | | reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/1/2018. Redacted Transcript Deadline set for 2/11/2018. Release of Transcript Restriction set for 4/11/2018.(Griffith, Lisa) (Entered: 01/11/2018) |
| 01/11/2018 | 270 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 10−7−16 a.m.; Page Numbers: 1−95. Date of Issuance:1−11−18. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/1/2018. Redacted Transcript Deadline set for 2/11/2018. Release of Transcript Restriction set for 4/11/2018.(Griffith, Lisa) (Entered: 01/11/2018) |
| 01/16/2018 | 271 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 11−8−16; Page Numbers: 1−102. Date of Issuance:1−16−18. Court Reporter/Transcriber Barbara DeVico, Telephone number 202−354−3118, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/6/2018. Redacted Transcript Deadline set for 2/16/2018. Release of Transcript Restriction set for 4/16/2018.(DeVico, Barbara) (Entered: 01/16/2018) |
| 01/16/2018 | 272 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 11−9−16; Page Numbers: 1−102. Date of Issuance:1−16−18. Court Reporter/Transcriber Barbara DeVico, Telephone number 202−354−3118, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased |

| | | |
|---|---|---|
| | | from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/6/2018. Redacted Transcript Deadline set for 2/16/2018. Release of Transcript Restriction set for 4/16/2018.(DeVico, Barbara) (Entered: 01/16/2018) |
| 01/16/2018 | 273 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 10−4−16; Page Numbers: 1−99. Date of Issuance:1−16−18. Court Reporter/Transcriber Barbara DeVico, Telephone number 202−354−3118, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/6/2018. Redacted Transcript Deadline set for 2/16/2018. Release of Transcript Restriction set for 4/16/2018.(DeVico, Barbara) (Main Document 273 replaced on 1/17/2018) (znmw). (Entered: 01/16/2018) |
| 01/17/2018 | 274 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on September 13, 2016; Page Numbers: 1 − 111. Date of Issuance: January 17, 2018. Court Reporter: Jeff Hook. Telephone number: 202−354−3373. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referen ced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/17/2018. Release of Transcript Restriction set for 4/17/2018.(Hook, Jeff) (Entered: 01/17/2018) |
| 01/17/2018 | 275 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on September 14, 2016; Page Numbers: 1 − 96. Date of Issuance: January 17, 2018. Court Reporter: Jeff Hook. Telephone number: 202−354−3373. Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter reference d above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/17/2018. Release of Transcript Restriction set for 4/17/2018.(Hook, Jeff) (Entered: 01/17/2018) |
| 01/17/2018 | 276 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on September 16, 2016; Page Numbers: 1 – 112. Date of Issuance: January 17, 2018. Court Reporter: Jeff Hook. Telephone number: 202−354−3373. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referen ced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/17/2018. Release of Transcript Restriction set for 4/17/2018.(Hook, Jeff) (Entered: 01/17/2018) |
| 01/17/2018 | 277 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on October 5, 2016; Page Numbers: 1 – 69. Date of Issuance: January 17, 2018. Court Reporter: Jeff Hook. Telephone number: 202−354−3373. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal |

| | | |
|---|---|---|
| | | identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/17/2018. Release of Transcript Restriction set for 4/17/2018.(Hook, Jeff) (Entered: 01/17/2018) |
| 01/17/2018 | 278 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on October 7, 2016; Page Numbers: 1 – 113. Date of Issuance: January 17, 2018. Court Reporter: Jeff Hook. Telephone number: 202–354–3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/17/2018. Release of Transcript Restriction set for 4/17/2018.(Hook, Jeff) (Entered: 01/17/2018) |
| 01/17/2018 | 279 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on November 8, 2016; Page Numbers: 1 – 109. Date of Issuance: January 17, 2018. Court Reporter: Jeff Hook. Telephone number: 202–354–3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter reference d above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/17/2018. Release of Transcript Restriction set for 4/17/2018.(Hook, Jeff) (Entered: 01/17/2018) |

| 01/17/2018 | 280 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on November 9, 2016; Page Numbers: 1 – 114. Date of Issuance: January 17, 2018. Court Reporter: Jeff Hook. Telephone number: 202–354–3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter reference d above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/17/2018. Release of Transcript Restriction set for 4/17/2018.(Hook, Jeff) (Entered: 01/17/2018) |
| 08/13/2019 | 281 | MANDATE of USCA as to 260 Notice of Appeal to DC Circuit Court filed by IVY BROWN ; USCA Case Number 17–7152. (Attachments: # 1 USCA Judgment)(zrdj) (Entered: 08/14/2019) |
| 08/14/2019 |  | MINUTE ORDER: Since the mandate from the Court of Appeals has been issued (ECF No. 281 ), it is hereby ORDERED that a status conference is set for Monday, September 16, 2019, at 2:00 p.m. in Courtroom 23A. It is further ORDERED that the parties shall file a joint status report by Wednesday, September 11, 2019. The report should include a proposed schedule for future proceedings, including what issues will be in dispute and what additional discovery will be needed to address these issues, and a proposal for future settlement discussions. Signed by Judge Ellen S. Huvelle on August 14, 2019. (AG) (Entered: 08/14/2019) |
| 08/16/2019 |  | Set/Reset Deadlines: Status Report due by 9/11/2019; Set/Reset Hearings:Status Conference set for 9/16/2019 at 02:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. (tj) (Entered: 08/16/2019) |
| 08/22/2019 | 282 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN. Attorney Kristina J. Majewski terminated. (Majewski, Kristina) (Entered: 08/22/2019) |
| 08/26/2019 | 283 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN. Attorney Lyndsay Ayanna Niles terminated. (Niles, Lyndsay) (Entered: 08/26/2019) |
| 08/29/2019 | 284 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. Attorney Iris Y. Gonzalez terminated. (Bagby, Kelly) (Entered: 08/29/2019) |
| 09/11/2019 | 285 | NOTICE OF SUBSTITUTION OF COUNSEL by Scott Patrick Kennedy on behalf of DISTRICT OF COLUMBIA Substituting for attorney Amanda J. Montee (Kennedy, Scott) (Entered: 09/11/2019) |
| 09/11/2019 | 286 |  |

| | | |
|---|---|---|
| | | Joint STATUS REPORT by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit Attachment 1, Excerpt, DC Register, 2/15/2019)(Bagby, Kelly) (Entered: 09/11/2019) |
| 09/13/2019 | 287 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Martha Geron Gadd, :Firm– AARP Foundation, :Address– 601 E St., NW, Washington, DC 20049. Phone No. – 202–434–2060. Fax No. – 202–434–6424 Filing fee $ 100, receipt number 0090–6375394. Fee Status: Fee Paid. by IVY BROWN (Attachments: # 1 Declaration Declaration in Support, # 2 Text of Proposed Order Proposed Order)(Bagby, Kelly) (Entered: 09/13/2019) |
| 09/13/2019 | | MINUTE ORDER granting 287 Motion for Leave to Appear Pro Hac Vice: Pursuant to LCvR 83.2(d), it is hereby ORDERED that plaintiffs' motion for leave for Martha Geron Gadd to appear pro hac vice in the above–entitled action is GRANTED. Signed by Judge Ellen S. Huvelle on September 12, 2019. (AG) (Entered: 09/13/2019) |
| 09/16/2019 | 288 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. Attorney Barbara S. Wahl terminated. (Wahl, Barbara) (Entered: 09/16/2019) |
| 09/16/2019 | 289 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. Attorney Brian D. Schneider terminated. (Schneider, Brian) (Entered: 09/16/2019) |
| 09/16/2019 | 290 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. Attorney Alison L. Andersen terminated. (Andersen, Alison) (Entered: 09/16/2019) |
| 09/16/2019 | | Minute Entry for Status Conference held on 9/16/2019 before Judge Ellen S. Huvelle. Status Conference set for 1/21/2020 at 2:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. Bench Trial set for 5/14/2020 at 9:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. Order setting deadlines and scheduling next hearings to be issued from chambers. Court Reporter Lisa Griffith. (zjch) (Entered: 09/17/2019) |
| 09/17/2019 | 291 | SCHEDULING ORDER. Status Conference set for January 21, 2020, at 2:00 p.m. in Courtroom 23A. All discovery completed by April 16, 2020. Bench trial set to begin on May 14, 2020. See order for additional details and deadlines. Signed by Judge Ellen S. Huvelle on September 17, 2019. (AG) (Entered: 09/17/2019) |
| 09/17/2019 | | Set/Reset Deadlines/Hearings: Discovery due by 12/2/2019. Plaintiff Rule 26(a)(2) due by 2/16/2019. Defendant Rule 26(a)(2) due by 3/16/2019. Status Conference set for 1/21/2020 at 02:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. (zgdf) (Entered: 09/17/2019) |
| 09/19/2019 | | Set/Reset Deadlines: Discovery due by 4/16/2019. (zgdf) (Entered: 09/19/2019) |
| 10/10/2019 | 292 | TRANSCRIPT OF PROCEEDINGS before Judge Ellen S. Huvelle held on 9–16–19; Page Numbers: 1–43. Date of Issuance:10–10–19. Court Reporter Lisa Griffith, Telephone number (202) 354–3247, Transcripts may be ordered by submitting the Transcript Order Form. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter |

| | | |
|---|---|---|
| | | referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/31/2019. Redacted Transcript Deadline set for 11/10/2019. Release of Transcript Restriction set for 1/8/2020.(Griffith, Lisa) (Entered: 10/10/2019) |
| 10/15/2019 | 293 | NOTICE of Appearance by Kathleen Lillian Millian on behalf of IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Millian, Kathleen) (Entered: 10/15/2019) |
| 10/15/2019 | 294 | NOTICE of Appearance by Todd A. Gluckman on behalf of IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Gluckman, Todd) (Entered: 10/15/2019) |
| 10/15/2019 | 295 | NOTICE of Appearance by Patrick Andre Sheldon on behalf of IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Sheldon, Patrick) (Entered: 10/15/2019) |
| 10/16/2019 | 296 | NOTICE of Appearance by Michael L. Huang on behalf of IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Huang, Michael) (Entered: 10/16/2019) |
| 10/16/2019 | 297 | Unopposed MOTION to Clarify re 291 Order, by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Sheldon, Patrick) (Entered: 10/16/2019) |
| 10/17/2019 | | MINUTE ORDER granting 297 Unopposed Motion to Clarify: Upon consideration of Plaintiffs' Unopposed Motion for Clarification of the Scheduling Order of September 17, 2019, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that all requests for admission shall be propounded by January 31, 2020, with responses completed by March 2, 2020. Each side is limited to no more than 25 requests for admission, including subparts; and it is further ORDERED that the Class Decertification deadline set forth in the Scheduling Order of September 17, 2019 is amended to state that motions to decertify the class shall not be filed until after the trial. All other deadlines in the Scheduling Order of September 17, 2019, remain as previously scheduled. Signed by Judge Ellen S. Huvelle on October 17, 2019. (AG) (Entered: 10/17/2019) |
| 10/17/2019 | | Set/Reset Deadlines/Hearings: Request for Admissions due by 1/31/2020. Responses due by 3/2/2020. (zjch) (Entered: 10/17/2019) |
| 11/25/2019 | 298 | Joint MOTION for Extension of Time to *Respond to Document Requests and Interrogatories* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 11/25/2019) |
| 11/25/2019 | | MINUTE ORDER granting 298 Joint Motion for Extension of Time: Upon consideration of the Joint Motion for Extension of Deadline for Responses to |

| | | Document Requests and Interrogatories, it is hereby ORDERED that the parties' Motion is GRANTED; and it is further ORDERED that the responses to document requests and interrogatories that were propounded on October 16, 2019 shall be completed by December 9, 2019. Signed by Judge Ellen S. Huvelle on November 25, 2019. (AG) (Entered: 11/25/2019) |
|---|---|---|
| 11/25/2019 | | Set/Reset Deadlines: Document requests and interrogatories Responses due by 12/9/2019 (zjch) (Entered: 11/26/2019) |
| 12/31/2019 | 299 | NOTICE *REGARDING INJUNCTIVE RELIEF* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Bagby, Kelly) (Entered: 12/31/2019) |
| 01/07/2020 | 300 | NOTICE *REGARDING FUNDAMENTAL ALTERATION DEFENSE* by DISTRICT OF COLUMBIA (Kennedy, Scott) (Entered: 01/07/2020) |
| 01/13/2020 | 301 | ORDER setting schedule for briefing on discovery disputes. See order for details. Signed by Judge Ellen S. Huvelle on January 13, 2020. (AG) (Entered: 01/13/2020) |
| 01/13/2020 | | Set/Reset Deadlines/Hearings: Plaintiffs' memorandum by Friday, January 17, 2020, at 5:00 p.m. Defendant's memorandum by Monday, January 20, 2020, at 5:00 p.m. Personal Identifying Information by Friday 1/20/2020, at 5:00 p.m. Status Conference set for 1/21/2020 at 2:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. (zgdf) (Entered: 01/14/2020) |
| 01/13/2020 | | Minute Entry for Telephone Conference proceedings held on 1/13/2020 before Judge Ellen S. Huvelle in Chambers. (Court Reporter William Zaremba) (zgdf) (Entered: 01/15/2020) |
| 01/17/2020 | 302 | MOTION to Compel *the Centers for Medicare and Medicaid Services to Produce Information in Response to Plaintiffs' Subpoena* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Exhibit 1 (Subpoena to CMS, November 18, 2019), # 2 Exhibit 2 (Affidavit of Service of Subpoena, November 21, 2019), # 3 Exhibit 3 (CMSs Objections to the Subpoena, November 29, 2019), # 4 Exhibit 4 (Affidavit of Kelly Bagby, January 17, 2020), # 5 Exhibit 5 (Email to CMS Narrowing Request, December 16, 2019), # 6 Exhibit 6 (Excerpt of Plaintiffs Second Request for Production of Documents, October 16, 2019), # 7 Exhibit 7 (Excerpt of the Districts Responses and Objections to Plaintiffs Second Request for Production of Documents, December 9, 2019), # 8 Exhibit 8 (Protective Order, ECF 58, July 7, 2012), # 9 Exhibit 9 (Exhibit A to the Protective Order, ECF 58–1, July 7, 2012), # 10 Text of Proposed Order)(Bagby, Kelly) (Entered: 01/17/2020) |
| 01/17/2020 | 303 | MEMORANDUM re 301 Order by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 1 (Second Request for Production of Documents to District of Columbia), # 2 Exhibit 2 (Emails between Plaintiffs and District, October 22–November 6, 2019), # 3 Exhibit 3 (Email from T. Gluckman to S. Kennedy, November 11, 2019), # 4 Exhibit 4 (Email from S. Kennedy to T. Gluckman, November 15, 2019), # 5 Exhibit 5 (Emails between Plaintiffs and District, December 11–12, 2019), # 6 Exhibit 6 (Letter from Plaintiffs to District, December 20, 2019), # 7 Exhibit 7 (Emails between Plaintiffs and District, December 31, 2019–January 2, 2020), # 8 Exhibit 8 (District's Letter to Plaintiffs, January 6, 2020), # 9 Exhibit 9 (Email from P. Sheldon to S. Kennedy, January 9, 2020), # 10 Exhibit 10 (Emails between Plaintiffs and District, January 13–14, 2020), # 11 Exhibit 11 (Email from P. Sheldon to S. Kennedy, January 14, 2020), # 12 Exhibit 12 (District Letter to Court, January 13, 2020), # 13 Exhibit 13 (Protective Order), # 14 Exhibit 14 (Email from S. Kennedy to P. Sheldon, January 17, 2020), # 15 Exhibit 15 |

| | | |
|---|---|---|
| | | (Email from T. Gluckman to S. Kennedy, January 17, 2020))(Bagby, Kelly) (Entered: 01/17/2020) |
| 01/17/2020 | 304 | MEMORANDUM by DISTRICT OF COLUMBIA. (Kennedy, Scott) (Entered: 01/17/2020) |
| 01/17/2020 | | MINUTE ORDER: It is hereby ORDERED that the Status Conference/Preliminary Approval Hearing presently set for Wednesday, January 22, 2020, is CONTINUED until Monday, January 27, 2020, at 2:00 p.m. Signed by Judge Ellen S. Huvelle on January 17, 2020. (AG) (Entered: 01/17/2020) |
| 01/17/2020 | | MINUTE ORDER: It is hereby ORDERED that the Minute Order filed today continuing a status conference is VACATED and should be marked ENTERED IN ERROR by the Clerk. Signed by Judge Ellen S. Huvelle on January 17, 2020. (AG) (Entered: 01/17/2020) |
| 01/20/2020 | 305 | MEMORANDUM re 301 Order by DISTRICT OF COLUMBIA. (Kennedy, Scott) (Entered: 01/20/2020) |
| 01/21/2020 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 1/21/2020. Scheduling order forthcoming. Status Conference set for 3/30/2020 at 2:00 PM in Courtroom 23A before Judge Ellen S. Huvelle. (Court Reporter: Bryan Wayne) (zgdf) (Entered: 01/21/2020) |
| 01/21/2020 | 306 | ORDER resolving discovery disputes, amending discovery schedule, and setting Status Conference for March 30, 2020, at 2:00 p.m. in Courtroom 23A. See Order for details. Signed by Judge Ellen S. Huvelle on January 21, 2020. (AG) (Entered: 01/21/2020) |
| 01/21/2020 | | Set/Reset Deadlines: Plaintiff Rule 26(a)(2) due by 4/24/2020. Defendant Rule 26(a)(2) due by 2/25/2020. (zgdf) (Entered: 01/23/2020) |
| 01/22/2020 | 307 | CERTIFICATE OF SERVICE by IVY BROWN, DONALD DUPREE, LARRY MCDONALD re 302 MOTION to Compel *the Centers for Medicare and Medicaid Services to Produce Information in Response to Plaintiffs' Subpoena* . (Gluckman, Todd) (Entered: 01/22/2020) |
| 01/25/2020 | 308 | TRANSCRIPT OF 1/21/20 STATUS HEARING before Judge Ellen S. Huvelle held on January 21, 2020; Page Numbers: 1–51. Date of Issuance: 1/25/20. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting Transcript Order Form at www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 2/15/2020. Redacted Transcript Deadline set for 2/25/2020. Release of Transcript Restriction set for 4/24/2020.(Wayne, Bryan) (Entered: 01/25/2020) |
| 01/30/2020 | 309 | |

| | | |
|---|---|---|
| | | Consent MOTION for Scheduling Order *for Requests for Admission* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 01/30/2020) |
| 01/30/2020 | 310 | TRANSCRIPT OF TELEPHONE STATUS CONFERENCE PROCEEDINGS before Judge Ellen S. Huvelle held on January 13, 2020; Page Numbers: 1–39. Date of Issuance: January 30, 2020. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purc hased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/20/2020. Redacted Transcript Deadline set for 3/1/2020. Release of Transcript Restriction set for 4/29/2020.(wz) (Entered: 01/30/2020) |
| 01/30/2020 | | MINUTE ORDER granting 309 Consent Motion for Scheduling Order: Upon consideration of the Consent Motion to Extend Deadlines Relating to Requests for Admission to Comport with this Court's Recent Scheduling Order (ECF 306), it is hereby ORDERED that the Consent Motion is GRANTED; and it is further ORDERED that all requests for admission shall be propounded by March 11, 2020, with responses completed by April 10, 2020. Each side is limited to no more than 25 requests for admission, including subparts. Signed by Judge Ellen S. Huvelle on January 30, 2019. (AG) (Entered: 01/30/2020) |
| 01/30/2020 | | Set/Reset Deadlines: Responses due by 4/10/2020. (zgdf) (Entered: 02/03/2020) |
| 02/03/2020 | 311 | NOTICE of Appearance by Christopher Charles Hair on behalf of UNITED STATES OF AMERICA (Hair, Christopher) (Entered: 02/03/2020) |
| 02/03/2020 | 312 | RESPONSE re 302 MOTION to Compel *the Centers for Medicare and Medicaid Services to Produce Information in Response to Plaintiffs' Subpoena* filed by UNITED STATES OF AMERICA. (Attachments: # 1 Affidavit of Thomas Kress (CMS))(Hair, Christopher) (Entered: 02/03/2020) |
| 02/04/2020 | 313 | ORDER granting 302 plaintiffs' Motion to Compel Centers for Medicare and Medicaid Services to produce information in response to plaintiffs' subpoena. See order for details. Signed by Judge Ellen S. Huvelle on February 4, 2020. (AG) (Entered: 02/04/2020) |
| 02/28/2020 | 314 | ORDER resolving discovery disputes and amending discovery and trial schedule. See order for details. Signed by Judge Ellen S. Huvelle on February 28, 2020. (AG) (Entered: 02/28/2020) |
| 02/28/2020 | | |

| | | |
|---|---|---|
| | | Set/Reset Deadlines/Hearings: Admissions due by 4/8/2020. Discovery due by 4/8/2020. Plaintiff Rule 26(a)(2) due by 5/15/2020. Defendant Rule 26(a)(2) due by 4/15/2020. Bench Trial set for 6/8/2020 at 09:30 AM in Courtroom 23A before Judge Ellen S. Huvelle. (zgdf) (Entered: 03/02/2020) |
| 03/02/2020 | 315 | MOTION to Quash by DCHA (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Rosen, David) (Entered: 03/02/2020) |
| 03/05/2020 | 316 | MOTION for Extension of Time to *Comply with Court Order [ECF No. 313]* by UNITED STATES OF AMERICA (Attachments: # 1 Affidavit of Thomas Kress (supplemental))(Hair, Christopher) (Entered: 03/05/2020) |
| 03/06/2020 | 317 | RESPONSE re 316 MOTION for Extension of Time to *Comply with Court Order [ECF No. 313]* filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Gluckman, Todd) (Entered: 03/06/2020) |
| 03/06/2020 | 318 | Memorandum in opposition to re 315 MOTION to Quash filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1 (DCHAs Objections to Plaintiffs Subpoena), # 3 Exhibit 2 (Affidavit of Patrick A. Sheldon), # 4 Exhibit 3 (February 6, 2020, subpoena), # 5 Exhibit 4 (Affidavit of Service for February 6, 2020, subpoena), # 6 Exhibit 5 (February 13, 2020, email to District), # 7 Exhibit 6 (February 14, 2020, subpoena), # 8 Exhibit 7 (Affidavit of Service of February 14, 2020, subpoena)), # 9 Exhibit 8 (February 14, 2020, email to District), # 10 Exhibit 9 (Defendants Supplemental Responses and Objections ), # 11 Exhibit 10 (January 21, 2020 Status Conference Transcript (excerpt)))(Bagby, Kelly) (Entered: 03/06/2020) |
| 03/06/2020 | 319 | Cross MOTION to Enforce *Subpoena to DCHA* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1 (DCHAs Objections to Plaintiffs Subpoena), # 3 Exhibit 2 (Affidavit of Patrick A. Sheldon), # 4 Exhibit 3 (February 6, 2020, subpoena), # 5 Exhibit 4 (Affidavit of Service for February 6, 2020, subpoena), # 6 Exhibit 5 (February 13, 2020, email to District), # 7 Exhibit 6 (February 14, 2020, subpoena), # 8 Exhibit 7 (Affidavit of Service of February 14, 2020, subpoena), # 9 Exhibit 8 (February 14, 2020, email to District), # 10 Exhibit 9 (Defendants Supplemental Responses and Objections to Plaintiffs Second Set of Interrogatories), # 11 Exhibit 10 (January 21, 2020 Status Conference Transcript (excerpt)))(Bagby, Kelly) (Entered: 03/06/2020) |
| 03/06/2020 | | MINUTE ORDER granting in part 316 Motion for Extension of Time: Upon consideration of the motion and plaintiffs' response, it is hereby ORDERED that the Motion for Extension of Time is GRANTED IN PART. CMS shall produce to plaintiffs the requested Section Q data by March 16, 2020. Signed by Judge Ellen S. Huvelle on March 6, 2020. (lcav) (Entered: 03/06/2020) |
| 03/06/2020 | | Set/Reset Deadlines: Response to Cross Motions due by 3/13/2020. Replies due by 3/13/2020. (zgdf) (Entered: 03/09/2020) |
| 03/09/2020 | | MINUTE ORDER: It is hereby ORDERED that DCHA shall file its response to the plaintiffs' cross−motion to enforce and reply in support of its motion to quash by March 13, 2020. Signed by Judge Ellen S. Huvelle on March 9, 2020. (AG) (Entered: 03/09/2020) |
| 03/13/2020 | 320 | |

| | | |
|---|---|---|
| | | RESPONSE re 319 Cross MOTION to Enforce *Subpoena to DCHA* filed by DCHA. (Attachments: # 1 Affidavit)(Rosen, David) (Entered: 03/13/2020) |
| 03/16/2020 | 321 | MEMORANDUM OPINION AND ORDER denying 315 Motion to Quash; granting 319 Motion to Enforce. See order for details. Signed by Judge Ellen S. Huvelle on March 16, 2020. (AG) Modified on 3/17/2020, to make a correction. (zgdf). (Entered: 03/16/2020) |
| 03/17/2020 | | MINUTE ORDER: This District Court's March 16, 2020 Standing Order 20−9, In re: Court Operations in Exigent Circumstances Created by the COVID−19 Pandemic, postpones all in−court matters scheduled from now until April 17, 2020, subject to any subsequent order by the presiding judge. In this case, the Court intends to proceed with the status conference presently set for March 30, 2020, but will determine at a later date whether the conference will be in person or by telephone or video conference. Signed by Judge Ellen S. Huvelle on March 17, 2020. (AG) (Entered: 03/17/2020) |
| 03/18/2020 | 322 | NOTICE OF SUBSTITUTION OF COUNSEL by Toni Michelle Jackson on behalf of DISTRICT OF COLUMBIA Substituting for attorney Chad Copeland (Jackson, Toni) (Entered: 03/18/2020) |
| 03/23/2020 | 323 | MOTION to Modify *the Schedule to Account for the Coronavirus Emergency* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Exhibit 1 (Affidavit of Kelly Bagby, dated March 23, 2020), # 2 Exhibit 2 (Plaintiffs Letter to the Court, dated February 27, 2020), # 3 Exhibit 3 (Coronavirus COVID−19 Global Cases by the Center for Systems Science and Engineering at Johns Hopkins University), # 4 Exhibit 4 (Situation Summary, CDC), # 5 Exhibit 5 (Coronavirus Disease 2019 (COVID 19): Are You at Higher Risk for Severe Illness?, CDC), # 6 Exhibit 6 (Families Concerned About Loved Ones in Nursing Homes, Assisted Living, AARP, March 19, 2020), # 7 Exhibit 7 (Its Time to Get Serious About Social Distancing. Heres How, NPR, March 17, 2020), # 8 Exhibit 8 (The Presidents Coronavirus Guidelines for America, 15 Days to Slow the Spread, White House and CDC), # 9 Exhibit 9 (Coronavirus can persist in air for hours and on surfaces for days: study, Reuters, March 17, 2020), # 10 Exhibit 10 (D.D.C. Standing Order 20−9, dated March 16, 2020), # 11 Exhibit 11 (Remarks by President Trump in Address to the Nation, dated March 11, 2020), # 12 Exhibit 12 (Preparing for COVID−19: Long−term Care Facilities, Nursing Homes, CDC), # 13 Exhibit 13 (Infected staff member at Southeast D.C. hospital identified as emergency room doctor, Washington Post, March 16, 2020), # 14 Exhibit 14 (CMS Announces New Measures to Protect Nursing Home Residents from COVID−19, CMS, March 13, 2020), # 15 Exhibit 15 (AHCA President Mark Parkinson For the Elderly, COVID−19 is an Almost Perfect Killing Machine, Home Health Care News, March 11, 2020), # 16 Exhibit 16 (Coronavirus cases surge at nursing homes as workers battle almost perfect killing machine, March 21, 2020, Washington Post), # 17 Exhibit 17 (Coronavirus: The Latest Court Closures and Restrictions), # 18 Exhibit 18 (DC Superior Court Shuts Down Except for Absolutely Essential Proceedings After Marshall Tests Positive for COVID−19, Mar. 18, 2020), # 19 Exhibit 19 (D.D.C. Standing Order No. 20−8, dated March 13, 2020), # 20 Text of Proposed Order)(Bagby, Kelly) (Attachment 2 replaced on 7/6/2020) (rj). (Attachment 3 replaced on 7/6/2020) (rj). (Attachment 4 replaced on 7/6/2020) (rj). (Attachment 5 replaced on 7/6/2020) (rj). (Attachment 6 replaced on 7/6/2020) (rj). (Attachment 7 replaced on 7/6/2020) (rj). (Attachment 8 replaced on 7/6/2020) (rj). (Attachment 9 replaced on 7/6/2020) (rj). (Attachment 11 replaced on 7/6/2020) (rj). (Attachment 12 replaced on 7/6/2020) (rj). (Attachment 13 |

| | | |
|---|---|---|
| | | replaced on 7/6/2020) (rj). (Attachment 14 replaced on 7/6/2020) (rj). (Attachment 15 replaced on 7/6/2020) (rj). (Attachment 16 replaced on 7/6/2020) (rj). (Attachment 17 replaced on 7/6/2020) (rj). (Attachment 18 replaced on 7/6/2020) (rj). (Attachment 19 replaced on 7/6/2020) (rj). (Attachment 20 replaced on 7/6/2020) (rj). (Entered: 03/23/2020) |
| 03/23/2020 | 324 | Joint STATUS REPORT by DISTRICT OF COLUMBIA. (Kennedy, Scott) (Entered: 03/23/2020) |
| 03/24/2020 | | MINUTE ORDER re 323 plaintiffs' MOTION to Modify the Schedule to Account for the Coronavirus Emergency: It is hereby ORDERED that defendant shall file a brief response to plaintiffs' motion to modify the schedule by 12:00 noon on Friday, March 27, 2020; it is further ORDERED that defendant's response should address plaintiffs' objection to the three witnesses recently identified by defendant. Signed by Judge Ellen S. Huvelle on March 24, 2020. (AG) (Entered: 03/24/2020) |
| 03/24/2020 | | Set/Reset Deadlines: Response to the Motion to modify schedule by 3/27/2020. (zgdf) (Entered: 03/25/2020) |
| 03/26/2020 | | Set/Reset Hearings: Video/Telephone Conference set for 3/30/2020 at 2:00 PM before Judge Ellen S. Huvelle. (zgdf) (Entered: 03/26/2020) |
| 03/27/2020 | 325 | RESPONSE re 323 MOTION to Modify *the Schedule to Account for the Coronavirus Emergency* filed by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 03/27/2020) |
| 03/30/2020 | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Telephone Conference held on 3/30/2020. (Court Reporter Lisa Griffith) (zgdf) (Entered: 03/30/2020) |
| 03/31/2020 | 326 | ORDER granting 323 plaintiffs' Motion to Modify the schedule in light of the coronavirus emergency, vacating existing deadlines, including the trial date of June 8, 2020, and setting new deadlines. See order for details. Signed by Judge Ellen S. Huvelle on March 31, 2020. (AG) (Entered: 03/31/2020) |
| 04/09/2020 | 327 | Consent MOTION for Extension of Time to *Supplement Discovery Responses* by DISTRICT OF COLUMBIA (Attachments: # 1 Text of Proposed Order)(Kennedy, Scott) (Entered: 04/09/2020) |
| 04/09/2020 | | MINUTE ORDER granting 327 Consent Motion for Extension of Time: Upon consideration of defendant's Consent Motion for Extension of Time to Supplement Discovery Responses, plaintiffs' consent, and the entire record, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that the District of Columbia shall provide plaintiffs with any missing ADRC case files and any missing information with respect to its response to Interrogatory 18 and file a notice on ECF indicating that it has done so by April 17, 2020. Signed by Judge Ellen S. Huvelle on April 9, 2020. (AG) (Entered: 04/09/2020) |
| 04/09/2020 | | Set/Reset Deadlines: Notice by 4/17/2020. (zgdf) (Entered: 04/10/2020) |
| 04/10/2020 | 328 | Unopposed MOTION to Compel *Five Nursing Facilities to Produce Documents in Response to Plaintiffs' Subpoenas* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Exhibit 1 (Subpoena to Deanwood Rehabilitation and Wellness Center), # 2 Exhibit 2 (Subpoena to Unique Rehabilitation and Health Center), # 3 Exhibit 3 (Subpoena to Inspire Rehabilitation and Health Center), # 4 Exhibit 4 (Subpoena to Serenity Rehabilitation and Health Center), # 5 Exhibit 5 |

| | | |
|---|---|---|
| | | (Subpoena to Jeanne Jugan Residence), # 6 Exhibit 6 (Excerpt of Transcript of March 30, 2020, Status Conference), # 7 Text of Proposed Order, # 8 Certificate of Service)(Bagby, Kelly) (Entered: 04/10/2020) |
| 04/10/2020 | 329 | ORDER granting 328 plaintiffs' unopposed Motion to Compel. Signed by Judge Ellen S. Huvelle on April 10, 2020. (AG) (Entered: 04/10/2020) |
| 04/16/2020 | 330 | NOTICE OF SUBSTITUTION OF COUNSEL by Pamela A. Disney on behalf of All Defendants Substituting for attorney Scott Kennedy (Disney, Pamela) (Entered: 04/16/2020) |
| 04/16/2020 | 331 | Unopposed MOTION for Extension of Time to *for Jeanne Jugan Residence and Deanwood Rehabilitation and Wellness Center to Comply with Plaintiffs Subpoenas and this Courts Order (ECF 329)* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(Bagby, Kelly) (Entered: 04/16/2020) |
| 04/17/2020 | | MINUTE ORDER granting 331 plaintiffs' unopposed Motion for Extension of Time: Upon consideration of Plaintiffs' Unopposed Motion for an Extension of Time for Jeanne Jugan Residence and Deanwood Rehabilitation and Wellness Center to Comply with Plaintiffs' Subpoenas and this Court's Order (ECF 329), dated April 16, 2020, it is hereby ORDERED that Plaintiffs' motion is GRANTED; it is further ORDERED that Jeanne Jugan Residence shall produce the requested documents by May 20, 2020, unless the Residence and Plaintiffs agree that a later date for production is necessary; and it is further ORDERED that Deanwood Rehabilitation and Wellness Center shall produce the requested documents by April 27, 2020, unless the Residence and Plaintiffs agree that a later date for production is necessary. SO ORDERED. Signed by Judge Ellen S. Huvelle on April 17, 2020. (AG) (Entered: 04/17/2020) |
| 04/17/2020 | 332 | NOTICE *of Production* by DISTRICT OF COLUMBIA re 326 Order on Motion to Modify, (Risher, Conrad) (Entered: 04/17/2020) |
| 04/21/2020 | 333 | Consent MOTION for Extension of Time to *Serve Expert Report and for the Parties to File Legal Memoranda* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Risher, Conrad) (Entered: 04/21/2020) |
| 04/22/2020 | | MINUTE ORDER granting 333 Consent Motion for Extension of Time: Upon consideration of defendant's consent motion for extensions of time, it is hereby ORDERED that the Motion is GRANTED; it is further ORDERED that defendant's expert report is due June 15, 2020; and it is further ORDERED that the Parties' legal memoranda are due May 4, 2020. Signed by Judge Ellen S. Huvelle on April 22, 2020. (AG) (Entered: 04/22/2020) |
| 04/22/2020 | | Set/Reset Deadlines: Defendant's Expert Report due by 6/15/2020. Parties' legal memoranda due by 5/4/2020. (zgdf) (Entered: 04/22/2020) |
| 05/04/2020 | 334 | MEMORANDUM by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit)(Disney, Pamela) (Entered: 05/04/2020) |
| 05/04/2020 | 335 | MEMORANDUM by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 1 (New York Second Amended Order), # 2 Exhibit 2 (New York Supplement), # 3 Exhibit 3 (Colbert Consent Decree), # 4 Exhibit 4 (Colbert Amendment), # 5 Exhibit 5 (Amanda D. Settlement Agreement), # 6 Exhibit 6 |

| | | |
|---|---|---|
| | | (Laguna Honda Settlement Agreement))(Bagby, Kelly) (Entered: 05/04/2020) |
| 06/05/2020 | | MINUTE ORDER: It is hereby ORDERED that the parties shall file a joint status report by June 26, 2020, which should include a proposed schedule for depositions and any other outstanding discovery. Signed by Judge Ellen S. Huvelle on June 5, 2020. (AG) (Entered: 06/05/2020) |
| 06/05/2020 | | Set/Reset Deadlines: Status Report due by 6/26/2020 (zgdf) (Entered: 06/05/2020) |
| 06/09/2020 | 336 | MOTION for Extension of Time to *Serve Expert Report* by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Risher, Conrad) (Entered: 06/09/2020) |
| 06/10/2020 | 337 | Memorandum in opposition to re 336 MOTION for Extension of Time to *Serve Expert Report* filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Text of Proposed Order)(Bagby, Kelly) (Entered: 06/10/2020) |
| 06/15/2020 | | MINUTE ORDER It is hereby ordered that all existing deadlines are vacated and that 336 the defendants motion for an extension of time to file its expert report is denied. It is further ordered that the parties should confer and agree, without court intervention, to a schedule for future proceedings. The parties should first confer and resolve any remaining disputes over written discovery. The schedule should address when all written discovery will be completed, when the parties will take depositions and of whom, and when expert reports will be exchanged and when expert depositions will occur. The parties shall also file a joint status report by July 8, 2020, that sets out the parties agreed–upon schedule. Signed by Judge Ellen S. Huvelle on June 15, 2020. (AG) (Entered: 06/15/2020) |
| 06/15/2020 | | Set/Reset Deadlines: Joint Status Report due by 7/8/2020. (zgdf) (Entered: 06/15/2020) |
| 06/17/2020 | 338 | NOTICE of Change of Address by Marjorie Lynn Rifkin (Rifkin, Marjorie) (Entered: 06/17/2020) |
| 06/17/2020 | | NOTICE OF ERROR re 338 Notice of Change of Address; emailed to mrifkin@uls–dc.org, cc'd 21 associated attorneys –– The PDF file you docketed contained errors: 1. Counsel must change address via Pacer (zjf, ) (Entered: 06/17/2020) |
| 07/07/2020 | 339 | NOTICE of Appearance by Lyndsay Ayanna Niles on behalf of IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Niles, Lyndsay) (Entered: 07/07/2020) |
| 07/08/2020 | 340 | Joint STATUS REPORT by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Bagby, Kelly) (Entered: 07/08/2020) |
| 07/13/2020 | 341 | ORDER resolving discovery disputes and setting schedule for completing discovery. All discovery to be completed by November 20, 2020. See order for details. Signed by Judge Ellen S. Huvelle on July 13, 2020. (AG) (Entered: 07/13/2020) |
| 07/13/2020 | | Minute Entry for Telephone Conference proceedings held on 7/13/2020 before Judge Ellen S. Huvelle. (Court Reporter Lisa Edwards) (zgdf) (Entered: 07/14/2020) |
| 07/13/2020 | | Set/Reset Deadlines: Defendant supplemental response due by 9/8/2020. Plaintiff's expert report due by 10/27/2020. Defendant's expert report due by 8/28/2020. (zgdf) (Entered: 07/14/2020) |

| 07/13/2020 | 342 | NOTICE of Submission re Discovery Disputes by IVY BROWN, JAMES BUMPASS, DONALD DUPREE, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. "Let this be filed as Plaintiffs' 7/7/2020 Submission re Discovery Disputes" Signed by Ellen S. Huvelle, U.S.D.J. on 07/13/2020 (zjf) (Additional attachment(s) added on 7/16/2020: # 1 Exhibit 1) (zjf). (Entered: 07/14/2020) |
|---|---|---|
| 07/13/2020 | 343 | NOTICE of Submission re Discovery Disputes by DISTRICT OF COLUMBIA. "Let this be filed as Defendant's 7/9/2020 Submission re Discovery Disputes" Signed by Ellen S. Huvelle, U.S.D.J. on 07/13/2020 (zjf) (Entered: 07/14/2020) |
| 07/13/2020 | 344 | NOTICE of Submission re Discovery Disputes by DCHA. "Let this be filed as DCHA's 7/7/2020 Submission re Discovery Disputes" Signed by Ellen S. Huvelle, U.S.D.J. on 07/13/2020 (zjf) (Entered: 07/14/2020) |
| 07/15/2020 | 345 | NOTICE of Appearance by Duane Gordon Blackman on behalf of DISTRICT OF COLUMBIA (Blackman, Duane) (Entered: 07/15/2020) |
| 07/16/2020 | 346 | TRANSCRIPT OF TELEPHONE CONFERENCE before Judge Ellen S. Huvelle held on July 13, 2020; Page Numbers: 1–62. Date of Issuance: July 16, 2020. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporte r referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/6/2020. Redacted Transcript Deadline set for 8/16/2020. Release of Transcript Restriction set for 10/14/2020.(Edwards, Lisa) (Entered: 07/16/2020) |
| 09/10/2020 | 347 | Case directly reassigned to Judge Paul L. Friedman by consent. Judge Ellen S. Huvelle is no longer assigned to the case. (rj) (Entered: 09/11/2020) |
| 09/29/2020 | 348 | Consent MOTION for Extension of Time to Complete Discovery by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 09/29/2020) |
| 09/30/2020 | 349 | ORDER granting 348 Motion for Extension of Time to Complete Discovery. See order for details. Signed by Judge Paul L. Friedman on September 30, 2020. (lcdr) (Entered: 09/30/2020) |
| 10/16/2020 | 350 | MOTION for Discovery by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1 (Excerpt of Transcript of September 16, 2019 Status Conference), # 3 Exhibit 2 (Excerpt of Seiler Expert Report), # 4 Exhibit 3 (Excerpt of Transcript of July 13, 2020 Status |

| | | |
|---|---|---|
| | | Conference), # 5 Exhibit 4 (Plaintiffs' Third Request for Production of Documents), # 6 Exhibit 5 (May 21, 2020 Letter from Plaintiffs to District))(Bagby, Kelly) (Entered: 10/16/2020) |
| 10/26/2020 | 351 | MOTION Extend the Deadline for Plaintiffs' Expert Reports and/or to Schedule a Status Conference at the Court's Earliest Convenience by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Exhibit 1 (Plaintiffs Second Request for Production of Documents, dated October 16, 2019), # 2 Exhibit 2 (October 6, 2020, Letter to District), # 3 Exhibit 3 (October 15, 2020, Email from the District), # 4 Exhibit 4 (October 13, 2020 Email to the District), # 5 Exhibit 5 (October 20, 2020 Email to the District), # 6 Exhibit 6 (Excerpt of Transcript of Deposition of M. Byrd), # 7 Exhibit 7 (Excerpt of Transcript of Court Teleconference), # 8 Text of Proposed Order, # 9 Text of Proposed Order)(Bagby, Kelly). Added MOTION for Hearing on 10/27/2020 (ztd). Modified on 10/27/2020 (ztd). (Entered: 10/26/2020) |
| 10/26/2020 | 352 | MOTION to Expedite *Consideration of Plaintiffs' Motion (ECF 351) to Extend the Deadline for Their Expert Reports and/or to Schedule a Status Conference at the Court's Earliest Convenience* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 10/26/2020) |
| 10/27/2020 | 353 | ORDER granting 352 Plaintiffs' Motion to Expedite Consideration of Their Motion to Extend the Deadline for Their Expert Reports and/or to Schedule a Status Conference at the Court's earliest convenience. Defendant's response to the Motion to Extend is due by noon on 10/29/2020. Plaintiffs' reply is due by noon on 10/30/2020. Signed by Judge Paul L. Friedman on October 27, 2020. (lcan) (Entered: 10/27/2020) |
| 10/27/2020 | | Set/Reset Deadlines: Responses due by 10/29/2020; Replies due by 10/30/2020. (tj) (Entered: 10/27/2020) |
| 10/29/2020 | 354 | Memorandum in opposition to re 351 MOTION for Extension of Time MOTION for Hearing filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Text of Proposed Order)(Risher, Conrad) (Entered: 10/29/2020) |
| 10/29/2020 | 355 | REPLY to opposition to motion re 351 MOTION for Extension of Time MOTION for Hearing filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 8 (October 26, 2020, Email from the District), # 2 Exhibit 9 (October 29, 2020, Letter to the District), # 3 Exhibit 10 (Excerpt of Transcript of Court Teleconference))(Bagby, Kelly) (Entered: 10/29/2020) |
| 10/30/2020 | 356 | Memorandum in opposition to re 350 MOTION for Discovery filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – July 6, 2020 Email from Alison Grossman, # 2 Text of Proposed Order)(Disney, Pamela) (Entered: 10/30/2020) |
| 10/30/2020 | | MINUTE ORDER. In consideration of 351 Plaintiffs' Motion to Extend the Deadline for Plaintiffs' Expert Reports and/or to Schedule a Status Conference at the Court's Earliest Convenience, the Court finds that an extension of time is appropriate in this instance. However, in light of the fact that 350 Plaintiffs' Motion for Discovery also requests an amendment to the scheduling order, the Court will not issue a new scheduling order until that motion has been resolved. The Court will therefore grant 351 Plaintiffs' Motion to Extend to the extent that they need not submit expert reports by November 4, 2020. The Court will file an opinion explaining its reasoning, ruling on Plaintiffs' Motion for Discovery, and issuing a new scheduling order as soon as possible. Signed by Judge Paul L. Friedman on October 30, 2020. (lcan) (Entered: |

| | | 10/30/2020) |
|---|---|---|
| 11/03/2020 | 357 | MEMORANDUM OPINION AND ORDER denying 350 plaintiffs' Motion for Discovery; granting in part and denying in part 351 plaintiffs' Motion to Extend the Deadline for Their Expert Reports; and amending 341 the July 13, 2020 scheduling order. The District of Columbia shall produce all documents requested by plaintiffs on or before November 17, 2020. Plaintiffs shall submit their expert reports on or before December 1, 2020. The District shall take plaintiffs experts depositions on or before December 15, 2020. Signed by Judge Paul L. Friedman on November 3, 2020. (lcan) (Entered: 11/03/2020) |
| 11/03/2020 | | Set/Reset Deadlines: (tj) (Entered: 11/03/2020) |
| 11/20/2020 | 358 | Consent MOTION for Extension of Time to *Depose Defendant's Expert* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 11/20/2020) |
| 11/20/2020 | 359 | ORDER granting 358 parties' consent motion for extension of time. The deadline for plaintiffs to depose the District's expert is extended to December 8, 2020. Signed by Judge Paul L. Friedman on November 20, 2020. (lcan) (Entered: 11/20/2020) |
| 12/21/2020 | 360 | MOTION for a Status Conference by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) Modified event on 12/29/2020 (znmw). (Entered: 12/21/2020) |
| 12/22/2020 | 361 | ORDER granting 360 Motion for a Status Conference. A status conference shall be held by videoconference on January 15, 2021, at 10 a.m. Signed by Judge Paul L. Friedman on December 22, 2020. (lcan) (Entered: 12/22/2020) |
| 12/22/2020 | | Set/Reset Hearings: Status Conference set for 1/15/2021 at 10:00 AM in Telephonic/VTC before Judge Paul L. Friedman. (tj) (Entered: 12/22/2020) |
| 01/11/2021 | | MINUTE ORDER that the status conference scheduled for this Friday, January 15, at 10:00 a.m. will be held telephonically. The Court will send dial–in information prior to the status conference. Signed by Judge Paul L. Friedman on January 11, 2021. (lcan) (Entered: 01/11/2021) |
| 01/15/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Telephone Conference held on 1/15/2021. Parties inform the court of the status of this case. Status Report due by 2/5/2021. Next Telephone Conference set for 2/12/2021 at 10:00 AM in Telephonic/VTC before Judge Paul L. Friedman. (Court Reporter: Crystal Pilgrim. (tj) (Entered: 01/15/2021) |
| 02/05/2021 | 362 | Joint STATUS REPORT by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Bagby, Kelly) (Entered: 02/05/2021) |
| 02/08/2021 | 363 | MOTION to Compel *Production of Documents Related to the 2021 Olmstead Plan* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order, # 2 Text of Proposed Order, # 3 Exhibit 1 (COVID Spreadsheet Excerpt), # 4 Exhibit 2 (Second Request for Production of Documents), # 5 Exhibit 3 (Second Set of Interrogatories), # 6 Exhibit 4 (May 21, 2020 Letter from Plaintiffs to District), # 7 Exhibit 5 (Third Request for Production of Documents), # 8 Exhibit 6 (October 13, 2020 Email from Plaintiffs to District), # 9 Exhibit 7 (October 29, 2020 Letter from Plaintiffs to District), # 10 Exhibit 8 (November 17, 2020 to January 7, 2021 Email Chain), # 11 Exhibit 9 (Excerpt of Transcript of January 15, 2021 Status Conference), # 12 Exhibit 10 (January 2021 |

| | | |
|---|---|---|
| | | Olmstead Community Integration Plan Update), # 13 Exhibit 11 (Goals for Upcoming Plan Document))(Bagby, Kelly) (Entered: 02/08/2021) |
| 02/09/2021 | | MINUTE ORDER: Status Conference currently scheduled for February 12, 2021 @ 10am, is hereby VACATED and rescheduled for February 19, 2021 10:00 AM via telephone before Judge Paul L. Friedman. (Signed by Judge Paul L. Friedman on 2/9/2021). (tj) (Entered: 02/09/2021) |
| 02/18/2021 | | Set/Reset Hearings: Telephone Conference currently scheduled for 2/19/2021 at 10:00am, is hereby RESCHEDULED for 10:30 AM on the same day before Judge Paul L. Friedman. (tj) (Entered: 02/18/2021) |
| 02/18/2021 | 364 | Memorandum in opposition to re 363 MOTION to Compel *Production of Documents Related to the 2021 Olmstead Plan* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Excerpt of Oct. 8, 2020 Deposition of Laura Newland, # 2 Exhibit B – Excerpt of Dec. 9, 2019 Interrogatory Objections and Responses, # 3 Exhibit C – Dec. 20, 2019 email (produced as DC_IBrown_00131023), # 4 Exhibit D – Excerpt of Dec. 9, 2019 RFP Objections and Responses, # 5 Text of Proposed Order)(Risher, Conrad) (Entered: 02/18/2021) |
| 02/19/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Telephone Conference held on 2/19/2021. The court addresses the scheduling of trial with the parties. The court will issue a scheduling order at a later date. (Court Reporter: LIsa Bankins) (tj) (Entered: 02/19/2021) |
| 02/23/2021 | 365 | PRETRIAL SCHEDULING ORDER. A pretrial conference is scheduled for September 23, 2021 at 10:00 a.m. The case is set for a bench trial beginning on October 4, 2021 at 10:00 a.m. See Order for other specifics. Signed by Judge Paul L. Friedman on February 23, 2021. (lcan) (Entered: 02/23/2021) |
| 02/23/2021 | | Set/Reset Hearings: Pretrial Conference set for 9/23/2021 at 10:00 AM in Telephonic/VTC before Judge Paul L. Friedman. Bench Trial set for 10/4/2021 at 10:00 AM in before Judge Paul L. Friedman. (tj) (Entered: 02/23/2021) |
| 02/24/2021 | 366 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 01/15/2021; Page Numbers: 1–23. Date of Issuance:02/24/2021. Court Reporter/Transcriber Crystal M. Pilgrim, Telephone number 202.354.3127, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/17/2021. Redacted Transcript Deadline set for 3/27/2021. Release of Transcript Restriction set for 5/25/2021.(Pilgrim, Crystal) (Entered: |

| | | |
|---|---|---|
| | | 02/24/2021) |
| 02/25/2021 | 367 | REPLY to opposition to motion re 363 MOTION to Compel *Production of Documents Related to the 2021 Olmstead Plan* filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Bagby, Kelly) (Entered: 02/25/2021) |
| 03/16/2021 | 368 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 02/19/2021; Page Numbers: 30. Date of Issuance:03/16/2021. Court Reporter/Transcriber Lisa Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br> Redaction Request due 4/6/2021. Redacted Transcript Deadline set for 4/16/2021. Release of Transcript Restriction set for 6/14/2021.(Bankins, Lisa) (Entered: 03/16/2021) |
| 03/24/2021 | 369 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Toni Michelle Jackson terminated. (Risher, Conrad) (Entered: 03/24/2021) |
| 03/25/2021 | 370 | Consent MOTION for Extension of Time to *Respond to Requests for Admissions* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) Modified event on 3/26/2021 (ztd). (Entered: 03/25/2021) |
| 03/25/2021 | 371 | ORDER granting 370 plaintiffs' consent motion for a one−week extension of time up to and including April 2, 2021 within which to respond to requests for admissions. Signed by Judge Paul L. Friedman on March 25, 2021. (MA) (Entered: 03/25/2021) |
| 04/09/2021 | 372 | Consent MOTION for Extension of Time to *Upcoming Deadlines* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 04/09/2021) |
| 04/09/2021 | 373 | ORDER granting 372 plaintiffs' consent motion for extension of upcoming deadlines. Signed by Judge Paul L. Friedman on April 9, 2021. (MA) (Entered: 04/09/2021) |
| 04/16/2021 | 374 | OPINION AND ORDER granting plaintiffs' 363 Motion to Compel Production of Documents Related to the 2021 Olmstead Plan. Signed by Judge Paul L. Friedman on April 16, 2021. (lcan) (Entered: 04/16/2021) |
| 05/21/2021 | 375 | Consent MOTION to Amend/Correct 373 Order on Motion for Extension of Time to *Respond to Upcoming Deadlines* by DISTRICT OF COLUMBIA. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Disney, Pamela) (Entered: |

| | | |
|---|---|---|
| | | 05/21/2021) |
| 05/21/2021 | 376 | ORDER granting 375 defendant's consent motion to amend scheduling order. Objections re discovery responses, deposition designations and admissibility of exhibits and responses to proposed stipulations of fact shall be filed on or before May 28, 2021; parties shall meet and confer and resolve all discovery disputes on or before June 14, 2021; and the parties shall file their joint stipulations of fact by June 25, 2021. Signed by Judge Paul L. Friedman on May 21, 2021. (MA) (Entered: 05/21/2021) |
| 05/26/2021 | | Set/Reset Deadlines: Attorney Meet and Confer Conference due by 6/14/2021. Joint Stipulations due by 6/25/2021. (tj) (Entered: 05/26/2021) |
| 05/28/2021 | 377 | NOTICE *(Plaintiffs' Objections and Responses Related to Defendant's Proposed Stipulations of Fact, Exhibits, and Supplemental Discovery Responses)* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Exhibit A – Responses to Defendant's Proposed Stipulations, # 2 Exhibit B – Objections to Defendants Exhibit List, # 3 Exhibit C – May 25 email, # 4 Exhibit D – March 23 letter, # 5 Exhibit E – April 6–13 email chain, # 6 Exhibit F – April 19 email, # 7 Exhibit G – April 29 email, # 8 Exhibit H – May 19 letter, # 9 Exhibit I – March 8 letter, # 10 Exhibit J – March 17 email, # 11 Exhibit K – May 24 email, # 12 Exhibit L – March 11 letter)(Bagby, Kelly) (Entered: 05/28/2021) |
| 05/28/2021 | 378 | NOTICE *Objections and Responses to Plaintiffs Deposition Designations, Exhibit List, Witness List, Proposed Stipulations of Fact, and Supplemental Discovery Responses* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit A – Defendants Response to Plaintiffs Deposition Designations, # 2WITHDRAWN PURSUANT TO ORDER 380 . . . . . Exhibit B – Defendant's Objections to Plaintiffs Exhibit List, # 3 Exhibit C – Defendants Responses to Plaintiffs Proposed Stipulations, # 4 Exhibit D – Defendant's Proposed Stipulations of Fact)(Risher, Conrad) Modified text and docket on 6/8/2021 (ztd). (Additional attachment(s) added on 6/8/2021: # 5 Exhibit B (Replacement per Order doc. 380 )) (ztd). (Entered: 05/28/2021) |
| 06/01/2021 | 379 | Consent MOTION to Replace a Filing re 378 Notice (Other),, *replacing ECF 378–2* by DISTRICT OF COLUMBIA. (Attachments: # 1 Memorandum in Support, # 2 Exhibit B – Defendant's Objections to Plaintiffs Exhibit List, # 3 Text of Proposed Order)(Risher, Conrad) (Entered: 06/01/2021) |
| 06/04/2021 | 380 | ORDER granting in part 379 defendant's consent motion to replace a filing. See Order for specifics. Signed by Judge Paul L. Friedman on June 4, 2021. (MA) (Entered: 06/04/2021) |
| 06/24/2021 | 381 | NOTICE of Appearance by Mateya Beth Kelley on behalf of All Defendants (Kelley, Mateya) (Entered: 06/24/2021) |
| 06/24/2021 | | MINUTE ORDER: Status Conference is set for 7/8/2021 at 2:00 PM before Judge Paul L. Friedman via Zoom Video. (So ordered Judge Paul L. Friedman on 6/24/2021). (tj) (Entered: 06/24/2021) |
| 06/24/2021 | | Set/Reset Deadlines: Status Report due by 6/24/2021. (tj) (Entered: 06/24/2021) |
| 06/24/2021 | | MINUTE ORDER. In advance of the Zoom status conference on July 8, 2021 at 2:00 p.m., plaintiffs are directed to file a formal memorandum of law, not to exceed 12 pages, on or before June 30, 2021. The memorandum of law shall set forth further |

| | | |
|---|---|---|
| | | description of the issues as to which there is dispute, as well as case law supporting plaintiffs' position. Defendants shall file a responsive memorandum of law, not to exceed 12 pages, on or before July 6, 2021. Signed by Judge Paul L. Friedman on June 24, 2021. (lcan) (Entered: 06/24/2021) |
| 06/25/2021 | 382 | STIPULATION *of Fact, jointly agreed by the Parties, and filed* by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 06/25/2021) |
| 06/30/2021 | 383 | ORDER that the parties shall file a status report on or before July 6, 2021, identifying the names of potential Special Masters, and defendant shall submit its privilege log to the Court for in camera review on or before July 2, 2021. See order for further details. Signed by Judge Paul L. Friedman on June 30, 2021. (lcan) (Entered: 06/30/2021) |
| 06/30/2021 | 384 | MEMORANDUM re Order,, by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 1 (Excerpt of Defendants Responses and Objections to Plaintiffs Second Set of Interrogatories ), # 2 Exhibit 2 (Defendants Supplemental Responses and Objections to Plaintiffs Second Set of Interrogatories), # 3 Exhibit 3 (Excerpt of Plaintiffs Responses to Defendant the District of Columbias Interrogatories and Request for Production to Plaintiffs), # 4 Exhibit 4 (Weston and Webster Report), # 5 Exhibit 5 (Petron Report), # 6 Exhibit 6 (Excerpt of Plaintiffs Second Set of Supplemental Responses to Defendants Interrogatories), # 7 Exhibit 7 (Excerpt of Transcript of Telephone Conference (July 13, 2020)), # 8 Exhibit 8 (April 29, 2021 Email from District to Plaintiffs), # 9 Exhibit 9 (May 21, 2020 Letter from Plaintiffs to District), # 10 Exhibit 10 (June 1, 2021 Email from District to Plaintiffs), # 11 Exhibit 11 (June 2, 2021 Email from District to Plaintiffs), # 12 Exhibit 12 (Summary of Deficiencies in the June 1 Privilege Log Justifying Waiver of the Deliberative Process Privilege), # 13 Exhibit 13 (Excerpt of June 1 Privilege Log Identifying Documents Withheld or Redacted Solely on Deliberative Process Privilege), # 14 Exhibit 14 (February 2–5, 2021 District Email Chain), # 15 Exhibit 15 (Summary of Plaintiffs Challenges to Documents on the District's June 1 Privilege Log Withheld or Redacted on the Basis of the Attorney–Client Privilege, Work–Product Doctrine, Personally Identifiable Information, or Non–Responsiveness), # 16 Exhibit 16 (Excerpt of June 1 Privilege Log Identifying Attorney–Client, Work Product, Personally Identifiable Information, and Non–Responsive Entries That Plaintiffs Are Challenging), # 17 Exhibit 17 (June 25 Email from Plaintiffs to District), # 18 Exhibit 18 (June 28 Email from District to Plaintiffs))(Bagby, Kelly) (Entered: 06/30/2021) |
| 07/06/2021 | 385 | Joint STATUS REPORT by DISTRICT OF COLUMBIA. (Blackman, Duane) (Entered: 07/06/2021) |
| 07/06/2021 | 386 | MEMORANDUM re Order,, by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Email Discussion of June 1, 2021 Privilege Log, # 2 Exhibit B – Decl. of Adam Mingal, # 3 Exhibit C – Email Discussion of Proposed Stipulation, # 4 Exhibit D – District's First Supp. Interrog. Resp.)(Risher, Conrad) (Entered: 07/06/2021) |
| 07/08/2021 | | MINUTE ORDER: Status Conference set for 7/22/2021 at 11:00 AM before Judge Paul L. Friedman via telephone. (So Ordered Judge Paul L. Friedman on 7/8/2021). (tj) (Entered: 07/08/2021) |
| 07/08/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Telephone Conference held on 7/8/2021. Parties inform the court of the status of this case. A telephone conference is now set for 7/22/2021 @ 11am to continue the discussions |

| | | held today. (Court Reporter: Lisa Edwards.) (tj) (Entered: 07/08/2021) |
|---|---|---|
| 07/22/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Telephone Conference held on 7/22/2021. Discovery issues addressed by the court. (Court Reporter: Lisa Edwards) (tj) (Entered: 07/22/2021) |
| 07/28/2021 | 387 | Joint STATUS REPORT by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 07/28/2021) |
| 07/29/2021 | 388 | ORDER memorializing the agreements reached between the parties in consideration of their joint status report 387 . Signed by Judge Paul L. Friedman on July 29, 2021. (MA) (Entered: 07/29/2021) |
| 08/20/2021 | 389 | MOTION to Modify *this Court's Order Regarding Trial Exhibits and Expert Trial Testimony* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 08/20/2021) |
| 08/21/2021 | 390 | TRANSCRIPT OF TELEPHONE CONFERENCE before Judge Paul L. Friedman held on July 22, 2021; Page Numbers: 1–62. Date of Issuance: August 21, 2021. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repor ter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/11/2021. Redacted Transcript Deadline set for 9/21/2021. Release of Transcript Restriction set for 11/19/2021.(Edwards, Lisa) (Entered: 08/21/2021) |
| 08/24/2021 | 391 | SEALED MOTION filed by DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Exhibit A – Capacity Assessment Summary Report, # 3 Text of Proposed Order)(Risher, Conrad) (Entered: 08/24/2021) |
| 08/24/2021 | 392 | MOTION to Modify *Scheduling Order and Response to Plaintiffs Partial Consent Motion To Modify This Courts Order Regarding Trial Exhibits and Expert Trial Testimony* by DISTRICT OF COLUMBIA. (Attachments: # 1 Memorandum in Support (Redacted), # 2 Exhibit A – Capacity Assessment Summary Report (Redacted), # 3 Text of Proposed Order)(Risher, Conrad) (Entered: 08/24/2021) |
| 08/27/2021 | 393 | MOTION for Show Cause *(Plaintiffs' Motion for a Show Cause Hearing for the District of Columbia to Show Why it Should Not be Sanctioned under Federal Rule 37)* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 1 (OAG Description on LinkedIn (excerpt), downloaded on August 25, 2021), # 2 Exhibit 2 (Email Chain, from August 3, 2021, to August 24, 2021, |

| | | |
|---|---|---|
| | | Between the Plaintiffs and the District, Regarding Depositions of Plaintiffs (filed under seal)), # 3 Exhibit 3 (Plaintiffs Responses to Defendant the District of Columbias Interrogatories and Requests for Production to Plaintiffs, dated December 9, 2019 (excerpts) (filed under seal)), # 4 Exhibit 4 (Trial Testimony of Orit Simhoni, September 13, 2016 (excerpt) (filed under seal)), # 5 Exhibit 5 (Email from the District Regarding Director Reed, dated July 22, 2021 (excerpt)), # 6 Exhibit 6 (Plaintiffs Second Set of Supplemental Responses to Defendants Interrogatories, dated April 6, 2021 (excerpt)), # 7 Exhibit 7 (Email from Plaintiffs to the District, Regarding Jay Melder, dated August 16, 2021), # 8 Exhibit 8 (Email Chain, from August 17, 2021, to August 20, 2021, Regarding Various Pretrial Matters), # 9 Exhibit 9 (Defendants Third Supplemental Responses and Objections to Plaintiffs Second Set of Interrogatories, dated August 26, 2021), # 10 Exhibit 10 (Transcript of July 22, 2021 Status Conference (excerpt)), # 11 Exhibit 11 (DL v. District of Columbia, D.D.C. Case No. 05−1537, Order, dated November 9, 2015, ECF 498 on that docket), # 12 Text of Proposed Order)(Bagby, Kelly) Modified event and text on 8/31/2021 (ztd). (Entered: 08/27/2021) |
| 08/27/2021 | 394 | RESPONSE re 392 MOTION to Modify *Scheduling Order and Response to Plaintiffs Partial Consent Motion To Modify This Courts Order Regarding Trial Exhibits and Expert Trial Testimony* filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 1 (OAG Description on LinkedIn (excerpt), downloaded on August 25, 2021), # 2 Exhibit 2 (Email Chain, from August 3, 2021, to August 24, 2021, Between the Plaintiffs and the District, Regarding Depositions of Plaintiffs (filed under seal)), # 3 Exhibit 3 (Plaintiffs Responses to Defendant the District of Columbias Interrogatories and Requests for Production to Plaintiffs, dated December 9, 2019 (excerpts) (filed under seal)), # 4 Exhibit 4 (Trial Testimony of Orit Simhoni, September 13, 2016 (excerpt) (filed under seal)), # 5 Exhibit 5 (Email from the District Regarding Director Reed, dated July 22, 2021 (excerpt)), # 6 Exhibit 6 (Plaintiffs Second Set of Supplemental Responses to Defendants Interrogatories, dated April 6, 2021 (excerpt)), # 7 Exhibit 7 (Email from Plaintiffs to the District, Regarding Jay Melder, dated August 16, 2021), # 8 Exhibit 8 (Email Chain, from August 17, 2021, to August 20, 2021, Regarding Various Pretrial Matters), # 9 Exhibit 9 (Defendants Third Supplemental Responses and Objections to Plaintiffs Second Set of Interrogatories, dated August 26, 2021), # 10 Exhibit 10 (Transcript of July 22, 2021 Status Conference (excerpt)), # 11 Exhibit 11 (DL v. District of Columbia, D.D.C. Case No. 05−1537, Order, dated November 9, 2015, ECF 498 on that docket), # 12 Text of Proposed Order)(Bagby, Kelly) (Entered: 08/27/2021) |
| 08/27/2021 | 395 | REPLY to opposition to motion re 389 MOTION to Modify *this Court's Order Regarding Trial Exhibits and Expert Trial Testimony* filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Exhibit 1 (OAG Description on LinkedIn (excerpt), downloaded on August 25, 2021), # 2 Exhibit 2 (Email Chain, from August 3, 2021, to August 24, 2021, Between the Plaintiffs and the District, Regarding Depositions of Plaintiffs (filed under seal)), # 3 Exhibit 3 (Plaintiffs Responses to Defendant the District of Columbias Interrogatories and Requests for Production to Plaintiffs, dated December 9, 2019 (excerpts) (filed under seal)), # 4 Exhibit 4 (Trial Testimony of Orit Simhoni, September 13, 2016 (excerpt) (filed under seal)), # 5 Exhibit 5 (Email from the District Regarding Director Reed, dated July 22, 2021 (excerpt)), # 6 Exhibit 6 (Plaintiffs Second Set of Supplemental Responses to Defendants Interrogatories, dated April 6, 2021 (excerpt)), # 7 Exhibit 7 (Email from Plaintiffs to the District, Regarding Jay Melder, dated August 16, 2021), |

| | | |
|---|---|---|
| | | # 8 Exhibit 8 (Email Chain, from August 17, 2021, to August 20, 2021, Regarding Various Pretrial Matters), # 9 Exhibit 9 (Defendants Third Supplemental Responses and Objections to Plaintiffs Second Set of Interrogatories, dated August 26, 2021), # 10 Exhibit 10 (Transcript of July 22, 2021 Status Conference (excerpt)), # 11 Exhibit 11 (DL v. District of Columbia, D.D.C. Case No. 05–1537, Order, dated November 9, 2015, ECF 498 on that docket), # 12 Text of Proposed Order)(Bagby, Kelly) (Entered: 08/27/2021) |
| 08/27/2021 | 396 | SEALED DOCUMENT filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD re 394 Response to motion,,,,,, 395 Reply to opposition to Motion,,,,,, (This document is SEALED and only available to authorized persons). (Attachments: # 1 Exhibit 2 (Email Chain, from August 3, 2021, to August 24, 2021, Between the Plaintiffs and the District, Regarding Depositions of Plaintiffs), # 2 Exhibit 3 (Plaintiffs Responses to Defendant the District of Columbias Interrogatories and Requests for Production to Plaintiffs, dated December 9, 2019 (excerpts)), # 3 Exhibit 4 (Trial Testimony of Orit Simhoni, September 13, 2016 (excerpt)))(Bagby, Kelly) (Entered: 08/27/2021) |
| 08/27/2021 | | MINUTE ORDER that the District of Columbia shall file any reply in support of its 392 motion to modify the scheduling order on or before September 1, 2021. FURTHER ORDERED that the September 3, 2021 deadline for the parties to file their Joint Pretrial Statement, as established by 365 the Court's Pretrial Scheduling Order, is VACATED. FURTHER ORDERED that the September 13, 2021 deadline for the submission of exhibits and expert reports, as established by 365 the Court's Pretrial Scheduling Order, is VACATED. Signed by Judge Paul L. Friedman on August 27, 2021. (lcan) (Entered: 08/27/2021) |
| 08/30/2021 | | MINUTE ORDER that the August 30, 2021 deadline for the parties to file any motions in limine, as established by 365 the Court's Pretrial Scheduling Order, is VACATED. The September 13, 2021 deadline for opposition briefs and the September 20, 2021 deadline for reply briefs are also VACATED. Signed by Judge Paul L. Friedman on August 30, 2021. (lcan) (Entered: 08/30/2021) |
| 08/30/2021 | | ORDER that the District of Columbia shall file any opposition to 393 plaintiffs' motion for sanctions on or before September 3, 2021. FURTHER ORDERED that plaintiffs shall file any reply in support of 393 their motion for sanctions on or before September 7, 2021. Signed by Judge Paul L. Friedman on August 30, 2021. (lcan) (Entered: 08/30/2021) |
| 08/30/2021 | | MINUTE ORDER that the parties shall appear for a Zoom status conference on September 9, 2021 at 3:00 p.m. The Court will send dial–in information prior to the status conference. Signed by Judge Paul L. Friedman on August 30, 2021. (lcan) (Entered: 08/30/2021) |
| 08/31/2021 | 397 | ORDER that the District of Columbia's claims of deliberative process privilege for the documents submitted in camera pursuant to this Court's July 29, 2021 order are SUSTAINED. Signed by Judge Paul L. Friedman on August 31, 2021. (lcan) (Entered: 08/31/2021) |
| 08/31/2021 | 398 | OPINION sustaining the District of Columbia's claims of deliberative process privilege for the documents submitted in camera pursuant to this Court's July 29, 2021 order. Signed by Judge Paul L. Friedman on August 31, 2021. (lcan) (Entered: 08/31/2021) |
| 08/31/2021 | | |

| | | |
|---|---|---|
| | | Set/Reset Hearings: Status Conference set for 9/9/2021 at 3:00 PM before Judge Paul L. Friedman via Zoom Video. (tj) (Entered: 08/31/2021) |
| 09/01/2021 | 399 | REPLY to opposition to motion re 392 MOTION to Modify *Scheduling Order and Response to Plaintiffs Partial Consent Motion To Modify This Courts Order Regarding Trial Exhibits and Expert Trial Testimony* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Excerpt of Defendant's Interrogatory Responses, # 2 Exhibit B – Third Supp. Interrogatory Responses)(Risher, Conrad) (Entered: 09/01/2021) |
| 09/03/2021 | 400 | Memorandum in opposition to re 393 MOTION for Order to Show Cause filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Def.'s First Interrogatory Resp., # 2 Exhibit B – Def.'s First Supp. Interrogatory Resp., # 3 Exhibit C – Def.'s Third Supp. Interrogatory Resp., # 4 Exhibit D – Excerpts of Newland Dep., # 5 Exhibit E – Excerpts of Greenwalt Dep., # 6 Text of Proposed Order)(Risher, Conrad) (Entered: 09/03/2021) |
| 09/07/2021 | 401 | REPLY to opposition to motion re 393 MOTION for Order to Show Cause *(Plaintiffs' Reply in Support of Their Motion for a Show Cause Hearing for the District of Columbia to Show Why it Should Not be Sanctioned under Rule 37)* filed by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Bagby, Kelly) (Entered: 09/07/2021) |
| 09/09/2021 | | MINUTE ORDER: Status Conference currently scheduled for 9/9/2021 @ 3:00pm, is hereby VACATED and RESCHEDULED for 9/13/2021 at 2:30 PM before Judge Paul L. Friedman via Zoom Video. Parties appearing in this action will receive a revised Zoom Invitation. (So Ordered Judge Paul L. Friedman on 9/9/2021). (tj) (Entered: 09/09/2021) |
| 09/13/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Status Conference held on 9/13/2021. The court addresses the following motions: 389 , 392 and 393 . All depositions to be completed by 9/30/2021. Parties to file a proposed schedule by 9/16/2021 addressing the following: exchanging of exhibits, motions in limine, pretrial statements, witness list,final pretrial conference date and trial date. Parties to discuss the motion for sanctions and if parties fail reach an agreement, they should request a status conference with the court. (Court Reporter: Lisa Moreira) (tj) (Entered: 09/13/2021) |
| 09/15/2021 | | MINUTE ORDER: Pretrial conference currently scheduled for 9/23/2021 is hereby VACATED due to discussions held at the status conference before the court on 9/13/2021. (So ordered Judge Paul L. Friedman on 9/15/2021). (tj) (Entered: 09/15/2021) |
| 09/16/2021 | 402 | Joint STATUS REPORT *(Joint Report Regarding the Pretrial Schedule, Plaintiffs' Motion for Sanctions Against the District, and the Format of the Trial)* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Bagby, Kelly) (Entered: 09/16/2021) |
| 09/20/2021 | 403 | MEMORANDUM OPINION AND ORDER granting in part and denying in part 389 plaintiffs' motion to modify this Court's order regarding trial exhibits and expert trial testimony; granting in part and denying in part 392 defendant's motion to modify scheduling order. Trial dates of October 4–6, 12–13, and 18–19, 2021 are vacated. The bench trial will begin on October 25, 2021 at 10:00 a.m. and will continue on October 26–27 and November 1–3, 8, 10, 15, 17, 22 and 23, or until concluded. The parties shall appear for oral argument on October 4, 2021 at 2:00 p.m, and Pretrial |

| | | |
|---|---|---|
| | | Conference now set for 10/18/2021 at 10am. Please see Memorandum Opinion and Order for further specifics. Signed by Judge Paul L. Friedman on September 20, 2021. (MA) (Entered: 09/20/2021) |
| 09/20/2021 | | Set/Reset Deadlines: Motion in Limine due by 9/22/2021; Responses due by 10/6/2021, and Reply due by 10/13/2021. Trial Briefs due by 10/13/2021; Pretrial Statement due by 10/13/2021; Motion Hearing set for 10/4/2021 at 2:00 PM before Judge Paul L. Friedman via Zoom Video. Pretrial Conference set for 10/18/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video; Bench Trial set for 10/25, 10/26, 10/27, 11/1, 11/2, 11/3, 11/8, 11/10, 11/15, 11/17, 11/22 and 11/23 at 10:00 AM before Judge Paul L. Friedman. (tj) (Entered: 09/20/2021) |
| 09/21/2021 | 404 | TRANSCRIPT OF STATUS CONFERENCE before Judge Paul L. Friedman held on September 13, 2021; Page Numbers: 1–69. Date of Issuance:September 21, 2021. Court Reporter/Transcriber Lisa A. Moreira RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 10/12/2021. Redacted Transcript Deadline set for 10/22/2021. Release of Transcript Restriction set for 12/20/2021.(Moreira, Lisa) (Entered: 09/21/2021) |
| 09/24/2021 | 405 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Duane Gordon Blackman terminated. (Blackman, Duane) (Entered: 09/24/2021) |
| 09/27/2021 | | MINUTE ORDER: The motions hearing, currently scheduled for October 4, 2021, is RESCHEDULED to October 6, 2021 at 2:00 p.m. Signed by Judge Paul L. Friedman on September 27, 2021. (MA) (Entered: 09/27/2021) |
| 09/27/2021 | | Set/Reset Hearings: Motion Hearing set for 10/6/2021 at 02:00 PM in before Judge Paul L. Friedman. (tj) (Entered: 09/27/2021) |
| 09/27/2021 | 406 | NOTICE *of Publication of New Olmstead Plan* by DISTRICT OF COLUMBIA (Attachments: # 1 Appendix New Olmstead Plan)(Risher, Conrad) (Entered: 09/27/2021) |
| 09/29/2021 | | MINUTE ORDER: In light of the District's 406 Notice of Publication of New Olmstead Plan, in addition to presenting oral argument on plaintiffs' 393 Motion for a Show Cause Hearing at the Motion Hearing scheduled for October 6, 2021, at 2:00 p.m., the parties shall also be prepared to discuss how the District's new Olmstead Plan will affect the forthcoming bench trial. Signed by Judge Paul L. Friedman on |

| | | September 29, 2021. (lcnr) (Entered: 09/29/2021) |
|---|---|---|
| 10/05/2021 | 407 | Supplemental STATUS REPORT by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – 210915 – Plaintiffs' Reply Email)(Risher, Conrad) (Entered: 10/05/2021) |
| 10/06/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Motion Hearing held on 10/6/2021 re 393 MOTION for Order to Show Cause filed by LARRY MCDONALD, DONALD DUPREE, IVY BROWN. Oral argument heard. Pretrial Conference remains scheduled for 10/18/2021 at 10:00am. (Court Reporter: Elizabeth Saint Loth) (tj) (Entered: 10/06/2021) |
| 10/06/2021 | 408 | ORDER memorializing the agreements reached by the parties at the October 6, 2021 status conference. Trial dates of November 22 and 23, 2021, are VACATED. Signed by Judge Paul L. Friedman on October 6, 2021. (lcnr) Modified on 10/7/2021 (MA). (Entered: 10/06/2021) |
| 10/07/2021 | 409 | NOTICE *of Documents and Information Needed Regarding the District's New Olmstead Plan* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 10/07/2021) |
| 10/07/2021 | | MINUTE ORDER: The District is directed to produce the documents requested and answer the interrogatories propounded in 409 Plaintiffs' Notice of Documents and Information Needed Regarding the District's New Olmstead Plan, or note their objections and the grounds therefor pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, on or before October 12, 2021. Signed by Judge Paul L. Friedman on October 7, 2021. (lcnr) (Entered: 10/07/2021) |
| 10/12/2021 | 410 | RESPONSE to Discovery Request by DISTRICT OF COLUMBIA. (Attachments: # 1 Appendix Fourth Supplemental Discovery Response)(Risher, Conrad) (Entered: 10/12/2021) |
| 10/13/2021 | 411 | TRIAL BRIEF by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Bagby, Kelly) (Entered: 10/13/2021) |
| 10/13/2021 | 412 | TRIAL BRIEF by DISTRICT OF COLUMBIA. (Kelley, Mateya) (Entered: 10/13/2021) |
| 10/13/2021 | 413 | PRETRIAL STATEMENT by IVY BROWN, DONALD DUPREE, LARRY MCDONALD. (Attachments: # 1 Appendix A (District's Exhibit List), # 2 Appendix B (Plaintiffs' Exhibit List), # 3 Appendix C (Plaintiffs' Deposition Designations and 2016 Trial Transcript Excerpts))(Bagby, Kelly) (Entered: 10/13/2021) |
| 10/14/2021 | 414 | MEMORANDUM OPINION AND ORDER granting in part and denying in part 393 plaintiffs' Motion for a Show Cause Hearing for the District of Columbia to Show Why It Should Not Be Sanctioned Under Federal Rule 37. Signed by Judge Paul L. Friedman on October 14, 2021. (lcnr) (Entered: 10/14/2021) |
| 10/15/2021 | 415 | NOTICE *Regarding Plaintiffs' Updated Exhibit List and Objections to District's Exhibits* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gluckman, Todd) (Entered: 10/15/2021) |
| 10/17/2021 | 416 | NOTICE *of Objections to Plaintiffs' Exhibits* by DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit)(Disney, Pamela) (Entered: 10/17/2021) |
| 10/17/2021 | 417 | NOTICE *of Decision Related to District's Objections* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Attachments: # 1 Exhibit 1 (July 23, 2021 |

| | | |
|---|---|---|
| | | Superior Court Decision), # 2 Exhibit 2 (August 20, 2021 Superior Court Decision))(Gluckman, Todd) (Entered: 10/17/2021) |
| 10/18/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Final Pretrial Conference held on 10/18/2021. Pretrial issues addressed by the court. Bench trial remains scheduled to commence on 10/25/2021 @ 10am via Zoom Video. (Court Reporter: Nancy Meyer) (tj) (Entered: 10/19/2021) |
| 10/19/2021 | | MINUTE ORDER: For scheduling reasons, the proceedings in the bench trial of this case on November 2, 2021, will not start until 12:00 p.m. and will run from 12:00 p.m. until 4:00 p.m. Signed by Judge Paul L. Friedman on October 19, 2021. (lcnr) (Entered: 10/19/2021) |
| 10/20/2021 | 418 | FINAL PRETRIAL ORDER. Trial is scheduled to begin at 10:00 a.m. on October 25, 2021, and is expected to last no more than ten days. As set forth in greater detail in the Final Pretrial Order, plaintiffs shall file an opposition to the District's hearsay objections on or before October 29, 2021, and the District shall file a response on or before November 5, 2021. Plaintiffs also shall file an opposition to the District's request to claw back documents subject to the deliberative process privilege on or before October 29, 2021, and the District shall file a response, if any, on or before November 12, 2021. Signed by Judge Paul L. Friedman on October 20, 2021. (lcnr) (Entered: 10/20/2021) |
| 10/22/2021 | 419 | TRANSCRIPT OF PRETRIAL CONFERENCE before Judge Paul L. Friedman held on 10/18/2021. Page Numbers: 1–84. Date of Issuance: 10/21/2021. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by submitting the <ahref="http://www.dcd.uscourts.gov/node/110">Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/12/2021. Redacted Transcript Deadline set for 11/22/2021. Release of Transcript Restriction set for 1/20/2022.(Meyer, Nancy) (Entered: 10/22/2021) |
| 10/22/2021 | | MINUTE ORDER: For scheduling reasons, the proceedings in the bench trial of this case on November 2, 2021, will now start at 10:00 a.m. and will run until 4:00 p.m. Furthermore, the proceedings on November 17, 2021, will not start until 1:00 p.m. and will run until 5:00 p.m. Signed by Judge Paul L. Friedman on October 22, 2021. (lcnr) (Entered: 10/22/2021) |
| 10/22/2021 | 420 | NOTICE *(Plaintiffs' Notice Regarding Their Exhibits)* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Bagby, Kelly) (Entered: 10/22/2021) |

| 10/22/2021 | 421 | NOTICE *(Plaintiffs' Notice of Filing of Plaintiffs' Fourth Set of Supplemental Responses to the District of Columbia's Interrogatories)* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Bagby, Kelly) (Entered: 10/22/2021) |
| --- | --- | --- |
| 10/25/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial held on 10/25/2021 (Day 1). Evidence entered, and Bench Trial to resume on 10/26/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witness: Melisa Byrd. (Court Reporter Nancy Meyer (A.M.); Lisa Bankins (P.M.).) (tj) (Entered: 10/25/2021) |
| 10/26/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 10/26/2021 (Day 2). Evidence entered and Bench Trial continued on 10/27/2021 at 10:00 AM before Judge Paul L. Friedman. Witnesses: Melisa Byrd; Tamara Freeman. (Court Reporter Bryan Wayne (A.M.) / Nancy Meyer (P.M.) (tj) (Entered: 10/26/2021) |
| 10/27/2021 | | MINUTE ORDER: In addition to convening on the trial dates set forth in the Court's 403 Memorandum Opinion and Order, as modified by the Court's 408 Order, the bench trial in this case will continue on December 2, and 6–10, or until concluded, as necessary to complete the bench trial. Signed by Judge Paul L. Friedman on October 27, 2021. (lcnr) (Entered: 10/27/2021) |
| 10/27/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 10/27/2021 (Day 3). Evidence entered, and Bench Trial continued on 11/1/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witnesses: Tamara Freeman; Laura Newland (Court Reporter Lisa Bankins (A.M.); Bryan Wayne (P.M.).) (tj) (Entered: 10/27/2021) |
| 11/01/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 11/1/2021 (Day 4). Evidence entered, and Bench Trial continued to 11/2/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witness: Laura Newland. (Court Reporter Nancy Meyer (A.M.) and Lisa Bankins (P.M.).) (tj) (Entered: 11/01/2021) |
| 11/02/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 11/2/2021 (Day 5). Evidence entered and Bench Trial continued on 11/3/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witnesses: Laura Newland and Heather Stowe. (Court Reporter Bryan Wayne (A.M.) and Nancy Meyer (P.M.).) (tj) (Entered: 11/02/2021) |
| 11/03/2021 | | MINUTE ORDER: By agreement of counsel, an additional trial date shall be added on November 16, 2021. Therefore, during the week of November 15, 2021, the Court will sit on November 15 from 10 a.m. until 5 p.m., on November 16 from 10 a.m. until 5 p.m., and on November 17 from 1 p.m. until 5 p.m. Signed by Judge Paul L. Friedman on November 3, 2021. (lcnr) (Entered: 11/03/2021) |
| 11/03/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 11/3/2021 (Day 6). Evidence entered and Bench Trial continued to 11/8/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witnesses: Heather Stowe; Carolyn Punter. (Court Reporter Lisa Bankins (A.M.) and Bryan Wayne (P.M.).) (tj) (Entered: 11/05/2021) |
| 11/08/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 11/8/2021 (Day 7). Evidence entered and Bench Trial continued to 11/10/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. |

| | | |
|---|---|---|
| | | Witnesses: Carolyn Putner, Kristy Greenwalt; Jenny Reed. (Court Reporter Nancy Meyer (A.M) and Lisa Bankins (PM) (tj) (Entered: 11/08/2021) |
| 11/10/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 11/10/2021 (Day 8). Evidence entered and Bench Trial continued to 11/15/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witnesses: Jenny Reed and Wanda Seiler. (Court Reporters: Bryan Wayne (AM) and Nancy Meyer (PM) (zgdf) (Entered: 11/10/2021) |
| 11/11/2021 | 422 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 10/25/2021; Page Numbers: 151. Date of Issuance:11/11/2021. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br><span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span> The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/2/2021. Redacted Transcript Deadline set for 12/12/2021. Release of Transcript Restriction set for 2/9/2022.(Bankins, Lisa) (Entered: 11/11/2021) |
| 11/11/2021 | 423 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 10/27/2021; Page Numbers: 110. Date of Issuance:11/11/2021. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br><span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span> The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/2/2021. Redacted Transcript Deadline set for 12/12/2021. Release of Transcript Restriction set for 2/9/2022.(Bankins, Lisa) (Entered: 11/11/2021) |

| 11/11/2021 | 424 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/01/2021; Page Numbers: 128. Date of Issuance:11/11/2021. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 12/2/2021. Redacted Transcript Deadline set for 12/12/2021. Release of Transcript Restriction set for 2/9/2022.(Bankins, Lisa) (Entered: 11/11/2021) |
| 11/11/2021 | 425 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/03/2021; Page Numbers: 117. Date of Issuance:11/11/2021. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 12/2/2021. Redacted Transcript Deadline set for 12/12/2021. Release of Transcript Restriction set for 2/9/2022.(Bankins, Lisa) (Entered: 11/11/2021) |
| 11/11/2021 | 426 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/08/2021; Page Numbers: 158. Date of Issuance:11/11/2021. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript |

| | | |
|---|---|---|
| | | formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/2/2021. Redacted Transcript Deadline set for 12/12/2021. Release of Transcript Restriction set for 2/9/2022.(Bankins, Lisa) (Entered: 11/11/2021) |
| 11/15/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial held on 11/15/2021 (Day 9). Evidence entered and Bench Trial continued to 11/16/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom. Oral order directing the parties to file a memorandum of law on plaintiffs' exhibits 405 and 879 by 11/22/2021. Response due by 12/3/2021. Witnesses: Megan Fletcher and Laura Newland. (Court Reporters: Lisa Bankins (AM) / Bryan Wayne (PM) (zgdf) (Entered: 11/16/2021) |
| 11/16/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial held on 11/16/2021 (Day 10). Evidence entered and Bench Trial continued to 11/17/2021 at 1:00 PM before Judge Paul L. Friedman via Zoom. The parties will include briefing on plaintiffs' exhibit 790 in the previous briefing schedule. Witnesses: Larry McDonald, Laura Newland and Melisa Byrd. (Court Reporters: Nancy Meyer (AM) / Lisa Bankins (PM) (zgdf) (Entered: 11/16/2021) |
| 11/17/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial held on 11/17/2021 (Day 11). Evidence entered and Bench Trial continued to 12/2/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom and In−person. Witness: Leyla Sarigol. (Court Reporter: Bryan Wayne) (zgdf) (Entered: 11/17/2021) |
| 11/22/2021 | 427 | NOTICE *re Plaintiffs' Brief Seeking the Admission of Certain Exhibits* by IVY BROWN, DONALD DUPREE, LARRY MCDONALD (Bagby, Kelly) (Entered: 11/22/2021) |
| 11/29/2021 | | MINUTE ORDER: For scheduling reasons, the trial date of December 7, 2021, is VACATED. Signed by Judge Paul L. Friedman on November 29, 2021. (lcnr) (Entered: 11/29/2021) |
| 11/30/2021 | 428 | ORDER re procedures for December 2 and 8, 2021 in−person bench trial days. Signed by Judge Paul L. Friedman on November 30, 2021. (MA) (Entered: 11/30/2021) |
| 11/30/2021 | 429 | NOTICE of Voluntary Dismissal re Named Plaintiff Donald Dupree (Bagby, Kelly) (Entered: 11/30/2021) |
| 12/02/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/2/2021 (Day 12). Evidence entered, and Bench Trial continued to 12/6/2021 at 10:00 AM in before Judge Paul L. Friedman via Zoom Video. Witness: Nancy Weston. (Court Reporter Nancy Meyer (AM); Lisa Bankins (PM).) (tj) (Entered: 12/02/2021) |
| 12/03/2021 | 430 | |

| | | |
|---|---|---|
| | | RESPONSE re <u>427</u> Notice (Other) *of Plaintiffs' Brief Seeking the Admission of Certain Exhibits* filed by DISTRICT OF COLUMBIA. (Risher, Conrad) Modified event title on 12/6/2021 (znmw). (Entered: 12/03/2021) |
| 12/06/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/6/2021 (Day 13). Evidence entered and Bench Trial continued to 12/8/2021 at 10:00 AM in before Judge Paul L. Friedman via Zoom Video. Witnesses: Mike Petron and Nancy Weston. (Court Reporter: Bryan Wayne (A.M) and Nancy Meyer (P.M.).) (tj) (Entered: 12/06/2021) |
| 12/08/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/8/2021 (Day 14). Evidence entered and Bench Trial continued to 12/9/2021 at 10:00 AM before Judge Paul L. Friedman via zoom video. Witnesses: Ivy Brown; Kenneth Slaughter; Deborah Cason Daniel. (Court Reporter A.M – Lisa Bankins / P.M – Bryan Wayne.) (tj) (Entered: 12/08/2021) |
| 12/09/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/9/2021 (Day 15). Evidence entered and Bench Trial continued to 12/10/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witnesses: Nancy Weston and Randy Webster. (Court Reporter: Nancy Meyer (A.M.) and Lisa Bankins (P.M.).) (tj) (Entered: 12/10/2021) |
| 12/10/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial held on 12/10/2021 (Day 16). Evidence entered, and Bench Trial continued to 12/13/2021 at 10:00 AM before Judge Paul L. Friedman via Zoom Video. Witness: Randy Webster. (Court Reporters: Bryan Wayne (A.M.) and Nancy Meyer (P.M.).) (tj) (Entered: 12/10/2021) |
| 12/10/2021 | | MINUTE ORDER: By agreement of counsel, an additional trial date shall be added on December 13, 2021, from 10 a.m. until 1:30 p.m. Signed by Judge Paul L. Friedman on December 10, 2021. (lcnr) (Entered: 12/10/2021) |
| 12/13/2021 | | MINUTE ORDER: By agreement of counsel, additional trial dates shall be added on December 14, 2021, from 12:30 p.m. to 5:00 p.m.; December 16, 2021, from 1:00 p.m. to 5:00 p.m.; and December 17, 2021, from 11:00 a.m. to 5:00 p.m. Signed by Judge Paul L. Friedman on December 13, 2021. (MA) (Entered: 12/13/2021) |
| 12/13/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/13/2021 (Day 17). Evidence entered and Bench Trial continued to 12/14/2021 at 12:30 PM before Judge Paul L. Friedman via Zoom Video. Witnesses: Randy Webster; Gwendolyn Noonan Jones; Jemila Darqu. (Court Reporter: Lisa Bankins (A.M.) (tj) (Entered: 12/13/2021) |
| 12/13/2021 | <u>431</u> | REPLY re <u>427</u> Notice (Other) *Plaintiffs' Reply in Support of Their Brief Seeking the Admission of Certain Exhibits* filed by IVY BROWN, LARRY MCDONALD. (Attachments: # <u>1</u> Exhibit 1)(Bagby, Kelly) (Entered: 12/13/2021) |
| 12/14/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/14/2021 (Day 18). Evidence entered and Bench Trial continued to 12/16/2021 at 1:00 PM before Judge Paul L. Friedman via Zoom Video. Witnesses: Jemila Darku (continued); Laura Newland. (Court Reporter: Bryan Wayne) (tj) (Entered: 12/14/2021) |
| 12/16/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/16/2021 (Day 19). Evidence entered and Bench Trial |

| | | |
|---|---|---|
| | | continued to 12/20/2021 at 10:30 AM before Judge Paul L. Friedman via Zoom Video. Witness: Wanda Seiler. (Court Reporter: Nancy Meyer.) (tj) (Entered: 12/17/2021) |
| 12/20/2021 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Bench Trial resumed and held on 12/20/2021 (Day 20). Evidence entered and bench trial concluded. Scheduling order to be issued by the court. (Court Reporter: Lisa Bankins.) (tj) (Entered: 12/20/2021) |
| 12/20/2021 | | MINUTE ORDER: After careful consideration of the parties' arguments and in view of the other testimony that the parties have agreed to strike from the trial transcript, the lines 3590:20–3591:1 shall be stricken from the December 13, 2021 transcript. Signed by Judge Paul L. Friedman on December 20, 2021. (lcnr) (Entered: 12/20/2021) |
| 01/12/2022 | 432 | OPINION AND ORDER: Plaintiffs' Exhibit 879 is inadmissible and shall be excluded from evidence in this case. Signed by Judge Paul L. Friedman on January 12, 2022. (lcnr) (Entered: 01/12/2022) |
| 01/20/2022 | 433 | STATUS REPORT*(Joint Status Report)* by IVY BROWN, LARRY MCDONALD (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) Modified event on 1/21/2022 (znmw). (Entered: 01/20/2022) |
| 01/20/2022 | 434 | STIPULATION *(Stipulation Regarding Defendant's Exhibits 507.2, 511.1, and 512.2)* by IVY BROWN, LARRY MCDONALD (Bagby, Kelly) Modified event title on 1/21/2022 (znmw). (Entered: 01/20/2022) |
| 01/21/2022 | 435 | ORDER: The parties shall file their proposed findings of fact and conclusions of law on or before March 4, 2022; they shall file their responses on or before March 31, 2022; and they shall file a joint appendix of materials referenced from the 2016 trial on or before April 8, 2022. Signed by Judge Paul L. Friedman on January 21, 2022. (lcnr) (Entered: 01/21/2022) |
| 01/28/2022 | | MINUTE ORDER: With regard to the documents scheduled to be filed according to the Court's 435 Order, the parties shall provide to the Court two sets of paper copies of their proposed findings of facts and conclusions of law and their responses, and they shall provide to the Court one set of paper copies of their joint appendix of materials referenced from the 2016 trial in three–ring notebooks, each containing a table of contents, with the exhibits marked with exhibit numbers and separated using numbered tabs, except that copies of any native files may be provided on a shared drive accessible on the internet or flash drive. Signed by Judge Paul L. Friedman on January 28, 2022. (lcnr) (Entered: 01/28/2022) |
| 02/22/2022 | | MINUTE ORDER: In consideration of the parties' 434 Stipulation, Defendant's Exhibits 507.2, 511.1, and 512.2 are admitted into evidence; the parties shall not rely on hearsay statements therein. Signed by Judge Paul L. Friedman on February 22, 2022. (lcnr) (Entered: 02/22/2022) |
| 02/24/2022 | 436 | NOTICE OF WITHDRAWAL OF APPEARANCE as to IVY BROWN, JAMES BUMPASS, LARRY MCDONALD, DENISE RIVERS, TANITA SANDERS. Attorney Martha Geron Gadd terminated. (Gadd, Martha) (Entered: 02/24/2022) |
| 03/02/2022 | 437 | MOTION for Extension of Time to *File Proposed Findings of Fact and Conclusions of Law* by DISTRICT OF COLUMBIA. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Risher, Conrad) (Entered: 03/02/2022) |

| 03/02/2022 | 438 | RESPONSE re 437 MOTION for Extension of Time to *File Proposed Findings of Fact and Conclusions of Law* filed by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 03/02/2022) |
|---|---|---|
| 03/03/2022 | 439 | ORDER granting in part and denying in part the District's 437 Motion for Extension of Time to File Proposed Findings of Fact and Conclusions of Law. The parties shall file their proposed findings of fact and conclusions of law on or before March 9, 2022, at 5:00 p.m.; they shall file their responses on or before March 31, 2022; and they shall file a joint appendix of materials referenced from the 2016 trial on or before April 8, 2022. Signed by Judge Paul L. Friedman on March 3, 2022. (lcnr) (Entered: 03/03/2022) |
| 03/04/2022 | | Set/Reset Deadlines: Proposed Findings of Fact due by 3/9/2022; Responses due by 3/21/2022; Joint Appendix due by 4/8/2022. (tj) (Entered: 03/04/2022) |
| 03/07/2022 | 440 | NOTICE *(Joint Notice of Lists of Admitted Exhibits)* by IVY BROWN, LARRY MCDONALD (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Bagby, Kelly) (Entered: 03/07/2022) |
| 03/09/2022 | 441 | Proposed Findings of Fact by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Appendix 1)(Bagby, Kelly) (Entered: 03/09/2022) |
| 03/09/2022 | 442 | Proposed Findings of Fact by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 03/09/2022) |
| 03/25/2022 | 443 | Unopposed MOTION for Extension of Time to *File Responses to the Proposed Findings of Fact and Conclusions of Law, and the Joint Appendix* by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 03/25/2022) |
| 03/28/2022 | 444 | ORDER granting plaintiffs' 443 Unopposed Motion for an Extension of Time to File Responses to the Proposed Findings of Fact and Conclusions of Law, and the Joint Appendix. The parties shall file their responses to the proposed findings of fact and conclusions of law on or before April 5, 2022. The requirement that the parties file a joint appendix of materials referenced from the 2016 trial is VACATED. Instead, the parties shall file on the public docket a notice and the table of contents of the joint appendix, and shall deliver to the Court paper and electronic copies of the joint appendix, on or before April 13, 2022. Signed by Judge Paul L. Friedman on March 28, 2022. (lcnr) (Entered: 03/28/2022) |
| 03/29/2022 | 445 | MOTION to Strike 442 Proposed Findings of Fact *(Portions of Defendant's Proposed Findings of Fact and Conclusions of Law that are Based upon Documents that were not Admitted into Evidence)* by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 03/29/2022) |
| 04/05/2022 | 446 | RESPONSE re 442 Proposed Findings of Fact *(Plaintiffs' Response to Defendant's Proposed Findings of Fact and Conclusions of Law)* filed by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) (Entered: 04/05/2022) |
| 04/05/2022 | 447 | RESPONSE re 441 Proposed Findings of Fact *and Conclusions of Law,* filed by DISTRICT OF COLUMBIA. (Risher, Conrad) (Entered: 04/05/2022) |
| 04/11/2022 | 448 | TRANSCRIPT OF BENCH TRIAL (held via Zoom) before the Honorable Paul F. Friedman held on 10/25/2021. Page Numbers: 1–93 Date of Issuance: 10/25/2021. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by submitting the |

<ahref="http://www.dcd.uscourts.gov/node/110">Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/2/2022. Redacted Transcript Deadline set for 5/12/2022. Release of Transcript Restriction set for 7/10/2022.(Meyer, Nancy) (Entered: 04/11/2022)

| 04/11/2022 | 449 | Memorandum in opposition to re 445 MOTION to Strike 442 Proposed Findings of Fact *(Portions of Defendant's Proposed Findings of Fact and Conclusions of Law that are Based upon Documents that were not Admitted into Evidence)* filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Mar. 29, 2022 Email from Todd Gluckman, # 2 Exhibit B – Mar. 29, 2022 ECF Notice, # 3 Text of Proposed Order)(Risher, Conrad) (Entered: 04/11/2022) |
| 04/12/2022 | 450 | NOTICE *of Appendix Related to Transcript Excerpts and Admitted Exhibits from the 2016 Trial* by IVY BROWN, LARRY MCDONALD (Bagby, Kelly) (Entered: 04/12/2022) |
| 04/15/2022 | 451 | Unopposed MOTION to Supplement the Record with a D.C. Medicaid Document that Came into Existence after the Close of Trial by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Exhibit 974, # 2 Text of Proposed Order)(Bagby, Kelly) (Entered: 04/15/2022) |
| 04/18/2022 | 452 | REPLY to opposition to motion re 445 MOTION to Strike 442 Proposed Findings of Fact *(Portions of Defendant's Proposed Findings of Fact and Conclusions of Law that are Based upon Documents that were not Admitted into Evidence)* filed by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) (Entered: 04/18/2022) |
| 04/18/2022 | 453 | MOTION to Strike Portions of Defendant's Response to Plaintiffs' Findings of Fact and Conclusions of Law re 447 Response to Document by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Exhibit A (Plaintiffs Second Set of Interrogatories), # 2 Exhibit B (Plaintiffs Second Request for Production of Documents), # 3 Exhibit C (Excerpts of March 20, 2020 Teleconference Transcript), # 4 Exhibit D (Email Sending Plaintiffs' First Request For Admissions), # 5 Text of Proposed Order)(Bagby, Kelly) Modified event on 4/19/2022 (znmw). (Entered: 04/18/2022) |
| 04/19/2022 |  | MINUTE ORDER granting plaintiffs' 451 Unopposed Motion to Supplement the Record with a D.C. Medicaid Document that Came into Existence After the Close of Trial. Plaintiffs' Exhibit 974 is admitted into evidence. Signed by Judge Paul L. Friedman on April 19, 2022. (lcnr) (Entered: 04/19/2022) |
| 04/19/2022 | 454 |  |

| | | |
|---|---|---|
| | | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Conrad Z. Risher terminated. (Risher, Conrad) (Entered: 04/19/2022) |
| 04/20/2022 | 455 | TRANSCRIPT OF BENCH TRIAL, AM SESSION, before Judge Paul L. Friedman held on October 26, 2021; Page Numbers: 213–304. Date of Issuance: 4/20/2022. Court Reporter: Bryan A. Wayne, (202) 354–3186. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Wayne, Bryan) (Entered: 04/20/2022) |
| 04/20/2022 | 456 | TRANSCRIPT OF BENCH TRIAL (afternoon session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 10/26/2021. Page Numbers: 305–435. Date of Issuance: 04/20/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Meyer, Nancy J.) (Entered: 04/20/2022) |
| 04/20/2022 | 457 | TRANSCRIPT OF BENCH TRIAL, PM SESSION, before Judge Paul L. Friedman held on October 27, 2021; Page Numbers: 546–666. Date of Issuance: 4/20/2022. Court Reporter: Bryan A. Wayne, (202) 354–3186. Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Wayne, Bryan) (Entered: 04/20/2022) |
| 04/20/2022 | 458 | TRANSCRIPT OF BENCH TRIAL (morning session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 11/01/2021. Page Numbers: 667−750. Date of Issuance: 04/20/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202−354−3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Meyer, Nancy) (Entered: 04/20/2022) |
| 04/20/2022 | 459 | TRANSCRIPT OF BENCH TRIAL, AM SESSION, before Judge Paul L. Friedman held on November 2, 2021; Page Numbers: 877−960. Date of Issuance: 4/20/2022. Court Reporter: Bryan A. Wayne, (202) 354−3186. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be |

| | | |
|---|---|---|
| | | made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Wayne, Bryan) (Entered: 04/20/2022) |
| 04/20/2022 | 460 | TRANSCRIPT OF BENCH TRIAL (afternoon session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 11/02/2021. Page Numbers: 961–1056. Date of Issuance: 04/20/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Meyer, Nancy) (Entered: 04/20/2022) |
| 04/20/2022 | 461 | TRANSCRIPT OF BENCH TRIAL, PM SESSION, before Judge Paul L. Friedman held on November 3, 2021; Page Numbers: 1171–1296. Date of Issuance: 4/20/2022. Court Reporter: Bryan A. Wayne, (202) 354–3186. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Wayne, Bryan) (Entered: 04/20/2022) |
| 04/20/2022 | 462 | TRANSCRIPT OF BENCH TRIAL (morning session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 11/08/2021. Page Numbers: 1375–1478. Date of Issuance: 04/20/2022. Stenographic Court Reporter: Nancy J. |

| | | |
|---|---|---|
| | | Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Meyer, Nancy J.) (Entered: 04/20/2022) |
| 04/20/2022 | 463 | TRANSCRIPT OF BENCH TRIAL, AM SESSION, before Judge Paul L. Friedman held on November 10, 2021; Page Numbers: 1637–1746. Date of Issuance: 4/20/2022. Court Reporter: Bryan A. Wayne, (202) 354–3186. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Wayne, Bryan) (Entered: 04/20/2022) |
| 04/20/2022 | 464 | TRANSCRIPT OF BENCH TRIAL (afternoon session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 11/10/2021. Page Numbers: 1746–1848. Date of Issuance: 04/20/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to |

| | | |
|---|---|---|
| | | the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Meyer, Nancy) (Entered: 04/20/2022) |
| 04/20/2022 | 465 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 10/25/2021; Page Numbers: 135. Date of Issuance:04/20/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2022. Redacted Transcript Deadline set for 5/21/2022. Release of Transcript Restriction set for 7/19/2022.(Bankins, Lisa) (Entered: 04/20/2022) |
| 04/21/2022 | 466 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/01/2021; Page Numbers: 114. Date of Issuance:04/21/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/12/2022. Redacted Transcript Deadline set for 5/22/2022. Release of Transcript Restriction set for 7/20/2022.(Bankins, Lisa) (Entered: 04/21/2022) |
| 04/21/2022 | 467 | |

| | | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/08/2021; Page Numbers: 141. Date of Issuance:04/21/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 5/12/2022. Redacted Transcript Deadline set for 5/22/2022. Release of Transcript Restriction set for 7/20/2022.(Bankins, Lisa) (Entered: 04/21/2022) |
| 04/21/2022 | <u>468</u> | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/15/2021; Page Numbers: 107. Date of Issuance:04/21/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 5/12/2022. Redacted Transcript Deadline set for 5/22/2022. Release of Transcript Restriction set for 7/20/2022.(Bankins, Lisa) (Entered: 04/21/2022) |
| 04/22/2022 | <u>469</u> | NOTICE *Regarding Defendant's Exhibit 316* by IVY BROWN, LARRY MCDONALD re <u>440</u> Notice (Other) (Bagby, Kelly) (Entered: 04/22/2022) |
| 04/26/2022 | <u>470</u> | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 10/272021; Page Numbers: 1−99. Date of Issuance:4/26/2022. Court Reporter/Transcriber Lisa K. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/17/2022. Redacted Transcript Deadline set for 5/27/2022. Release of Transcript Restriction set for 7/25/2022.(znmw) (Entered: 04/27/2022) |
| 04/27/2022 | 471 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/03/2021; Page Numbers: 108. Date of Issuance:04/27/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/18/2022. Redacted Transcript Deadline set for 5/28/2022. Release of Transcript Restriction set for 7/26/2022.(Bankins, Lisa) (Entered: 04/27/2022) |
| 04/27/2022 | 472 | TRANSCRIPT OF BENCH TRIAL, PM SESSION, before Judge Paul L. Friedman held on November 15, 2021; Page Numbers: 1971−2096. Date of Issuance:4/27/2022. Court Reporter: Bryan A. Wayne, (202) 354−3186. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our |

| | | |
|---|---|---|
| | | website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/18/2022. Redacted Transcript Deadline set for 5/28/2022. Release of Transcript Restriction set for 7/26/2022.(Wayne, Bryan) (Entered: 04/27/2022) |
| 04/27/2022 | 473 | TRANSCRIPT OF BENCH TRIAL (morning session) (held via Zoom) before the Honorable Paul L. Friedman held on 11/16/2021. Page Numbers: 2097–2187. Date of Issuance: 04/27/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/18/2022. Redacted Transcript Deadline set for 5/28/2022. Release of Transcript Restriction set for 7/26/2022.(Meyer, Nancy J.) Modified on 4/27/2022 (znmw). (Entered: 04/27/2022) |
| 04/27/2022 | 474 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 11/16/2021; Page Numbers: 124. Date of Issuance:04/27/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202–354–3243, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/18/2022. Redacted Transcript Deadline set for 5/28/2022. Release of Transcript Restriction set for 7/26/2022.(Bankins, Lisa) (Entered: 04/27/2022) |
| 04/27/2022 | 475 | TRANSCRIPT OF BENCH TRIAL before Judge Paul L. Friedman held on November 17, 2021; Page Numbers: 2327–2464. Court Reporter: Bryan A. Wayne, (202) 354–3186. Transcripts may be ordered by submitting the Transcript Order Form |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be a ccessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/18/2022. Redacted Transcript Deadline set for 5/28/2022. Release of Transcript Restriction set for 7/26/2022.(Wayne, Bryan) (Entered: 04/27/2022)

| 04/27/2022 | 476 | TRANSCRIPT OF BENCH TRIAL (morning session) before the Honorable Paul L. Friedman held on 12/02/2021. Page Numbers: 2465–2565. Date of Issuance: 04/27/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202−354−3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/18/2022. Redacted Transcript Deadline set for 5/28/2022. Release of Transcript Restriction set for 7/26/2022.(Meyer, Nancy J.) (Entered: 04/27/2022) |

| 04/27/2022 | 477 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 12/02/2021; Page Numbers: 108. Date of Issuance:04/27/2021. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, |

| | | |
|---|---|---|
| | | which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/18/2022. Redacted Transcript Deadline set for 5/28/2022. Release of Transcript Restriction set for 7/26/2022.(Bankins, Lisa) (Entered: 04/27/2022) |
| 04/28/2022 | 478 | TRANSCRIPT OF BENCH TRIAL, AM SESSION, before Judge Paul L. Friedman held on December 6, 2021; Page Numbers: 2675–2756. Date of Issuance: 4/28/2022. Court Reporter: Bryan A. Wayne, (202) 354–3186. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above . After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/19/2022. Redacted Transcript Deadline set for 5/29/2022. Release of Transcript Restriction set for 7/27/2022.(Wayne, Bryan) (Entered: 04/28/2022) |
| 04/28/2022 | 479 | TRANSCRIPT OF BENCH TRIAL (afternoon session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 12/06/2021. Page Numbers: 2757–2860. Date of Issuance: 04/28/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/19/2022. Redacted Transcript Deadline set for 5/29/2022. Release of Transcript Restriction set for 7/27/2022.(Meyer, Nancy) (Entered: 04/28/2022) |
| 04/28/2022 | 480 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 12/8/2021; Page Numbers: 2861 – 2942. Date of Issuance:4/28/2022. Court Reporter/Transcriber Lisa K. Bankins, Telephone number 202–354–3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenc ed above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/19/2022. Redacted Transcript Deadline set for 5/29/2022. Release of Transcript Restriction set for 7/27/2022.(rj) (Entered: 04/28/2022) |
| 04/28/2022 | 481 | TRANSCRIPT OF BENCH TRIAL, PM SESSION, before Judge Paul L. Friedman held on December 8, 2021; Page Numbers: 2957−3048. Date of Issuance: 4/28/2022. Court Reporter: Bryan A. Wayne, (202) 354−3186. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above . After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/19/2022. Redacted Transcript Deadline set for 5/29/2022. Release of Transcript Restriction set for 7/27/2022.(Wayne, Bryan) (Entered: 04/28/2022) |
| 04/29/2022 | 482 | TRANSCRIPT OF BENCH TRIAL (morning session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 12/09/2021. Page Numbers: 3049−3154. Date of Issuance: 04/29/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202−354−3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at |

| | | |
|---|---|---|
| | | www.dcd.uscourts.gov.<br><br>Redaction Request due 5/20/2022. Redacted Transcript Deadline set for 5/30/2022. Release of Transcript Restriction set for 7/28/2022.(Meyer, Nancy) (Entered: 04/29/2022) |
| 04/29/2022 | 483 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 12/09/2021; Page Numbers: 141. Date of Issuance:04/29/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202–354–3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/20/2022. Redacted Transcript Deadline set for 5/30/2022. Release of Transcript Restriction set for 7/28/2022.(Bankins, Lisa) (Entered: 04/29/2022) |
| 04/29/2022 | 484 | TRANSCRIPT OF BENCH TRIAL, AM SESSION, before Judge Paul L. Friedman held on December 10, 2021; Page Numbers: 3297–3386. Date of Issuance: 4/29/2022. Court Reporter: Bryan A. Wayne (202) 354–3186. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/20/2022. Redacted Transcript Deadline set for 5/30/2022. Release of Transcript Restriction set for 7/28/2022.(Wayne, Bryan) (Entered: 04/29/2022) |
| 04/30/2022 | 485 | TRANSCRIPT OF BENCH TRIAL (afternoon session) (held remotely via Zoom) before the Honorable Paul L. Friedman held on 12/10/2021. Page Numbers: 3387–3511. Date of Issuance: 04/30/2022. Stenographic Court Reporter: Nancy J. |

| | | |
|---|---|---|
| | | Meyer. Telephone Number: 202−354−3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/21/2022. Redacted Transcript Deadline set for 5/31/2022. Release of Transcript Restriction set for 7/29/2022.(Meyer, Nancy) (Entered: 04/30/2022) |
| 05/01/2022 | 486 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 12/13/2021; Page Numbers: 130. Date of Issuance:05/01/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202−354−3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/22/2022. Redacted Transcript Deadline set for 6/1/2022. Release of Transcript Restriction set for 7/30/2022.(Bankins, Lisa) (Entered: 05/01/2022) |
| 05/02/2022 | 487 | TRANSCRIPT OF BENCH TRIAL before Judge Paul L. Friedman held on December 14, 2021; Page Numbers: 3643−3774. Date of Issuance: 5/2/2022. Court Reporter: Bryan A. Wayne (202) 354−3186. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 da ys, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one |

| | | |
|---|---|---|
| | | days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/23/2022. Redacted Transcript Deadline set for 6/2/2022. Release of Transcript Restriction set for 7/31/2022.(Wayne, Bryan) (Entered: 05/02/2022) |
| 05/02/2022 | 488 | TRANSCRIPT OF BENCH TRIAL (held remotely via Zoom) before the Honorable Paul L. Friedman held on 12/16/2021. Page Numbers: 3775–3894. Date of Issuance: 05/02/2022. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by going to www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/23/2022. Redacted Transcript Deadline set for 6/2/2022. Release of Transcript Restriction set for 7/31/2022.(Meyer, Nancy J.) (Entered: 05/02/2022) |
| 05/02/2022 | 489 | TRANSCRIPT OF PROCEEDINGS before Judge Paul L. Friedman held on 12/20/2021; Page Numbers: 197. Date of Issuance:05/02/2022. Court Reporter/Transcriber L. Bankins, Telephone number 202–354–3243, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/23/2022. Redacted Transcript Deadline set for 6/2/2022. Release of Transcript Restriction set for 7/31/2022.(Bankins, Lisa) (Entered: 05/02/2022) |
| 05/02/2022 | 490 | |

| | | |
|---|---|---|
| | | REDACTED TRANSCRIPT re: Transcript 482 before the Honorable Paul L. Friedman of proceedings held on 12/09/2021, Page Numbers: 3049–3154. Date of Issuance: 05/02/2022. Stenographic Court Reporter: Nancy J. Meyer, Telephone number 202–354–3118, Transcripts may be ordered by going to www.dcd.uscourts.gov. Other transcript formats are also available (multi–page, condensed,CD or ASCII).(Meyer, Nancy J.) (Entered: 05/02/2022) |
| 05/02/2022 | 491 | Memorandum in opposition to re 453 MOTION to Strike filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Exhibit A – Jan. 13 Hearing Transcript Excerpt, # 2 Text of Proposed Order)(Disney, Pamela) (Entered: 05/02/2022) |
| 05/09/2022 | 492 | REPLY to opposition to motion re 491 Memorandum in Opposition filed by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Exhibit E (Excerpt of Jan. 13, 2020 Teleconference))(Bagby, Kelly) (Entered: 05/09/2022) |
| 07/24/2023 | 493 | NOTICE OF SUPPLEMENTAL AUTHORITY by IVY BROWN, LARRY MCDONALD (Attachments: # 1 Exhibit 1 (US v. Florida, Memorandum Opinion and Order), # 2 Exhibit 2 (US v. Florida, Order of Injunction))(Bagby, Kelly) (Entered: 07/24/2023) |
| 10/25/2023 | 494 | MOTION for Order *(Plaintiffs' Motion for Decision on the Trial Conducted in 2021 or, in the Alternative, for a Status Conference)* by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Text of Proposed Order, # 2 Text of Proposed Order (Alternative))(Bagby, Kelly). Added MOTION for Hearing on 10/26/2023 (zjm). (Entered: 10/25/2023) |
| 11/06/2023 | | MINUTE ORDER granting in part the plaintiffs' 494 Motion for Decision on the Trial Conducted in 2021 or, in the Alternative, for a Status Conference. The parties shall appear for a status conference on November 28, 2023, at 3:30 p.m. in Courtroom 29 in the William B. Bryant Annex to the E. Barrett Prettyman Courthouse at 333 Constitution Avenue N.W., Washington, D.C. 20001. In advance of the status conference, the parties shall meet and confer to discuss whether to submit supplemental briefing to update the Court about any new case law or other authority that may affect the legal arguments previously briefed. The parties shall file a joint status report on or before November 22, 2023, indicating whether they wish to submit supplemental briefing, and if so, proposing a briefing schedule. Because the evidence in the case closed at the conclusion of trial, no supplementation of facts will be permitted. Signed by Judge Paul L. Friedman on November 6, 2023. (lcak) (Entered: 11/06/2023) |
| 11/08/2023 | | Set/Reset Hearings: Status Conference set for 11/28/2023 at 03:30 PM in Courtroom 29A– In Person before Judge Paul L. Friedman. (tj) (Entered: 11/08/2023) |
| 11/20/2023 | 495 | Joint STATUS REPORT by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) (Entered: 11/20/2023) |
| 11/28/2023 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Status Conference held on 11/28/2023. The court approves the following briefing schedule proposed by the parties: Initial filing due by 1/16/2024; Reply due by 1/30/2024. (Court Reporter: Elizabeth Saint Loth.) (ztj) (Entered: 11/28/2023) |
| 01/16/2024 | 496 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Rebecca Rodgers, Fee Status: No Fee Paid. by IVY BROWN. (Attachments: # 1 Declaration Rebecca Rodgers Declaration and Attorney Certification, # 2 Exhibit Certificate of Good Standing)(Bagby, Kelly) (Entered: 01/16/2024) |

| 01/16/2024 | 497 | SUPPLEMENTAL MEMORANDUM by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) Modified event title on 1/18/2024 (znmw). (Entered: 01/16/2024) |
| 01/16/2024 | 498 | SUPPLEMENTAL MEMORANDUM by DISTRICT OF COLUMBIA. (Disney, Pamela) Modified event title on 1/18/2024 (znmw). (Entered: 01/16/2024) |
| 01/18/2024 | | MINUTE ORDER granting the plaintiffs' 496 Motion for Admission of Attorney Pro Hac Vice. Rebecca Juliet Rodgers shall be admitted pro hac vice in this action. Signed by Judge Paul L. Friedman on January 18, 2024. (lcak) (Entered: 01/18/2024) |
| 01/30/2024 | 499 | RESPONSE re 497 Memorandum by DISTRICT OF COLUMBIA. (Kelley, Mateya) Modified on 2/1/2024 to correct event (zjm). (Entered: 01/30/2024) |
| 01/30/2024 | 500 | RESPONSE re 498 Memorandum by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) Modified on 2/1/2024 (zjm). (Entered: 01/30/2024) |
| 02/01/2024 | 501 | NOTICE of Appearance by Rebecca Juliet Rodgers on behalf of IVY BROWN, LARRY MCDONALD (Rodgers, Rebecca) (Entered: 02/01/2024) |
| 08/10/2024 | 502 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DISTRICT OF COLUMBIA. Attorney Pamela A. Disney terminated. (Disney, Pamela) (Entered: 08/10/2024) |
| 09/18/2024 | 503 | ORDER denying as moot 445 Plaintiffs' Motion to Strike Portions of Defendant's Proposed Findings of Fact and Conclusions of Law That Are Based Upon Documents That Were Not Admitted Into Evidence, and 453 Plaintiffs' Motion to Strike Portions of Defendant's Response to Plaintiffs' Findings of Fact and Conclusions of Law. See Order for details. Signed by Judge Paul L. Friedman on September 18, 2024. (ATM) (Entered: 09/18/2024) |
| 11/15/2024 | 504 | MOTION for Order *(Plaintiffs' Motion for Decision on the Trial Conducted in 2021)* by LARRY MCDONALD, IVY BROWN. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 11/15/2024) |
| 12/31/2024 | 505 | Opinion, Findings of Fact, and Conclusions of Law. Judgment for plaintiffs. See Opinion for details. Signed by Judge Paul L. Friedman on December 31, 2024. (ATM) (Entered: 12/31/2024) |
| 01/09/2025 | 506 | MOTION for Extension of Time to *File Plaintiffs' Motion for Attorneys' Fees and Expenses (Plaintiffs' Motion for an Extension of Time and a Scheduling Order Regarding Their Motion for Attorneys' Fees and Expenses)* by LARRY MCDONALD, IVY BROWN. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 01/09/2025) |
| 01/23/2025 | 507 | Memorandum in opposition to re 506 Motion for Extension of Time to, filed by DISTRICT OF COLUMBIA. (Attachments: # 1 Text of Proposed Order)(Kelley, Mateya) (Entered: 01/23/2025) |
| 01/28/2025 | 508 | MOTION to Alter Judgment as to 505 Memorandum & Opinion by DISTRICT OF COLUMBIA. (Attachments: # 1 Text of Proposed Order)(Kelley, Mateya) (Entered: 01/28/2025) |
| 01/29/2025 | 509 | MOTION to Stay re 505 Memorandum & Opinion by DISTRICT OF COLUMBIA. (Attachments: # 1 Text of Proposed Order)(Kelley, Mateya) (Entered: 01/29/2025) |
| 01/29/2025 | 510 | REPLY to opposition to motion re 506 Motion for Extension of Time to, filed by LARRY MCDONALD, IVY BROWN. (Attachments: # 1 Exhibit (Plaintiffs' Exhibit |

| | | 1), # 2 Text of Proposed Order)(Bagby, Kelly) (Entered: 01/29/2025) |
|---|---|---|
| 01/30/2025 | 511 | ORDER granting in part and denying in part 506 Motion for an Extension of Time. See Order for details. Signed by Judge Paul L. Friedman on January 30, 2025. (lcao) (Entered: 01/30/2025) |
| 01/31/2025 | 512 | CLERK'S JUDGMENT in favor of Plaintiffs Ivy Brown, et al, and against Defendant District of Columbia (Signed by Tanya Johnson, Deputy Clerk on 1/31/25). (tj) (Entered: 01/31/2025) |
| 02/03/2025 | | MINUTE ORDER denying as moot 504 plaintiffs' Motion for Order. The Court issued its 505 Opinion on December 31, 2024. Signed by Judge Paul L. Friedman on February 3, 2025. (lcao) (Entered: 02/03/2025) |
| 02/03/2025 | | Set/Reset Deadlines: Motions due by 5/30/2025. Status Report due by 6/30/2025 (tj) (Entered: 02/03/2025) |
| 02/04/2025 | 513 | Consent MOTION for Extension of Time to File Response/Reply as to 509 MOTION to Stay re 505 Memorandum & Opinion , 508 MOTION to Alter Judgment as to 505 Memorandum & Opinion by LARRY MCDONALD, IVY BROWN. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 02/04/2025) |
| 02/04/2025 | | MINUTE ORDER granting 513 Consent Motion for Extensions of Time. Plaintiffs shall submit their opposition to 508 Defendants Motion to Alter or Amend Judgment on or before February 25, 2025; plaintiffs shall submit their opposition to 509 Defendants Motion to Stay Judgment Pending Reconsideration of the Injunction Entered on or before February 26, 2025; defendant shall submit its replies in support of 508 Defendants Motion to Alter or Amend Judgment and 509 Defendants Motion to Stay Judgment Pending Reconsideration of the Injunction Entered on or before March 19, 2025. Signed by Judge Paul L. Friedman on February 4, 2025. (lcao) (Entered: 02/04/2025) |
| 02/25/2025 | 514 | Memorandum in opposition to re 508 Motion to Alter Judgment filed by LARRY MCDONALD, IVY BROWN. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 02/25/2025) |
| 02/26/2025 | 515 | NOTICE *of Errata and Supplement* by DISTRICT OF COLUMBIA re 509 Motion to Stay (Attachments: # 1 Exhibit A to ECF 509)(Kelley, Mateya) (Entered: 02/26/2025) |
| 02/26/2025 | 516 | Memorandum in opposition to re 509 Motion to Stay filed by LARRY MCDONALD, IVY BROWN. (Attachments: # 1 Text of Proposed Order)(Bagby, Kelly) (Entered: 02/26/2025) |
| 02/28/2025 | | Set/Reset Deadlines: Replies due by 3/19/2025. (tj) (Entered: 02/28/2025) |
| 03/04/2025 | | MINUTE ORDER: It is hereby ORDERED that the parties shall appear for oral argument on 508 defendant's Motion to Alter Judgment at 10:00 a.m. on Tuesday, April 15, 2025, in Courtroom 29 in the William B. Bryant Annex to the E. Barrett Prettyman Courthouse at 333 Constitution Avenue N.W., Washington, D.C. 20001. SO ORDERED. Signed by Judge Paul L. Friedman on March 4, 2025. (lcao) (Entered: 03/04/2025) |
| 03/04/2025 | | Set/Reset Hearings: Motion Hearing set for 4/15/2025 at 10:00 AM in Courtroom 29A– In Person before Judge Paul L. Friedman. (tj) (Entered: 03/04/2025) |

| 03/19/2025 | 517 | REPLY to opposition to motion re 508 Motion to Alter Judgment filed by DISTRICT OF COLUMBIA. (Kelley, Mateya) (Entered: 03/19/2025) |
|---|---|---|
| 03/19/2025 | 518 | REPLY to opposition to motion re 509 Motion to Stay filed by DISTRICT OF COLUMBIA. (Kelley, Mateya) (Entered: 03/19/2025) |
| 04/15/2025 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Motion Hearing held on 4/15/2025 re 509 MOTION to Stay and 508 MOTION to Alter Judgment. Oral argument heard, and the court takes the motions under advisement. (Court Reporter: Sonja Reeves) (ztj) (Entered: 04/15/2025) |
| 04/16/2025 | 519 | MEMORANDUM AND OPINION granting defendant's 509 Motion to Stay Judgment pending reconsideration of the injunction, and providing next steps for the parties. (See Order for further details) (Signed by Judge Paul L. Friedman on 4/16/25) (tj) (Entered: 04/16/2025) |
| 04/28/2025 | 520 | TRANSCRIPT OF MOTION HEARING before Judge Paul L. Friedman held on April 15, 2025; Page Numbers: 1–61. Date of Issuance: April 28, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354–3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/19/2025. Redacted Transcript Deadline set for 5/29/2025. Release of Transcript Restriction set for 7/27/2025.(Reeves, Sonja) (Entered: 04/28/2025) |
| 05/06/2025 | 521 | MEMORANDUM re 519 Memorandum & Opinion, Set Deadlines by DISTRICT OF COLUMBIA. (Kelley, Mateya) (Entered: 05/06/2025) |
| 05/06/2025 | 522 | Joint STATUS REPORT *(Parties' Proposed Revisions to Subpart Two of the Injunction and District's Statement Regarding Subpart Three of the Injunction)* by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) (Entered: 05/06/2025) |
| 05/13/2025 | 523 | MEMORANDUM re 519 Memorandum & Opinion, Set Deadlines by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) (Entered: 05/13/2025) |
| 05/13/2025 | 524 | NOTICE OF WITHDRAWAL OF APPEARANCE as to UNITED STATES OF AMERICA. Attorney Joy Levin Welan terminated. (Welan, Joy) (Entered: 05/13/2025) |
| 05/30/2025 | 525 | MOTION for Attorney Fees *and Expenses* by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Exhibit 1 (Summary of Attorneys' Fees and Expenses), # 2 Exhibit 2 (Attorneys' Fees and Expenses of AARP Foundation |

| | | |
|---|---|---|
| | | Litigation), # 3 Exhibit 3 (Attorneys' Fees and Expenses of Disability Rights DC at University Legal Services), # 4 Exhibit 4 (Attorneys' Fees and Expenses of ArentFox Schiff LLP), # 5 Exhibit 5 (Attorneys' Fees and Expenses of Relman Colfax PLLC), # 6 Exhibit 6 (Attorneys' Fees and Expenses of Terris, Pravlik & Millian, LLP), # 7 Exhibit 7 (Expert Invoices), # 8 Exhibit 8 (Declaration of Adam T. Klein ), # 9 Exhibit 9 (Declaration of Jason T. Mitchell), # 10 Exhibit 10 (Declaration of Joseph M. Sellers), # 11 Exhibit 11 (Declaration of E. Desmond Hogan), # 12 Exhibit 12 (Declaration of Christine E. Webber), # 13 Exhibit 13 (Declaration of Steven K. Davidson), # 14 Exhibit 14 (Declaration of William A. Burck), # 15 Exhibit 15 (Bird v. Garland – Final Approval Order), # 16 Exhibit 16 (Bird v. Garland – Tatel Declaration), # 17 Exhibit 17 (Declaration of Shireen Barday), # 18 Text of Proposed Order)(Bagby, Kelly) (Entered: 05/30/2025) |
| 05/30/2025 | 526 | Consent MOTION for an Order Regarding Notice to the Class re 525 MOTION for Attorney Fees *and Expenses* by IVY BROWN, LARRY MCDONALD. (Attachments: # 1 Notice to Counsel/Party, # 2 Text of Proposed Order)(Bagby, Kelly) (Entered: 05/30/2025) |
| 06/16/2025 | 527 | ORDER granting plaintiffs' 526 Consent Motion for An Order Regarding Notice to the Class Related to Plaintiffs' Motion for Attorneys' Fees and Expenses. The Clerk of the Court shall post the attached "Notice" regarding plaintiffs' 525 Motion for Attorneys' Fees and Expenses on the website of the United States District Court for the District of Columbia (www.dcd.uscourts.gov/cases–interest). The Clerk shall also make a notation on the docket of this action indicating the date that the Notice was placed on the Court's website. Signed by Judge Paul L. Friedman on June 16, 2025. (Attachments: # 1 Notice to Class Members/Mot. for Attorneys' Fees) (lcao) (Entered: 06/16/2025) |
| 06/30/2025 | 528 | Joint STATUS REPORT *Regarding Mediation* by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) (Entered: 06/30/2025) |
| 08/05/2025 | 529 | ORDER: in light of the parties' 528 Joint Status Report, the parties are directed to file another status report on or before August 19, 2025. See Order for details. Signed by Judge Paul L. Friedman on August 5, 2025. (lcao) (Entered: 08/05/2025) |
| 08/13/2025 | 530 | STATUS REPORT *Regarding Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses* by IVY BROWN, LARRY MCDONALD. (Bagby, Kelly) (Entered: 08/13/2025) |
| 08/15/2025 | 531 | OPINION AND ORDER denying defendant's 508 Motion to Alter or Amend Judgment. See Opinion and Order for details. Signed by Judge Paul L. Friedman on August 15, 2025. (lcao) (Entered: 08/15/2025) |
| 08/15/2025 | 532 | Joint STATUS REPORT *Concerning Fees Mediation* by DISTRICT OF COLUMBIA. (Kelley, Mateya) (Entered: 08/15/2025) |
| 09/03/2025 | 533 | ORDER directing defendant to show cause related to mediation. See Order for details. Signed by Judge Paul L. Friedman on September 3, 2025. (lcao) (Entered: 09/03/2025) |
| 09/12/2025 | 534 | RESPONSE TO ORDER TO SHOW CAUSE re 533 Order *Concerning Mediation* filed by DISTRICT OF COLUMBIA. (Kelley, Mateya) (Entered: 09/12/2025) |
| 09/12/2025 | 535 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 505 Memorandum & Opinion, 531 Order, Memorandum & Opinion by DISTRICT OF COLUMBIA. Fee |

| | | Status: No Fee Paid. Parties have been notified. (Kelley, Mateya) (Entered: 09/12/2025) |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IVY BROWN, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:10-cv-2250-PLF |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

### DEFENDANT DISTRICT OF COLUMBIA'S NOTICE OF APPEAL

Please take notice that Defendant District of Columbia hereby appeals to the U.S. Court of Appeals for the District of Columbia Circuit this Court's December 31, 2024 Opinion, Findings Of Fact, And Conclusions Of Law entering judgment in favor of Plaintiffs and the Plaintiff Class [ECF No. 505], and this Court's August 15, 2025 Opinion and Order denying Defendant's Fed. R. Civ. P. 59(e) motion seeking to alter or amend that ruling [ECF No. 531].

Date: September 12, 2025

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Mateya B. Kelley*
MATEYA B. KELLEY [888219451]
Assistant Attorney General
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 724-7854

Email: mateya.kelley@dc.gov

*Counsel for Defendant District of Columbia*

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
IVY BROWN, <u>et</u> <u>al</u>.,                              )
                                                    )
                    Plaintiffs,                     )
                                                    )
        v.                                          )          Civil Action No. 10-2250 (PLF)
                                                    )
DISTRICT OF COLUMBIA,                               )
                                                    )
                    Defendant.                      )
_____)

<u>OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW</u>

        This case was tried before the Court without a jury for all or portions of 20 days

in the Fall of 2021.  Because the trial took place during the early days of the COVID pandemic,

the trial was conducted virtually.

        Upon careful review of the witness testimony and the exhibits admitted at trial,

the relevant evidence from the first trial before Judge Ellen Segal Huvelle, the parties'

arguments, and the applicable statutes, regulations, and case law, the Court finds that the District

of Columbia has failed to comply with the integration mandate of <u>Olmstead v. L.C. ex rel.</u>

<u>Zimring</u>, 527 U.S. 581 (1999), thereby violating the Americans with Disabilities Act and

Section 504 of the Rehabilitation Act.  The Court also considered the "fundamental alteration

defense" under <u>Olmstead</u> and has concluded, based on the evidence presented at trial, that the

District has failed to demonstrate that three of the four accommodations requested by plaintiffs

are unreasonable.  The Court therefore will enter judgment for the plaintiffs.

## I. BACKGROUND

Plaintiffs are a class of physically disabled individuals who have received Medicaid-funded long-term care in nursing facilities for more than 90 days but wish to transition – and are capable of transitioning – to the community to receive home- and community-based long-term care.  Plaintiffs contend that the District has for decades violated Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq., by causing their unjustified segregation in nursing facilities (i.e., institutions).  Proceeding under the framework of Olmstead v. L.C. ex rel. Zimring ("Olmstead"), 527 U.S. 581 (1999), plaintiffs seek declaratory and injunctive relief to compel the District to alter its policies and procedures so as to better facilitate the plaintiffs' successful transition to the community.

### A.  The Integration Mandate and Olmstead

"Title II of the ADA and Section 504 of the Rehabilitation Act, along with their implementing regulations, require that public entities and programs receiving federal funds take reasonable steps to avoid administering their programs in a manner that results in the segregation of individuals with disabilities."  Brown v. District of Columbia ("Brown I"), 322 F.R.D. 51, 53 (D.D.C. 2017); see also 42 U.S.C. § 12101(b)(1) ("It is the purpose of [the ADA] . . . to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities . . . .").

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; see also id. § 12131(2) (defining a "qualified individual with a

2

disability" as "an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity").[1]  Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

Pursuant to its authority to issue implementing regulations, the Attorney General of the United States promulgated several regulations elaborating on the government's obligations under Title II.  Pertinent here, "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d) (emphasis added); see also 28 C.F.R. Pt. 35, App. B (defining "the most integrated setting appropriate to the needs of qualified individuals with disabilities" as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible").  Similarly, pursuant to an implementing regulation of Section 504 of the Rehabilitation Act, recipients of federal funds (including public entities) must

---

[1]        The ADA defines a "disability" to include, "with respect to an individual . . . a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  And "[a] 'public entity' is 'any State or local government,' and 'any department, agency, [or] special purpose district,' including the District of Columbia."  Brown I, 322 F.R.D. at 53 (quoting 42 U.S.C. § 12131(1)(A), (B)).

3

"administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons."  28 C.F.R. § 41.51(d) (emphasis added).

In Olmstead v. L.C. ex rel. Zimring, a majority of the Supreme Court interpreted Title II of the ADA and its implementing regulations to hold that the unjustified placement, retention, or isolation of persons with disabilities in institutions constitutes a form of discrimination on the basis of disability.  527 U.S. at 596-97; see also id. at 601 (noting that disabled individuals who are unjustifiably institutionalized experience dissimilar treatment because they are required to "relinquish participation in community life they could enjoy given reasonable accommodations" in order to receive medical services, while those without disabilities are not required to make such a sacrifice to receive medical services).[2]  In adopting the ADA, Congress expressly found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem," and that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, . . . failure to make modifications to existing facilities and practices, . . . [and] segregation."  Olmstead, 527 U.S. at 600 (quoting 42 U.S.C. § 12101(a)(2), (5)).[3]

_____

[2]        Although "Olmstead dealt specifically with the ADA and the mentally disabled[,] . . . its analysis applies equally to the Rehabilitation Act and the physically disabled."  Brown v. District of Columbia ("Brown II"), 928 F.3d 1070, 1077 n.6 (D.C. Cir. 2019) (citing Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1260 n.2 (D.C. Cir. 2008) ("[T]he courts have tended to construe section 504 in pari materia with Title II of the ADA . . . .")); accord Sanchez v. Johnson, 416 F.3d 1051, 1062 (9th Cir. 2005); Steimel v. Wernert, 823 F.3d 902, 909 (7th Cir. 2016).

[3]        The Supreme Court recognized "two evident judgments" that justified its holding.  Olmstead, 527 U.S. at 600.  "First, institutional placement of persons who can handle and benefit from community setting perpetuates unwarranted assumptions that persons so isolated are

The Supreme Court in <u>Olmstead</u> recognized an "integration mandate" under the ADA to "integrate eligible patients [with disabilities] into local community-based settings." <u>Frederick L. v. Dep't of Pub. Welfare of Pa.</u>, 422 F.3d 151, 157 (3d Cir. 2005); <u>see</u> <u>Steimel v. Wernert</u>, 823 F.3d 902, 909 (7th Cir. 2016); <u>Arc of Wash. State Inc. v. Braddock</u>, 427 F.3d 615, 618 (9th Cir. 2005). Such integration "is in order when [1] the State's treatment professionals have determined that community placement is appropriate, [2] the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and [3] the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with . . . disabilities." <u>Olmstead</u>, 527 U.S. at 587.

A plurality of the Supreme Court went on to note, however, that "[t]he State's responsibility, once it provides community-based treatment to qualified persons with disabilities, is not boundless." <u>Olmstead</u>, 527 U.S. at 603. Rather, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); <u>see also</u> <u>Olmstead</u>, 527 U.S. at 605 (noting that states must have some "leeway" "[t]o maintain a range of facilities and to administer services with an even hand").

The plurality of the Court recognized two affirmative defenses that a public entity may prove to demonstrate that plaintiffs' requested accommodations are unreasonable. First, a state may "show that, in the allocation of available resources, immediate relief for the plaintiffs

---

incapable or unworthy or participating in community life." <u>Id</u>. "Second, confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." <u>Id</u>. at 601.

would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities." Olmstead, 527 U.S. at 604. Second, the state may "demonstrate that it ha[s] a comprehensive, effectively working plan [now called an "Olmstead Plan"] for placing qualified persons with mental disabilities in less restrictive settings, and a waiting list that move[s] at a reasonable pace not controlled by the State's endeavors to keep its institutions fully populated." Id. at 605-06; see also Arc of Wash. State Inc. v. Braddock, 427 F.3d at 618 (noting that courts "normally 'will not tinker with' comprehensive, effective state programs for providing care to the disabled").

### B.  Factual and Procedural History

On December 23, 2010, plaintiffs filed a putative class action against the District of Columbia seeking declaratory and injunctive relief, claiming that defendants had violated Title II of the ADA and Section 504 of the Rehabilitation Act. See Complaint [Dkt. No. 1]; see also Brown I, 322 F.R.D. at 56-57.[4] Specifically, plaintiffs alleged that the District of Columbia has caused numerous individuals with physical disabilities "to be confined unnecessarily in nursing facilities in order to obtain long-term care services, rather than facilitate [those individuals'] transition to the community with appropriate services and supports." Fourth Amended Complaint [Dkt. No. 162] ¶ 135. To remedy the District of Columbia's alleged violations of the ADA and the Rehabilitation Act, plaintiffs requested that the Court enter a permanent injunction requiring the District of Columbia to take four actions:

---

[4]     Judge Ellen Segal Huvelle presided over this case until her retirement, at which time the case was reassigned to the undersigned. Judge Huvelle's opinions set out the detailed background of this case, so the Court will include only the relevant factual and procedural history here. See Brown I, 322 F.R.D. at 56-64; see also Day v. District of Columbia, 894 F. Supp. 2d 1 (D.D.C. 2012); Thorpe v. District of Columbia, 303 F.R.D. 120 (D.D.C. 2014).

(i)  Develop and implement a working system of transition assistance for Plaintiffs whereby Defendant, at a minimum, (a) informs DC Medicaid-funded nursing facility residents, upon admission and at least every three months thereafter, about community-based long-term care alternatives to nursing facilities; (b) elicits DC Medicaid-funded nursing facility residents' preferences for community or nursing facility placement upon admission and at least every three months thereafter; (c) begins DC Medicaid-funded nursing facility residents' discharge planning upon admission and reviews at least every month the progress made on that plan; and (d) provides DC Medicaid-funded nursing facility residents who do not oppose living in the community with assistance accessing all appropriate resources available in the community.

(ii)  Ensure sufficient capacity of community-based long-term care services for Plaintiffs under the EPD, MFP, and PCA programs, and other long-term care services programs, to serve Plaintiffs in the most integrated setting appropriate to their needs, as measured by enrollment in these long-term care programs.

(iii)  Successfully transition Plaintiffs from nursing facilities to the community with the appropriate long-term care community-based services under the EPD, MFP, and PCA programs, and any other long-term care programs, with the following minimum numbers of transitions in each of the next four years:

> 80 class members in Year 1;
>
> 120 class members in Year 2;
>
> 200 class members in Year 3; and
>
> 200 class members in Year 4.

(iv)  Sustain the transition process and community-based long-term care service infrastructure to demonstrate the District's ongoing commitment to deinstitutionalization by, at a minimum, publicly reporting on at least a semi-annual basis the total number of DC Medicaid-funded nursing facility residents who do not oppose living in the community; the number of those individuals assisted by Defendant to transition to the community with long-term care services through each of the MFP, EPD, and PCA, and other long-term care programs; and the aggregate dollars Defendant saves (or fails to save) by serving individuals in the community rather than in nursing facilities.

7

Fourth Amended Complaint at 31-32.

On March 29, 2014, the Court certified a class of plaintiffs pursuant to Rule 23 of

the Federal Rules of Civil Procedure consisting of:

> All persons with physical disabilities who, now or during the
> pendency of this lawsuit: (1) receive DC Medicaid-funded long-
> term care services in a nursing facility for 90 or more consecutive
> days; (2) are eligible for Medicaid-covered home and community-
> based long-term care services that would enable them to live in the
> community; and (3) would prefer to live in the community instead
> of a nursing facility but need the District of Columbia to provide
> transition assistance to facilitate their access to long-term care
> services in the community.

Order [Dkt. No. 129] at 1; see Thorpe v. District of Columbia, 303 F.R.D. at 152, petition for

appeal of class cert. denied, In re District of Columbia, 792 F.3d 96 (D.C. Cir. 2015).  In 2016,

Judge Huvelle conducted a bench trial to determine whether the District of Columbia was

"liable," reserving until a later phase, if necessary, the question of what an appropriate remedy

might be.  See Brown I, 322 F.R.D. at 61-62.  At the outset, the Court observed that for plaintiffs

to prevail, they had "to show a systemic policy or practice of the District's operation of its

Medicaid system that has caused a common harm to plaintiffs" in the class and further "that the

common harm can be remedied by a single injunction, which would result in the class members

being transitioned out of the nursing facilities." Brown I, 322 F.R.D. at 53 (citing FED. R. CIV.

P. 23).

In September 2017, after the trial, Judge Huvelle concluded that plaintiffs had

failed to prove that the District of Columbia had violated the ADA and the Rehabilitation Act

and entered judgment for the District.  See Brown I, 322 F.R.D. at 96.  The Court concluded that

plaintiffs had failed to prove "the existence of a concrete systemic deficiency in the District's

transition services" that had caused plaintiffs "to remain in nursing facilities despite their

preference to receive long-term care in the community." Id. at 87; see also id. at 56 (noting that,

under Rule 23, "to prevail on the merits and obtain the relief they seek, plaintiffs [must] prove concrete[,] systemic deficiencies in the District's system of transition assistance and that these deficiencies have caused a common harm to class members" (alteration in original) (internal quotation omitted)) . Furthermore, in her judgment, plaintiffs had failed to prove either that any systemic deficiency caused plaintiffs' institutionalization or that the harm could be addressed by a single injunction. See id.

On appeal, the D.C. Circuit reversed, holding that the Court had erred by requiring plaintiffs to shoulder the burden at trial of proving a "'concrete, systemic deficiency' in the District's transition services." See Brown v. District of Columbia ("Brown II"), 928 F.3d 1070, 1079 (D.C. Cir. 2019). The court concluded that under Olmstead it is the District of Columbia that should "bear[] the burden of proving the unreasonableness of [plaintiffs'] requested accommodation[s]" because plaintiffs had already established that "community placement is appropriate" and that "the transfer from institutional care to a less restrictive setting is not opposed." Id. at 1077 (quoting Olmstead, 527 U.S. at 600); accord Frederick L. v. Dep't of Pub. Welfare of Pa., 364 F.3d 487, 492 n.4 (3d Cir. 2004) ("Under this scheme, the plaintiff first bears the burden of articulating a reasonable accommodation. The burden of proof then shifts to the defendant, who must establish that the requested relief would require an unduly burdensome or fundamental alteration of state policy in light of its economic resources and its obligation to other [disabled] persons in the institutional setting.").

The D.C. Circuit proceeded to lay out two alternative ways that that the District can carry its burden. First, the District can "'demonstrate that it ha[s] a comprehensive, effectively working plan for placing qualified persons with [physical] disabilities in less restrictive settings, and a waiting list that move[s] at a reasonable pace not controlled by the

State's endeavors to keep its institutions fully populated,' i.e., an 'Olmstead Plan.'" Brown II, 928 F.3d at 1078 (quoting Olmstead, 527 U.S. at 605-06). Second, if the District cannot demonstrate that it has an adequate Olmstead Plan, it can demonstrate that each of plaintiffs' requested modifications to the District's policies and procedures "would be so costly as to require an unreasonable transfer of the State's limited resources away from other disabled individuals." Id. at 1078. If it cannot demonstrate either, the District "must make every [reasonable] modification to its policies and procedures requested by an institutionalized disabled individual who wishes to, and could, be cared for in the community." Id.

Because this Court failed to analyze plaintiffs' claims "in clear terms and under the correct burden of proof," the D.C. Circuit remanded the case for further factfinding and consideration. Brown II, 928 F.3d at 1084; see also id. at 1083-85 (providing detailed remand instructions). Although on remand this Court remains "free to apply certain facts that it has already found to the legal standards articulated" by the court of appeals, id. at 1085, it cannot reuse "facts that were found based on an improper allocation of the burden of proof [on plaintiffs]," id. at 1085 n.14. [5]

---

[5]    The D.C. Circuit also addressed the parties' disputes regarding whether the case was properly certified as a class action under Rule 23(a)(2) and (b)(2) of the Federal Rules of Civil Procedure. See Brown II, 928 F.3d at 1079-83. With respect to the former, the court of appeals observed that "on the current record, there does not appear to be a Rule 23(a)(2) deficiency" because "common proof will lead to common answers" to the questions on which plaintiffs' claims turn. Id. at 1082. And with respect to the latter, the court suggested that the certified class action was proper because an injunction favoring plaintiffs would satisfy Rule 23(b)(2) so long as it "improved [each plaintiff's] likelihood of achieving the legally mandated outcome," i.e., transition to the community. Id. at 1083; see also id. (noting "that the Supreme Court has called '[c]ivil rights cases against parties charged with unlawful, class-based discrimination' like this one, 'prime examples of what (b)(2) is meant to capture'" (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 361 (2011))). The court of appeals noted, however, that on remand this Court may modify or decertify the class as necessary. See id. at 1085; see also FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

10

After additional discovery and pretrial litigation, this case proceeded to a second bench trial before the undersigned that commenced on October 25, 2021.[6]  Pursuant to the D.C. Circuit's remand instructions regarding burden of proof, the District presented its case-in-chief first over eight days, calling eight witnesses and introducing numerous exhibits.  Plaintiffs then presented their opposition case over eight-and-a-half days, calling eleven witnesses (two of whom had testified during the District's case-in-chief) and introducing numerous exhibits.  The District presented its rebuttal case over two-and-a-half days, calling four witnesses (recalling two witnesses from its case-in-chief) and introducing additional exhibits.  The parties presented their closing arguments on the twentieth day of trial, December 20, 2021.

After the conclusion of the bench trial and in accordance with the schedule set by the Court, see Order [Dkt. No. 435], the parties simultaneously filed proposed findings of fact and conclusions of law, see Defendant's Proposed Findings of Fact and Conclusions of Law [Dkt. No. 442]; Plaintiffs' Proposed Findings of Fact and Conclusions of Law [Dkt. No. 441], and their respective responses thereto, see Plaintiffs' Response to Defendant's Proposed Findings of Fact and Conclusions of Law [Dkt. No. 446]; Defendant's Response to Plaintiffs' Proposed Findings of Fact and Conclusions of Law [Dkt. No. 447].[7]  In addition, at the Court's invitation,

---

[6]      On November 30, 2021, the parties jointly stipulated to the dismissal of one of three remaining named plaintiffs.  See Joint Stipulation of Dismissal of Donald Dupree [Dkt. No. 429].

[7]      In addition, plaintiffs filed two motions to strike portions of the District's submissions that assertedly relied on material that is not part of the evidentiary record.  See Plaintiffs' Motion to Strike Portions of Defendant's Proposed Findings of Fact and Conclusions of Law That Are Based Upon Documents That Were Not Admitted Into Evidence [Dkt. No. 445]; Plaintiffs' Motion to Strike Portions of Defendant's Response to Plaintiffs' Findings of Fact and Conclusions of Law [Dkt. No. 453].  Having reviewed plaintiffs' objections and the District's responses, the Court denied both motions by Order of September 18, 2024.  See Order of September 18, 2024 [Dkt. 503].  The Court stated in that order that it will not rely in this Opinion on those portions of the District's submissions that are still in dispute, thus rendering the

11

the parties filed supplemental post-trial briefs in January 2024.  See Plaintiffs' Supplemental

Post-Trial Brief [Dkt. No. 497]; Defendant's Supplemental Memorandum [Dkt. No. 498];

Defendant's Response to Plaintiffs' Supplemental Post-Trial Brief [Dkt. No. 499]; and Plaintiffs'

Response to Defendant's Supplemental Post-Trial Brief [Dkt. No. 500].[8]

    After carefully considering all of the admissible evidence from both bench trials

in this case, making credibility findings as necessary, and after reviewing the parties'

voluminous filings and the applicable law, the Court makes the following findings of fact and

conclusions of law.  See FED. R. CIV. P. 52(a).

## II.  FINDINGS OF FACT

    As the D.C. Circuit instructed, the trial focused on "whether the District can

establish that the plaintiffs' requested accommodations are in fact unreasonable."  Brown II, 928

---

motions moot.  It has relied in this Opinion exclusively on material that has been admitted in
evidence in order to resolve this case.

  [8]  In their filings, the parties agreed that there had been no material changes in the
applicable law since the close of trial, except with regard to one case, United States v. Florida,
682 F. Supp. 3d 1172 (S.D. Fla. 2023).  Defendant's Response to Plaintiffs' Supplemental Post-
Trial Brief at 1.  In that case, the court held the state liable for unjustifiably segregating
medically complex children in need of long-term care by institutionalizing them rather than
placing them in the most integrated setting appropriate to their needs, in violation of the ADA.
See United States v. Florida, 682 F. Supp. 3d 1172.  Plaintiffs argued that the District of
Columbia, like the state of Florida, "failed to address [ ] barriers through reasonable
accommodations to help the [plaintiff class] realize their integration rights."  Plaintiffs' Response
to Defendant's Supplemental Post-Trial Brief at 3.  The District pointed  out "several key
differences" between this case and the Florida case, including the fact that it involved private
duty nursing and the long waiting list for Medicaid waivers in Florida.  Defendant's
Supplemental Memorandum at 2-3.  It noted that there is no waiting list at all for EPD waivers in
the District of Columbia.  Id. at 3.  The Court finds that the decision in the Florida case was
largely fact-based and, as defendant points out, arose in a very different context from the one at
issue here.  The Court concludes that United States v. Florida is not relevant to its analysis in the
instant case.

F.3d at 1083-84. As that court held, the District can meet its burden of proof in one of two ways. First, "[t]he District can establish that it has a 'comprehensive, effectively working plan' for transitioning [plaintiffs] to the community and a 'waiting list [for transition to the community] that move[s] at a reasonable pace,' i.e., an adequate 'Olmstead Plan.'" Id. at 1084 (third and fourth alterations in original) (quoting Olmstead v. L.C. ex rel. Zimring, 527 U.S. at 605-06). Second, if it cannot do so, "the District can establish, seriatim, that each of the four provisions of Plaintiffs' requested injunction would be so costly as to require an unreasonable transfer of the District's limited resources from other disabled individuals." Id.

 The following findings of fact are based on the live testimony of witnesses at trial, the documentary evidence admitted at trial, factual findings from the first bench trial in this case that have been reaffirmed under the correct burden of proof, see Brown II, 928 F.3d at 1085 n.14, and the parties' stipulations of undisputed facts.

## A.  The District's Witnesses

 The District of Columbia offered live testimony from the following District officials and employees and from one expert witness. The District also offered live testimony from the two named plaintiffs and one of their guardians during plaintiffs' case-in-chief.

### Melisa Byrd

1. Melisa Byrd has been the Medicaid Director and Senior Deputy Director of the D.C. Department of Health Care Finance ("DHCF") since October 2018. See Trial Transcript ("Tr.") at 39:8-16, 41:13-15 (Byrd). In that role, Ms. Byrd oversees DHCF's administration of the District's Medicaid State Plan and other programs, and she also plays a role in the agency's

policy decisions, budget formulation and decisions, and compliance with federal law, including the Medicaid statute.  See id. at 41:16-42:11, 43:18-20 (Byrd).[9]

### Tamara Freeman

2.    Tamara Freeman is a supervisory nurse consultant in the Health and Regulation and Licensing Administration of the D.C. Department of Health ("DOH").  See Tr. at 310:24-311:5 (Freeman).  Ms. Freeman holds a bachelor's degree in nursing and a master's degree in nursing leadership, is certified by the Centers for Medicare and Medicaid Services ("CMS") to conduct long-term care surveys, is a registered nurse, and was the director of nursing at a long-term care facility before joining DOH 15 years ago.  See id. at 311:10-8 (Freeman).  As a supervisory nurse consultant, Ms. Freeman oversees a team of nurses and a sanitarian who visit and inspect long-term care facilities to ensure that the care and services provided to residents accord with federal and state regulations.  See id. at 312:21-313:8 (Freeman).

### Laura Newland

3.    Laura Newland has been the Director of the D.C. Department of Aging and Community Living ("DACL"), previously known as the D.C. Office on Aging ("DCOA"), for about six years.  See Tr. at 499:7-15 (Newland).  In that role, Ms. Newland oversees the agency, which provides services and supports, directly or through grants or contracts, to D.C. residents aged 60 years and older, adults with disabilities, and their caregivers.  See id. at 502:12-503:8 (Newland).  Ms. Newland personally played a role in drafting the District's Olmstead Plan and

---

[9]    The present tense is frequently used throughout this Opinion.  Certain statements of fact – including the jobs held by witnesses and their titles – may not be accurate today.  But the evidence in this case closed on the last day of this non-jury trial, December 20, 2021.  The facts stated herein reflect the evidence and testimony as of the time of trial.

oversees DACL's implementation of its portion of the plan.  See id. at 507:9-13, 508:16-21, 549:10-550:9 (Newland).

4.     Before beginning her current role, Ms. Newland was special assistant for community living to the Deputy Mayor for Health and Human Services, Brenda Donald.  See Tr. at 499:23-500:4 (Newland).  In that role, Ms. Newland investigated the system of long-term services and supports provided through various D.C. agencies – including DACL, the D.C. Department of Health Care Finance ("DHCF"), the D.C. Department of Behavioral Health, DOH, the D.C. Department on Disability Services, and the Office of Disability Rights – and sought to increase collaboration between the agencies.  See id. at 500:13-19, 506:20-506:1, 553:23-554-9 (Newland).  She also studied the EPD Waiver application process and made recommendations to the Deputy Mayor on how to improve the process.  See id. at 500:23-501:7 (Newland).

<div align="center">Dr. Heather Stowe</div>

5.     Dr. Heather Stowe was the Clinical Director of DACL from June 2019 through October 2021.  See Tr. at 965:11-20 (Stowe).  Dr. Stowe has a Ph.D. in social work and is a licensed clinical social worker, having worked in social work for approximately 30 years.  See id. at 967:11-13, 968:1-20 (Stowe).  As the Clinical Director, Dr. Stowe worked to ensure that the teams within DACL that provided direct services to clients were able to do so in an efficient, effective, and person-centered manner that allowed individuals to live safely in the community as long as possible.  See id. at 970:18-24 (Stowe).  She also was responsible for improving the professionalism of the clinical teams, particularly by establishing standard operating procedures and data collection practices.  See id. at 972:11-23.

<div align="center">15</div>

Carolyn Punter

6.     Carolyn Punter was the Senior Vice President of the Housing Choice Voucher Program and Eligibility and Continued Occupancy Division of the D.C. Housing Authority ("DCHA") until late 2021.  See Tr. at 1200:1-4 (Punter).  Ms. Punter was responsible for overseeing the administration of locally- and federally-funded housing choice vouchers, inspections of units paid for with those vouchers, and the maintenance and management of the housing choice voucher wait list.  See id. at 1200:17-24 (Punter).

Kristy Greenwalt

7.     Kristy Greenwalt is an independent consultant who works with various cities, including the District of Columbia, to shape their homeless service system response.  See Tr. at 1428:19-22 (Greenwalt).  From 2014 to 2021, Ms. Greenwalt was the D.C. Director to End Homelessness, also known as the Director of the Interagency Council on Homelessness, a body composed of government officials and private- and nonprofit-sector partners that guide the District of Columbia's homeless service system response.  See id. at 1428:23-1430:8 (Greenwalt).

Jennifer Reed

8.     Since October 2017, Jennifer Reed has served as the Director of the D.C. Office of Budget and Performance Management.  See Tr. at 1565:6-14 (Reed).  In that position, Ms. Reed leads a budget team that is responsible for the formulation and implementation of the mayor's annual budget and financial plan, a performance team to drive strategic planning and service improvements across the District, and a third team that uses academic insights to improve District policies and programs.  See id. at 1566:24-1567:20.

16

Gwendolyn Noonan-Jones

9.      Gwendolyn Noonan-Jones is a transition care specialist at DACL, where she assists nursing facility residents to safely transition back to the community to receive services. See Tr. at 3544:15-20 (Noonan-Jones).  Ms. Noonan Jones worked with Ivy Brown, one of the two named plaintiffs, as her transition care specialist from 2016 to 2018.  See id. at 3545:23-3546:9 (Noonan-Jones).

Jemila Darku

10.     Jemila Darku was a transition care specialist at DACL from 2013 to 2016, and she worked with Ivy Brown as her transition care specialist from 2014 to 2016.  See Tr. 3589:2-11, 3611:1-6, 3613:20-22 (Darku); see also id. at 3546:5-15 (Noonan-Jones).  Since 2019, Ms. Darku has served as the community outreach coordinator for the community transition program of DACL, in which capacity she provides information to nursing facility residents, social workers, guardians, and family caregivers about the District's community transition program. See id. at 3589:19-3590:4 (Darku).

Wanda Seiler

11.     Wanda Seiler was retained by the District of Columbia as an expert.  See Def. Ex. 114.[10]  Ms. Seiler is a Managing Director with Alvarez & Marsal Public Sector Services, LLC, and has 24 years' experience providing government social services in South Dakota.  See id. ¶ 1; see also id. Appendix A.  She has previously "served as an expert in civil matters relating to the quality of services provided to people with developmental disabilities."  Id. ¶ 4.

---

[10]     Pursuant to the parties' stipulation, Ms. Seiler's written expert report constituted her direct testimony except to the extent it was supplemented at trial based on recent developments.

12.      Ms. Seiler was qualified by the Court as "an expert in the requirements of the Americans with Disabilities Act and Olmstead and how states can design and improve the programs under which they provide long-term care services and supports to people with disabilities, including Olmstead planning."  Tr. at 3788:4-11 (Seiler).

### B.  The Plaintiffs' Witnesses

Plaintiffs offered live testimony from the following individuals, including three expert witnesses, whose expert reports, pursuant to the parties' stipulation, constituted their direct testimony except to the extent it was supplemented at trial based on recent developments.

### Megan Fletcher

13.      Megan Fletcher was a management analyst at DACL from February 2020 until late November 2021.  See Tr. at 1897:10-23 (Fletcher).  In that capacity, Ms. Fletcher collected and analyzed data related to DACL's work, including data on the referral of nursing facility residents to DACL, giving insight into the department's performance and efficacy.  See id. at 1898:15-18, 1898:23-1899:15 (Fletcher).

### Larry McDonald

14.      Larry McDonald is a D.C. Medicaid Beneficiary who has lived in a nursing facility since at least 2006.  See Tr. at 2102:10-2103:16 (McDonald); Tr. at 2980:18-22 (Cason Daniel); see also Pl. Ex. 388 at 6.  Mr. McDonald has a physical disability and requires assistance with at least two activities of daily living.  See Pl. Ex. 388 at 6.  Mr. McDonald is one of two remaining named plaintiffs in this case.  See Plaintiffs' Fourth Amended Class Action Complaint [Dkt. No. 162] ¶¶ 46-53.

18

Deborah Cason Daniel

15.     Deborah Cason Daniel has served as Mr. McDonald's legal guardian since April
2017, when Mr. McDonald's previous guardian was replaced.  See Tr. at 2980:6-9, 3001:5-16
(Cason Daniel).  Ms. Cason Daniel is an attorney who practices abuse and neglect law,
represents wards and subjects in guardianship and conservatorship matters, and serves as the
personal representative in probating estates.  See id. at 2979:20-2980:1 (Cason Daniel).

Leyla Sarigol

16.     Leyla Sarigol is a project manager in the Long Term Care Administration of
DHCF.  See Tr. at 2331:17-23 (Sarigol).  In that role, Ms. Sarigol coordinates and provides
guidance regarding community transition programs, focusing on the Money Follows the Person
Demonstration Grant ("MFP") program.  See id. at 2332:5-13 (Sarigol).  She is also DHCF's
lead representative to the District's Olmstead Plan and for compliance with federal regulations
governing home- and community-based services.  See id. at 2332:5-25 (Sarigol).

Ivy Brown

17.     Ivy Brown is a D.C. Medicaid beneficiary who has lived in a nursing facility since
May 2013.  See Tr. at 2866:7-9, 2868:8-25; Pl. Ex. 388 at 5.  Ms. Brown has a physical disability
and requires assistance with at least two activities of daily living.  See Pl. Ex. 388 at 5.  Ms.
Brown is one of two remaining named plaintiffs in this case.  See Plaintiffs' Fourth Amended
Class Action Complaint [Dkt. No. 162] ¶¶ 26-29.

Kenneth Slaughter

18.     Kenneth Slaughter is the Americans with Disabilities Act / Section 504 of the
Rehabilitation Act Coordinator for DCHA.  See Tr. at 2960:23-2961:3 (Slaughter).  Mr.

Slaughter oversees requests from D.C. residents with disabilities who seek reasonable accommodations from DCHA.  See id. at 2961:4-13 (Slaughter).

<div align="center">Nancy Weston</div>

19.     Nancy Weston was retained by plaintiffs as an expert.  See Pl. Ex. 140.  Ms. Weston is the Director of Nursing Facility Operations for the Massachusetts Department of Developmental Services, in which capacity she "manage[s] the statewide clinical eligibility process for persons with brain injuries and other disabilities requiring community placement through HCBS residential waivers in coordination with partner state agencies."  Pl. Ex. 141A at 1.  Ms. Weston is a licensed social worker, which informed her opinions regarding the work of nursing facility social workers and DACL transition care specialists.  See Tr. at 3058:24-3059:3 (Weston).  She has previously provided trial testimony in another Olmstead litigation, Steward v. Abbott, Civil Action No. 10-1025 (W.D. Tex.).  See Pl. Ex. 141A at 1, 40.

20.     Ms. Weston was qualified by the Court as "an expert in the administration of government programs to assist with the transition of people with disabilities from nursing facilities and other institutions, as well as an expert in Olmstead implementation and compliance."  Tr. at 3113:22-3114:1, 3115:1-4 (Weston); accord id. at 4054:4-14 (Weston).

<div align="center">Randall Webster</div>

21.     Randall Webster was retained by plaintiffs as an expert.  See Pl. Ex. 140.  Mr. Webster has 44 years' experience in treatment and care for people with intellectual and developmental disabilities.  See Tr. at 3232:12-15 (Webster); see also Pl. Ex. 141A at 3.  Most recently, Mr. Webster served as a Consultant to the Massachusetts Department of Developmental

<div align="center">20</div>

Services Special Projects, where he consulted on "key projected related to implementation" of an <u>Olmstead</u> Plan.  Pl. Ex. 141A at 3.

22.     Mr. Webster was qualified by the Court as "an expert in the implementation of state obligations under Title II of the ADA and <u>Olmstead</u> for people with disabilities in nursing facilities and other institutions" and as "an expert about transition assistance for populations of people with disabilities who have been institutionalized for long periods of time."  Tr. at 3535:6-19 (Webster).

<div align="center">Michael Petron</div>

23.     Michael Petron was retained by plaintiffs as an expert.  <u>See</u> Pl. Ex. 142.  Mr. Petron is a Managing Director of Risius Ross, LLC, where he leads the Disputes, Compliance, and Investigations group.  <u>See</u> Pl. Ex. 143.  Relying on conclusions reached by plaintiffs' other two experts, Mr. Petron developed and implemented "a statistically valid random sample . . . to estimate a number of different attributes related to people with disabilities that are located within District of Columbia nursing facilities."  Pl. Ex. 142. ¶ 5.

24.     Mr. Petron was qualified by the Court as an "expert in the field of statistical sampling."  Tr. at 2740:24-2741:8 (Petron).

<div align="center">*C.  Medicaid-Funded Long-Term Care in the District*</div>

25.     Medicaid is a federal public health insurance program that "provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons."  <u>Harris v. McRae</u>, 448 U.S. 297, 301 (1980); <u>see also</u> <u>Nat'l Fed'n Indep. Bus. v. Sebelius</u>, 567 U.S. 519, 541 (2012) ("Medicaid offers federal funding to States to assist pregnant women, children, needy families, the blind, the elderly, and the disabled in obtaining medical

<div align="center">21</div>

care.").  States' participation in the Medicaid program is voluntary, but to do so "States must comply with federal criteria governing matters such as who receives care and what services are provided at what cost."  Nat'l Fed'n Indep Bus. v. Sebelius, 567 U.S. at 541-42.  As relevant here, Medicaid is administered in the District of Columbia by the D.C. government and is used to fund "long-term care" for low-income or disabled individuals and their families.  See Brown I, 322 F.R.D. at 71.

26.    The Centers for Medicare and Medicaid Services ("CMS") is the federal agency, housed within the U.S. Department of Health and Human Services ("HHS"), that regulates Medicaid and oversees the services provided by states using Medicaid funding, including those provided by long-term facilities like nursing facilities.  See Brown I, 322 F.R.D. at 71; Tr. at 58:20-59:6 (Byrd).  The District regularly submits reports about its Medicaid-provided programs to CMS, as the federal oversight agency, as well as to the Council of the District of Columbia.  See, e.g., Def. Ex. 219 (report to CMS regarding EPD Waiver); Def. Ex. 230 (DHCF Performance Plan).

27.    "A 'Medicaid State Plan' is an agreement between a state – or here, the District of Columbia – and the Federal government that describes how that state shall administer its Medicaid program and provides assurance that a state will abide by Federal rules and may claim Federal matching funds for its program activities."  Joint Stipulations of Fact ("Stipulated Facts") [Dkt. No. 382] at 1-2; see Tr. at 50:17-51:6 (Byrd); see also 42 U.S.C. § 1396a(a) (setting forth the requirements for a state plan).  Through the Federal Medical Assistance Percentage, the federal government reimburses the District for 70% of the cost of direct services provided under the District's Medicaid State Plan, leaving the District to pay for 30%.  See Tr. at 56:8-57:4 (Byrd); Def. Ex. 102 at 7; accord Brown I, 322 F.R.D. at 71.  The Medicaid program does not

22

provide direct services to individuals; it pays for services provided by others.  See id. at 45:19-25, 46:13-25 (Byrd); see also id. at 47:20-48:9 (Byrd) (noting several federal limitations on what a Medicaid program can provide).

28.     In addition to providing services pursuant to a Medicaid State Plan, states can petition CMS for waivers from the general Medicaid rules in order to provide additional services that are not typically authorized or to provide special services to certain subsets of the Medicaid-eligible population.  See Tr. at 66:8-67:13 (Byrd); see also Sanchez v. Johnson, 416 F.3d 1051, 1054 (9th Cir. 2005) ("In 1981, in response to the fact that a disproportionate percentage of Medicaid resources were being used for long-term institutional care and studies showing that many persons resident in Medicaid-funded institutions would be capable of living at home or in the community if additional support services were available, Congress authorized the Home and Community Based Services ('HCBS') waiver program."); see also 42 U.S.C. § 1396n(c)(1) (establishing the waiver program).

29.     The D.C. Department of Health Care Finance ("DHCF") is the agency responsible for administering the District's Medicaid program, including when a Medicaid function is delegated to another D.C. agency or an independent entity.  See Tr. at 41:13-42:3, 185:6-22 (Byrd).  DHCF oversees Medicaid-funded programs in the District of Columbia, including long-term care in nursing facilities, the Medicaid State Plan, the EPD Waiver, and the MFP Program, discussed further below.  See Def. Ex. 102 at 7, 11, 21, 25-26.

### 1. Long-Term Care Services and Supports in Nursing Facilities

30.     Under the District's Medicaid plan, individuals may (if appropriate) receive D.C. Medicaid-funded long-term care services and supports in an institutional setting, like a nursing facility, or in a community-based setting.  See Tr. at 52:18-53:8 (Byrd); Def. Ex. 202 at 5.

23

Generally, to qualify for Medicaid in the District of Columbia, an individual must fall within 200% of the federal poverty level.  See Tr. at 45:6-17 (Byrd).  Long-term care services and supports are "things which are necessary for individuals to be able to live successfully in their community."  Id. at 969:19-22 (Stowe); see also Brown I, 322 F.R.D. at 71 (noting that individuals in either setting are provided with assistance performing activities of daily living ('ADLs') – including self-care tasks like eating, bathing, toileting dressing, and mobility/transferring – and instrumental activities of daily living ('IADLs') – including "medication management, meal preparation, housekeeping, money management, and telephone use").

31.     A nursing facility is "any facility licensed to operate as a nursing facility under Title 22B, Section 3200 et seq. of the D.C. Municipal Regulations."  Stipulated Facts at 2; see also D.C. MUN. REGS. tit. 22-B, § 3299 ("[A] 24-hour institution . . . that: (1) is primarily engaged in providing nursing care and related services to residents who require medical or nursing care, or rehabilitation services for the rehabilitation of persons who are injured, disabled, or sick; (2) is not primarily for the care and treatment of mental diseases; and (3) has in effect a transfer agreement [with at least one hospital that meets federal statutory requirements].").  "Nursing facilities are 'institutions' within the meaning of Olmstead . . . and Title XIX of the Social Security Act, 42 U.S.C. § 1396r."  Stipulated Facts at 3.  The District does not operate nursing facilities itself; rather, it funds long-term care in nursing facilities for eligible Medicaid beneficiaries through its Medicaid State Plan.  Brown I, 322 F.R.D. at 71.

32.     As of the time of trial, "[t]here [we]re 17 nursing facilities in the District of Columbia that [we]re certified for reimbursement through DC Medicaid."  Stipulated Facts at 2; see also Pl. Ex. 850.  In 2020, the District asserted that it had access to a total of 6,574 nursing

facility beds, including beds both in nursing facilities in the District of Columbia and in facilities in certain neighboring jurisdictions.  See Def. Ex. 102 at 50; Tr. at 246:2-5 (Byrd); compare Pl. Ex. 850 (listing, as of June 30, 2021, 2,447 available beds across 17 nursing facilities in the District of Columbia), with Tr. at 837:7-838:11 (Newland) (acknowledging the 6,574 figure but testifying that the bed capacity inside District nursing facilities did not significantly change between 2017 and 2020).  The District provides services and supports, including transition assistance, to D.C. Medicaid beneficiaries in nursing facilities in neighboring jurisdictions (e.g., Maryland, Virginia) whose services are provided by D.C. Medicaid.  See Tr. at 577:3-578:11, 933:8-934:19 (Newland); id. at 1065:22-25 (Stowe).

33.    In 2014, there were 3,650 D.C. Medicaid beneficiaries – including class members – living in nursing facilities in the District of Columbia and in neighboring jurisdictions.  See Pl. Ex. 954 at 1-2 (showing that there were nursing facility residents in the District of Columbia, Maryland, Virginia, Delaware, and Massachusetts).  In 2015, there were 3,742 unique D.C. Medicaid beneficiaries in nursing facilities.  See id.  In 2016, there were 3,751 D.C. Medicaid beneficiaries in nursing facilities.  See id.  In 2017, there were 4,166 D.C. Medicaid beneficiaries in nursing facilities.  See id.  In 2018, there were 4,245 D.C. Medicaid beneficiaries in nursing facilities.  See id.  In 2019, there were 4,107 D.C. Medicaid beneficiaries in nursing facilities.  See id.  In 2020, there were 4,183 D.C. Medicaid beneficiaries in nursing facilities.  See id.; see also Pl. Ex. 851 (showing that, in 2020, the District had a nursing facility occupancy rate of 87%); Tr. at 241:23-242:9 (Byrd).  And as of

25

November 8, 2021, there were 4,099 D.C. Medicaid beneficiaries in nursing facilities.  See Pl.

Ex. 954 at 1-2.[11]

34.     As of 2016, the average length of stay of a resident in a nursing facility (for both

class members and non-class members) was 624 days.  See Def. Ex. 101 at 9; accord Pl.

Ex. 140 at 45-46; see also Brown I, 322 F.R.D. at 72 (noting that the average length of stay in a

nursing facility as of the fourth quarter of 2014 was 537 days).  The District compiles data of

the time spent by residents in nursing facilities before they successfully transition to

community-based long-term care with the District's transition assistance.  See Def. Ex. 112

(updated as of July 30, 2021).

35.     The D.C. Department of Health ("DOH") is the local agency responsible for

regulatory oversight of all health facilities in the District of Columbia, which responsibility

includes assessing nursing facilities' compliance with health and safety standards.  See Tr.

at 59:18-22 (Byrd); id. at 372:3-9 (Freeman).[12]  DOH regulates nursing facilities' compliance

with local regulations and federal statutes, like the Nursing Home Reform Act ("NHRA"),

which collectively govern the quality of care and services in nursing facilities.  See id.

at 372:10-373:2 (Freeman); 42 U.S.C. § 1396a(a)(9)(A).[13]

---

[11]     The Court acknowledges that the COVID-19 pandemic significantly impacted nursing facilities residents, who were placed at particular risk of infection and death.  See Pl. Ex. 405 at 1-2; Pl. Ex. 835B.

[12]     DOH does not have regulatory authority over nursing facilities outside of the District of Columbia.  See Pl. Ex. 417 at 2.

[13]     DHCF also plays a role in regulating nursing facilities by requiring facilities to comply with DOH regulations as a condition of participating in the Medicaid program.  See Tr. at 59:23-61:11 (Byrd).

36.     DOH solicits and receives complaints about nursing facility care and services from nursing facility residents, their friends and family, ombudsmen, and nursing facility staff themselves.  <u>See</u> Tr. at 364:21-365:25 (Freeman).  DOH employees regularly, and often in response to complaints, visit and inspect nursing facilities and conduct interviews with nursing facility residents and staff.  <u>See</u> Tr. at 312:21-25, 335:17-336:23, 481:5-482:6, 483:17-484:8, 486:5-23 (Freeman).  DOH also oversees nursing facilities to ensure that nursing facility social workers are aiding residents who wish to transition to the community.  <u>See</u> Tr. at 314:18-24, 366:3-367:20 (Freeman); <u>see also</u> Tr. at 1001:4-1002:12 (Stowe) (discussing DACL's analogous role in overseeing and coordinating with nursing facility social workers' efforts to transition nursing facility residents to the community).

37.     To qualify for Medicaid-funded services and supports in a nursing facility, an individual must meet the nursing facility level of care, meaning "he or she requires extensive assistance with two or more ADLs, or supervision with two or more ADLs and one IADL." <u>Brown I</u>, 322 F.R.D. at 71-72; <u>see</u> Tr. at 62:16-63:4 (Byrd).[14]  DHCF retains a contractor called Liberty to conduct the initial assessment of whether an individual meets the nursing facility level of care.  <u>See</u> Tr. at 63:5-15, 64:1-4, 123:20-124:5 (Byrd); <u>see also</u> Def. Ex. 224.  DHCF retains a different contractor called Comagine to conduct additional assessments – known as "continuing stay reviews" – six months after the initial level of care determination and annually thereafter, verifying that the individual continues to meet the nursing facility level of care.  <u>See</u> Tr. at 63:5-25, 64:5-12 (Byrd).

---

[14]     As previously noted, "ADLs" are activities of daily living, and "IADLs" are instrumental activities of daily living.  <u>See</u> FF ¶ 30.

2.  <u>The Minimum Data Set</u>

38.     Nursing facilities are required by federal law to periodically administer to nursing facility residents the Minimum Data Set ("MDS"), a set of questions that "provides a comprehensive assessment of each resident's functional capabilities and helps nursing home staff identify health problems."  *Minimum Data Set 3.0 Public Reports*, CTRS. FOR MEDICARE & MEDICAID SERVS., https://www.cms.gov/Research-Statistics-Data-and-Systems/Computer-Data-and-Systems/Minimum-Data-Set-3-0-Public-Reports (last modified Sept. 6, 2023); Tr. at 326:17-328:19, 465:8-23 (Freeman).  The District and its contractors indirectly oversee nursing facilities' administration of the MDS to nursing facility residents as required.  <u>See</u> Tr. at 236:4-7 (Byrd) (noting that the District's contractor, Comagine, reviews portions of nursing facility residents' responses to the MDS); <u>id</u>. at 333:9-334:18 (Freeman) (noting that DOH staff reviews nursing facility residents' MDS data prior to visiting a nursing facility).

39.     One section of the MDS referred to as "Section Q," is an assessment designed to "record the participation and expectations of the resident, family members, or significant other(s) in the assessment, and to understand the resident's overall goals" regarding receiving long-term care services and supports in a nursing facility or elsewhere.  Def. Ex. 113; Def. Ex. 113.1 (MDS RAI Manual, Oct. 2019).  Section Q "uses a person-centered approach to ensure that all individuals have the opportunity to learn about home- and community-based services and to receive long term care in the least restrictive setting possible."  <u>Id</u>.; <u>see also</u> Pl. Ex. 110 ("Section Q . . . provides a process that, if followed correctly, gives the resident a direct voice in expressing preference and gives the facility a means to assist residents in locating and transitioning to the most integrated setting.").  A resident is supposed to be administered the MDS Section Q once within the first 14 days of arriving in a nursing facility, once every quarter

28

thereafter, and whenever there is a significant change in the resident's status, including

discharge.  See Tr. at 327:8-15 (Freeman); id. at 1027:21-1028:2 (Stowe); Def. Ex. 109.

      40.      Of the several questions contained within the MDS Section Q, question

"Q0500B" requires the assessor to "[a]sk the resident (or family or significant other or guardian

or legally authorized representative if resident is unable to understand or respond): 'Do you want

to talk to someone about the possibility of leaving this facility and returning to live and receive

services in the community?'"  Def. Ex. 113 at 15; see also Brown I, 322 F.R.D. at 82.[15]  Pursuant

to the CMS manual for administering the MDS (the "RAI Manual"), if a nursing facility resident

responds "yes" to MDS question Q0500B, the nursing facility is supposed to connect them with

the designated local contact agency for additional information regarding transitioning to the

community, which in turn may result in that individual receiving transition assistance should

they decide to move forward.  See Def. Ex. 113 at 17 ("A 'yes' response to item Q0500B will

trigger follow-up care planning and contact with the designated local contact agency (LCA)

about the resident's requires."); Pl. Ex. 110 at 4; Tr. at 388:12-20, 389:10-15 (Freeman); see also

Brown I, 322 F.R.D. at 82 ("Residents who respond 'yes' are referred to the ADRC.").[16]

      41.      The RAI Manual provides that if he or she responds "yes" to MDS question

Q0500B, a nursing facility resident should be put in contact with the local contact agency within

---

[15]     A nursing facility resident may opt out of being asked MDS question Q0500B quarterly but may not opt out of being asked the question during the annual, comprehensive assessment.  See Def. Ex. 113 at 13-14, 19-20 (discussing questions "Q0490" and "Q0550"); see also id. at 19 ("Some individuals, such as those with cognitive impairments, mental illness, or end-stage life conditions, may be upset by asking them if they want to return to the community.").  In addition, a questioner may skip MDS question Q0500B if active discharge planning is already occurring for the nursing facility resident to transition to the community.  See id. at 9.

[16]     States designate local contact agencies to "provide individuals with information about community living options and available supports and services."  Def. Ex. 113 at 21-22.

10 business days.  See Def. Ex. 113 at 17 (noting that a state has discretion in setting its own

policy).  The District does not have a regulation or policy setting a specific timeframe within

which a nursing facility must put a nursing facility resident who responds "yes" to MDS question

Q0500B in contact with the District's local contact agency.  See Pl. Ex. 388 at 33.  If a nursing

facility resident responds affirmatively to MDS question Q0500B, the contractor administering

the MDS Section Q will give the resident brochures or flyers explaining home- and community-

based services and DACL's transition coordination services.  See Tr. at 125:18-126:22 (Byrd);

id. at 562:19-563:15 (Newland); Def. Ex. 104; Def. Ex. 106.

      42.     The MDS nevertheless recognizes that, in some circumstances, putting an

individual who responds "yes" to MDS question Q0500B in contact with a local contact agency

is not immediately required.  See Def. Ex. 113 at 21-23.  MDS question "Q0600" asks:  "Has a

referral been made to the Local Contact Agency?"  Id. at 21.  Under the MDS guidelines, nursing

facility staff are permitted to decline to refer a nursing facility resident to a local contact agency

(1) if the person responds "no" to MDS question Q0500B; (2) "[i]f the resident's discharge

planning has been completely developed by the nursing home staff, and there are no additional

needs that the [nursing facility] cannot arrange for"; and (3) in other limited circumstances where

"the designated local contact agency needs to be contacted but the referral [need] not be[]

initiated at this time."  Def. Ex. 113 at 21-23; see also id. at 23 (offering as an example of the

third category the circumstance in which a nursing facility resident wishes to transition to the

community but cannot safely do so in the immediate future due to health reasons).

      43.     In addition to caring for nursing facility residents, see Oct. 4, 2016 Tr. at 8:21-

10:3 (Fisher), nursing facility social workers also assist residents who wish to transition back to

the community by, among other things, helping those residents to obtain necessary documents,

like identification or Social Security cards, to identify and visit potential housing, and to develop and implement discharge plans.  See Tr. at 322:6-25, 324:14-325:3 (Freeman); id. at 999:5-9 (Stowe).

44.     A discharge plan is a plan that lays out the requirements for a person to safely transition from a nursing facility back to the community.  It typically will include information on housing, financial resources, social supports, Medicaid-funded and nonmedical home- and community-based services, and the necessity for home modifications and assistive technology. See id. at 999:10-19 (Stowe); Def. Ex. 110 at 5.  Discharge planning is necessarily individualized and is based on a resident's level of care requirements, personal circumstances, and existing familial and community support.  See Tr. at 330:7-331:7 (Freeman); id. at 999:10-25 (Stowe).

45.     Although nursing facilities are ultimately the entities that formally admit and discharge residents, see Tr. at 718:10-719:12 (Newland), the District has a major role in the discharge planning process, along with residents' other supporters, like family members, legal guardians, and case workers.  See Tr. at 1000:17-1001:7 (Stowe).  Witnesses testified that the District therefore seeks to build and maintain strong relationships with nursing facility staff, to educate nursing facility social workers about the services and supports that exist in the community as well as the services that District agencies provide, and to participate in the discharge planning and transition process.  See id. at 577:3-13, 581:17-582:4 (Newland); id. at 979:2-981:13, 1002:13-23, 1181:13-1182:6 (Stowe).

### 3.  Home- and Community-Based Services and Support

46.     The District administers two principal Medicaid-funded programs that are relevant to this case and provide home- and community-based long-term care services ("HCBS") to individuals: the State Plan Personal Care Assistance ("State Plan PCA") program, and the

31

Elderly and Persons with Physical Disabilities Waiver ("EPD Waiver") program, established under Section 1915(c) of the Social Security Act.  See Tr. at 105:6-106:17; Def. Ex. 102 at 25-26; see also Stipulated Facts at 1-3.  Individuals can be enrolled in – and can receive services funded by – both the State Plan PCA program and the EPD Waiver program.  See Stipulated Facts at 3.  "Each program provides personal-care assistance in community-based settings, based on slightly different eligibility criteria."  Brown I, 322 F.R.D. at 73.  DHCF uses two independent contractors (Liberty and Comagine) to conduct assessments and determine individuals' level of care and eligibility to receive home care services under the State Plan PCA program and the EPD Waiver program.  See Tr. at 123:20-24, 235:7-16 (Byrd).

47.     The State Plan PCA program offers to all eligible Medicaid beneficiaries living in the community up to eight hours daily of personal care aide services, including assistance with bathing, grooming, toileting, transfers, ambulation, and exercise, meal preparation, eating, attending medical appointments, obtaining and attending employment, attending approved activities, and self-administering medication.  See Def. Ex. 102 at 26 ("Home Health and Medicaid State Plan Services"); Tr. at 105:6-106:16 (Byrd).  There is no limit to the number of District residents who can receive State Plan PCA services.  See Tr. at 69:20-70:3 (Byrd).  To be eligible for State Plan PCA services, an individual does not need to meet a nursing facility level of care.  See Stipulated Facts at 3; see also Tr. at 201:8-202:15 (Byrd); Brown I, 322 F.R.D. at 73.  "Because the level-of-care eligibility requirement for State Plan PCA services is lower than the requirement for the EPD Waiver, a qualified individual [can] receive State Plan PCA services even if not eligible for the EPD Waiver."  Stipulated Facts at 3.

48.     The EPD Waiver program, on the other hand, provides a broader array of services than the State Plan PCA program to qualifying individuals, including case management, up to 16

32

hours daily of personal care aide services, adult day health programs, respite care, assisted living services, environmental-accessibility adaptations, participant-directed services (which allows a beneficiary to receive services from a non-professional chosen by the beneficiary), and community transition services.  See Def. Ex. 102 at 25-26 ("Elderly and Persons with Physical Disabilities (EPD) Waiver"); Tr. at 107:2-113:6 (Byrd); Stipulated Facts at 3.[17]  To be eligible for the EPD Waiver program, an individual must be eligible to receive long-term care in a nursing facility, meaning they must require a nursing facility level of care.  See Brown I, 322 F.R.D. at 73; Tr. at 123:10-19 (Byrd); see also Pl. Ex. 388 at 19.

        49.    In contrast to the State Plan PCA program, the EPD Waiver program has a cap. As of 2021, no more than 5,560 individuals may receive services through the EPD Waiver program in a given year.  See Def. Ex. 213.1; Tr. at 75:2-76:2, 139:3-140:3 (Byrd) (discussing the EPD Waiver's number of waiver slots).  As of 2021, there were more than enough EPD Waiver slots to accommodate all class members who need services under the EPD Waiver.  See Def. Ex. 114 ¶ 38; Tr. at 139:4-140:6 (Byrd); see also Brown I, 322 F.R.D. at 75 (noting that a low EPD Waiver utilization rate "means there is more than sufficient capacity to serve any individual who has housing in the community and is eligible for Medicaid-funded home and community-based services").  Although there was a waiting list of hundreds of individuals waiting for EPD Waiver services at least through 2013, see Brown I, 322 F.R.D. at 73, there is no longer a waiting list for the EPD Waiver; there are more than enough EDP slots.  See Stipulated Facts at 3.

---

[17]    The District also operates an "ID/DD Waiver" program for individuals with developmental and intellectual disabilities.  See Def. Ex. 102 at 51.  Individuals who have only intellectual disabilities are not included in the plaintiff class.  See Order [Dkt. No. 129].

33

50.    "[I]ndividuals who require eight or fewer hours of personal-care assistance do not have to enroll in the EPD Waiver to receive their needed assistance" because they can obtain their needed services solely through the State Plan PCA program.  The EPD enrollment figures therefore "do not reflect the full population of individuals who receive Medicaid-funded home and community-based services."  Brown I, 322 F.R.D. at 75.

51.    At the time of trial, the EPD Waiver approved by CMS was set to expire in April 2022.  See Def. Ex. 105 at 1.  On February 7, 2022, CMS renewed the District's EPD Waiver for a five-year period, maintaining the services previously provided by the EPD Waiver and allowing enrollees to cumulatively access 24 daily hours of personal care aid services through a combination of the EPD Waiver and the State Plan PCA programs.  See Pl. Ex. 974 at 1-2 ("Under the current approved waiver, enrollees will be able to cumulatively access 24 daily hours of PCA through a combination of 16 daily hours under the EPD waiver, and 8 daily hours under the State [PCA] Plan, so long as such hours are medically necessary in accordance with the requirements set forth by law and policy, and duly determined upon assessment and consideration of all relevant evidence."); see also Tr. at 108:5-109:10 (Byrd).[18, 19]

---

[18]    After the conclusion of trial, the Court granted plaintiffs' unopposed motion to supplement the evidentiary record and admitted Plaintiffs' Exhibit 974 into evidence.  See April 19, 2022 Minute Order.

[19]    On two occasions, CMS has placed the District under a Corrective Action Plan for improperly administering its EPD Waiver program.  See Brown I, 322 F.R.D. at 74.  In December 2015, CMS imposed a CAP for "abdicating responsibility for determining the amount of needed services to agency providers that stood to benefit from recommending additional services."  Id.  And in January 2016, CMS imposed a second CAP for failing to (1) "ensure quality monitoring of services"; (2) "track how long it takes for class members to access EPD Waiver services"; (3) accurately assess the services class members will need under the EPD Waiver once they leave the nursing facility"; (4) "have a system of resolving complaints regarding lack of access and authorization for EPD Waiver services"; and (5) "utilize existing slots in the EPD Waiver."  Id.

52.     In addition to these two programs, the District administers the Money Follows the Person Demonstration Grant ("MFP") program, a federally-funded program that was established to provide states with financial incentives to move people from institutional settings back to the community with Medicaid services and supports.  See Tr. at 2333:2-15, 2334:15-22 (Sarigol); Def. Ex. 102 at 22; Def. Ex. 114 ¶ 41; see also Pl. Ex. 177 (noting that one objective of the MFP program is "[t]o increase the access to and use of home and community-based, rather than institutional, long-term care services").[20]  Under the MFP program, the federal government reimburses the District for an enhanced 85% – compared to the standard 70% under the State Plan PCA program – of the cost of direct services "in the [one] year after eligible DC residents transition from a nursing facility or hospital to home."  Def. Ex. 102 at 7, 22; see Tr. at 166:18-167:9 (Byrd); id. at 2333:18-2334:14 (Sarigol) (instead of 70% federal funding and 30% funding with local funding, this program provides 85% federal funding).

53.     More specifically, the MFP program covers "set-up" costs that are incurred by a nursing facility resident as they transition to the community, including "leasing application fees, security deposit, essential furnishings, and household set-up items including linens, kitchenware, and bathroom essentials."  Def. Ex. 102 at 22; see also Brown I, 322 F.R.D. at 76 (noting also that the MFP program funds "outreach and education, transition coordination, environmental accessibility adaptations up to $10,000, household setup costs up to $5,000, and intensive case management during the transition and for 365 days following discharge from the nursing facility").  To be eligible for the MFP program, individuals with physical disabilities must meet the EPD waiver program's level of care requirements (i.e., a nursing facility level of

---

[20]     Since 2010, the MFP program has been available to elderly or physically disabled individuals in addition to individuals with intellectual disabilities.  See Brown I, 322 F.R.D. at 76.

care), must have resided in a nursing facility for at least 60 days, and must have had their nursing facility services paid for by Medicaid for at least one day during the last 30 days.  See Pl. Ex. 388 at 24.

54.     The MFP program is called a "grant" program because it is time limited, although it historically has been extended by Congress year after year and, at the time of trial, had been extended through 2023.  See Tr. at 166:10-23 (Byrd).  When initially introduced, the MFP program funded certain set-up services that were only available through the program.  But the District has since incorporated those unique services into its EPD Waiver program, such that even if the MFP program were to be discontinued, the services provided under it would still be available to eligible and enrolled individuals.  See id. at 167:24-168:19 (Byrd); id. at 2334:23-2336:5 (Sarigol) (noting that the District, anticipating that the federal government might sunset the MFP program across the country, began to – and still does – provide the same services in a "sustainability mode," that is, that D.C. has taken steps to maintain the commitments made during the MFP program to assist people to transition back to the community).  Because of this, the MFP program now functions effectively as an additional source of funding for home- and community-based services that the District would otherwise provide.  See Def. Ex. 114 ¶¶ 43-44; Tr. at 559:20-560:5 (Newland) (noting that the work of the District's transition care specialists is agnostic as to whether an individual is a participant in the MFP program); id. at 167:24-168:19 (Byrd).

55.     Beginning in 2010, the District began providing MFP-funded transition services to elderly and physically disabled individuals and proposed benchmarks for transitioning such individuals to the community.  See Brown I, 322 F.R.D. at 77; Pl. Ex. 802 (listing the transition benchmark totals from 2008 through May 2021).  In 2010, the District proposed to transition 30

elderly or physically disabled nursing facility residents to the community, but it did not transition any that year. See Pl. Ex. 802 at 1; see also Tr. at 2344:2-10 (Sarigol) (noting that the numbers of individuals who transitioned each year counted only those individuals who "actually enrolled in the [MFP program] upon discharge from the nursing facility"). From 2011 through 2013, the District proposed transitioning 40 elderly or physically disabled individuals to the community each year, though it fell short: it transitioned 17 in 2011, 19 in 2012, and 16 in 2013. See id. After being placed under a Corrective Action Plan ("CAP") by CMS for missing its MFP benchmarks, the District reduced its benchmarks for 2014 through 2017 to 30 transitions a year. See Brown I, 322 F.R.D. at 77; Pl. Ex. 802 at 1. Although it missed its goal in 2014, transitioning only 24 elderly or physically disabled individuals, it exceeded its goals the following years: it transitioned 36 in 2015, 40 in 2016, and 37 in 2017. See Pl. Ex. 802 at 1.

56.    In 2018, the District exceeded its benchmark of 24 transitions by transitioning 32 elderly or physically disabled individuals. See Pl. Ex. 802 at 1. In 2019, although the District was not required by CMS to set an annual benchmark under the MFP program, see Tr. at 2370:17-2371:10 (Sarigol), the District transitioned 47 elderly or physically disabled individuals through the District's sustainability mode. See Pl. Ex. 802 at 1. In 2020, the District exceeded its benchmark of 39 transitions by transitioning 44 elderly or physically disabled individuals, and as of June 2021, only a portion of that calendar year, the District had transitioned 19 individuals through the MFP program. See id.

57.    Every year, the District of Columbia spends hundreds of millions of dollars providing home- and community-based services and supports to District residents through these Medicaid-funded programs: the State Plan PCA Program, the EPD Waiver program, and the MFP program. See Def. Ex 233; Def. Ex. 204 at 66; Tr. at 120:13-121:10 (Byrd). Generally,

the average cost of providing services to a Medicaid recipient who resides in a nursing facility is greater than the average cost of providing home- and community-based services to a Medicaid recipient.  See Def. Ex. 204 at 66; Tr. at 121:11-122:24 (Byrd).

58.      Under federal law, the District is required to maintain "cost neutrality" – that is, ensure that the average cost of services provided under the EPD Waiver is less than the average cost of services provided in a nursing facility – or else risk the loss of certain Medicaid funding.  See Tr. at 115:19-119:2 (Byrd); see also Olmstead, 527 U.S. at 601 n.12 ("The waiver program provides Medicaid reimbursement to States for the provision of community-based services to individuals who would otherwise require institutional care, upon a showing that the average annual cost of such services is not more than the annual cost of institutional services." (citing 42 U.S.C. § 1396n(c))).  The EPD Waiver has been cost neutral for each of the five years covered by the District's April 2020 application to renew the EPD Waiver.  See Pl. Ex. 388 at 22; e.g., Def. Ex. 229; see also Def. Ex. 214 at 214 (projecting cost neutrality for the renewed EPD Waiver).

59.      Through these various Medicaid-funded programs, the District provides home- and community-based services and supports to thousands of District residents every year.  See Def. Ex. 103; Def. Ex. 426 at 2-3; Tr. at 699:17-700:2 (Newland).

### D.  The District's Provision of Transition Assistance

60.      For purposes of this litigation, nursing facility residents "transition" to the community if they move from a nursing facility to community-based housing that is appropriate to their needs, whether that be an apartment or a house where an individual can reside independently or in an assisted living facility where an individual will have access to more integrated services.  See Def. Ex. 102 at 10-15; see also 28 C.F.R. § 35.130(d) (requiring a public

entity to administer services and programs in "the most integrated setting appropriate to the needs of qualified individuals with disabilities"); Olmstead v. L.C. ex rel. Zimring, 527 U.S. at 600-01 (recognizing that "unjustified institutional isolation of persons with disabilities is a form of discrimination").

61.     Over the past decade, the District of Columbia has promulgated several "Olmstead Plans" that purport to outline the programs and strategies by which it ensures that individuals with disabilities can receive services in the most integrated setting appropriate to their needs.  See, e.g., Def. Ex. 101 (2017-2020 Olmstead Plan); Pl. Ex. 951 and Def. Ex. 102 (2021-2024 Olmstead Plan); see also Tr. at 507:25-508:15 (Newland) (describing an Olmstead Plan as "a tool for people with disabilities and caregivers to understand a jurisdiction's commitment to make sure that people receive services" in the most integrated setting possible); id. at 76:13-23 (Byrd).  Ms. Newland, among many others, developed the District's most recent Olmstead Plans.  See Tr. at 506:20-507:13, 508:19-21, 509:10-12 (Newland); see also Def. Ex. 102 at 6 (describing the "Olmstead Working Group": a group "comprised of representatives from District agencies as well as District residents with disabilities, their family members, community organizations, and disability rights advocates" that provided recommendations and revisions for future Olmstead Plans); Tr. at 510:14-511:16, 515:16-25 (Newland) (discussing the working group's role and composition).

62.     As summarized in its most recent Olmstead Plan, numerous District agencies collaborate to provide affordable, safe housing to individuals with disabilities and to transition nursing facility residents to community-based housing.  See Def. Ex. 102 at 11-15, 21-22.  One of those agencies, the D.C. Department of Aging and Community Living ("DACL"), which was previously known as the D.C. Office on Aging ("DCOA"), provides transition assistance to D.C.

residents aged 60 and over, adults living with disabilities, and their caregivers.  See Tr.

at 499:12-15, 502:9-503:8 (Newland); Def. Ex. 102 at 21-22; see also Stipulated Facts at 2.  The

primary purpose of DACL is to provide supports and services, whether directly or through grants

and contracts, to individuals of those populations to "ensure that [they] can live in the

community for as long as they safely can."  Id. at 502:13-16 (Newland); see also id. at 969:2-14

(Stowe).

### 1.   The D.C. Department of Aging and Community Living

63.     DACL provides a range of services to individuals living in nursing facilities who

wish to transition to the community as well as to individuals who are receiving home- and

community-based services in the community.  For example, DACL provides information

assistance to individuals, including those receiving care in nursing facilities, through a call center

that answers callers' questions and refers callers to other agencies or non-governmental

organizations.  See Tr. at 708:1-9 (Newland); id. at 972:24-973:11 (Stowe).  DACL provides

"options counseling" to individuals, helping them to identify appropriate care options that are

currently available – or will become available – given their level of care needs and particular

stage in life.  See Tr. at 555:25-556:8, 590:6-12 (Newland); id. at 995:18-23 (Stowe).  DACL

also funds the long-term care ombudsman, an advocate that raises nursing facility residents'

concerns to the DOH and occasionally makes referrals to DACL.  See Tr. at 335:8-16 (Freeman);

id. at 561:17-7, 563:17-20, 891:13-16 (Newland).

64.     DACL also provides outreach to individuals in both nursing facilities and in the

community.  For example, DACL conducts hundreds of outreach events in the community

every year.  See Tr. at 562:19-563:8, 708:10-19 (Newland); Def. Ex. 114 ¶ 63.  DACL

produces and distributes brochures and flyers that advertise the agency's services.  See id. at

563:9-13 (Newland); id. at 3594:1-3595:10 (Darku); Def. Ex. 106; see also Tr. at 693:3-9

(Newland) (noting that non-governmental entities also hand out flyers).  DACL – primarily

through its community outreach coordinator, Ms. Darku – conducts outreach to nursing

facilities to explain the services that DACL provides and to build rapport with the nursing

facilities.  See Tr. at 979:2-16, 1183:1-10 (Stowe).

      65.    DACL administers programs that assist individuals with physical disabilities to

live comfortably and safely in the community.  For example, through the Safe At Home

program, DACL provides in-home adaptations (e.g., handrails, grab bars, shower seats) for

people with disabilities so they may live more safely in their own homes with decreased fall

risks.  See Tr. at 503:21-504:12 (Newland); Def. Ex. 103; see also Tr. at 583:3-584:10

(Newland).  DACL also provides meals to more than a thousand individuals every day through

home delivery or at community dining sites.  See Tr. at 503:13-21, 700:18-701:15 (Newland);

Def. Ex. 102 at 10.  DACL provides fitness and educational programs to individuals throughout

the District of Columbia, including at senior wellness centers.  See Tr. at 702:15-23 (Newland).

DACL offers transportation programs to individuals to transport them to medical appointments

and to social and recreational activities, thereby enabling individuals with physical disabilities

to live and receive medical care in the community.  See id. at 705:6-706:9 (Newland).  And to

help individuals access these services, DACL employs several Medicaid Enrollment Specialists

who assist individuals with applying for the EPD Waiver.  See id. at 558:8-12, 973:12-25

(Newland); Def. Ex. 400; see also Brown I, 322 F.R.D. at 75.

      66.    Within DACL sits the Aging and Disability Resource Center ("ADRC"), the

designated "Local Contact Agency" to which nursing facility residents who want information

about receiving home- and community-based services and supports are referred.  See Tr. at

<div align="center">41</div>

239:3-8 (Byrd); id. at 774:3-5 (Newland); id. at 1117:2-11 (Stowe); Def. Ex. 114 ¶ 53 ("In the District, the ADRC is the single point of entry for older adults, individuals living with disabilities and their caregivers to call for information and referral assistance."); see also Pl. Ex. 112 at 11 (listing the "DC Office on Aging/ADRC" as the District of Columbia's Section Q Component); Stipulated Facts at 2.  The ADRC is the group within DACL that provides options counseling to nursing home residents, "a person-centered discussion to help [residents] understand their long-term care options and empower them to make decisions based on informed choice and personal preferences."  Def. Ex. 102 at 28; see Def. Ex. 110 at 16; Tr. at 995:12-996:5 (Stowe).

## 2.  Transition Care Specialists

67.    The Nursing Home Transition Team ("NHT") sits within the ADRC.  It is composed of eight DACL employees (six transition care specialists, one MFP community outreach specialist, and one MFP special assistant), and it assists nursing facility residents with physical disabilities to seek and obtain HCBS outside of nursing facilities and to transition back into the community.  See Def. Ex. 400; Tr. at 558:22-559:19 (Newland); see also Brown I, 322 F.R.D. at 75.  The MFP community outreach specialist and the MFP special assistant are funded through the federal MFP demonstration grant, but the NHT works with individuals in nursing facilities regardless of whether they meet the additional criteria for participation in the MFP program.  See Tr. at 559:15-560:5 (Newland); see also Brown I, 322 F.R.D. at 75.

68.    Each NHT transition care specialist on average is assigned to work with 12 to 15 nursing facility residents who have expressed an interest in transitioning back to the community and have requested DACL's assistance in doing so.  See Tr. at 558:22-559:1 (Newland); id. at 1110:4-20 (Stowe); see also id. at 2011:1-12 (Fletcher) (noting that DACL monitors transition care specialists' workloads so as not to overburden them).

69.     Transition care specialists are required to comply with DACL standard operating procedures that govern the process for assisting individuals to transition into the community. See Pl. Ex. 388; Def. Ex. 110; see Tr. at 982:2-19 (Stowe) (discussing the purpose of the standard operating procedures).[21]

70.     Generally, transition care specialists assist individuals seeking to transition into the community by locating and securing adequate housing, procuring necessary identification, setting up their new home, and connecting them to community services and supports. See Tr. at 584:16-585:11, 615:5-616:25 (Newland); id. at 995:12-997:18 (Stowe). As described in the District's 2021-2024 Olmstead Plan, transition assistance services that support a nursing facility resident's successful transition to the community may include:

- A referral to the DACL Community Transition Program when a resident expresses a desire to learn more about options for living in the community . . . .

- An assessment conducted to determine the District resident's wishes and willingness to return to the community.

- Collaboration between the individual, including their family, friends, and key persons in their circle of support, and their care planning team to develop an appropriate plan for the individual with goals, approaches, and strategies allowing the person to reasonably achieve a safe transition into the community.

- A review to ensure all necessary services and durable medical equipment needs are in place for the individual.

Def. Ex. 102 at 22.

---

[21]     Plaintiffs contend that the District is failing to provide adequate transition assistance to nursing facility residents who are referred to DACL because the NHT team is allegedly not in compliance with several provisions of the standard operating procedures. More specifically, plaintiffs assert that transition care specialists are not developing person-centered discharge plans for every referred nursing facility resident; are not ensuring that residents' case files contain documents that are vital to a successful transition; are not keeping detailed and accurate notes in residents' case files; and are not seeking supervisory sign-off before closing open transition assistance cases. See Pl. Ex. 140 at 21-32; see also Def. Ex. 110 at 5-7.

71.     According to the applicable standard operating procedures, transition care specialists must make weekly contact with their clients to ensure that work is progressing at an appropriate pace.  See Def. Ex. 110 at 5; Tr. at 985:7-17 (Stowe); see also Brown I, 322 F.R.D. at 77.  In addition, transition care specialists are expected to make initial contact with a nursing facility resident within 5 days of an initial referral, visiting them in-person shortly thereafter. See Def. Ex. 110 at 3-4.

72.     Transition care specialists are required to maintain case notes for nursing facility residents who receive transition assistance from DACL.  See Tr. at 988:7-989:6 (Stowe); see also Def. Ex. 110 at 5 ("All contacts with the client and collaterals must be documented . . . . Timeframes, barriers, goals, tasks and plans of care must be clearly documented in the case notes . . . .").  According to Dr. Stowe, case notes should be relatively brief, provide a summary of the relevant work being done for the nursing facility resident, and include supporting documentation.  See Tr. at 988:7-989:16, 990:4-991:3, 1121:16-1122:3 (Stowe).

73.     DACL currently uses an electronic record system called "CSTARS" to store all nursing facility residents' case notes.  See Tr. at 987:21-988:3 (Stowe).   Dr. Stowe noted that before she joined in 2019, "[t]here was inconsistent use of CSTARS . . . so not all case notes or case information was held in the electronic record."  Id. at 988:7-10 (Stowe).  At that time, transition care specialists inconsistently used both hard copy records and CSTARS to store case notes, and the quality of those notes were at times lacking.  See id. at 990:4-15, 1120:15-1121:12 (Stowe).

### 3.   Information:  Referrals and Community Outreach

74.     DACL does not conduct surveys across all nursing facilities to determine how many residents wish to transition to the community or would like to receive transition assistance

from the District to do so.  See Tr. at 1066:22-1067:12 (Stowe); id. at 2057:1-14 (Newland).

Rather, the District relies on two principal methods for assessing nursing facility residents' desire

to transition to the community and for generating referrals.  See Def. Ex. 102 at 21.

75.    First, DACL funds or relies upon a range of services – governmental and non-

governmental – to reach nursing facility residents about the prospect of transitioning to the

community.  Def. Ex. 102 at 28-29.  For example, DACL conducts group information sessions in

nursing facilities throughout the year to educate residents about home- and community-based

services and the transition assistance provided by DACL. See Tr. at 562:19-563:8, 708:10-19

(Newland); Def. Ex. 102 at 29.  DACL also relies on the word of mouth of people who work

with nursing facility residents – including nursing facility social workers, the long-term care

ombudsman, and the friends and family of residents – to inform nursing facility residents about

the possibility of transitioning to the community and the services that DACL provides in aiding a

transition.  See Tr. at 562:19-564:15, 2144:13-2145:18 (Newland) (noting that nursing facility

social workers, administrators, and nurses; third-party contractors; the long-term care

ombudsman; and DACL staff who visit nursing facilities all educate nursing facility residents

about home- and community-based services); Def. Ex. 102 at 29.

76.    These formal and informal educational programs and interactions generate

referrals to DACL of nursing facility residents who want to transition to the community and

expressly want DACL's assistance in doing so.  See Tr. at 3726:8-17 (Newland) ("[T]he initial

kind of referrals that we get, they're either going to be directly from the community, by which it

could be any nursing facility resident, or it can be a friend, family member, the ombudsman, etc.,

or it could be from a nursing facility . . . ."); Def. Ex. 114 ¶ 55 ("Referrals come from nursing

facility social workers and family members; through outreach activities, such as public

45

information campaigns; and from agency partners, such as DHCF and the long term care ombudsman."); see also Brown I, 322 F.R.D. at 77. To complete a referral to DACL, however, a nursing facility resident, their legal representative or guardian, or a nursing facility social worker on the resident's behalf must complete a community transition services referral form and submit it to DACL. See Def. Ex. 110 at 2-3; Pl. Ex. 283 at 4; Tr. at 561:9-16 (Newland); id. at 1134:19-1135:6 (Stowe). But see Tr. at 2387:24-2389:24 (Sarigol) (testifying that under the MFP program – a "small subset" of referrals – only a nursing facility social worker may submit a community transition services referral form to DACL); Pl. Ex. 416 at 21.

77.     Numerous witnesses for the District of Columbia testified that nursing facilities are properly referring nursing facility residents who wish to obtain information about transitioning to the community to DACL. See, e.g., Tr. at 370:17-371:5 (Freeman) (testifying that nursing facilities are "conduct[ing] their discharge planning" and "want residents to transition back to the community"); id. at 625:2-9, 694:19-24 (Newland) ("We receive referrals, I believe, from every [nursing] facility. We've received at least one referral from every facility I think within the past year, and we do track that. And again, nursing facilities do not have to make referrals to us. In a lot of cases, nursing facilities won't."); id. at 1028:16-1029:1 (Stowe) (testifying that she was unaware of any evidence "that nursing facilities were not referring clients to DACL"); id. at 2011:20-2012:21 (Fletcher) (testifying that DACL found no evidence that nursing facilities were failing to contact DACL if a nursing facility resident expressed a desire to transition to the community).

78.     Second, DACL relies on MDS Section Q data to learn of nursing facility residents who have expressed an interest in speaking to someone about the possibility of transitioning to the community but have not yet been referred to DACL. See Tr. at 3726:8-24 (Newland); Def.

Ex. 102 at 12; Def. Ex. 114 ¶ 67.  In the District's view, this method is not the "primary means" by which DACL learns of nursing facility residents who want or need transition assistance.  See Tr. at 3726:25-2727:8 (Newland).

79.     By administering the MDS Section Q – specifically MDS question Q0500B – to nursing facility residents during continuing stay reviews, Comagine periodically asks residents whether they would like to discuss returning to live and receive services in the community.  See Def. Ex. 113 at 15, 17; Tr. at 65:20-24 (Byrd); id. at 770:4-23 (Newland); Def. Ex. 109; see also Brown I, 322 F.R.D. at 77.  As the District's contractor, Comagine reports nursing facility residents' responses to MDS question Q0500B to DHCF, which shares those responses with DACL every month.  See Tr. at 173:10-21 (Byrd); id. at 621:4-16 (Newland); id. at 1106:22-1107:9 (Stowe); id. at 3605:6-23 (Darku).  DACL cross-checks these reports with DACL's own records of nursing facility residents who have completed a referral to DACL in order to receive transition assistance.  See Tr. at 621:4-21, 3726:8-24  (Newland); id. at 2378:6-23 (Sarigol); see also Pl. Ex. 950B; Tr. at 3693:16-22 (Darku).

80.     DACL's community outreach coordinator, Ms. Darku, uses this data received from Comagine to identify individuals who responded "yes" to MDS question Q0500B but have not been formally referred to DACL to begin receiving transition assistance.  See Tr. at 3607:11-3608:9 (Darku); Pl. Ex. 950B.[22]  Ms. Darku then reaches out to nursing facility social workers to

---

[22]     Ms. Darku began performing this function around May 2020.  See Tr. at 3693:4-6 (Darku); see also Pl. Ex. 388 ¶ 101 (admitting that the outreach coordinator position was vacant between April 2017 and July 2019).  Moreover, DACL ceased receiving monthly MDS Section Q data from DHCF for a period of time, preventing DACL from performing this "double check" of the comprehensiveness of its referral system.  See Pl. Ex. 47 at 1-3 ("We used to receive this data from DHCF to help us compare whether our referral system is working properly . . . , but we haven't received it lately."); Pl. Ex. 957 at 249-50.

inquire whether residents who responded "yes" but have not yet been referred to DACL for transition assistance indeed wish to transition to the community.  See Tr. at 3606:12-3607:9, 3607:16-3609:18, 3697:3-9 (Darku) (agreeing that DACL "rel[ies] exclusively on the social worker to tell [Ms. Darku] whether the resident want to talk with [her]"); id. at 621:4-624:5 (Newland); id. at 1139:20-1140:15 (Stowe).  See Tr. at 3847:6-19 (Seiler) (social worker referrals are the "primary referral source and Q as a backup seemed appropriate to me").

81.    Ms. Darku does not reach out directly to nursing facility residents unless the nursing facility social worker notifies her that a resident (or a legal representative on a resident's behalf) would like transition assistance from DACL.  See Tr. at 3606:12-3607:3, 3607:11-19, 3608:15-3609:8 (Darku); see also id. at 3700:14-22 (Darku) (noting that Ms. Darku stops "contacting the facility" if the nursing facility social worker represents that "the resident has no plans to transition at this time").[23]  If Ms. Darku does not receive a response from a nursing facility social worker about a resident, she will elevate the situation to DHCF, which will in turn get in touch with the nursing facility to address the lack of communication.  See Tr. at 3696:20-3697:2, 3697:20-3699:2 (Darku).

82.    On some occasions, Ms. Darku's follow-up with nursing facility social workers leads to referrals of the nursing facility resident to DACL for transition assistance.  See Pl. Ex. 950B; Tr. at 3694:18-25 (Darku); see also Tr. at 622:3-16 (Newland).  The majority of nursing facility residents who respond "yes" to MDS question Q0500B, however, are not

---

[23]    The RAI Manual notes that although "[s]ome States may determine that the LCAs can make an initial telephone contact to identify the resident's needs," the expectation is "that most residents will have a face-to-face visit."  Def. Ex. 113 at 17.  In contrast to this policy, DACL seemingly communicates with nursing facility residents who have responded "yes" to MDS question Q0500B only if a nursing facility social worker confirms that the resident wants transition assistance.

formally referred to DACL and therefore do not receive transition assistance.  See Pl. Ex. 20 at 2;

Pl. Ex. 155A at 9; Tr. at 1985:22-1987:2 (Fletcher).[24]  For this reason, the District views its

reliance on the Comagine reports and Ms. Darku's follow-up with nursing facility social workers

as a "supplement" to the "myriad ways" that the District learns of nursing facility residents'

desire to transition to the community.  See Tr. at 578:2-11, 3726:25-3727:11 (Newland); id.

at 3820:13-3822:2 (Seiler); Def. Ex. 114 ¶ 67.

83.     The District embraces a framework of "Person-Centered Planning," which

provides that individuals themselves – not the District of Columbia – are responsible for deciding

whether to receive services in a nursing facility or in a community setting.  See Def. Ex. 102

at 21-22, 25-28; see Tr. at 513:21-514:5 (Newland) ("It's the person who gets to make the

decisions.  It's the person who gets to say where they want to live, who they want to live with,

what kind of treatment that, you know, they want, those kinds of things.  And that the role of

government or any caregiver is really to support those decisions as much as possible for that

person."); id. at 553:12-19 (Newland); id. at 970:25-971:5 (Stowe).

84.     The District also adheres to the "No Wrong Door" principle, which provides that

an individual should be directed to whichever entity – whether governmental, community-based,

or non-profit – is the most appropriate to meet that individual's needs, regardless of which entity

is first approached.  See Def. Ex. 102 at 7 (describing "No Wrong Door" as a "government-wide

---

[24]     The District emphasizes – and plaintiffs sometimes conflate – the difference between a formal referral to DACL to receive transition assistance and a less formal referral that notifies DACL of a nursing facility resident's desire to speak to someone about the possibility of transitioning to the community.  According to the District, the former describes the process of formally opening a case with the NHT team by submitting a community transition services referral form.  See Tr. at 1976:9-13, 2008:21-2009:3 (Fletcher); id. at 1186:15-19, 1186:22-1187:14 (Stowe); 566:15-567:19 (Newland).  The latter describes the process of putting a nursing facility resident who responds "yes" to MDS question Q0500B in contact with DACL about the resident's request for information.  See Def. Ex. 113 at 16-17.

program which streamlines the eligibility process and provides District residents with accurate information, regardless of where they enter the system"); Tr. at 511:22-513:20 (Newland); <u>see also</u> Def. Ex. 114 ¶ 47.

### 4. Transitioning to the Community

85.    A transition care specialist may close an individual's case when DACL determines that, in its view, there is no additional transition coordination assistance that can be provided at that time to help transition that individual from the nursing facility into the community. <u>See</u> Tr. at 614:5-12 (Newland); <u>id</u>. at 1005:19-1006:15 (Stowe); <u>see also</u> <u>Brown I</u>, 322 F.R.D. at 75 ("Obstacles that would interfere with a transition include lack of housing, income, and family support.").[25]  Pursuant to the NHT standard operating procedures, a case may not be closed without supervisory approval. <u>See</u> Def. Ex. 110 at 11-12; Tr. at 1006:16-1008:8 (Stowe). Transition care specialists may occasionally revisit closed cases if they find resources or developments that might benefit the individual who was initially unable to transition. <u>See</u> Tr. at 614:5-615:4 (Newland); <u>see also</u> Tr. at 1010:3-1011:6 (Stowe) (noting that transition care specialists encourage nursing facility residents who decide to cease attempting to transition to reach back out to DACL for transition assistance if they later change their minds).

86.    In recent years, between 40 to 60 nursing facility residents transition to the community every year with the transition assistance of DACL. <u>See</u> Tr. at 717:16-718:9 (Newland); <u>see also</u> <u>Brown I</u>, 322 F.R.D. at 72 (noting that 16 nursing facility residents transitioned to the community in 2011; 16 nursing facility residents transitioned in 2012; 27 nursing facility residents transitioned in 2013; 39 nursing facility residents transitioned

---

[25]    Prior to 2015, cases were not closed and were instead kept active regardless of there being barriers to transition. <u>See</u> <u>Brown I</u>, 322 F.R.D. at 75. DACL began to close cases after determining that leaving cases open was a "resource drain." <u>Id</u>.

in 2014; 42 nursing facility residents transitioned in 2015; and 51 nursing facility residents transitioned in 2016).  In 2017, 60 nursing facility residents transitioned to the community with DACL's transition assistance.  See Def. Ex. 102 at 53.  In 2018, 50 nursing facility residents transitioned to the community with DACL's transition assistance.  See id.  In 2019, 62 nursing facility residents transitioned to the community with DACL's transition assistance.  See id.  And in 2020, 61 nursing facility residents transitioned to the community with DACL's transition assistance.  And by the time of trial, 49 residents had transitioned to the community in the first half of 2021.  See id.[26]

87.     Approximately 50% of all nursing facility residents who are referred to DACL for transition assistance do not transition to the community for a number of reasons, including many that are not within the District's control.  See Def. Ex. 111 at 2 (noting that in the first half of 2021, 38% of DACL referrals were closed due to a successful transition); Pl. Ex. 406 at 4-5 (noting that, between January 2017 and April 2020, 44% of 543 unique referrals to DACL did not discharge); Pl. Ex. 155A (noting the closure reasons for DACL referrals in 2019 and 2020); see also Pl. Ex. 967 (suggesting that, between January 5, 2017, and July 30, 2021, 76% of nursing facility residents who were referred to DACL did not successfully transition to the community).  For example, some nursing facility residents receiving transition assistance from DACL ultimately do not transition because they (or their legal guardians on their behalf) withdraw a request for transition assistance, lack affordable and adequate housing to move into, or lack community or family support to facilitate a transition.  See Pl. Ex. 155A at 8; Pl. Ex. 406

---

[26]     Plaintiffs contend that these figures are deplorably low when compared to the number of nursing facility residents that plaintiffs' experts estimate wish to transition to the community but need DACL's assistance to do so.  See Pl. Ex. 140 at 37-39; Pl. Ex. 142 at 12; see also Tr. at 2686:7-19 (Petron).

at 5. Some choose to stay in the nursing home due to declining health, and some die while waiting to transition. See Pl. Ex. 155A at 8; Pl. Ex. 406 at 5.

88.    Not every nursing facility resident who seeks to transition to the community requires DACL's transition assistance to do so, and some individuals successfully transition without DACL's support. See Tr. at 602:12-603:16 (Newland); id. at 1024:22-1025:15 (Stowe) (noting that individuals are discharged from nursing facilities on a daily basis without requesting services or transition assistance from DACL "[b]ecause they [already] have whatever resources they need"); id. at 1182:10-25 (Stowe) (noting that nursing home social workers also provide services and transition coordination to residents); see id. at 1715:13-1716:13 (Seiler); see also Def. Ex. 103 (listing the number of people who directly transitioned to the community without transition assistance in the first three quarters of 2021). In some circumstances, nursing facility residents discharge against medical advice. See Def. Ex. 111 at 2.

89.    In addition, a nursing facility resident's legal guardian may decide, over the expressed interest of a nursing facility resident to transition to the community, that it is in the best interest of the resident for them to continue receiving services in a nursing facility. See Tr. at 477:20-479:7 (Freeman); Pl. Ex. 406 at 5 (noting "guardian declined services" as a case closure reason).

90.    Under its current Olmstead Plan, the District does not commit to transition a specified number of nursing facility residents to the community every year. See Tr. at 599:18 600:1 (Newland); Def. Ex. 102. In previous Olmstead Plans, the District had committed to transitioning a specified number of nursing facility residents to the community each year. See, e.g., Def. Ex. 101 at 51-53 (listing District agencies' "Quantitative Transition Goals").

*E. Plaintiffs' Expert Witnesses*

91.     Plaintiffs called Nancy Weston, Randall Webster – who together had prepared an extensive expert report, Pl. Ex. 140, – and Michael Petron, as expert witnesses.  Ms. Weston, a trained social worker and Director of Nursing Facility Operations for the Massachusetts Department of Developmental Services, provided opinions regarding the work of nursing facility social workers and DACL transition care specialists.  Pl. Ex. 141 A (Appendix A, Resume of Nancy L. Weston); Tr. at 2800:7-22 (Weston).[27]  Mr. Petron was qualified as an expert in the field of statistical sampling.  Tr. at 2740:24-2741:8 (Petron).

92.     Ms. Weston and Mr. Webster reviewed a random sample of 69 nursing facility records for Medicaid beneficiaries residing in District of Columbia nursing homes to assess the need and provision of transition assistance.  Pl. Ex. 140 at 11, 13, 36; Tr. at 2488:12-18 (Weston).  Mr. Petron had developed this random sample of nursing facility residents from responses to Section Q of the Minimum Data Set ("MDS"), which is a federally mandated screening tool for assessing health care needs and abilities of residents in Medicare or Medicaid funded facilities.  Pl. Ex. 140 at 8, 12, 36-38.

93.     Section Q specifically asks residents questions related to returning to the community.  Pl. Ex. 140 at 9.  Plaintiffs' counsel received that data for 1,794 nursing home residents in D.C.  Id. at 12.[28]  Once Mr. Petron developed the sample of 69 residents, plaintiffs'

---

[27]     Mr. Webster was a consultant to the same Department.  Pl. Ex. 141 A (Appendix B, Resume of Randall Webster).

[28]     The Centers for Medicare and Medicaid Services ("CMS") provided plaintiffs' counsel with the Section Q of the MDS data reported to CMS from June 3, 2019 to September 1, 2019 for District of Columbia nursing home residents who had been in the facility for at least 90 days as of June 3, 2019.  Pl. Ex. 140 at 12.

counsel subpoenaed additional information and records with respect to these 69 residents, including their social work records and Care Plans.  Id. at 12.

94.     Ms. Weston and Mr. Webster created six descriptive categories and determined who of the 69 residents met each criterion.  Pl. Ex. 140 at 13.  Mr. Petron then used their conclusions to extrapolate to the relevant population of District of Columbia nursing home residents.  Id. at 13-14.  Ms. Weston and Mr. Webster referenced two criteria, Attribute A and B, as helping to measure the number of residents interested in moving to the community.  Tr. at 2790:25-2791:7 (Weston).  In their report, Ms. Weston and Mr. Webster describe Attribute A as residents whose nursing facility records indicated a "preference for returning to the community."  Pl. Ex. 140 at 36.  They found that 30 out of the 69 residents identified by Mr. Petron had Attribute A.  Id.  Mr. Petron used their conclusions with respect to Attribute A to calculate the plaintiff class size as 685 residents as of June 2019.  Pl. Ex. 140 at 1 n.2; Tr. at 2687:9-25, 2725:21-2726:4 (Petron).

95.     Attribute B consists of residents who responded affirmatively to Question Q-500 of Section Q of the MDS.  Pl. Ex. 140 at 8-9, 36; Tr. at 2485:1-6, 2488:19-25, 2489:1-4 (Weston).  Ms. Weston and Mr. Webster found that 13 of the 69 residents identified by Mr. Petron had said "yes" to Q-500, which asks if the individual wants "to talk to someone about the possibility of leaving the facility and returning to live and receive services in the community."  Pl. Ex 140 at 33, 36.  Of the 13 residents who responded "yes" to Q-500, Ms. Weston testified that 11 were never referred to the ADRC.  Pl. Ex. 140 at 33; Tr. at 2815:21-2816:2 (Weston).

96.     Ms. Weston further testified that it is her opinion that if there is an affirmative response to Q-500, the nursing facility is required to make a referral to the local contact agency, the ADRC.  Pl. Ex. 140 at 9; Tr. at 2484:18-25, 2485:1-14, 2489:6-14, 2499:1-21, 2502:4-

2503:10, 2512:2-2513:21, 2532:8-12, 2820:23-2821:1, 3084:11-20 (Weston).  She said that the nursing facility cannot insert its judgment to overrule a resident's expressed interest.  Tr. at 3084:25-3085:17 (Weston).  Nor can it refuse to make a referral because it believes there is no home in the community to go to or no support in the way of services.  Id.  Ms. Weston further testified that if a nursing home resident responds "yes" to Q-500 that indicates that he or she needs assistance from the ADRC in transitioning to the community.  Tr. at 3088:8-16 (Weston).

97.    Ms. Weston acknowledged that she did not consider whether – after expressing a preference for transition to the community – a resident might change his or her mind over time.  Tr. at 2785:11-2786:22, 2838:11-17 (Weston).  Rather, she said that expressing an interest is the same as preferring to live in the community.  Tr. at 2577:24-2578:10, 2582:24-2583:17, 2773:22-41 (Weston).  She further testified that people never change their desire to transition once they know what the options and available services are in the community.  Tr. at 2785:11-2786:22, 2838:11-17 (Weston).  That is why she said they all need transition services from the ADRC.  Tr. at 3088:8-16 (Weston).  She concluded that "anybody who is in a facility would not choose to be in a facility.  It would not be their first choice," and "that anybody in a facility would prefer to live in a home-like environment."  Tr. at 3131:24-3132:13 (Weston).

98.    Mr. Webster testified that D.C. had 91 referrals in the first two quarters of 2021.  Tr. at 3227:4-25 (Webster).  He obtained this information from one of DACL's 2021 quarterly reports on its clinical team.  Tr. at 3227:4-25 (Webster); Pl. Ex. 946 at 2.  Based on his experience in Massachusetts, Mr. Webster opined that with more robust outreach or transition services, there would be approximately 400 referrals a year rather than the current 91.  Tr. at 3227:4-25, 3228:6-3229:17, 3230:19-3231:17 (Webster).

99.     Michael Petron, the statistician, reviewed the expert report of Ms. Weston and Mr. Webster and relied exclusively on their conclusions; he did not review the content of the nursing facility files himself other than to calculate the sample size for his report.  Tr. at 2686:20-2687:3, 2725:7-20, 2726:14-18, 2732:19-24, 2734:4-12, 2740:2-23 (Petron).  Based on those conclusions and the assumptions provided to him by plaintiffs' counsel, he focused on three nursing facilities – out of 17 in the District of Columbia – chosen by plaintiffs' counsel.  Tr. at 2716:14-21 (Petron).  On these bases, he calculated that 685 residents in these facilities wanted to transition into the community.  Tr. at 2725:21-2726:4 (Petron).

100.     The Court finds Ms. Weston's analysis and opinions unreliable and gives them no credence – for three primary reasons:  (1) she started with the unfounded premise that every nursing home resident who expresses an interest in transitioning to the community in fact prefers to live in the community, Tr. at 2577:24-2578:10, 2582:24-2583:17, 2773:22-41 (Weston), and that such preference never changes; (2) based on this premise, she interpreted a "yes" answer to Q-500 to mean that a nursing home resident wants to transition to the community, rather than reflecting only a request for more information; and (3) she further assumed that everyone who wants to transition to the community needs the assistance of DACL's ADRC.  Tr. at 3088:8-16 (Weston).  Even her colleague, Mr. Webster, disagrees with this last conclusion.  Tr. at 3435:2-10 (Webster).

101.     Ms. Weston reads an affirmative answer to Q-500 as expressing a preference to move to the community, Tr. at 2583:10-17 (Weston), when in fact Q-500 only asks a nursing home resident whether he or she "want[s] to talk to someone about the possibility of leaving this facility and returning to live and receive service in the community?"  Def. Ex. 113 at Q-15

56

(MDS RAI, Section Q).[29]  See also Thorpe v. District of Columbia, 303 F.R.D. 120, 144 n. 54

(D.D.C. 2014) ("Nor does it make sense to assume that every nursing home resident who had

indicated an interest in talking to someone about moving to the community (the MDS preference

number) satisfies all of the other criteria for class membership.  Even the 256 residents identified

through the MFP screening, which the plaintiffs focus on in their reply, may not satisfy all of the

other criteria for class membership.")

*F.  Systemic and Individual Barriers to Successful Transitions, Particularly Housing*

102.    Because of the challenges that a nursing facility resident may face when

navigating the complex administrative and logistical processes of transitioning back to the

community, many nursing facility residents are unable to successfully transition without

assistance from professional transition care specialists.  See Pl. Ex. 140 at 19; see Tr.

at 3850:18-23 (Seiler).  Among other things, transition care specialists may facilitate a successful

transition by helping residents obtain vital records and financial documentation, helping residents

apply for available home- and community-based services and supports, planning and

documenting the stages of a transition, coordinating with other members of a resident's support

network, helping residents secure housing, furniture, food, and household startup items, and

providing emotional and technical support.  See Pl. Ex. 140 at 19-20 (discussing the qualities of

"an effective system of transition assistance [that] helps people with numerous tasks necessary

for a safe and effective transition to the community").

---

[29]    Mr. Webster, by contrast, acknowledged that Q-500 asks only about a desire for more information regarding transition to the community.  Tr. at 3248:9-24, 3521:19-3522:14 (Webster).  Mr. Webster testified that it is not a good indicator of whether someone wants to return to the community.  Tr. at 3522:15-21 (Webster).  He also testified that not everyone needs transitional assistance.  Tr. at 3435:2-10 (Webster).

103.     There nevertheless are a multitude of various systemic and individual barriers that may inhibit a nursing facility resident's ability to transition to the community.  See Pl. Ex. 155A at 8; Pl. Ex. 406 at 5.  "[N]ursing facility residents [may be] impeded by [a] lack of proper identification to access community-based services and [a] lack of family support for their transition."  Brown I, 322 F.R.D. at 86.  In addition, a nursing facility resident may experience barriers to transition including:

> (1) finding a home health agency to staff [their] care needs;
> (2) understanding the requirements of a completed EPD waiver;
> (3) getting a . . . determination of the required level of care or the number of personal-care hours; (4) a lack of support in the community; (5) the medical complexity of the individual; and (6) a lack of training of family members who would otherwise provide personal care assistance.

Id.

104.     In addition, nursing facility residents with physical disabilities may lack self-confidence in their ability to navigate the complex administrative processes of applying for Medicaid-funded services, to secure subsidized housing, and most critically, to safely transition to the community, given their individual, particularized needs.  See Tr. at 2491:1-21 (Weston); see also Pl. Ex. 140 at 18-20.  Setting aside logistical and administrative challenges that make it difficult to transition, individuals with disabilities who require nursing facility level of care may also find the prospect of living alone in the community to be daunting.  See Tr. at 1007:14-17, 1010:3-1011:1 (Stowe).

105.     To successfully transition from an institution to the community, a physically disabled nursing facility resident must secure safe and affordable housing that is appropriate to their disability.  See Tr. at 518:16-519:6, 552:2-24 (Newland); Def. Ex. 102 at 10; see also Brown I, 322 F.R.D. at 83 ("Special needs populations including older adults and persons with

disabilities, are disproportionately affected by housing problems, and may require costly home modifications and supportive services.").

106.     Finding and securing appropriate housing can be a challenge for many nursing facility residents, particularly those of limited means – like the class members in this case – who also have needs specific to their disabilities.  See Tr. at 584:16-585:11 (Newland); id. at 993:3-12, 993:24-994:14 (Stowe); Def. Ex. 102 at 10; see also Tr. at 1490:5-1491:5 (Greenwalt) (noting that it is very rare for an extremely low income individual – 30% of the median family income – to be able to secure housing in the District without public assistance); Def. Ex. 609 at 4 (describing the various income levels of D.C. residents who receive housing assistance).

### 1.  The D.C. Housing Authority and Housing Vouchers

107.     The D.C. Housing Authority ("DCHA") is a public housing agency that provides safe, decent, affordable housing for extremely-low-to-moderate income families in the District of Columbia.  See Tr. at 1200:5-16 (Punter); Def. Ex. 609 at 2, 4; see also Tr. at 1247:18-1248:5 (Punter) (explaining that the extremely low income category pertains to those with incomes equal to 0-30% of the area median income).  DCHA is an independent agency; it is not formally part of the D.C. government but receives funding from both the U.S. Department of Housing and Urban Development ("HUD") and from the D.C. government to provide housing services to D.C. residents.  See id. at 1200:10-12, 1201:2-1202:16 (Punter).  DCHA serves individuals through traditional public housing and through housing voucher programs, which subsidize the expense of housing to allow individuals to offset their rent toward privately-owned housing.  See id. at 1203:4-1204:13, 1205:6-1207:10 (Punter); Def. Ex. 609; see also Def. Ex. 102 at 12.  Over 53,000 District residents benefit from DCHA programs and services, including through public

housing and the housing voucher programs.  <u>See</u> Def. Ex. 609 at 3.  Approximately 24% of those public or subsidized housing residents are people with disabilities.  <u>See</u> <u>id</u>.

108.    DCHA administers approximately 17,000 housing vouchers, of which approximately 12,000 are federal vouchers with the remainder being local vouchers.  <u>See</u> Tr. at 1218:6-18 (Punter) (explaining that federal vouchers are funded by HUD whereas local vouchers are funded by the D.C. government); Def. Ex 609 at 3, 6.[30]

109.    There are three types of housing vouchers used by DCHA.  First, a "tenant-based" voucher is a portable housing subsidy that follows the individual using the voucher from housing unit to housing unit.  <u>See</u> Tr. at 1203:12-19 (Punter); Pl. Ex. 865 at 4.  Second, a "project-based" voucher is a subsidy that is tied to a particular housing unit; if an individual moves out of the subsidized unit, the subsidy will remain for the next individual who leases the unit if he or she is eligible to receive the housing voucher.  <u>See</u> Tr. at 1203:22-1204:1 (Punter); Pl. Ex. 865 at 4.  Third, a "sponsor-based" or "special purpose" voucher is a subsidy that is referred out by organizations that help to fill specific housing units with individuals from certain demographics.  <u>See</u> Tr. at 1245:23-1247:10 (Punter); Pl. Ex. 865 at 4.

110.    Housing vouchers are not used for public housing, which is administered by the District through a separate program.  <u>See</u> Tr. at 1204:2-7 (Punter) (clarifying that a housing voucher is "a tool to help subsidize on the private market").  Once an individual begins to use a housing voucher to subsidize the payment rent, the voucher does not expire until that individual no longer needs public assistance to afford housing.  <u>See</u> Tr. at 1204:8-13 (Punter).  "A voucher

---

[30]    The locally-funded housing subsidy program is called the Local Rent Supplement Program ("LSRP") and provides for an additional approximately 5,000 housing vouchers.  <u>See</u> Tr. at 1380:5-20, 1404:4-10 (Punter).  The D.C. government, not DCHA, decides how much money to budget for LSRP vouchers and how many vouchers to set aside for certain populations.  <u>See</u> <u>id</u>. at 1381:6-1382:1 (Punter).

is only 'used' when a lease is signed and the individual has moved into the property."
Brown I, 322 F.R.D. at 77.

111.    To obtain a tenant-based or project-based voucher, an individual generally must receive one through DCHA's voucher waiting list.  See Tr. at 1207:25-1208:13 (Punter).  The waiting list comprises a list of applicants who desire to be considered for any of three programs: public housing, the housing choice voucher program, and the moderate rehabilitation program (not at issue here).  See id.  Applicants are expected to keep certain basic information up-to-date, like current housing status and the need for wheelchair-accessible housing.  See Tr. at 1254:3-1255:21 (Punter); id. at 2970:9-25 (Slaughter).

112.    At the time of trial, there were approximately 43,000 individuals total on the voucher waiting list, of whom approximately 39,000 had applied to receive housing vouchers and 27,000 had applied for public housing.  See Tr. at 1208:14-1209:11 (Punter); Def. Ex. 609 at 3.  The waiting list has been closed since April 2013, meaning that no new applicants can apply and be considered for any of the three housing assistance programs noted above.  See Tr. at 1209:19-25 (Punter).  "Between 400 and 600 people are moved off of the DCHA waiting list per year."  See Brown I, 322 F.R.D. at 84.

113.    Applicants on the waiting list indicate their preference to receive assistance through any of the three available programs – including the housing choice voucher program – as well as other demographic information requested by DCHA, such as whether an applicant is homeless, has a rent burden, or is in an emergency.  See Tr. at 1210:22-1211:24 (Punter).  Applicants are placed on the waiting list in order – and are selected to receive assistance through any of the available programs – according to the date and time of their applications as well as certain of their listed preferences.  See id. at 1210:22-1211:4 (Punter).  Certain preferences,

including whether an applicant is homeless, are afforded priority for receiving housing assistance. See id. at 1211:15-1212:3 (Punter); id. at 1235:19-1236:12 (Punter) (explaining that, in terms of priority, homelessness "is the top preference").[31] Nursing facility residents are considered "homeless" for purposes of the DCHA waitlist. See id. at 1251:12-1252:4 (Punter); see also Pl. Ex. 177 at 39 ("The definition of homeless includes families living in transitional housing, which includes nursing homes.").

114.     Once a waiting list applicant's name reaches the top of the list, DCHA will contact that applicant for an eligibility interview and background check to confirm the applicant's information and eligibility to receive housing assistance. See Tr. at 1212:4-23 (Punter); see also id. at 1215:20-1217:1 (Punter) (noting the different eligibility criteria for federally- and locally-funded housing vouchers); Brown I, 322 F.R.D. at 84 (explaining that an applicant's financial eligibility is determined only when that person is near the top of the waiting list "because DCHA's certification of someone's financial eligibility for public or subsidized housing is only valid for six months"). To complete the eligibility determination process, applicants must submit a DCHA application in addition to certain documentation, including identification, Social Security cards, birth certificates, and income information. See id. at 1212:24-1213:16; 1255:22-12 (Punter).

115.     In the case of a tenant-based housing voucher, once an applicant has been deemed eligible, they are issued a voucher with which to seek a unit on the private housing market. See Tr. at 1212:4-23 (Punter). Once a housing voucher recipient secures housing, they will pay 30% of their adjusted gross income towards rent, and the voucher will cover the remaining rent,

---

[31]     Individuals who require wheelchair-accessible housing are prioritized to receive wheelchair-accessible units when they near the top of the waiting list. See Brown I, 322 F.R.D. at 84-85.

subject to a cap based on the fair market rent in that neighborhood (thereby imposing a "maximum allowable rent" that DCHA will finance).  See id. at 1220:16-1221:13, 1222:6-1225:14, 1249:23-1250:3 (Punter); Def. Ex. 609 at 3; see also Def. Ex. 607 (listing HUD's estimated fair market rents in the D.C. metropolitan area by ZIP Code).  DCHA may provide, as a reasonable accommodation, an exception to that cap to a disabled person who demonstrates difficulty securing housing appropriate to their needs.  See Tr. at 1248:18-25 (Punter).

116.    Generally, it is the responsibility of the housing voucher recipient to locate and lease up an accessible, affordable housing unit in which to live.  See Tr. at 1229:25-1230:16 (Punter) (noting that a housing voucher recipient must find a unit on the private housing market that meets that individual's needs and that "having a voucher in hand and searching doesn't guarantee that you would lease up in a unit").[32]  Ms. Greenwalt testified that, in her view, it is rare that someone is unable to use their housing voucher.  See Tr. at 1485:3-14 (Greenwalt) ("[M]ost people that are engaged and motivated with their housing search and supported will find a unit.").  She nevertheless acknowledged that it may take substantial time to secure housing, given the fierce competition for a limited number of affordable, accessible units.  See id.; see also id. at 994:24-995:11 (Stowe) (noting that an individual's credit rating and criminal history can make it difficult to secure housing, even with a housing voucher); id. at 1229:25-1231:2 (Punter) (noting that landlords and private owners may use screening criteria to deny a housing voucher recipient from leasing a unit).

117.    An individual who has been selected for an available housing voucher has 180 days to find and lease appropriate housing.  See Tr. at 1256:15-17 (Punter).  Upon request,

---

[32]    Housing, of course, is a limited resource, and the District of Columbia is consistently one of the most expensive rental markets in the United States.  See Brown I, 322 F.R.D. at 83.

however, the DCHA may afford housing voucher recipients unlimited extensions of the 180-day

deadline for people who are experiencing difficulty securing housing.  See id. at 1256:18-1257:9

(Punter); cf. Pl. Ex. 868 at 10-11 (HUD document noting that a reasonable accommodation for

disabled persons seeking to transition to the community "may include extending limited [public

housing] application periods and permitting flexible application procedures or locations").

## 2.  Special Purpose Vouchers

118.    In contrast to tenant- and project-based vouchers, special purpose vouchers are

not distributed to individuals through DCHA's voucher waiting list but rather by designated D.C.

agencies that refer individuals to DCHA.  See Tr. at 1257:24-1258:10, 1266:15-1267:6 (Punter);

see also id. at 1231:3-23 (Punter) (describing how DACL has "all the discretion" when deciding

which individuals to refer to DCHA for a voucher).  As of February 25, 2020, DCHA

administered 2,893 federally funded special purpose vouchers.  See id. at 1259:19-1260:11

(Punter); Pl. Ex. 45B.  DCHA's Board of Commissioners allocates the number of special

purpose vouchers that are set aside for certain populations.  See Tr. at 1257:19-23 (Punter).

Once special purpose vouchers are set aside, DCHA assigns them to a specific D.C. agency to

refer them to individuals from the respective, designated population.  See id. at 1257:24-1258:10

(Punter).

119.    At the time of trial, there were only 85 special purpose vouchers assigned to

DACL to make available to nursing facility residents seeking to transition to the community.

See Pl. Ex. 957 at 189-90; Pl. Ex. 848B; Def. Ex. 114 ¶ 52; see also Brown I, 322 F.R.D. at 77-

78 (discussing 65 set-aside "MFP housing choice vouchers").[33]  An individual is identified as a

---

[33]    Nursing facility residents seeking to transition to the community may also qualify
for other special purpose vouchers, including those designated for veterans and for non-elderly,

potential special purpose voucher recipient when they are first referred to the ADRC.  See Brown

I, 322 F.R.D. at 77; see also Tr. at 3743:12-3744:3740:20 (Newland).  If that individual needs

affordable housing, they are entered into a housing-voucher lottery (an entirely distinct process

from the voucher waiting list), which is periodically held when vouchers are available.  See

Brown I, 322 F.R.D. at 77.

120.    Generally, there are some unused vouchers at any given time.  See Brown I, 322

F.R.D. at 77-78.  As of February 25, 2020, out of 65 MFP housing vouchers assigned to DACL,

54 were currently being utilized to house individuals, nine had been issued to recipients who

were in the process of finding and leasing a unit, and two had not been issued.  See Pl. Ex. 45.

If a housing voucher recipient fails to timely complete the eligibility determination process

within 30 days, or is determined not to meet the eligibility requirements for the voucher

program, or is unable to secure housing after a period of time, or for some other reason foregoes

the opportunity to use the voucher, the voucher is reallocated to an alternate recipient.  See

Brown I, 322 F.R.D. at 78 (explaining that the housing voucher lottery was "designed to

promote fairness").

### 3. Public Housing Alternative

121.    DCHA also provides traditional and mixed-finance public housing to eligible

D.C. residents.  See Tr. at 1201:2-23 (Punter); Def. Ex. 609 at 3, 5-7.  Traditional public

housing refers to a building or site that consists entirely of public housing units owned and

administered by DCHA.  See Tr. at 1205:9-13 (Punter).  Mixed-finance public housing refers to

publicly subsidized housing that is privately owned and managed.  See Tr. at 2966:21-2967:10

---

disabled individuals.  See Tr. at 1261:6-20, 1262:8-18, 1265:12-1266:2, 1269:20-1270:23
(Punter); Pl Ex. 45B.

(Slaughter).  Like a housing voucher recipient, a public housing tenant pays 30% of their adjusted gross income as rent, and DCHA finances the remainder.  See Def. Ex. 609 at 3.

122.    As of March 2020, DCHA owned and administered approximately 8,500 units of public housing, which housed approximately 12,400 individuals, representing 22% of all people who benefitted from DCHA's housing programs and services.  See Tr. at 1205:14-18 (Punter); Def. Ex. 609 at 3.  Of those 8,500 units, approximately 2,600 are reserved for the elderly and disabled, of which 700 are wheelchair accessible.  See Nov. 15, 2016 Tr. at 25:24-26:15, 38:24-39:16, 47:2-25 (Buvelle); Tr. at 2967:11-2968:4 (Slaughter).

123.    DCHA grants a preference to individuals with physical disabilities who seek public housing, including leasing wheelchair accessible public housing units to individuals who need wheelchair accessible features.  See Tr. at 2968:5-2969:20 (Slaughter); see also Pl. Ex. 842 ("Although there is a waiting list for housing in the District of Columbia, preference is given to persons with mobility impairments, particularly those who serve as the head of a household. When there is a handicapped-accessible unit available, DCHA will go down its waiting list to look for applicants who have indicated they have mobility impairments.").

124.    Based on a study conducted by plaintiffs' experts, Nancy Weston and Randall Webster, between January 2018 and September 2020, of all nursing facility residents who successfully transitioned to the community using DACL's transition assistance, 46.3% returned to some form of private housing, 23.1% went to public housing, and 30.6% leased a private rental unit using a housing voucher.  See Pl. Ex. 140 at 45-46.  But see Brown I, 322 F.R.D. at 82 ("Over 80% of nursing facility residents who want to move to the community need public housing or subsidized housing.").

66

125.    DCHA is not the only agency that provides housing resources to District

residents.  See Def. Ex. 102 at 10-15; see also Tr. at 1577:17-24 (Reed).  For example, DHCF

funds assisted living facilities, "licensed facilit[ies] where participants can live while receiving

and having access to the services they need to be as independent as possible."  Def. Ex. 102

at 15.  Similarly, the Department of Behavioral Health oversees licensed mental health

community residential facilities, which provide individuals with varying services and supports

appropriate to their health needs – with an emphasis on their mental health needs – while also

facilitating independent living.  See Def. Ex. 102 at 14-15.  And the D.C. Department of

Housing and Community Development receives and administers federal funds to create and

preserve affordable housing in the District of Columbia.  See Def. Ex. 102 at 11-12.

126.    Nursing facility social workers, DACL employees, and others connect nursing

facility residents with the DCHA in order to access housing resources that might effectuate a

transition to the community.  See Tr. at 994:15-23 (Stowe); Def. Ex. 102 at 10 ("Non-housing

agencies that facilitate or provide housing often partner with DCHA, which is an independent

agency, to utilize housing vouchers provided by the local and federal government.").  DACL

employs a housing coordinator to understand what types of housing are available throughout

the District of Columbia and to develop relationships with various private management

companies, private buildings, and the DCHA in order to connect nursing facility residents with

housing opportunities when they are seeking to transition to the community.  See Tr. at 584:16-

586:17 (Newland).

127.    DACL tracks the housing needs of nursing facility residents that have been

referred to and are receiving transition assistance from the agency.  See Tr. at 905:21-906:13

(Newland).  Between 2019 and the second quarter of 2021, approximately 60% of nursing

67

facility residents who were referred to DACL to receive transition assistance had housing to return to at the time they were referred.  See Tr. at 910:13-911:2 (Newland); Pl. Ex. 803 at 9.[34] Moreover, according to DACL's analysis of its case closure data, only 7% of nursing facility residents who receive transition assistance from DACL but are unable to transition to the community identified a lack of affordable, appropriate housing as the primary reason for not transitioning.  See Pl. Ex. 406 at 5.

### F. Class Member Ivy Brown

128.    Ivy Brown has a physical disability caused by lymphedema, which significantly limits her mobility, causes significant swelling in her right side, and causes her significant pain. See Tr. at 2870:5-13, 2871:1-12, 2877:1-19 (Brown) (noting that her lymphedema "makes the right side of [her] body very heavy" to lift); see also id. at 2871:12-2872:6 (Brown) (noting that Ms. Brown has used both a rollator, a walker, and a wheelchair to get around).  Due to her disability, Ms. Brown requires assistance to move around, to attend medical and physical therapy appointments, and with other activities of daily living.  See id. at 2874:8-23 (Brown) (noting that Ms. Brown needs assistance moving to and from her bed); Pl. Ex. 388 at 5. Treatment for Ms. Brown's lymphedema is available on an outpatient basis if she were to live in the community.  See Tr. at 2872:19-2873:14, 2873:23-25 (Brown).

129.    In May 2013, Ms. Brown entered a nursing facility – the Capitol City Rehabilitation and Health Care Center – after suffering from a stroke.  See Tr. at 2868:8-22 (Brown).  Before entering the nursing facility, Ms. Brown lived in her mother's house, where she received six hours of personal care aide services daily through the EPD Waiver.  See id.

---

[34]    The District notes, however, that a nursing facility resident's private housing may not always be adequate housing; for example, it may not be capable of accommodating (or being modified to accommodate) the resident's physical disability.

at 2883:19-21, 2899:2-13, 2904:11-24 (Brown).  Although Ms. Brown intended to remain in the nursing facility for no longer than six months, she continues to reside there.  See id. at 2868:23-25, 2880:25-2881:3 (Brown).  Ms. Brown testified that her physical disability does not require her to reside in a nursing facility.  See id. at 2875:14-16 (Brown).

130.    Ms. Brown believes that she could successfully live in the community, and she affirmatively wants the District's assistance to transition back into the community.  See Tr. at 2898:21-2900:3 (Brown); see also id. at 2926:14-21 (Brown) (denying that there ever was a time when Ms. Brown did not want to move out of the nursing facility).  Ms. Brown feels, however, that she will be unable to transition to the community without the assistance of a DACL transition care specialist – including assistance with securing adequate housing and with obtaining an assessment of the number of hours of personal care aid services that she needs.  See id. at 2879:12-2882:15 (Brown); id. at 2876:6-23 (Brown) (noting that she needs assistance obtaining a copy of her social security card).  According to Ms. Brown, nursing facility social workers are unable or unwilling to help her with certain of these steps that are necessary for her to transition.  See id. at 2881:19-2882:1 (Brown).

131.    There are several impediments to Ms. Brown's ability to transition back to the community.  First, Ms. Brown is of limited means and currently receives a monthly income of approximately $1,400 in disability benefits.  See Tr. at 2905:24-2906:16 (Brown); id. at 3617:8-16 (Darku).  Second, Ms. Brown cannot move into her mother's or her sister's homes because they cannot be properly adapted to accommodate Ms. Brown's disability.  See id. at 2883:22-2884:15, 2905:81-23 (Brown); see also id. at 3617:173619:12 (Darku).  Third, Ms. Brown has had difficulty obtaining vital documents, including her Social Security card.  See id. at 2876:11-23 (Brown).

132.    Ms. Brown first began receiving transition assistance from DACL in 2014, when she began to be periodically visited by transition care specialists.  See Tr. at 2906:22-2908:1, 2908:13-2909:17 (Brown).  Jemila Darku was Ms. Brown's transition care specialist from 2014 to 2016, and Gwendolyn Noonan-Jones was Ms. Brown's transition care specialist from 2016 to 2018.  See id. 3589:2-11, 3611:1-6, 3613:20-22 (Darku); id. at 3545:23-3546:15 (Noonan-Jones).

133.    During that time, Ms. Darku and Ms. Noonan-Jones provided Ms. Brown with information about obtaining transportation through MetroAccess and D.C. Transport, securing assistance through the MFP program, and moving to an assisted living facility or another type of housing in the community.  See Def. Ex. 507.2 at 25-42; Tr. at 3557:16-3558:16, 3559:18-3560:5, 3561:5-13 (Noonan-Jones); id. at 3662:9-25 (Darku).  Ms. Darku and Ms. Noonan-Jones also occasionally attended care plan meetings during which the nursing facility resident, a nursing facility social worker, Ms. Darku or Ms. Noonan-Jones, medical and clinical workers, and family members gathered to discuss Ms. Brown's current condition and how best to move forward with her care and possible transition to the community.  See Def. Ex. 507.2 at 32; see also Tr. at 3555:4-13 (Noonan-Jones) (defining a care plan meeting).

134.    While she worked with Ms. Brown, Ms. Darku tried to find appropriate, affordable housing into which Ms. Brown could move from the nursing facility.  See Tr. at 3618:5-13 (Darku).  For example, Ms. Darku assessed whether it would be possible for Ms. Brown to move back into the house that she had been living in before she was admitted to the nursing facility.  Ms. Darku determined that would not be possible because the house could not be sufficiently modified to accommodate Ms. Brown's needs.  See id. at 3618:14-3619:12

70

(Darku).  Ms. Darku also helped Ms. Brown research moving into subsidized housing.  See id. at 3619:13-3620:21.

135.    In April 2018, Ms. Brown was selected for a special purpose housing voucher by DACL, enabling her to begin the application process to receive a voucher.  See Tr. at 2884:16-23, 2915:2-7 (Brown); Def. Ex. 507.2 at 30; see also id. at 3743:12-3744:10 (Newland) (explaining the housing choice voucher lottery).  Ms. Noonan-Jones proposed that Ms. Brown could use the housing voucher to move into an apartment complex that was being constructed at the time, but Ms. Brown disapproved because the apartment was in an inconvenient location for Ms. Brown and her family.  See id. at 2885:5-17, 2916:25-2918:14 (Brown).[35]

136.    Ms. Noonan-Jones also provided Ms. Brown with a list of documents that needed to be gathered in order to complete the housing choice voucher application, and Ms. Noonan-Jones informed Ms. Brown that she had to gather all the documents and submit her application within 30 days pursuant to DACL's policy for its special purpose housing vouchers.  See id. at 2885:18-2886:21, 2919:1-7 (Brown); see also id. at 3565:22-3567:19, 3568:19-3569:3 (Noonan-Jones); Def. Ex. 507.2 at 29.  Ms. Brown was not told that she could likely get an extension of the 30-day application deadline.  See Tr. at 2885:18-2887:25 (Brown); see also Def. Ex. 507.2 at 25, 29.  Rather than personally assist Ms. Brown to gather the required documents to complete the housing voucher application, Ms. Noonan-Jones relied on Ms. Brown and a nursing home social worker to do so.  See Tr. at 3565:22-3568:7 (Noonan-Jones).

137.    According to Ms. Noonan-Jones, Ms. Brown had reservations about transitioning to the community.  See Tr. at 3557:16-3558:1, 3568:19-8, 3571:23-3572:18 (Noonan-Jones);

---

[35]    Previously, Ms. Darku had discussed with Ms. Brown the types of housing and community-based services that might be available to Ms. Brown if she were to transition out of the nursing facility.  See Tr. at 2916:11-24 (Brown).

see also id. at 3575:12-3576:17 (Noonan-Jones); Def. Ex. 507.2 at 33.  Ms. Noonan-Jones

testified that when she received her housing choice voucher, Ms. Brown expressed her desire to

speak with her sister about the prospect of transitioning to the community at that time.  See id.

at 3565:22-3566:15, 3571:23-3572:24 (Noonan-Jones); see also Def. Ex. 507.2 at 29-30.

Several weeks later, Ms. Brown told Ms. Noonan-Jones that she was not feeling well and that it

was not an opportune time to move out of the nursing facility.  Ms. Brown said that her sister

was then taking care of her elderly grandmother and could not provide support to Ms. Brown if

she were to transition.  See Tr. at 3575:9-3576:8 (Noonan-Jones); see also Def. Ex. 507.2 at 25.

138.    On May 21, 2018, Ms. Noonan-Jones prepared a form entitled "Refusal to

Transition," which provided that Ms. Brown was "refusing to use Transition Services at th[e]

time" and was "no longer interested in transitioning back to the community due to poor health."

Def. Ex. 507.2 at 26; see also Tr. at 3577:9-24 (Noonan-Jones).  Although she did not recall

doing so, see Tr. at 2888:10-2890:21 (Brown), Ms. Brown signed the form.  See Def. Ex. 507.2

at 26; Tr. at 3577:25-3578:11 (Noonan-Jones); see also Def. Ex. 507.2 at 27-28; Tr. at 3578:12-

3579:18 (Noonan-Jones).

139.    Based upon Ms. Brown's statements and her signing of the Refusal to Transition,

Ms. Noonan-Jones closed Ms. Brown's case.  See Tr. at 3575:5-3576:8 (Noonan-Jones); see also

Def. Ex. 507.2 at 25.  Ms. Noonan-Jones testified that, prior to closing Ms. Brown's case, Ms.

Noonan-Jones told Ms. Brown that she could reach back out to DACL for transition assistance at

a later time.  See Tr. at 3575:5-3576:8 (Noonan-Jones); see also Def. Ex. 507.2 at 25 ("Worker

informed the client that her case would be closed, that [DACL] would accept a new referral

72

when she is ready to transition from the facility assistance would be provided.").[36]  Ms. Brown

testified that since her case was closed, she has in fact reached out to DACL on numerous

occasions seeking transition assistance but has never received a response.  See Tr. at 2924:20:-

2926:3 (Brown).

### G.  Class Member Larry McDonald

140.    Larry McDonald, an Army veteran with a physical disability, requires assistance

with at least two activities of daily living.  See Tr. at 2108:2-4 (McDonald); Pl. Ex. 388 at 6.  Mr.

McDonald has resided in a nursing facility – the J.B. Johnson Unique Rehabilitation and Health

Center – since September 2004.  See id.; Tr. at 2112:6-8 (McDonald); Tr. 2980:18-22 (Cason

Daniel).  Deborah Cason Daniel has served as Mr. McDonald's legal guardian since April 2017.

See Tr. at 2112:25-2113:3 (McDonald); id. at 2980:8-6-9 (Cason Daniel).  As Mr. McDonald's

legal guardian, Ms. Cason Daniel must make decisions that are in Mr. McDonald's best interests,

which are often consistent with his own articulated desires.  See id. at 2986:8-12, 2998:21-

2999:8 (Cason Daniel); see also D.C. Code § 21-2047(a)(6) (2008) ("[A] general guardian or

limited guardian shall . . . [m]ake decisions on behalf of the ward by conforming as closely as

possible to a standard of substituted judgment or, if the ward's wishes are unknown and remain

unknown after reasonable efforts to discern them, make the decision on the basis of the ward's

best interests . . . .").

141.    In testimony that can best be described as heartbreaking, an obviously frustrated

Larry McDonald testified that he wishes to transition from his nursing facility back to the

---

[36]    Previously, when Ms. Noonan-Jones was concerned that Ms. Brown was not
making any progress toward transitioning to the community, she proposed placing Ms. Brown's
case on hold – rather than closing it – until Ms. Brown was ready to consider transitioning back
to the community.  See Tr. at 3562:15-3564:1 (Noonan-Jones); see also Def. Ex. 507.2 at 31.

community.  See Tr. at 2112:9-10 (McDonald); id. at 2980:23-2981:5 (Cason Daniel).  Ms.

Cason Daniel believes Mr. McDonald can live in the community with services and support.  See

Tr. 2981:9-13; 2982:1-2983:16 (Cason Daniel).  Mr. McDonald feels that he will be unable to

transition to the community without the assistance of a DACL transition care specialist.  See id.

at 2113:7-22 (McDonald).  Specifically, he needs assistance with managing his medications,

with arranging transportation to medical appointments and other activities, with obtaining food,

and with applying for and securing housing.  See id. at 2113:7-22 (McDonald); see also id. at

2982:1-2983:16 (Cason Daniel).  Ms. Cason Daniel is not trained or experienced in these

matters, and she therefore also believes that it is necessary for Mr. McDonald to receive

transition assistance from DACL for him to successfully transition to the community.  See id. at

2983:17-20, 2984:10-22 (Cason Daniel).

     142.    From 2013 to 2018, Mr. McDonald received transition assistance from DACL

through Ramona Butler, a transition care specialist.  See Tr. at 2119:17-2120:13 (McDonald);

Def. Ex. 512.2 at 10-20.  During that time, Ms. Butler attended discharge planning meetings,

provided information to Mr. McDonald about affordable housing and available home- and

community-based services and supports, coordinated with Mr. McDonald's legal guardians to

the extent possible, and worked with nursing home social workers to obtain Mr. McDonald's

vital records and recent income statements.  See Def. Ex. 512.2 at 10-20.  At a meeting Ms.

Cason Daniel and Mr. McDonald attended with Ms. Butler, Ms. Butler said that she thought Mr.

McDonald would be better off in a community residence facility, a CFR, or in an assisted living

facility rather than living on his own in the community.  See Tr. 2988:11-25; see id. at 2990:18;

2991:11 (Cason Daniel).

143.     In August 2016, Mr. McDonald was selected from the lottery to receive an MFP housing voucher, which would have helped to subsidize the cost of renting independent housing. See Def. Ex. 512.2 at 14; Tr. at 2986:25-2987:22 (Cason Daniel).  Without such financial support, Mr. McDonald does not have sufficient income to afford independent housing in the community.  See Tr. at 3015:18-20 (Cason Daniel); see also Def. Ex. 512.2 at 30, 45 (listing Mr. McDonald's income from Social Security).  Upon receiving the MFP housing voucher, Mr. McDonald had 30 days to secure suitable housing where he would reside, although he received numerous extensions.  See Def. Ex. 512.2 at 14, 21 (noting that Mr. McDonald's MFP housing voucher became null and void in November 2017); see also Def. Ex. 512.2 at 22-45 (the housing application packet).

144.     Over the next 15 months, Mr. McDonald and Ms. Cason Daniel spoke with Ms. Butler regarding the MFP housing voucher and the process for securing independent housing or assisted living.  See Tr. at 2114:14-2115:7 (McDonald); id. at 2987:4-2989:15, 2991:2-2995:13 (Cason Daniel).  Ms. Butler searched for independent housing for Mr. McDonald, and she also researched assisted living facilities, given her concern that Mr. McDonald might struggle to successfully live independently due to his disability.  See Def. Ex. 512.2 at 16, 19; see also Tr. at 2988:11-2989:7, 2991:2-2993:2 (Cason Daniel) (noting that Ms. Cason Daniel also committed to exploring assisted living programs to determine what would be the best fit for Mr. McDonald).

145.     At a care plan meeting in June 2017, Mr. McDonald, Ms. Cason Daniel, Ms. Butler, and nursing facility staff discussed whether using the MFP housing voucher to obtain independent housing for Mr. McDonald was appropriate.  See Tr. at 3011:2-13 (Cason Daniel); Pl. Ex. 899 at 2-3.  At that meeting, there was a consensus that Mr. McDonald should be in a community residential facility, group home, or assisted living facility – where services like

assistance with meal preparation, hygiene, and taking medication would be readily available – rather than in an apartment on his own.  <u>See</u> Tr. at 3011:10-3012:18.  But Ms. Cason Daniel testified, she did not agree with that.  <u>See</u> Tr. at 3011:14-3012:18 (Cason Daniel).[37]  Mr. McDonald's MFP housing voucher was annulled and voided soon thereafter.  <u>See</u> Def. Ex. 512.2 at 21; <u>see also</u> Tr. at 2115:24-2116:2 (McDonald).  According to Ms. Cason Daniel, although there was a consensus that an assisted living facility was preferable for Mr. McDonald, she did not tell Ms. Butler or anyone else that Mr. McDonald did not want to use the MFP housing voucher or that it should be relinquished.  <u>See</u> Tr. at 2994:16-23; 2994:16-20; <u>id</u>. at 2996:14-22; <u>id</u>. at 3011:10-3012:18 (Cason Daniel).

146.     After this meeting, Ms. Cason Daniel understood that there might need to be additional meetings and coordination with the D.C. Department of Behavioral Health to locate an assisted living facility for Mr. McDonald.  <u>See</u> Tr. at 3013:8-3014:6 (Cason Daniel).  Ms. Butler ceased to assist Mr. McDonald and Ms. Cason Daniel with coordinating with DBH or trying to find an assisted living facility into which Mr. McDonald could transition.  <u>See id</u>. at 2996:23-2997:14, 3013:15-3014:16 (Cason Daniel) (testifying that Ms. Butler "kind of dropped out of the picture by that point").  Neither Ms. Butler nor any other transition care specialist from DACL ever told Ms. Cason Daniel that Mr. McDonald's case had effectively been closed.  <u>See id</u>. at 2997:21-2998:5 (Cason Daniel).  Since 2018, Ms. Cason Daniel has not attempted to find any housing for Mr. McDonald – whether assisted living facility or independent housing – and she

---

[37]     Mr. McDonald has nevertheless continually expressed his desire to live in an apartment on his own, not in an assisted living facility or group home.  <u>See</u> Tr. at 2116:24-2118-1; 2124:21-2126:12 (McDonald).  Ms. Cason Daniel supported his preference to live on his own, but thinks a congregate setting would be more appropriate.  See Tr. at 3017:18-3018:7; 3018:20-2019:2.  <u>See id</u>. at 2986:16-20; 3016:17-3017:25; 3018:9-3019:2 (Cason Daniel).

has not contacted DACL for further assistance.  See id. at 3014:7-16, 3015:2-3016:2, 3019:6-11

(Cason Daniel).

### H. The Potential Cost of Implementing Plaintiffs' Requested Accommodations

147.    Assuming that the class consists of 1,100 class members, and further assuming

that the District of Columbia would need to employ 60 additional transition care specialists, the

District estimates that implementing plaintiffs' requested accommodations would cost

approximately $7 million annually.  See Pl. Ex. 2 at 2; Tr. at 694:8-11, Tr. at 2165:7-2167:12;

2170:22-2171:20; 3738:20-3739:24 (Newland); see also id. at 631:9-633:24 (Newland) (noting

the possibility that this cost could result in an additional loss of $2.46 million in federal Medicaid

matching funds).[38]  The Director of the D.C. Budget Office testified that there would be

"ancillary costs" related to the hiring of 60 additional employees, such as "computers,

telephones, furniture, office space, additional salaries for supervisors, and other necessary

expenses."  Pl. Ex. 2 at 2-3; see Tr. at 1588:5-1589:13 (Reed).  The precise amount of such costs

is too difficult to estimate because there are "too many variables that would go into it."  See Tr.

at 1588:11-22 (Reed).

148.    The District estimates that if these additional costs were imposed on DACL by

virtue of a court order, the District might initially look to cover these costs by cutting existing

DACL programs or services.  See Tr. at 694:25-695:9 (Newland); id. at 1584:9-1585:17 (Reed);

---

[38]    Plaintiffs' expert Randall Webster conducted his own calculations of the
estimated cost of implementing plaintiffs' requested accommodations and opined that doing so
would cost the District only approximately $1.7 million annually.  See Pl. Ex. 969B at 14; see
also Tr. at 3230:19-3231:1 (Webster).  The Court does not credit this opinion of Mr. Webster,
who was not qualified as an expert in such budgeting or personnel matters.  See Tr. at 3535:6-19
(Webster); FED. R. EVID. 702.

see also id. at 1587:2-1588:4 (Reed) (explaining that District agencies are required to budget "for a specific purpose and specific use every year," meaning that an unanticipated "significant recurring annual expenditures" would create "budget pressure" for an agency that had not appropriated money for it); see id. at 1648:19-1651:5 (Reed).  Although only able to speculate, the District suggests that implementing plaintiffs' requested accommodations would potentially require DACL to cut home- and community-based services that are currently being provided to District residents outside of nursing facilities.  See id. at 696:15-697:9 (Newland); see also id. at 697:8-699:16 (Newland) (testifying that these cuts might push individuals receiving home- and community-based services into nursing facilities and might also create new barriers for nursing facility residents seeking to transition to the community).[39]  The District posits that this in turn could increase the risk of institutionalization of physically-disabled individuals who would experience a cut to the home- and community-based services that enable them to successfully live in the community.  See Tr. at 698:3-12 (Newland).

149.    The District concedes, however, that the money to cover the cost of plaintiffs' requested accommodations could come from agencies or programs outside of DACL.  See Tr. at 638:20-639:6, 2166:8-25 (Newland).  If the District could not find available resources within DACL's budget to cover the budget pressure from implementing plaintiffs' requested accommodations, witnesses said that the District would first look to the Health and Human Services cluster, a group of agencies that includes DACL.  See id. at 1584:9-1586:2 (Reed); see

---

[39]    Among the many home- and community-based services that the District suggests it might be forced to cut if it is required to implement plaintiffs' requested accommodations are: personal care aid; the Safe at Home program, which provides in-home adaptations that permit people with disabilities to live safely at home; nutrition services, including daily meal delivery; physical wellness centers and senior fitness centers; and transportation services.  See Tr. at 696:15-697:7, 298:22-299:10, 700:13-701:15, 702:15-703:21, 705:6-706:9 (Newland).

also id. at 553:23-554:9 (Newland) (describing the agencies that comprise the Health and Human Services cluster).

150.     The District could also look more broadly across all of the District of Columbia government and its agencies for additional funds.  See Tr. at 1584:9-1585:20 (Reed).  In planning for future years' budgets, DACL could request additional funding from the District to accommodate the additional cost of implementing plaintiffs' requested accommodations year over year.  See id. at 1642:13-1643:13, 1647:15-1649:2 (Reed) (explaining enhancement requests, which allow an agency to request additional funding that exceeds its "maximum allowable request ceiling," the maximum limit under which an agency must submit its proposed budget for local funds); see also id. at 1567:21-1569:23 (Reed) (explaining the District's annual budget process).  It is also possible for DACL to request, through a supplemental budget, additional funding to ameliorate any spending pressure in a fiscal year that has already been budgeted.  See id. at 1656:21-1657:22 (Reed).[40]

### III.  CONCLUSIONS OF LAW[41]

Under the Supreme Court's decision in Olmstead, the isolation of persons with disabilities violates the ADA and its implementing regulations "when [(1)] the State's treatment

---

[40]     The District of Columbia maintains four "reserve funds" that are generally used to pay for unforeseen, nonrecurring expenses (e.g., emergencies) or to account for the District's limited cash flow at certain times of the year.  See Tr. at 1589:14-1590:23 (Reed) (explaining the "emergency reserve," the "contingency cash reserve," the "fiscal stabilization reserve," and the "cash flow reserve").  The District also maintains a "Settlements and Judgements Fund" that is used to pay out settlements and judgments against the District in a fiscal year.  See id. at 1590:24-1591:25 (Reed).  Because these funds are intended to cover nonrecurring expenses, it is unclear whether the District could use these sources to cover the cost of implementing plaintiffs' requested accommodations.  See id. at 1591:10-1594:1 (Reed).

[41]     Hereinafter, citations to the Court's Findings of Fact are noted with the abbreviation "FF."

professionals have determined that community placement is appropriate, [(2)] the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and [(3)] the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with . . . disabilities."  Brown II, 928 F.3d at 1077 (quoting Olmstead, 527 U.S. at 587).[42]  The D.C. Circuit recognized – and both parties agree – that the first two elements have been established such that "this litigation boils down to resolution of the third Olmstead question: are the requested accommodations reasonable?"  Id. at 1083.  To prevail, the District must establish that plaintiffs' requested accommodations are in fact unreasonable either because "the District has an adequate 'Olmstead Plan' in place, in which case every requested accommodation is categorically unreasonable" or because "each individual accommodation is so costly that it would be unreasonable to require the District to transfer its limited resources from other disabled individuals."  Id. at 1083-84.

Having carefully considered the evidence respecting the District's complex system of long-term care services and supports for physically-disabled individuals in light of the applicable law, regulations, and agency guidance, the Court concludes that the District has violated Olmstead's integration mandate and does not have an effective Olmstead Plan in place.  See Brown II, 928 F.3d at 1087 ("[T]reating individuals in institutions when they wish to and could be treated in the community is discrimination because of disability.").  As explained in further detail below, the District places too much reliance on nursing facilities to provide

---

[42]        As to the first element, "the State generally may rely on the reasonable assessments of its own professionals in determining whether an individual 'meets the essential eligibility requirements' for habilitation in a community-based program."  Olmstead, 527 U.S. at 602 (citing 28 C.F.R. § 35.130(d)).  As to the second, Olmstead does not require "that community-based treatment be imposed on patients who do not desire it."  Id. (citing 28 C.F.R. § 35.130(e)).

transition assistance to nursing facility residents who wish to transition and are capable of transitioning to the community, rather than following up proactively and systematically through their transition care specialists.  See U.S. DEP'T OF JUSTICE, CIV. RTS. DIV., STATEMENT OF THE DEPARTMENT OF JUSTICE ON ENFORCEMENT OF THE INTEGRATION MANDATE OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND OLMSTEAD V. L.C. ("DOJ Olmstead Guidance") (last updated Feb. 28, 2020) [Pl. Ex. 399] at 3 ("[A] public entity may violate the ADA's integration mandate when it . . . through its planning, service system design, funding choices, or service implementation practices, promotes or relies upon the segregation of individuals with disabilities in private facilities or programs.").[43]

### A.  The District Has Failed to Demonstrate That It Has a Comprehensive and Effectively Working Olmstead Plan

In reversing the Court's prior judgment and remanding for a new trial, the D.C. Circuit noted that because the Court had improperly placed the burden on plaintiffs to prove a "'concrete, systemic deficiency' in the District's transition services," the District "ha[d] not yet demonstrated that it has an adequate 'Olmstead Plan' in place."  Brown II, 928 F.3d at 1079,

---

[43]    In reaching this conclusion, the Court reaffirms that the class was properly certified under Rule 23 of the Federal Rules of Civil Procedure.  See Brown II, 928 F.3d at 1085 (noting that this Court can modify or decertify the class on remand); see also DL v. District of Columbia, 860 F.3d 713 (D.C. Cir. 2017).  First, the Court finds that Rule 23(a)(2) is satisfied and echoes the reasoning of the D.C. Circuit, which observed that "[t]here is no commonality problem here because common proof will lead to common answers" to the questions whether the District has a comprehensive, effectively working Olmstead Plan with a waiting list for transition to the community that moves at a reasonable pace, and whether each provision of plaintiffs' requested injunction would be unreasonable, "considering the District's limited resources and its obligations to other disabled individuals."  Brown II, 928 F.3d at 1082.  See also Pappas v. District of Columbia, 2024 WL 1111298 at **4-6 (D.D.C. March 14, 2024); Springs v. Del Toro, 2022 WL 741865 at *6 (D.D.C. March 11, 2022).  Second, the Court finds that Rule 23(b)(2) is satisfied because an injunction that remedies the District's Olmstead violation will "provide[] each member of the class an increased opportunity to achieve" a successful transition to the community.  Id.  See also Pappas v. District of Columbia, 2024 WL 1111298 at *15.

1084.  This Court was directed to determine whether the District has carried its affirmative

burden to prove that it has a "comprehensive, effectively working plan" for transitioning willing

and able physically-disabled nursing facility residents to the community and a "waiting list [for

transition to the community] that move[s] at a reasonable pace."  Id. at 1078 (quoting Olmstead,

527 U.S. at 605-06) (alterations in original); see also id. at 1086 (noting that this Court "has

discretion in applying the 'comprehensive,' 'effective' and 'reasonable' standards").[44]

       "The issue is not whether there is a piece of paper that reflects that there will be

ongoing progress toward community placement," but whether the Plan going forward is

workable and is being implemented effectively to assure that individuals are actually being

moved to integrated settings.  See Frederick L. v. Dep't of Pub. Welfare of Pa., 364 F.3d 487,

500 (3d Cir. 2004).  As suggested by the Department of Justice in its statement on the

implementation of Olmstead:

> A comprehensive, effectively working plan must do more than
> provide vague assurances of future integrated options or describe
> the entity's general history of increased funding for community
> services and decreased institutional populations.  Instead, it must
> reflect an analysis of the extent to which the public entity is
> providing services in the most integrated setting and must contain
> concrete and reliable commitments to expand integrated
> opportunities.  The plan must have specific and reasonable
> timeframes and measurable goals for which the public entity may
> be held accountable, and there must be funding to support the plan,
> which may come from reallocating existing service dollars.  The
> plan should include commitments for each group of persons who
> are unnecessarily segregated, such as individuals residing in . . .
> nursing homes and board and care homes . . . .  To be effective, the
> plan must have demonstrated success in actually moving
> individuals to integrated settings in accordance with the plan.

---

[44] Although this Court has "consistently held throughout this litigation that the
District does not have an adequate 'Olmstead Plan' in place," Brown II, 928 F.3d at 1084, the
D.C. Circuit expressly directed this Court to reconsider the question on remand by holding the
District to its burden of proof.  Id. at 85.

DOJ Olmstead Guidance at 7; see also U.S. Dep't of Health & Hum. Servs., Off. for Civ. Rts., Developing a State Olmstead Plan: Who, [Wh]at, How, and Why  ("HHS Olmstead Presentation") (2014) [Pl. Ex. 904] at 7-8 (certain minimum characteristics of effective, workable Olmstead Plan).  In determining whether the District has a comprehensive, effectively working Olmstead Plan, the Court also considers six characteristics of an effective system of transition assistance for individuals in nursing facilities previously identified by this Court:

> (1) individual assessments upon admission and periodically thereafter for all residents to determine interest in community-based services; (2) provision of accurate information about available community-based services and eligibility requirements for those services; (3) discharge/transition planning that commences upon admission and includes a comprehensive written discharge/transition plan; (4) identification of what community-based services are needed and assistance in arranging for those services; (5) assistance in applying for and enrolling in available waivers or transition programs; and (6) identification of barriers to transition and assistance in overcoming those barriers to the extent possible (e.g., if housing is a barrier, providing assistance in applying for supported housing).

Brown I, 322 F.R.D. at 89-90 (quoting Thorpe v. District of Columbia, 303 F.R.D. at 148).  The Court first will address the first two listed characteristics, related to assessment and outreach, and then the other four, related to transition assistance.[45]

---

[45]    Plaintiffs argue at times that the simple fact that the District is not utilizing all of its EPD Waivers demonstrates that the District does not have a comprehensive, effectively working Olmstead Plan.  As noted by the Supreme Court, however, HHS "has a policy of encouraging States to take advantage of the waiver program [providing funding for state-run home and community-based care], and often approves more waiver slots than a State ultimately uses." Olmstead, 527 U.S. at 601 (observing that Georgia was at the time utilizing less than a third of its available waivers).  Although a state's underutilization of its waiver programs might be indicative of an ineffective Olmstead Plan, the Court concludes that it alone is not proof of an Olmstead Plan's inefficacy.

<u>1.  The District Has Not Proven That It Provides Effective
Outreach to Nursing Facility Residents Who May Wish to
Transition to the Community</u>

First, the Court concludes that the District's <u>Olmstead</u> Plan is not comprehensive or effectively working because the District fails to provide effective outreach to nursing facility residents to determine whether they are willing and able to transition to the community. Furthermore, the District does not provide residents with sufficient information to enable them to make informed decisions about whether to seek to transition to the community.

An adequate <u>Olmstead</u> Plan should provide a comprehensive "means of ensuring that the state has a reliable sense of how many individuals with disabilities are institutionalized and eligible for services in community-based settings and how many are at risk and need these services."  HHS <u>Olmstead</u> Presentation at 13.  Furthermore, an adequate <u>Olmstead</u> Plan should "examine[] what information, education and referral system would be useful to ensure that people with disabilities receive the information necessary to make informed decisions," including "visits to community providers for individuals and their families to be educated, and providing peer supports."  <u>Id</u>. at 15.  The District's <u>Olmstead</u> Plan does neither.

Rather than periodically survey the population of nursing facility residents to identify those residents who are able and willing to transition to the community, the District identifies class members in two ways of much more limited scope.  <u>See</u> FF ¶ 74.  First, the District effectively relies on word of mouth to generate referrals to inform nursing home residents about the services DACL provides for assistance in transitioning to the community.  <u>See</u> <u>id</u>. ¶¶ 75-77.  For example, while DACL conducts group information sessions, distributes brochures and hangs flyers, it primarily relies on nursing facility staff and the long-term care ombudsman to spread the word about DACL's transition coordination services.  <u>See</u> <u>id</u>. ¶¶ 75-76.

84

Individuals exposed to these forms of outreach then may contact DACL directly or through a nursing facility social worker to make known their desire to transition to the community and their need for transition assistance.  See id. ¶ 76.  Second, to identify nursing facility residents who may wish to transition to the community, the District relies upon MDS Section Q data, but only as a "supplement" to these forms of outreach.  See FF ¶ 78 (Section Q data "is not the primary means by which DACL learns" of a nursing facility resident's intent in transitioning to the community).

In the Court's view, these efforts are insufficient for at least two reasons: (1)  they place the onus of obtaining information about home- and community-based services and seeking transition assistance on nursing facility residents themselves, and (2) the District has failed to consistently use and implement MDS Section Q as it is intended.  As to the first, nursing facility residents with physical disabilities are often ill-equipped to learn about and navigate the complex administrative processes for transitioning into the community, see FF ¶¶ 102-106; and the District does not do enough to bridge that gap.  Specifically, the District only learns of a nursing facility resident's desire to transition to the community if that resident affirmatively makes a request for transition coordination services to DACL or if a nursing facility social worker represents to DACL's community outreach coordinator that the resident would like transition assistance.  See FF ¶¶ 76, 81-82.  The record evidence demonstrates that DACL failed to implement the required procedures for a significant period of time either (1) because the community outreach coordinator position went unfilled or (2) because DACL ceased receiving MDS Section Q data from DHCF.  See id. ¶ 80 n.22.

Furthermore, the District does not have an adequate system for educating nursing facility residents about available home- and community-based services to enable them to make

informed decisions about whether to seek to transition to the community. The District's reliance on group presentations, brochures, flyers, and word of mouth to educate nursing facility residents about services in the community is insufficient. See FF ¶¶ 63-64, 75-76 (discussing community outreach events, distribution of brochures and flyers, and word of mouth as means for spreading information about services that are available to nursing facility residents). The District has offered little evidence that it meets face-to-face with individual nursing facility residents on a regular basis to provide information that is personalized to that individual's medical and financial circumstances.

Second, the record evidence shows that MDS Section Q is not being properly administered in the District of Columbia. Pursuant to guidance from the U.S. Department of Health and Human Services, if a nursing facility resident answers "yes" to Question Q0500B, "a referral to the local contact agency is required and the Local Contact Agency will establish contact with the resident to discuss the availability of appropriate services in the community." U.S. DEP'T OF HEALTH AND HUM. SERVS., OFF. FOR CIV. RTS., GUIDANCE AND RESOURCES FOR LONG TERM CARE FACILITIES: USING THE MINIMUM DATA SET TO FACILITATE OPPORTUNITIES TO LIVE IN THE MOST INTEGRATED SETTING (2016) [Pl. Ex. 110] at 4; see also id. at 3 (noting that nursing facility residents generally should be asked MDS question Q0500B unless they have active discharge plans that are currently being implemented). Referring nursing facility residents to the Local Contact Agency to learn about available home- and community-based services is vital because "[m]ost residents do not know what alternatives to inpatient care may exist." Id. at 4. See also Def. Ex. 113 at 15 ("[I]n many cases individuals requiring long term services, and/or their families, are unaware of community-based services and supports that could adequately support individuals in community living situations.") While not every nursing facility resident

86

who answers "yes" to Question Q0500B will ultimately decide they want to transition to the community, an affirmative answer at the very least means they want more information about transitioning and should be referred to the local contact agency.  See FF ¶¶ 100-101; Def. Ex. 113 at 14-18.

In administering the MDS question Q0500B, District contractors periodically ask nursing facility residents whether they would like to discuss returning to live and receive services in the community.  See FF ¶¶ 79-80.  For every nursing facility resident who answers "yes" to MDS question Q0500B but has not been referred for transition assistance, there is supposed to be a follow up contact arranged between the nursing facility and the local contact agency.  See id. ¶¶ 41-42.  Specifically, DACL's community outreach coordinator is supposed to reach out to a resident who has indicated they want more information or to the nursing facility social worker to inquire whether that resident wishes assistance to transition to the community.  See id. ¶¶ 80-81. The evidence at trial, however, showed that only if a nursing facility social worker advises DACL that the resident wishes to transition to the community will a DACL employee visit with that resident in person.  See id. ¶¶ 81-82.  The District relies "exclusively" on the social worker to determine whether a resident wants to talk to DACL.  See id. ¶ 81.  As a result, the majority of nursing facility residents who respond yes to question Q-500B are not referred to DACL and therefore do not receive transition assistance.  See FF ¶ 82.

Because the District has not implemented a sufficiently robust and comprehensive system for identifying individuals who are institutionalized yet eligible to receive long-term care in the community, the Court cannot conclude that the District's "commitment to the deinstitutionalization of those [disabled persons] for whom community integration is desirable, achievable and unopposed, is genuine, comprehensive and reasonable."  Arc of Wash. State Inc.

87

v. Braddock, 427 F.3d 615, 620 (9th Cir. 2005) (alteration in original) (quoting Sanchez v.

Johnson, 416 F.3d 1051, 1067 (9th Cir. 2005.)  Furthermore, because the District does not know

at any given time the total number of physically-disabled nursing facility residents who are

willing and able to transition to the community, the District cannot maintain an accurate "waiting

list [for transition to the community] that move[s] at a reasonable pace."  Brown II, 928 F.3d

at 1078 (quoting Olmstead, 527 U.S. at 605-06).

### 2. The District Has Not Proven That It Provides Adequate Transition Assistance to Nursing Facility Residents Who Wish to Transition to the Community

As counsel for the plaintiffs put it in her closing argument: "What the class seeks

is that the [D]istrict provide them with the reasonable accommodation of a system of transition

assistance that each member of the class can access, including regular ongoing outreach to

inform people institutionalized in nursing facilities that transition assistance and community

based services exist.  People isolated in institutions need to be formally informed about the

existence of these services so that they can access them in the community rather than being

forced to live out their years in nursing facilities."  Tr. at 3956:25-3957:9 (Bagby).  Furthermore,

"it is the absence of transition assistance, the bridge between the nursing facility and the

community based services that is lacking."  Tr. 3959:10-12.  The Court acknowledges that not

every nursing facility resident who wishes to transition to the community requires DACL's

transition assistance to do so.  See FF ¶ 88; see also Olmstead, 527 U.S. at 602 (noting that there

is no "federal requirement that community-based treatment be imposed on patients who do not

desire it").  The Court nevertheless concludes that the District has failed to demonstrate that it

provides meaningful transition assistance to those nursing facility residents who do want such

assistance and are referred to DACL.  The District therefore does not have a comprehensive, effectively working Olmstead Plan.

A comprehensive, effectively working Olmstead Plan must "demonstrate[] a reasonably specific and measurable commitment to deinstitutionalization for which [the District] may be held accountable."  Frederick L. v. Dep't of Pub. Welfare of Pa., 422 F.3d at 157.  The District may not simply "proffer[] general assurances and good faith intentions to effectuate deinstitutionalization."  Id. at 158.  In addition, "past progress is not necessarily probative of future plans to continue deinstitutionalizing."  Frederick L. v. Dep't of Pub. Welfare of Pa., 364 F.3d at 499.  Transition care specialists are supposed to make weekly contact with their clients, keep careful notes of their contacts, and collaborate with the residents and their families; among other things, they are also to identify potential appropriate living facilities in the community for their clients.  See FF ¶¶ 70-72.  As illustrated by the experiences of the named plaintiffs and other evidence presented at trial, the District has failed in these obligations.  The Court concludes that the District has failed in its responsibility to move willing and able nursing facility residents into less restrictive settings, in large part by relying on the residents themselves and on nursing facility staff to take the initiative – rather than on District of Columbia employees – to coordinate transitions to the community.

At the time of trial, the District employed six Nursing Home Transition Team ("NHT") transition care specialists to assist nursing facility residents who are referred to DACL with case management and transition coordination – to include locating and securing adequate housing, obtaining identification, and connecting with home- and community-based services. See FF ¶¶ 67-70.  Each transition care specialist was assigned to work with 12 to 15 nursing facility residents who have expressed interest in transitioning back to the community.  See id.

¶ 68. Transition care specialists – and the District of Columbia more generally – adhere to a standard of "person-centered planning," meaning that a nursing facility resident is ultimately responsible for deciding whether that resident prefers to receive services in a nursing facility or in the community.  See id. ¶ 83.

The NHT transition care specialists have failed to meet the obligations imposed on them.  For example, Ivy Brown is a physically-disabled individual who has lived in a nursing facility for nearly 10 years.  See FF ¶ 129.  Although Ms. Brown testified that she has always wished to transition to the community, the District has interpreted her uncertainty and unfamiliarity with the transition process as a lack of commitment or desire to transition.  See id. ¶¶ 129-130, 135-139.  Specifically, when Ms. Brown was informed that she had been awarded a special purpose housing voucher from DACL to obtain subsidized housing, her assigned transition care specialist demonstrated little effort in trying to effectuate Ms. Brown's transition. See FF ¶¶ 135-139.  The record evidence establishes that the transition care specialist recommended housing to Ms. Brown that was unsuitable, given her disability and her desire to live close to her family.  See id. ¶¶ 135, 138.  But there is no evidence that the transition care specialist continued looking for housing alternatives that would be more suitable to Ms. Brown. In addition, while the transition care specialist provided Ms. Brown with a list of documents that she needed to gather to complete the housing voucher application, there is no evidence that the transition care specialist personally assisted Ms. Brown – who is wheelchair-bound and reliant on others for assistance – to collect or obtain those documents.  See id. ¶ 136.  Nor did the transition care specialist inform Ms. Brown that she could request an extension of the 30-day deadline to submit the housing voucher application to have more time to collect her vital documents and to speak with her family about housing that would be suitable to their collective

90

circumstances.  See id.  Furthermore, after Ms. Brown expressed reservations about transitioning to the community immediately – in light of her difficulty obtaining vital documents and locating adequate housing – her transition care specialist had Ms. Brown sign a "Refusal to Transition" form and closed her case, rather than seek an extension of the deadline or take other steps on Ms. Brown's behalf.  See FF ¶¶ 138-139.

       As for Larry McDonald, the District of Columbia effectively ceased providing Mr. McDonald with transition assistance when his care planning team, including his legal guardian, collectively decided that an assisted living facility would be preferable to subsidized housing, given Mr. McDonald's physical disability and needs.  See FF ¶¶ 141-142, 144-145. There is no evidence demonstrating that DACL – or the District of Columbia more generally – provided Mr. McDonald with continuing assistance to try to place him in an assisted living facility, and Mr. McDonald continues to live in a nursing facility.  See id. ¶¶ 129, 135. Moreover, although Mr. McDonald's transition care specialist researched independent housing and assisted living facilities, there is no evidence that the transition care specialist communicated that information to Mr. McDonald's legal guardian to ensure that she made an informed decision regarding the best interests of Mr. McDonald.  See id. ¶¶ 144-145 & n.37; see also id. ¶ 141 (noting that Mr. McDonald's legal guardian is not experienced in such matters).

       In the Court's view, Ms. Brown's and Mr. McDonald's experiences with DACL demonstrate that the District's Olmstead Plan is not effectively working.  Although the District espouses a person-centered approach of transition assistance, the District relies much too heavily on that principle to provide substandard services and support to residents who are seeking to transition.  It is certainly true that Olmstead does not require the deinstitutionalization of nursing facility residents "who do not desire it."  Olmstead, 527 U.S. at 602; see also id. at 601

("[N]othing in the ADA or its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings."). But it is equally true that physically-disabled nursing facility residents are some of the most vulnerable members of society who require meaningful assistance to effectuate their transition to the community. See FF ¶¶ 102-104; Frederick L. v. Dep't of Pub. Welfare of Pa., 364 F.3d at 500. The District's Olmstead Plan places too much of the burden of transitioning to the community on nursing facility residents themselves, thereby effectively transferring to them and nursing facility staff the District's obligation to integrate persons with disabilities into community settings. As a result, the Court concludes that the District has no comprehensive effectively working Olmstead Plan.[46]

### B. Fundamental Alteration Defense: The District Has Demonstrated That Only One of Plaintiffs' Four Requested Accommodations Is Unreasonable

In Olmstead, the Supreme Court declared that "unjustified isolation of persons with disabilities is a form of discrimination," Olmstead, 527 U.S. at 600, and that the ADA and its implementing regulations "require placement of persons with . . . disabilities in community settings rather than in institutions." Id. at 587. But the Court added this important caveat: placement in the community is required only so long as the placement "can be reasonably accommodated, taking into account the resources of the state and the needs of others." Id. States

---

[46]    In reaching this conclusion, the Court need not consider the overall rate at which nursing facility residents successfully transition to the community, which is subject to many other limiting conditions that are outside of the District's control. See, e.g., Brown II, 928 F.3d at 1087 ("The lack of housing is relevant to whether the pace of movement from the waiting list is 'reasonable,' which, in turn, is relevant to whether the District has an 'adequate Olmstead Plan' in place."); see also id. at 1092 (Wilkins, J., concurring in the judgment) (noting that the "number of completed or pending placements of disabled individuals in outside housing" need not be "the exclusive, or even predominant, factors" in determining whether the District has a comprehensive, effectively working Olmstead Plan).

can resist modifications requested by segregated disabled individuals, but only if the state "can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Id. at 597 (quoting 28 C.F.R. § 35.130(b)(7)); see also Brown II, 928 F.3d at 1070, 1077. This fundamental alteration defense "allow[s] the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with . . . disabilities." Olmstead, 527 U.S. at 604; see Brown II, 928 F.3d 1077-78.

Because the Court has concluded that the District has not met its burden of demonstrating that it has a comprehensive effectively functioning Olmstead Plan, the Court now must determine whether plaintiffs' requested accommodations are unreasonable under the fundamental alteration defense. Pursuant to the D.C. Circuit's instructions, in doing so the Court "concentrate[s] on the accommodations that Plaintiffs in fact request [as reflected in] the proposed injunction." Brown II at 1083 n.10; see also Fourth Amended Complaint at 31-32 (setting forth four subsections of the proposed injunction).

The injunctive relief requested by plaintiffs has four distinct components. The Court will discuss each in turn.

1. Subpart One of Proposed Injunction:  Cost of Developing Working System of Transition Assistance

In the first subpart of their proposed injunction, plaintiffs request that the Court require the District to "[d]evelop and implement a working system of transition assistance" that, based on the evidence presented at trial, (1) periodically informs nursing facility residents for Medicaid-funded nursing facility residents "about community-based long-term care alternatives

to nursing facilities"; (2) periodically elicits nursing facility residents' preferences for transitioning to the community; (3) provides discharge planning to residents upon admission, with monthly progress reviews; and (4) provides Medicaid-funded nursing facility residents who wish to transition to the community with assistance accessing appropriate home- and community-based services.  See Fourth Amended Complaint at 31.  The District argues that implementing this system of transition assistance would not only be duplicative of the services nursing facilities and District of Columbia agencies already provide to class members, it would cost the District upwards of $7 million – and perhaps as much as $14 million – annually to do so. See FF ¶ 147.  To cover the cost of these services, the District continues, would require DACL or the Health and Human Services cluster within District government to cut a variety of home- and community-based services that enable disabled individuals to safely and productively live in the community.  See id. ¶¶ 147-149.

   First, although the Court certainly agrees that costs are relevant, "budgetary constraints alone are insufficient to establish a fundamental-alteration defense."  Pennsylvania Prot & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare, 402 F.3d 374, 380 (3d Cir. 2005); accord Pashby v. Delia, 709 F.3d 307, 323 (4th Cir. 2013), abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008); see also DOJ Olmstead Guidance at 7 ("Budgetary shortages are not, in and of themselves, evidence that such relief would constitute a fundamental alteration.").  "In passing the ADA, Congress was clearly aware that '[w]hile the integration of people with disabilities will sometimes involve substantial short-term burdens, both financial and administrative, the long-range effects of integration will benefit society as a whole.'"  Fisher v. Okla. Health Care Auth., 335 F.3d 1175, 1183 (10th Cir. 2003) (quoting H.R. REP. NO. 101-485, pt. 3, at 50 (1990)).  "If every alteration in a program or service that required

<div align="center">94</div>

the outlay of funds were tantamount to a fundamental alteration, the ADA's integration mandate would be hollow indeed." Id.; accord Steimel v. Wernert, 823 F.3d 902, 915 (7th Cir. 2016). The courts therefore take "a holistic approach" and consider both the "resources available" and the "needs of others with [physical] disabilities." Steimel v. Wernert, 823 F.3d at 915; see Olmstead, 527 U.S. at 597 (recognizing "the States' need to maintain a range of facilities for the care and treatment of persons with diverse . . . disabilities, and the States' obligation to administer services with an even hand"); see Brown II, 928 F.3d at 1089-90 (Wilkins, J., concurring in the judgment).[47]

On the evidence presented at trial as it relates to costs, the Court concludes that plaintiffs' requested accommodations would not fundamentally alter the nature of the District's services, nor would they "be inequitable, given the responsibility the [District] has undertaken for the care and treatment of a large and diverse population of persons with [physical] disabilities." Brown II, 928 F.3d at 1077-78. As noted above, one of the reasons the District's Olmstead Plan is deficient is that it fails to comprehensively assess how many nursing facility residents are willing and able to transition to the community or have expressed an interest in

---

[47]    As noted by Justice Kennedy in Olmstead, this consideration balances the non-discrimination mandate of the ADA against federalism concerns:

> No State has unlimited resources, and each must make hard decisions on how much to allocate to treatment of diseases and disabilities.  If, for example, funds for care and treatment of the mentally ill, including the severely mentally ill, are reduced in order to support programs directed to the treatment and care of other disabilities, the decision may be unfortunate.  The judgment, however, is a political one and not within the reach of the [ADA]. Grave constitutional concerns are raised when a federal court is given the authority to review the State's choices in basic matters such as establishing or declining to establish new programs.

Olmstead, 527 U.S. at 612-13 (Kennedy, J., concurring).

talking to someone about the possibility of leaving the nursing facility and transitioning to the community.  Another reason is that the District fails to ensure that residents are provided meaningful transition assistance once they have expressed an interest and been referred to DACL.  See supra Section III.A.

The Court finds that the District overstates the burden placed on it by plaintiffs' requests when it estimates that implementing a working system of transition assistance would require employing 60 additional transition care specialists at an estimated cost of $7 million annually.  See FF ¶ 147.  Despite assertions by the District to the contrary, the evidence before the Court demonstrates that these deficiencies can be remedied and transition care assistance can be provided by fewer than 60 additional transition care specialists.  Ensuring that individuals who respond affirmatively to the MDS question Q0500B are personally visited by a District employee who can provide personalized information about the possibility of transitioning to the community does not require an army of transition care specialists.  As a result, the District's estimate that the cost of implementing the plaintiffs' requests would be approximately $7 million has not been demonstrated.  Although the implementation of an effective system of transition assistance might be "costly," it would not "require an unreasonable transfer of the District's limited resources from other disabled individuals."  Brown II, 928 F.3d at 1085 (emphasis added).  As the Supreme Court noted, the cost of services provided to disabled individuals already living in the community – including meal delivery, fitness and education programs, and transportation, see FF ¶ 65 – cannot be used to justify the continuing segregation of class members, who also stand to benefit from those same services.  Olmstead, 527 U.S. at 601.

2.  <u>Subpart Two of Proposed Injunction:  Home and Community Based
Services and Support</u>

Second, plaintiffs request that the District "[e]nsure sufficient capacity of

community-based long-term care services" provided through the various locally- and federally-

funded programs administered by the District to serve plaintiffs "in the most integrated setting

appropriate to their needs."  <u>See</u> Fourth Amended Complaint at 31.  The record evidence

establishes that there currently is sufficient capacity for nursing facility residents interested in

transitioning to receive such long-term care services in the community; and there is no indication

that the District would be unable to provide those services to class members if they were to

transition to the community.  The PCA program offers services of various kinds to all Medicaid

beneficiaries who have transitioned from a nursing facility to the community, and there "is no

limit to the number of District residents who can receive State Plan PCA services."  <u>See</u> FF ¶ 47.

And a qualified individual can receive PCA services even if not eligible for the EPD waiver

program, which is a program that provides a broader array of services.  <u>See</u> Stipulated Facts at 3;

FF ¶¶ 47-48.  Furthermore, at the time of trial, there were "more than enough EPD Waiver slots

to accommodate all class members who need services under the EPD Waiver."  <u>Id</u>. ¶ 49.  While

there was a waiting list for EPD waiver services a decade ago, there are now many more slots

available than there is demand for EPD waivers.  <u>See id</u>. ¶¶ 48-49; <u>Brown I</u>, 322 F.R.D. at 73-

74; <u>see also supra</u> at 83 n.45.  The Court therefore concludes that implementing this subpart of

plaintiffs' proposed injunction would not be "so costly as to be unreasonable."  <u>Brown II</u>, 928

F.3d at 1082.

### 3. Subpart Three of Proposed Injunction: Number of Residents to be Transitioned Annually

Third, plaintiffs request that the District be required to transition no fewer than 600 class members into the community over four years: 80 class members in Year 1; 120 class members in Year 2; 200 class members in Year 3; and 200 class members in Year 4. See Fourth Amended Complaint at 31-32. The Court has compared this to what the District has been capable of doing in recent years – even after being placed under a Corrective Action Plan by CMS: 24 nursing facility residents transitioned to the community in 2014; 36 in 2015; 40 in 2016; 37 in 2017; 32 in 2018; 47 in 2019; 44 in 2020; and 19 as of June 2021. These numbers are far below the requirements plaintiffs ask the Court to impose on the District of Columbia going forward. The question is whether plaintiffs' requests are realistic in view of the fact that there are substantial barriers to transitioning to the community, particularly the lack of available housing for nursing facility residents in the community, which is beyond the control of the District of Columbia.

To successfully transition to the community, a nursing facility resident must secure safe and affordable housing which meets their physical needs. See FF ¶ 105. At the least, greater than 50% of class members require public housing or housing subsidies in order to successfully transition to the community. See FF ¶ 124; see also Brown I, 322 F.R.D. at 82 (noting that "[o]ver 80% of nursing facility residents who want to move to the community need public housing or subsidized housing"). Finding appropriate housing can be a challenge for many nursing facility residents and their families, particularly those with limited financial means. See FF ¶ 106. In addition, many nursing home residents lack the self-confidence necessary to navigate the administrative challenges that make it difficult to transition. See FF ¶ 104.

Furthermore, and most important, the D.C. Housing Authority ("DCHA") is an independent agency. While it receives funding from both the federal and D.C. governments to provide housing services to D.C. residents, it is not formally a part of the District of Columbia government. See FF ¶ 107. And even setting aside the difficulty some nursing facility residents may face in locating suitable housing, there continues to be a severely limited inventory of available public housing and housing choice vouchers in the District of Columbia. See id. ¶¶ 108-117. Realistically, the only viable option for nursing facility residents is the special purpose voucher. See id. ¶ 119.[48] And at the time of trial, there were only 85 special purpose vouchers assigned by DCHA to DACL to make available to nursing facility residents. See id. ¶¶ 118-120.

In vacating the Court's prior decision, the D.C. Circuit observed that "[i]f on remand the district court reaffirms the[] factual findings [regarding the lack of housing in the District of Columbia], it appears the third provision of the proposed injunction . . . would likely be so costly as to be unreasonable." Brown II, 928 F.3d at 1085 n.13 (internal citation omitted). This Court agrees. It simply is unrealistic to require the District of Columbia to transition 600 class members to the community over a four year period without any consideration of the likelihood that a lack of available housing will be an individualized barrier to transition for many. As plaintiffs acknowledge, it would likely require the District to reallocate special purpose housing vouchers from other populations to member of the class in this case. The problem is that DCHA, which administers the housing choice voucher waiting list, is an

---

[48]     As noted, there are three types of housing vouchers used by DCHA: tenant-based vouchers, project-based vouchers, and special purpose vouchers. See FF ¶ 109. At the time of trial, there were 43,000 people on the voucher waiting list, and the list had been closed since April 2013. See FF ¶¶ 112. Tenant-based vouchers and project-based vouchers are distributed through DCHA's voucher waiting list; special purpose vouchers are not. See FF ¶¶ 112-118.

independent public housing agency that is not subject to the District's control.  And although

DCHA administers approximately 2,900 special purpose vouchers, DCHA has assigned only 85

special purpose vouchers to DACL to make available to nursing facility residents.  See FF

¶¶ 107-109.

<div align="center">

4.   Subpart Four of Proposed Injunction:  Providing Public Reports
to Assure Transparency

</div>

Finally, plaintiffs request that the District be required to publicly report on a semi-

annual basis a number of metrics that reflect the District's success in transitioning class members

to the community: "the total number of DC Medicaid-funded nursing facility residents who do

not oppose living in the community; the number of those individuals assisted by [the District] to

transition to the community . . . ; and the aggregate dollars [saved] . . . by serving individuals in

the community rather than in nursing facilities."  Fourth Amended Complaint at 32.  In

plaintiffs' view, through such transparent reporting, the public could assess the District's

ongoing commitment to deinstitutionalization.  The District argues that the data it currently

reports is sufficient, but it fails to meet its burden to explain how reporting the requested

information would be so costly as to be unreasonable.  In the Court's view, such data could be

easily collected as an ancillary matter when implementing the first subpart of plaintiffs'

requested injunction.  Because the District has not shown that reporting such supplemental data

would be unreasonable, see FF ¶ 26 (noting the District's regular reporting requirements); see

also Def. Ex. 102 at 18-19, 31-34 (listing some of the District's reporting obligations under the

current Olmstead Plan), the Court will require the District to make the requested

accommodation.  See Brown II, 928 F.3d at 1081.

<div align="center">

100

</div>

IV.  CONCLUSION

The Court concludes that the District of Columbia has violated both the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  It has violated the integration mandate of Olmstead, because it does not have a comprehensive and effectively working Olmstead Plan in place.  As a result, the Court has considered the alternative established by Olmstead:  whether the District has shown that "in the allocation of available resources," providing immediate relief to the plaintiffs "would be inequitable, given the responsibility the [District] has undertaken for the care and treatment of a large and diverse population of persons with . . . disabilities."  Olmstead, 527 U.S. at 604.  Applying this "fundamental alteration defense" to the facts found based on the evidence at trial, the Court concludes that three of plaintiffs' requested accommodations are reasonable; one is not.

Consistent with the foregoing Findings of Fact and Conclusions of Law, the Court finds the defendant District of Columbia liable for violating the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.  The Court also concludes that plaintiffs continue to satisfy the class certification requirements under Federal Rule of Civil Procedure 23(a) and 23(b)(2).  The Court therefore orders relief on behalf of all members of the class, defined as:

> All persons with physical disabilities who, now or during the pendency of this lawsuit:  (1)  receive D.C. Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days; (2) are eligible for Medicaid covered home and community-based long-term care services that would enable them to live in the community; and (3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community.

Pursuant to the Declaratory Judgment Act, the Court declares that defendant's failure to provide plaintiffs with long-term care services in the most integrated setting

appropriate to their needs violates Title II of the Americans with Disabilities Act.  It further declares that defendant's failure to provide plaintiffs with long-term care services in the most integrated setting appropriate to their needs violates Section 504 of the Rehabilitation Act.

The Court will enter a permanent injunction requiring defendant to promptly take the following steps that are necessary to serve plaintiffs in the most integrated settings appropriate to their needs: (1) develop and implement a working system of transition assistance for plaintiffs whereby defendant, at a minimum, (a) informs D.C. Medicaid-funded nursing facility residents, upon admission and at least every three months thereafter, about community-based long-term care alternatives to nursing facilities; (b) elicits D.C. Medicaid-funded nursing facility residents' preferences for community or nursing facility placement upon admission and at least every three months thereafter; (c) begins D.C. Medicaid-funded nursing facility residents' discharge planning upon admission and reviews at least every month the progress made on that plan; and (d) provides D.C. Medicaid-funded nursing facility residents who do not oppose living in the community with assistance accessing all appropriate resources available in the community;  (2) ensure sufficient capacity of community-based long-term care services for plaintiffs under the EPD, MFP, and PCA programs, and other long-term care service programs, to serve plaintiffs in the most integrated setting appropriate to their needs, as measured by enrollment in these long-term care programs; and (3) to demonstrate the District's ongoing commitment to deinstitutionalization by publicly reporting on at least a semi-annual basis the total number of D.C. Medicaid-funded nursing facility residents who do not oppose living in the community; the number of those individuals assisted by defendant to transition to the community with long-term care services through each of the MFP, EPD, and PCA, and other long-term care

102

programs; and the aggregate dollars defendant saves (or fails to save) by serving individuals in the community rather than in nursing facilities.

The Court expressly denies plaintiffs' request to enter an injunction directing the District of Columbia to transition members of the plaintiff class from nursing facilities to the community with the appropriate long-term care community-based services under the EPD, MFP, and PCA programs, and any other long-term care programs, with the following minimum numbers of transitions in each of the next four years:  80 class members in Year 1; 120 class members in Year 2; 200 class members in Year 3; and 200 class members in Year 4.

The Court directs the Clerk of the Court to enter a Final Judgment in favor of plaintiffs Ivy Brown and Larry McDonald and the Plaintiff Class. This is a final appealable order.  See Fed. R. App. P. 4 (a).

SO ORDERED.


PAUL L. FRIEDMAN
United States District Judge

DATE:  12|31|24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
IVY BROWN, et al.,                      )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )          Civil Action No. 10-2250 (PLF)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
            Defendant.                  )
_____)

OPINION AND ORDER

On December 31, 2024, the Court issued its opinion, findings of fact, and

conclusions of law in this case.  See Brown v. District of Columbia ("Brown III"), 761 F.

Supp. 3d 34 (D.D.C. 2024).[1]  Consistent with its findings of fact and conclusions of law, the

Court entered a permanent injunction against the District of Columbia ("the District"), directing

the District to take several steps "necessary to serve plaintiffs in the most integrated settings

appropriate to their needs."  Id. at 96.  On January 28, 2025, the District filed a Motion to Alter

or Amend Judgment ("Def. Mot.") [Dkt. No. 508], under Rule 59(e) of the Federal Rules of

Civil Procedure, asserting that the injunction "as entered evinces manifest errors of law" and

_____
[1]    The Court has reviewed the following documents in connection with the pending
motion:  Defendant's Motion to Alter or Amend Judgment ("Def. Mot.") [Dkt. No. 508];
Plaintiffs' Opposition to Defendant's Motion to Alter or Amend Judgment ("Pls. Opp.")
[Dkt. No. 514]; Defendant's Reply in Support of its Motion to Alter or Amend Judgment
("Def. Reply") [Dkt. No. 517]; Defendant's Supplemental Memorandum in Support of its
Motion to Alter or Amend Judgment ("Def. Supp.") [Dkt. No. 521]; the parties' Proposed
Revisions to Subpart Two of the Injunction and the District's Statement Regarding Subpart
Three of the Injunction ("JSR") [Dkt. No. 522]; and Plaintiffs' Response Brief Pursuant to the
Court's April 16, 2025 Memorandum Opinion and Order ("Pls. Supp.") [Dkt. No. 523].

should be vacated.  See Def. Mot. at 7; see also FED. R. CIV. P. 59(e).  After receiving plaintiffs'

opposition and other filings from the parties, the Court held oral argument on the District's

motion on April 15, 2025.  See Minute Entry of April 15, 2025.

   Upon careful consideration of the parties' filings, the oral arguments, and the

relevant legal authorities, the Court will deny the District's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

   The Court presumes familiarity with the complex factual and procedural history

of this case, which is described in the Court's recent opinion.  See Brown III, 761 F. Supp. 3d

at 41-47.  What follows is an overview of facts relevant to the District's pending motion.

   Plaintiffs are a class of physically disabled individuals who have received

Medicaid-funded long-term care in nursing facilities for more than 90 days, but who wish to

transition—and are capable of transitioning—to the community to receive home- and

community-based care.  See Brown III, 761 F. Supp. 3d at 41.  On December 23, 2010, plaintiffs

filed a putative class action against the District, alleging that the District had violated Title II of

the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq., and

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.  See Brown III, 761 F. Supp. 3d

at 43; see also Brown v. District of Columbia ("Brown I"), 322 F.R.D. 51, 56-57 (D.D.C. 2017).

Plaintiffs argued that the District "ha[d] caused numerous individuals with physical disabilities

'to be confined unnecessarily in nursing facilities in order to obtain long-term care services,

rather than facilitate [those individuals'] transition to the community with appropriate services

and supports.'"  Brown III, 761 F. Supp. 3d at 43 (quoting Plaintiffs' Fourth Amended

Complaint [Dkt. No. 162] ¶ 135).  Plaintiffs sought declaratory and injunctive relief.  See id.

On March 29, 2014, Judge Ellen Segal Huvelle certified a class of plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure consisting of:

> All persons with physical disabilities who, now or during the pendency of this lawsuit: (1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days; (2) are eligible for Medicaid-covered home and community-based long-term care services that would enable them to live in the community; and (3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community.

Brown III, 761 F. Supp. 3d at 44 (quoting Order [Dkt. No. 129] at 1).  In 2016, Judge Huvelle conducted a bench trial to determine whether the District was "liable," reserving the issue of what an appropriate remedy might be for a later phase.  See id. (citing Brown I, 322 F.R.D. at 61-62).  After the trial, Judge Huvelle entered judgment for the District, finding that plaintiffs had failed to prove that the District had violated the ADA and the Rehabilitation Act.  See id. at 45 (citing Brown I, 322 F.R.D. at 96).  Specifically, "the Court concluded that plaintiffs had failed to prove 'the existence of a concrete systemic deficiency in the District's transition services' that had caused plaintiffs 'to remain in nursing facilities despite their preference to receive long-term care in the community.'"  Id. at 45 (quoting Brown I, 322 F.R.D. at 87).

On appeal, the D.C. Circuit reversed and remanded the case for further factfinding and consideration, holding that the Court had erred by requiring plaintiffs to bear the burden at trial of proving a "'concrete, systemic deficiency' in the District's transition services."  Brown v. District of Columbia ("Brown II"), 928 F.3d 1070, 1079 (D.C. Cir. 2019).  Pursuant to the Circuit's remand instructions regarding burden of proof, this case proceeded to a second bench trial before the undersigned that commenced on October 25, 2021.  See Brown III, 761 F. Supp. 3d at 46; see also Brown II, 928 F.3d at 1083-85 (providing detailed remand instructions).

On December 31, 2024, after carefully considering all of the admissible evidence from both bench trials and reviewing the parties' filings and the applicable law, the Court issued its opinion, findings of fact, and conclusions of law.  See Brown III, 761 F. Supp. 3d at 47-95. The Court found that the District's "complex system of long-term care services and supports for physically-disabled individuals," id. at 84, did not sufficiently satisfy the Supreme Court's "integration mandate" under the ADA to "integrate eligible patients [with disabilities] into local community-based settings."  Id. at 42 (quoting Frederick L. v. Dep't of Pub. Welfare of Pa., 422 F.3d 151, 157 (3d Cir. 2005)).  In Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999), a majority of the Supreme Court interpreted Title II of the ADA and its implementing regulations to hold that the unjustified placement, retention, or isolation of persons with disabilities in institutions constitutes a form of discrimination on the basis of disability.  See id. at 596-97; see also id. at 601 (noting that disabled individuals who are unjustifiably institutionalized experience dissimilar treatment because they are required to "relinquish participation in community life they could enjoy given reasonable accommodations" in order to receive medical services, while those without disabilities are not required to make such a sacrifice to receive medical services).

The Olmstead Court thus recognized an "integration mandate" under the ADA for public entities to ensure "that patients eligible and desirous of community placement be discharged into community-based programs if placement can be reasonably accommodated, taking into account the resources of the state and the needs of other persons in its care." Frederick L. v. Dep't of Pub. Welfare of Pa., 422 F.3d at 157 (citing Olmstead, 527 U.S. at 587); see also Steimel v. Wernert, 823 F.3d 902, 909 (7th Cir. 2016); Arc of Wash. State Inc. v. Braddock, 427 F.3d 615, 618 (9th Cir. 2005).  But Olmstead's integration mandate "is not boundless."  Olmstead, 527 U.S. at 603.  A public entity may defend against integration claims

4

by demonstrating "that it ha[s] a comprehensive, effectively working plan [now called an "Olmstead Plan"] for placing qualified persons with . . . disabilities in less restrictive settings, and a waiting list that move[s] at a reasonable pace not controlled by the State's endeavors to keep its institutions fully populated."  Olmstead, 527 U.S. at 605-06; see also Arc of Wash. State Inc. v. Braddock, 427 F.3d at 618 (noting that courts "normally 'will not tinker with' comprehensive, effective state programs for providing care to the disabled.").

   In Brown III, this Court concluded "that the District has violated Olmstead's integration mandate and does not have an effective Olmstead Plan in place."  761 F. Supp. 3d at 84.  First, the Court explained that "the District's Olmstead Plan is not comprehensive or effectively working because the District fails to provide effective outreach to nursing facility residents to determine whether they are willing and able to transition to the community." Id. at 86.  Specifically, "the District does not provide residents with sufficient information to enable them to make informed decisions about whether to seek to transition to the community." Id.  Second, the Court determined that the District "failed to demonstrate that it provides meaningful transition assistance" to nursing facility residents who require such assistance from the District.  Id. at 89.  Specifically, "the District places too much reliance on nursing facilities to provide transition assistance to nursing facility residents who wish to transition and are capable of transitioning to the community, rather than following up proactively and systematically through their transition care specialists."  Id. at 84.

   Consistent with these findings of fact and conclusions of law, the Court found the District liable for violating the ADA and the Rehabilitation Act, and ordered declaratory and injunctive relief on behalf of all members of the plaintiff class.  See Brown III, 761 F. Supp. 3d at 95-96.  First, pursuant to the Declaratory Judgment Act, see 28 U.S. Code § 2201, the Court

declared that the District's "failure to provide plaintiffs with long-term care services in the most integrated setting appropriate to their needs violates Title II of the Americans with Disabilities Act [and] Section 504 of the Rehabilitation Act." Brown III, 761 F. Supp. 3d at 96. Second, the Court entered a permanent injunction requiring the District to "promptly take the following steps that are necessary to serve plaintiffs in the most integrated settings appropriate to their needs":

> (1) develop and implement a working system of transition assistance for plaintiffs whereby defendant, at a minimum,
> > (a) informs D.C. Medicaid-funded nursing facility residents, upon admission and at least every three months thereafter, about community-based long-term care alternatives to nursing facilities;
> > (b) elicits D.C. Medicaid-funded nursing facility residents' preferences for community or nursing facility placement upon admission and at least every three months thereafter;
> > (c) begins D.C. Medicaid-funded nursing facility residents' discharge planning upon admission and reviews at least every month the progress made on that plan; and
> > (d) provides D.C. Medicaid-funded nursing facility residents who do not oppose living in the community with assistance accessing all appropriate resources available in the community;
>
> (2) ensure sufficient capacity of community-based long-term care services for plaintiffs under the EPD, MFP, and PCA programs, and other long-term care service programs, to serve plaintiffs in the most integrated setting appropriate to their needs, as measured by enrollment in these long-term care programs; and
>
> (3) to demonstrate the District's ongoing commitment to deinstitutionalization by publicly reporting on at least a semi-annual basis the total number of D.C. Medicaid-funded nursing facility residents who do not oppose living in the community; the number of those individuals assisted by defendant to transition to the community with long-term care services through each of the MFP, EPD, and PCA, and other long-term care programs; and the aggregate dollars defendant saves (or fails to save) by serving individuals in the community rather than in nursing facilities.

Brown III, 761 F. Supp. 3d at 96. Lastly, the Court directed the Clerk of the Court to enter judgment in favor of plaintiffs Ivy Brown and Larry McDonald and the plaintiff class. Id. at 97.

On January 28, 2025, the District moved to alter or amend the Court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  See Def. Mot.  In its motion, the District argues that Subparts One, Two, and Three of the Court's injunction "evince[ ] manifest errors of law" and should be vacated, in whole or in part.  Def. Mot. at 7.  The District further argues that Subpart Two of the injunction is "fatally vague," and therefore commits manifest error under Rule 59(e).  Id. at 19-20.  On February 25, 2025, plaintiffs filed their opposition to the District's motion.  See Plaintiffs' Opposition to Defendant's Motion to Alter or Amend Judgment ("Pls. Opp.") [Dkt. No. 514].  The District replied on March 19, 2025.  See Reply in Support of Defendant's Motion to Alter or Amend Judgment ("Def. Reply") [Dkt. No. 517].

On April 15, 2025, the Court heard oral argument on the District's motion. See Minute Entry of April 15, 2025.  The next day, the Court ordered the parties to file a joint status report including:  (i) a joint proposed revision to Subpart Two of the injunction that "clarif[ies] the precise long-term care service programs that the District may use as enrollment benchmarks to ensure sufficient capacity of community-based long-term care service programs"; and (ii) a statement from the District "explain[ing] the nature of any objections [it] may have to promptly implementing Subpart Three of the Injunction."  Memorandum Opinion and Order of April 16, 2025 [Dkt. No. 519] at 3.  The Court further ordered the District to file a supplemental memorandum of law "providing any case law or precedent that directly supports" the proposition that "a judgment ordering injunctive relief that is not narrowly tailored constitutes clear error under Rule 59(e) of the Federal Rules of Civil Procedure."  Id. at 4 (emphasis in original).[2]

---

[2]    On April 16, 2025, the Court stayed its December 31, 2024 judgment "pending further order of the Court."  See Mem. Op. and Order at 3 (granting the District's Motion to Stay Judgment Pending Reconsideration of the Judgment Entered [Dkt. No. 509]).

On May 6, 2025, the parties filed a joint status report proposing two different revisions to Subpart Two of the injunction and advising the Court of the District's objections to promptly implementing Subpart Three of the injunction.  See Proposed Revisions to Subpart Two of the Injunction and the District's Statement Regarding Subpart Three of the Injunction ("JSR") [Dkt. No. 522].  Pursuant to the Court's opinion and order of April 16, 2025, the District filed its supplemental memorandum of law on May 6, 2025.  See Defendant's Supplemental Memorandum ("Def. Supp.") [Dkt. No. 521].  Plaintiffs replied on May 13, 2025.  See Plaintiffs' Response Brief ("Pls. Supp.") [Dkt. No. 523].  The parties have fully briefed the issues, and the District's Rule 59(e) motion for reconsideration is now ripe for decision.

## II.  LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file a motion to alter or amend a judgment within twenty-eight days of the judgment's entry.  See FED. R. CIV. P. 59(e).  To prevail on a Rule 59(e) motion, the moving party must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting Firestone v. Firestone ("Firestone"), 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  "[C]ourts have required 'a very exacting standard'" in assessing "clear error" in the Rule 59(e) context, such that the "final judgment must be 'dead wrong' to constitute clear error."  Wannall v. Honeywell Int'l, Inc., Civil Action No. 10-351 (BAH), 2013 WL 12321549, at *3 (D.D.C. Oct. 24, 2013) (first quoting Bond v. U.S. Dep't of Just., 286 F.R.D. 16, 22 (D.D.C. 2012), then quoting Lardner v. FBI, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)).  "Indeed, the Seventh Circuit has vividly observed that '[t]o be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead

8

fish." Slate v. Am. Broad. Companies, Inc. ("Slate"), 12 F. Supp. 3d 30, 35 (D.D.C. 2013)

(quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)).

       "The strictness with which [Rule 59(e)] motions are viewed is justified by the

need to protect both the integrity of the adversarial process in which parties are expected to bring

all arguments before the court, and the ability of the parties and others to rely on the finality of

judgments." Mahoney v. United States Capitol Police Bd. ("Mahoney"), Civil Action

No. 21-2314 (JEB), 2024 WL 4235429, at *2 (D.D.C. July 31, 2024) (quoting Mohammadi v.

Islamic Republic of Iran ("Mohammadi"), 947 F. Supp. 2d 48, 77 (D.D.C. 2013)) (alteration in

original). Accordingly, "although courts have 'considerable discretion in ruling on a Rule 59(e)

motion,' such motions are 'disfavored and relief from judgment is granted only when the moving

party establishes extraordinary circumstances." Owen-Williams v. BB & T Servs., Inc., 797 F.

Supp. 2d 118, 124 (D.D.C. 2011) (first quoting Piper v. U.S. Dep't of Justice, 312 F.

Supp. 2d 17, 20 (D.D.C. 2004), then Niedermeier v. Office of Baucus, 153 F. Supp. 2d 23, 28

(D.D.C. 2001)). "Rule 59(e) does not provide a vehicle to 'relitigate old matters, or to raise

arguments or present evidence that could have been raised prior to the entry of judgment.'"

Schoenman v. FBI, 857 F. Supp. 2d 76, 80 (D.D.C. 2012) (quoting Exxon Shipping Co. v.

Baker, 554 U.S. 471, 485 n.5 (2008)). Nor does Rule 59(e) provide a vehicle to express "mere

disagreement" with a judgment. Wannall v. Honeywell Int'l, Inc., 2013 WL 12321549, at *3.


### III. ANALYSIS

       The District of Columbia does not seek to vacate the Court's judgment in light of

an "intervening change of controlling law," the "availability of new evidence," or the need to

"prevent manifest injustice." Firestone, 76 F.3d at 1208. Instead, the District asserts that relief

under Rule 59(e) is warranted in this case because the Court's injunction, as entered, "evinces

manifest errors of law" in three ways:  First, Subpart One of the injunction "affords relief to

non-Parties—not as a collateral benefit, but as an additional requirement and burden upon the

District."  Def. Mot. at 7.  Second, the District argues that Subparts One, Two, and Three of the

injunction are "not connected to or tailored to redress the conduct identified as problematic" in

the Court's findings of fact.  Id.  Lastly, the District argues that Subpart Two of the injunction is

"fatally vague" under Rule 65(d) of the Federal Rules of Civil Procedure, and therefore commits

"manifest error" warranting relief under Rule 59(e).  Id. at 19; see also FED. R. CIV. P. 65(d).[3]

All three arguments "must clear a high hurdle."  Mahoney, 2024 WL 4235429,

at *6 (citing Leidos, Inc. v. Hellenic Republic ("Leidos"), 881 F.3d 213, 217 (D.C. Cir. 2018)

(describing granting relief under Rule 59(e) as "an extraordinary measure")).  Contrary to the

District's assertion that the Court may "correct any error apparent in the judgment" under

Rule 59(e), see Def. Supp. at 3 (emphasis added), in order to obtain relief under Rule 59(e)'s

"clear error" standard, the District must establish that the Court's December 31, 2024

"judgment [was] 'dead wrong.'"  Mohammadi, 947 F. Supp. 2d at 78 (quoting Lardner v.

FBI, 875 F. Supp. 2d at 53).  The Court must also ensure that the District is not using its

Rule 59(e) motion to "relitigate old matters, or to raise arguments . . . that could have been raised

prior to the entry of judgment."  Exxon Shipping Co. v. Baker, 554 U.S. at 485 n.5.

---

[3]     The District repeatedly asserts that relief under Rule 59(e) is warranted because
the Court's injunction evinces "manifest error[s]" of law.  See e.g., Def. Mot. at 8, 9, 11, 13, 14.
But as plaintiffs correctly note, Rule 59(e) affords the Court discretion to reconsider its judgment
"under three circumstances only: (1) if there is an intervening change of controlling law; (2) if
new evidence becomes available; or (3) if the judgment should be amended in order to correct a
clear error or prevent manifest injustice."  Pls. Opp. at 5 (quoting Leidos, Inc. v. Hellenic
Republic, 881 F.3d 213, 217 (D.C. Cir. 2018)).  "[T]he phrase 'manifest errors of law' is not a
standard under Rule 59(e)."  Id. (quoting Def. Mot. at 7).

Under this framework, the Court finds that the District's arguments either could have been—or were in fact—raised prior to the entry of the judgment, or simply reflect mere disagreement with the Court's ordered relief.  The District therefore has not established a need to correct "clear error" such that relief under Rule 59(e) is warranted.

### A. *The District's "Relief to Non-Parties" Argument*

The District argues that Subpart One of the injunction evinces "clear error" under Rule 59(e) because it "extends relief to non-parties," and therefore the Court must vacate or, in the alternative, alter Subpart One.  Def. Mot. at 7.  Recall that Subpart One directs the District to:

> (1) develop and implement a working system of transition assistance for plaintiffs whereby defendant, at a minimum,
>> (a) informs D.C. Medicaid-funded nursing facility residents, <u>upon admission</u> and at least every three months thereafter, about community-based long-term care alternatives to nursing facilities;
>> (b) elicits D.C. Medicaid-funded nursing facility residents' preferences for community or nursing facility placement <u>upon admission</u> and at least every three months thereafter;
>> (c) begins D.C. Medicaid-funded nursing facility residents' discharge planning <u>upon admission</u> and reviews at least every month the progress made on that plan; and
>> (d) provides D.C. Medicaid-funded nursing facility residents who do not oppose living in the community with assistance accessing all appropriate resources available in the community.

<u>Brown III</u>, 761 F. Supp. 3d at 96 (emphasis added).  And recall that the plaintiff class consists of:

> All persons with physical disabilities who, now or during the pendency of this lawsuit: (1) receive DC Medicaid-funded long-term care services in a nursing facility <u>for 90 or more consecutive days</u>; (2) are eligible for Medicaid-covered home and community-based long-term care services that would enable them to live in the community; and (3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community.

11

Order at 1 (emphasis added).  The District argues that the injunction requires it to begin transition assistance "upon admission," but an individual "who has just been admitted to a nursing facility has not been in that nursing facility for '90 or more consecutive days,'" meaning "that person is therefore, definitively, not a member" of the plaintiff class.  Def. Mot. at 8. Thus, the District argues, Subpart One "improperly extends relief to non-parties."  Id. at 7.

The District acknowledges that "injunctive relief issued to a class" may sometimes "benefit[ ] non-parties, as a collateral effect," but asserts that Subpart One "does not just collaterally benefit non-parties."  Def. Mot. at 8 (emphasis in original).  Rather, "it requires dedication of specific and unique District resources to speak and work with residents who are not parties, that is, people who have been in nursing facilities less than 90 days."  Id.  Because Subpart One orders relief that may extend to non-parties—that is, people who have been in nursing facilities for up to 89 days—the District argues that this portion of the injunction commits clear "error warranting relief under Rule 59."  Id.  The District asks the Court to vacate Subpart One of the injunction or, in the alternative, "alter the Injunction to specify that the requirements of Subpart One do not begin 'upon admission,' but rather begin around a resident's 90th day of residence."  Id. at 9 (quoting Brown III, 761 F. Supp. 3d at 96).

The Court concludes that the District's argument that Subpart One extends relief to non-parties fails for two separate reasons.  First, the argument could have been raised prior to the entry of the Court's December 31, 2024 judgment.  And second, the argument was in fact substantially raised previously by the District of Columbia before trial, at trial, and after trial.

As discussed, Judge Huvelle certified the plaintiff class on March 29, 2014. See Brown III, 761 F. Supp. 3d at 44; see also Order at 1.  The class definition—including the "90 or more consecutive days" language—therefore has remained unchanged "[f]or over a

12

decade." Pls. Opp. at 10-11 (quoting Order at 1). Similarly, the injunctive relief sought by plaintiffs at trial, including the relief set out in Subpart One, has remained unchanged since plaintiffs' Third Amended Complaint [Dkt. No. 98], which was filed on March 27, 2013. See Third Amended Complaint at 35; see also Pls. Opp. at 11. And in their Fourth Amended Complaint, which was filed on September 10, 2015, plaintiffs again requested the relief set out in Subpart One. See Fourth Amended Complaint at 31; see also Pls. Opp. at 11. Furthermore, on December 31, 2019, after the D.C. Circuit remanded this case for further factfinding, see Brown II, 928 F.3d at 1083-85, plaintiffs once again stated their intent to seek the same injunctive relief set out in Subpart One. See Plaintiffs' Notice Regarding Injunctive Relief [Dkt. No. 299] at 1-2; see also Pls. Opp. at 11. The District thus had ample opportunity to raise its argument that the requested relief in Subpart One extends relief to non-parties. See Pls. Opp. at 11; see also Exxon Shipping Co. v. Baker, 554 U.S. at 485 n.5 (Rule 59(e) motions may not be used "to raise arguments . . . that could have been raised prior to the entry of judgment.").

Indeed, the District in fact did raise the argument that Subpart One extends relief to non-parties before trial, at trial, and after trial. See Pls. Opp. at 10. Before trial, in its October 13, 2021 Trial Memorandum ("Def. Tr. Mem.") [Dkt. No. 412], the District argued that Subpart One "primarily benefits, or offends, non-class members, because it requires survey of all nursing facility residents to determine their preferences, though class members are defined as those 'who would prefer' to live in the community." Def. Tr. Mem. at 13 (emphases in original). At trial, the District argued that Subpart One of plaintiffs' proposed injunction "would require the district to . . . elicit all residents' [placement] preferences every three months [and] begin all residents' discharge planning . . . confirm[ing] that Subpart I is designed to apply to all district Medicaid beneficiaries and not just the class." Transcript of Record, Brown III, Civil Action

13

No. 10-2250 (December 20, 2021 at 10:30 a.m.) [Dkt. No. 489] at 3936:21-3937:18 (emphasis added).  And in its post-trial Proposed Findings of Fact and Conclusions of Law ("Def. F&C") [Dkt. No. 442], the District again argued that Subpart One would only "provide a de minimis benefit to the class," and would "primarily benefit[ ] non-class members, because it requires survey of all nursing facility residents to determine their preference, though class members are defined as those 'who would prefer' to live in the community."  Def. F&C ¶ 270.

This Court, after carefully considering all admissible evidence from both bench trials and reviewing the parties' pre- and post-trial filings, entered Subpart One of plaintiffs' proposed injunction in its entirety.  Compare Brown III, 761 F. Supp. 3d at 96 (Subpart One of the Court's injunction), with Plaintiffs' Fourth Amended Complaint at 31 (Subpart One of plaintiffs' proposed injunction).  The Court was aware of the District's arguments about Subpart One extending relief to non-parties when it entered Subpart One of its order.  The District's current argument—that Subpart One extends relief to non-parties because it requires the District to begin transition assistance "upon admission," rather than at the 90-day mark—is merely a repackaged version of its previous argument, considered by the Court, that Subpart One extends relief to non-parties by requiring the District to elicit all residents' placement preferences rather than only plaintiffs' preferences.  And, as discussed, Rule 59(e) motions are not "vehicle[s] to 'relitigate old matters.'"  Schoenman v. FBI, 857 F. Supp. 2d at 80 (Rule 59(e) (quoting Exxon Shipping Co. v. Baker, 554 U.S. at 485 n.5)).  The Court therefore finds that the District's argument that Subpart One extends relief to non-parties could have been—and in fact was—substantially raised prior to entry of the judgment.  It thus provides no basis for relief under Rule 59(e).

14

The District resists this conclusion, advancing three reasons for why its arguments are not barred.  First, the District argues that it "could not present the arguments set forth here . . . until the Court issued its Opinion, Findings of Fact, and final relief in this case."  Def. Mot. at 22.  But the District's argument that the terms of Subpart One extend relief to non-parties does not rely on the Court's December 24, 2024 judgment at all, as evinced by the fact that the argument was substantially raised before the Court entered its judgment.  Second, though the District concedes that it "did repeatedly argue that Plaintiffs' proposed relief swept beyond the Plaintiff Class and was not connected to the Plaintiffs' harms," see Def. Reply at 3; see also Def. Mot. at 23-24, the District asserts that its arguments are still within the scope of Rule 59(e) because "Rule 59(e) motions are aimed at "reconsideration," and "reconsideration implies prior consideration."  Def. Reply at 2 (quoting Leidos, 881 F.3d at 217).  But the District conveniently omits the full context of this quote from Leidos, which sets forth the same exacting "clear error" standard under Rule 59(e) that this Court has articulated.  See Leidos, 881 F.3d at 217.

Lastly, the District argues that although it previously raised several of its arguments, the Court did not address some of those arguments in its final judgment.  See Defs. Reply at 12.  But the Rule 59(e) inquiry does not turn on whether the Court addressed a particular argument in its final judgment, but on whether the moving party raised, or could have raised, that argument before judgment was entered.  See Leidos, 881 F.3d at 217 (explaining that Rule 59(e) "may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment." (quoting Exxon Shipping v. Baker, 554 U.S. at 486 n.5)).

And even assuming, arguendo, that the District's assertions regarding Subpart One were not barred, the District has not established that Subpart One evinces "clear error" under Rule 59(e).  In its findings of fact, the Court found that "[m]ost [nursing facility]

15

residents do not know what alternatives to inpatient care may exist." See Brown III, 761 F.

Supp. 3d at 87 (quoting U.S. DEP'T OF HEALTH AND HUM. SERVS., OFF. FOR CIV. RTS., GUIDANCE

AND RESOURCES FOR LONG TERM CARE FACILITIES: USING THE MINIMUM DATA SET TO

FACILITATE OPPORTUNITIES TO LIVE IN THE MOST INTEGRATED SETTING (2016) at 4); see also id.

at 87-88 ("[I]n many cases individuals requiring long term services, and/or their families, are

unaware of community-based services and supports that could adequately support individuals in

community living situations."). Then, in its conclusions of law, the Court determined that

Subpart One should issue, in part, because the District's Olmstead plan "fails to comprehensively

assess how many nursing facility residents are willing and able to transition to the community or

have expressed an interest in talking to someone about the possibility of leaving the nursing

facility and transitioning to the community." Brown III, 761 F. Supp. 3d at 93.

The Court further concluded that "the District fails to provide effective outreach

to nursing facility residents to determine whether they are willing and able to transition to the

community," and that the District does not "provide residents with sufficient information to

enable them to make informed decisions about whether to seek to transition to the community."

Brown III, 761 F. Supp. 3d at 86. Lastly, the Court determined that the District's Olmstead Plan

fails to give the District "a reliable sense of how many individuals with disabilities are

institutionalized and eligible for services in community-based settings and how many are at risk

and need those services." Id. In sum, the Count found the District's Olmstead Plan inadequate

because it fails to assess how many nursing residents are eligible for and would prefer

community-based living alternatives, and also fails to provide nursing residents with the

information necessary to make informed choices and to form placement preferences.

Subpart One of the injunction directly addresses these inadequacies by requiring the District to "inform[ ] D.C. Medicaid-funded nursing facility residents, upon admission and at least every three months thereafter, about community-based long-term care alternatives to nursing facilities." Brown III, 761 F. Supp. 3d at 96. Subpart One further requires the District to "elicit[ ] D.C. Medicaid-funded nursing facility residents' preferences for community or nursing facility placement upon admission and at least every three months thereafter," and to "begin[ ] D.C. Medicaid-funded nursing facility residents' discharge planning upon admission and reviews at least every month the progress made on that plan." Id. Subpart One thus requires the District to: (i) provide nursing residents with information about community-based living alternatives upon admission; (ii) elicit the residents' informed placement preferences upon admission; and (iii) begin discharge planning upon admission. See Brown III, 761 F. Supp. 3d at 96.

The District is correct that the plaintiff class only includes individuals who have "receive[d] DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days." Def. Mot. at 8; see also Order at 1. So there is a chance that the relief ordered in Subpart One of the injunction may benefit some "non-class members who never become class members because they are able, with the provision of information and assistance, to move from a nursing facility before their 90th day" in the nursing facility. See Pls. Opp. at 18. But any information provided to non-parties is merely a collateral benefit of the injunction. See Brown v. Plata, 563 U.S. 493, 531 (2011) (holding that an injunctive remedy "does not fail narrow tailoring simply because it will have positive effects beyond the plaintiff class."). As plaintiffs correctly note, "[p]roviding nursing facility residents with the information they need to make informed decisions about whether they want to live in the community or remain in a nursing facility is foundational to being able to make a meaningful decision about community

17

living." Pls. Opp. at 22. And in order for potential class members to make "<u>informed</u> decisions" regarding community living once their 90th day in the nursing facility arrives, they need to be provided with information about community living and consulted about their preferences <u>before</u> the 90-day mark so that preparations can promptly begin. <u>See</u> <u>Brown III</u>, 761 F. Supp. 3d at 86.

The District may disagree with the Court's ordered start date for these steps of outreach, but that is insufficient to establish that the Court's judgment on this point is "clearly erroneous" under Rule 59(e). <u>Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.</u>, 866 F.2d at 233.[4]

### B. The District's "Narrowly Tailored" Arguments

The District further argues that Subparts One, Two, and Three of the injunction must be vacated, in whole or in part, because they are "not connected to or tailored to redress the conduct identified as problematic" in the Court's findings of fact. Def. Mot. at 7. In other words, the District argues that the Court's ordered relief is not "narrowly tailored to remedy the specific harm shown" to plaintiffs. <u>Id</u>. at 5 (quoting <u>Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.</u>, 435 F.3d 326, 330 (D.C. Cir. 2006)); <u>see also</u> <u>id</u>. at 6-7 (citing

---

[4] The District's argument that Subpart Three of the injunction extends relief to the public—a non-party—rather than the plaintiff class fails for similar reasons. <u>See</u> Def. Mot. at 17-18. For one, the argument could have been raised prior to the entry of judgment: just like Subpart One, the terms of Subpart Three have remained unchanged for over a decade. <u>See</u> Third Amended Complaint at 35; <u>see also</u> Fourth Amended Complaint at 32; Plaintiffs' Notice Regarding Injunctive Relief at 2; Pls. Opp. at 12-13. The District therefore had ample opportunity to object to the scope of the relief described in Subpart Three before, during, and after trial. <u>See</u> Pls. Opp. at 12-13; <u>see also</u> Transcript of Record, <u>Brown III</u>, Civil Action No. 10-2250 (December 20, 2021 at 10:30 a.m.) at 3942:7-8 (arguing that Subpart Three's data reporting requirement "wouldn't do the plaintiffs any good.").

But even if the District had not previously raised this argument, the District has failed to sufficiently demonstrate a need to correct "clear error." Subpart Three's reporting requirement directly benefits the plaintiff class—not just non-parties—by ensuring that the class receives data necessary to monitor the District's compliance with the injunction.

Lewis v. Casey ("Casey"), 518 U.S. 343 (1996), to argue that systemwide relief must be tailored to redress the systemic inadequacies that produced the injuries plaintiffs have established).

But under Rule 59(e), the Court may only reconsider its otherwise final judgment if: (1) there is an intervening change of law; (2) new evidence becomes available; or (3) there is a need "to correct a clear error or prevent manifest injustice." Leidos, 881 F.3d at 217. The District asserts that relief under Rule 59(e) is warranted here because there is a need to correct a "clear error." Def. Reply at 1. The District's "narrowly tailored" arguments therefore rely on the proposition that a judgment ordering injunctive relief that is not narrowly tailored constitutes "clear error" under Rule 59(e). Id. at 4 (arguing that "[i]t is clear error to enter injunctive relief not narrowly tailored to the Plaintiffs' harms and the Court should correct that error now.").

On April 16, 2025, the Court ordered the District to submit a supplemental memorandum of law offering authorities that directly support the proposition that a judgment ordering injunctive relief that is not narrowly tailored constitutes "clear error" under Rule 59(e). See Mem. Op. and Order at 4. Pursuant to the Court's order, the District filed a supplemental brief offering only one responsive case. See Def. Supp. at 1-2 (discussing Mahoney, 2024 WL 4235429). In Mahoney, plaintiff challenged the United States Capitol Police Board's regulations forbidding demonstrations on United States Capitol Building grounds. See 2024 WL 4235429, at *1. Chief Judge Boasberg determined that one of the regulations was facially unconstitutional in violation of the First Amendment, and entered a permanent, facial injunction against the defendants prohibiting them from enforcing the regulation. See id. at *2.

Defendants moved for reconsideration under Rule 59(e), arguing that "extending injunctive relief to non-parties where such relief is unnecessary to redress a plaintiff's injury is inappropriate," and requesting that the court alter its facial injunction to prohibit enforcement of

the regulation against the plaintiff only.  Mahoney, 2024 WL 4235429, at *6.  Judge Boasberg

characterized defendants' argument as "several variations on the theme that 'injunctive relief

should be no more burdensome to the defendant than necessary to provide complete relief to the

plaintiffs.'"  Mahoney, 2024 WL 4235429, at *8 (quoting Califano v. Yamasaki, 442

U.S. 682, 702 (1979)).  Judge Boasberg evaluated defendants' claims using the "clear error"

standard under Rule 59(e).  See id. (quoting Firestone, 76 F.3d at 1208).

Judge Boasberg ultimately denied defendants' Rule 59(e) motion, concluding that

defendants had failed to establish a need to correct a "clear error" such that relief under

Rule 59(e) was warranted.  See Mahoney, 2024 WL 4235429, at *6.  Relying on the "dead

wrong" standard for clear error under Rule 59(e), Judge Boasberg explained that "[i]n light of the

many cases . . . affirming facial injunctions, this old chestnut and its progeny do not render the

relief entered here 'dead wrong,' as it must be to warrant reconsideration."  Id. at *8 (quoting

Mohammadi, 947 F. Supp. 2d at 78).  He further found that "[i]t cannot be the case that every

injunction granting facial relief for a facial constitutional violation is per se overbroad," and

"[h]ere, the facial infirmity in the at-issue regulation warranted the relief given."  Id.

As the District concedes, "[t]he tailoring analysis in [Mahoney] is much different

from the consideration required" in the instant case "because this case does not involve a facial

challenge."  Def. Supp. at 2 n.1.  So Mahoney is instructive only insofar as it affirms the

framework that the Court has already articulated:  for a judgment to warrant reconsideration

under Rule 59(e)'s "clear error" standard, the court's ordered relief must be "dead wrong."

See Mahoney, 2024 WL 4235429, at *8 (explaining that none of the cases "affirming facial

injunctions . . . render the relief entered here "'dead wrong,' as it must be to warrant

reconsideration [under Rule 59(e)]." (quoting Mohammadi, 947 F. Supp. 2d at 78)).  The District

asks the Court to revisit its extensive findings of fact and conclusions of law, and to vacate or alter almost every subpart of a systemwide injunction.  See Def. Mot.; Def. Reply.  But as Judge Boasberg explained in Mahoney, in order to obtain relief for such an expansive request under Rule 59(e), the District bears the burden of demonstrating that the relief ordered by the Court was "dead wrong."  Lardner v. FBI, 875 F. Supp. 2d at 53.  Not just "maybe or probably wrong," but "wrong with the force of a five-week-old, unrefrigerated dead fish."  Slate, 12 F. Supp. 3d at 35 (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d at 233).

The District's arguments do not meet this high standard because they evince mere disagreement with the precise scope of the Court's ordered relief or, more specifically, with the "fit" between the Court's findings of fact, conclusions of law, and ordered relief.  See Smith v. Lynch, 115 F. Supp. 3d at 12 (explaining that mere disagreement is insufficient to support a Rule 59(e) motion).  The Court, after "carefully consider[ing] the evidence respecting the District's complex system of long-term care services and supports for physically-disabled individuals in light of the applicable law, regulations, and agency guidance," concluded in Brown III "that the District has violated Olmstead's integration mandate and does not have an effective Olmstead Plan in place."  761 F. Supp. 3d at 84.  Citing to its extensive findings of fact, the Court reached the following relevant conclusions of law:

> [T]he District places too much reliance on nursing facilities to provide transition assistance to nursing facility residents who wish to transition and are capable of transitioning to the community, rather than following up proactively and systematically through their transition care specialists.  [Brown III, 761 F. Supp. 3d at 84]

> [T]he District fails to provide effective outreach to nursing facility residents to determine whether they are willing and able to transition to the community.  Furthermore, the District does not provide residents with sufficient information to enable them to make informed decisions about whether to seek to transition to the community.  [Id. at 86 (emphasis added)]

21

> The District's <u>Olmstead</u> Plan places too much of the burden of
> transitioning to the community on nursing facility residents
> themselves, thereby effectively transferring to them and nursing
> facility staff the District's obligation to integrate persons with
> disabilities into community settings.  [<u>Id</u>. at 90-91]

The Court accordingly ordered injunctive relief aimed at addressing these deficiencies in the

District's <u>Olmstead</u> plan, requiring the District to "develop and implement a working system of

transition assistance" that would allow current and future plaintiff class members to be served "in

the most integrated settings appropriate to their needs."  <u>Id</u>. at 96 (the injunction).

The District advances several arguments for why the Court's injunction is not

tailored to the plaintiff class or to the harms described in the Court's findings of fact.  <u>See</u> <u>e.g.</u>,

Def. Mot. at 11 (arguing that Subpart (a) of Subpart One should be vacated because "[t]here is no

finding that [the Named Plaintiffs] or <u>any</u> actual nursing home resident who is interested in

community living, does not know that community-based services exist."); <u>id</u>. at 14 (arguing that

Subpart (b) of Subpart One, which "requires the District to 'elicit' residents' preferences for

facility versus community living upon admission and every three months," should be vacated

because "[n]o finding of fact explains why asking [class members], over and over, if they prefer

to live in the community is necessary to provide relief," and because "it is unclear how this

service would be useful to Class members, who are defined to include persons who affirmatively,

already 'prefer' to the live in the community.");[5] <u>id</u>. at 17 (arguing that Subpart Two should be

vacated because the Court, in deciding whether to enter Subpart Two as a remedy, "did not

---

[5]     The Court finds the District's argument on this point especially puzzling.  Just as
one could not say they prefer the food in an open pot to that in a closed pot, it logically follows
that nursing facility residents—who may be potential class members—cannot meaningfully
express a "preference" for home- and community-based care over remaining in the nursing
facility without at least some information about the different options available to them.

consider whether entering this order was narrowly tailored to relieve any harms shown."); id.
at 18-19 (arguing that Subpart Three should be vacated because it extends relief to a non-party—
that is, the public—and therefore "is not narrowly tailored to address any harms shown.").

      The Court finds that the District's objections to the Court's ordered relief simply
do not establish that the Court's ordered relief was "dead wrong" such that the extraordinary
measure of reconsideration under Rule 59(e) is warranted.  The District's arguments are largely
premised on the proposition that a broad, systemwide injunction that affords programmatic relief
beyond the specific harms suffered by plaintiffs is not narrowly tailored.  See Def. Mot. at 6
(citing Casey, 518 U.S. 343).  In Casey, the Supreme Court held that the district court had erred
in granting injunctive relief mandating systemwide changes to the Arizona Department of
Corrections' law libraries and legal assistance programs.  See id. at 346-49.  The district court
found actual injury on the part of only one plaintiff and the cause of that injury was one facility's
failure to provide legal services in light of that plaintiff's illiteracy.  See id. at 358.  But despite
this limited injury, the district court ordered systemwide changes to all facilities controlled by the
Arizona Department of Corrections.  See id. at 347.  In reviewing the scope of the district court's
injunction, the Supreme Court asked: "[w]as that inadequacy widespread enough to justify
systemwide relief?"  Id. at 359.  The Court concluded that the inadequacy was not widespread
enough as the district court had not made a systemwide finding that, in general, "in Arizona
prisons illiterate prisoners cannot obtain the minimal help necessary to file particular claims that
they wish to bring before the courts."  Casey, 518 U.S. at 360.

      "If this Court were to ask itself the question posed in Casey"—that is, whether
the alleged inadequacies in the District's system of long-term care services and supports for
physically-disabled individuals are widespread enough to justify systemwide relief—"the answer

is clearly yes." Doe 2 v. Mattis, 344 F. Supp. 3d 16, 26 (D.D.C. 2018) (citing Casey, 518 U.S. at 359). This is not a case where one nursing facility resident who wished to transition—and was capable of transitioning—to the community to receive home- and community-based care faced systemic barriers in doing so. See Brown III, 761 F. Supp. 3d at 71 (detailing systemic and individual barriers to successful transitions). Rather, after considering all admissible evidence from two bench trials, the Court found that the District's "system of long-term care services and supports for physically-disabled individuals . . . violated Olmstead's integration mandate." Id. at 84. And having identified sweeping systemic issues, the Court determined that a systemwide injunction was the appropriate form of relief. See Dayton Bd. of Ed. v. Brinkman, 433 U.S. 406, 420 (1977) ("only if there has been a systemwide impact may there be a systemwide remedy.").

The District may disagree with this determination, but disagreement is insufficient to support a Rule 59(e) motion. See Wannall v. Honeywell Int'l, Inc., 2013 WL 12321549, at *3. The Court therefore rejects the District's arguments that the scope of the Court's injunction evinces "clear error" warranting relief under Rule 59(e).

## C. The District's "Fatally Vague" Argument

Finally, the District argues that Subpart Two of the injunction is "fatally vague" under Rule 65(d) of the Federal Rules of Civil Procedure, and therefore commits "clear error" under Rule 59(e). See Def. Mot. at 19-20. Rule 65 mandates that every order granting an injunction must "describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d)(1)(C). "To prevent uncertainty and confusion on the part of the enjoined party, an injunction must provide 'explicit notice of precisely what conduct is outlawed.'" United States v. Philip Morris USA Inc., 566 F.3d 1095, 1137 (D.C. Cir. 2009) (quoting Schmidt v. Lessard, 414 U.S. 473, 476 (1974)); see also 11A CHARLES ALAN WRIGHT, ARTHUR R.

24

MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2955 (3d ed. 2022) ("The drafting standard established by Rule 65(d) is that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed."); United States v. Philip Morris USA Inc. ("Philip Morris"), 682 F. Supp. 3d 32, 45-46 (D.D.C. 2023), appeal dismissed, No. 23-5203, 2024 WL 2790389 (D.C. Cir. May 28, 2024).

Nevertheless, this Court has explained that "an injunction must be understood in light of the circumstances surrounding its entry."  Philip Morris, 682 F. Supp. 3d at 46; see also Milk Wagon Drivers Union of Chi., Loc. 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 298 (1941) ("[A]n injunction must be read in the context of its circumstances."); Nat'l Org. for Women v. Operation Rescue, 37 F.3d 646, 657 (D.C. Cir. 1994) (the "meaning" of an injunction's terms "is constrained by the context in which they are actually used in the injunction.").  An injunction therefore is "subject to reasonable interpretation" based on the fair meaning of its text and the harm it was tailored to address.  Alley v. U.S. Dep't of Health & Hum. Servs., 590 F.3d 1195, 1207 (11th Cir. 2009); see also Nat'l Org. for Women v. Operation Rescue, 37 F.3d at 657 (considering "the context of ongoing unlawful [conduct]" when interpreting "language in the injunction"); United States v. Philip Morris USA Inc., 778 F. Supp. 2d 8, 11 (D.D.C. 2011) (interpreting an order's language "in conjunction with the purpose to be accomplished" by the injunction); In re Baldwin-United Corp (Single Premium Deferred Annuities Ins. Litig.). 770 F.2d 328, 339 (2d Cir. 1985) (considering "the context of the entire injunction" and "the judge's decision upon issuing the injunction" when construing ambiguous provisions); United States v. Christie Indus., Inc., 465 F.2d 1002, 1007 (3d Cir. 1972) ("The language of an injunction must be read in the light of the circumstances surrounding its entry [and] the mischief that the injunction seeks to prevent.").

25

Subpart Two of the injunction requires the District to:

(2) ensure <u>sufficient capacity</u> of community-based long-term care services for plaintiffs under the EPD, MFP, and PCA programs, and <u>other long-term care service programs</u>, to serve plaintiffs in the most integrated setting appropriate to their needs, as measured by enrollment in these long-term care programs; and

<u>Brown III</u>, 761 F. Supp. 3d at 96 (emphasis added). The District argues that Subpart Two is "not specific or reasonably detailed," and therefore violates Rule 65(d)'s "fair notice" requirement. Def. Mot. at 20. For example, the District asks, "what does 'sufficient capacity' mean?" <u>Id.</u> And "[w]hat does it mean to measure 'sufficient capacity' by 'enrollment' in 'long-term care programs?'" <u>Id.</u> "Is the District supposed to freeze in place and maintain indefinitely all of its community-based long-term care services and programs?" <u>Id.</u> And "[w]hile the context of the litigation itself may sometimes be specific enough to provide notice to the parties of the acts the court seeks to restrain," the District asserts that that is not the case here because the Court has provided no "findings of fact or explanations of the legal violation giving rise to" its ordered relief. <u>Id.</u> at 20 (quoting <u>Gulf Oil Corp. v. Brock</u>, 778 F.2d 834, 843 (D.C. Cir. 1985)).

Plaintiffs urge the Court to reject "[d]efendant's attempt to claim uncertainty of what actions it must take under Subpart [Two]." Pls. Opp. at 34. Plaintiffs first note that the District "operates the long-term care services program[s] at issue,"—that is, the "EPD, MFP, and PCA programs"—and therefore "should not have difficulty understanding what those programs are and what capacity is needed to provide those services to the Plaintiff class." <u>Id.</u> at 32. Plaintiffs further argue that Subpart Two does not refer "to the capacity of every conceivable type of home and community-based service or program but instead identifies long-term care programs and services that must be provided to class members based on the demand for transition assistance to facilitate their transition to the community." <u>Id.</u> at 34. Lastly, plaintiffs

26

assert that the clause of Subpart Two referencing '"other long-term care service programs' can

be understood through the relief sought by Plaintiffs and the findings of the Court." Id.

Recall that "an injunction must be understood in light of the circumstances

surrounding its entry." Philip Morris, 682 F. Supp. 3d at 46.  In its findings of fact, the Court

found that the District "administers two principal Medicaid-funded programs that . . . provide

home- and community-based long-term care services" to individuals.  Brown III, 761 F. Supp. 3d

at 57.  The first program is called "the State Plan Personal Care Assistance ('State Plan PCA')

program," and the second program is called the "Elderly and Persons with Physical Disabilities

Waiver ('EPD Waiver') program." Id. at 57.  Each of these programs "provide[ ] personal-care

assistance in community-based settings, based on slightly different eligibility criteria." Id.

(quoting Brown I, 322 F.R.D. at 73).  The Court found that the District also "administers the

Money Follows the Person Demonstration Grant ('MFP') program, a federally-funded program

that [provides] states with financial incentives to move people from institutional settings back to

the community with Medicaid services and supports." Id. at 59.  The MFP program covers

"set-up" costs incurred by nursing facility residents as they transition to community-based living,

which can include leasing application fees, security deposit, essential furnishings, and household

set-up items including linens, kitchenware, and bathroom essentials.  Id. at 59.  Under the MFP

program, the federal government reimburses the District for 85% of the cost of direct services in

the one year after eligible D.C. residents transition from a nursing facility or hospital to home.

See id.  "Through these various Medicaid-funded programs, the District provides home- and

community-based services and supports to thousands of District residents every year." Id. at 61.

The Court further found that although there "is no limit to the number of District

residents who can receive State Plan PCA services," Brown III, 761 F. Supp. 3d at 57, "the EPD

Waiver program has a cap." Id. at 58.  As of 2021, "no more than 5,560 individuals may receive

services through the EPD Waiver program in a given year." Id.  In order to be eligible for the

EPD Waiver program, "an individual must be eligible to receive long-term care in a nursing

facility, meaning they must require a nursing facility level of care." Id.  And in order to be

eligible for the MFP grant program, "individuals with physical disabilities must meet the

EPD waiver program's level of care requirements (i.e., a nursing facility level of care), must

have resided in a nursing facility for at least 60 days, and must have had their nursing facility

services paid for by Medicaid for at least one day during the last 30 days." Id. at 59.

       In its findings of fact, the Court also found that in addition to the State Plan PCA

program, the EPD Waiver program, and the MFP grant program, "numerous District agencies

collaborate to provide affordable, safe housing to individuals with disabilities and to transition

nursing facility residents to community-based housing." Brown III, 761 F. Supp. 3d at 61.  "One

of those agencies, the D.C. Department of Aging and Community Living ('DACL') . . . provides

transition assistance to D.C. residents aged 60 and over, adults living with disabilities, and their

caregivers." Id.  The Court found that the "primary purpose of DACL is to provide supports and

services, whether directly or through grants and contracts, to individuals of those populations to

'ensure that [they] can live in the community for as long as they safely can.'" Id. at 61-62.

Within DACL sits the Aging and Disability Resource Center ("ADRC"), which is "the

designated 'Local Contact Agency' to which nursing facility residents who want information

about receiving home- and community-based services and supports are referred." Brown III, 761

F. Supp. 3d at 63.  And within the ADRC sits the Nursing Home Transition Team ("NHT"), a

team composed of eight DACL employees that "assist nursing facility residents with physical

disabilities to seek and obtain [home and community-based services] outside of nursing facilities

and to transition back into the community." <u>Brown III</u>, 761 F. Supp. 3d at 63.  Six of these employees are "transition care specialists," who are responsible for "assist[ing] individuals seeking to transition into the community by locating and securing adequate housing, procuring necessary identification, setting up their new home, and connecting them to community services and supports." <u>Id</u>.  The Court found that "[e]ach NHT transition care specialist on average is assigned to work with 12 to 15 nursing facility residents who have expressed an interest in transitioning back to the community and have requested DACL's assistance in doing so." <u>Id</u>.

In sum, the Court found that the District administers two principal long-term care service programs: the State Plan PCA program and the EPD Waiver program.  The District also administers the MFP grant program, which covers "set-up" costs incurred by nursing facility residents as they transition to the community.  The District also oversees the DACL, which houses a team of six transition care specialists that assist individuals seeking to transition to the community.  Each of these entities have limited capacity:  the EPD Waiver program is capped at a certain number of individuals every year, the MFP grant program has limited funding, and the DACL's team of transition care specialists each have a caseload of 12 to 15 nursing residents.

In its conclusions of law, the Court determined that "the District has not implemented a sufficiently robust and comprehensive system for identifying individuals who are institutionalized yet eligible to receive long-term care in the community." <u>Brown III</u>, 761 F. Supp. 3d at 88.  The Court further determined that the District "does not know at any given time the total number of physically-disabled nursing facility residents who are willing and able to transition to the community," and therefore "cannot maintain an accurate 'waiting list [for transition to the community] that move[s] at a reasonable pace.'" <u>Id</u>. (quoting <u>Brown II</u>, 928 F.3d at 1078); <u>see also</u> <u>Olmstead</u>, 527 U.S. at 605-06.  If the District does not know how many

residents are willing and able to transition and does not have a sufficient system for identifying

individuals who are eligible to receive long-term care in the community, how can it maintain an

accurate waiting list of residents who wish to transition to the community?  Accordingly,

Subpart One of the injunction directs the District to implement certain practices so that it can

better assess the "total number of physically-disabled facility residents who are willing and able

to transition to the community" at any given time.  Brown III, 761 F. Supp. 3d at 96.

But after the District assesses how many residents are willing and able to

transition to the community, how can it ensure that there is sufficient capacity in its long-term

care service programs, services, and supports such that the District can comply with Olmstead's

mandate to "maintain an accurate 'waiting list [for transition to the community] that move[s] at a

reasonable pace?'"  See Brown III, 761 F. Supp. 3d at 88; see Olmstead, 527 U.S. at 605-06.

Put differently, how can the Court ensure that the District continues to meet plaintiffs' demand

for community-based long-term care services as new individuals join the plaintiff class?[6]

To address this concern, the Court entered Subpart Two of the injunction to

ensure that the District maintains "sufficient capacity of community-based long-term care

services for plaintiffs under the EPD, MFP, and PCA programs and other long-term care service

programs to serve plaintiffs in the most integrated setting appropriate to their needs."

---

[6]     Defendants are correct that the Court, in considering whether to enter
Subpart Two as a remedy, found that the "evidence establishes that there currently is sufficient
capacity for nursing facility residents interested in transitioning to receive . . . long-term care
services in the community; and there is no indication that the District would be unable to provide
those services to class members if they were to transition to the community."  Def. Mot. at 17
(quoting Brown III, 761 F. Supp. 3d at 93) (emphasis added).  But that is the current state of
affairs:  Subpart Two of the injunction requires the District to ensure sufficient capacity of
community-based long-term care programs that are necessary for current and future class
members to access services in the most integrated setting appropriate to their needs.

Brown III, 761 F. Supp. 3d at 96.  "Sufficient capacity" is measured by "enrollment in these long-term care programs."  Id.  The District administers the EPD, MFP, and PCA, so the District is best-positioned to monitor enrollment numbers for those programs to ensure sufficient capacity for plaintiffs.[7]  The District also oversees the DACL, and is best-positioned to ensure that a sufficient number of transition care specialists are available to assist plaintiffs in seeking "the most integrated setting appropriate to their needs."  Brown III, 761 F. Supp. 3d at 96.

The District argues that the term "other long-term care service programs" within Subpart Two is vague and is not sufficiently connected to the Court's findings of fact.  See Def. Reply at 9.  In their opposition, plaintiffs suggest that the phrase "other long-term care service programs" describes "the transition assistance services provided by DACL, which includes the staffing of the MFP program and the Nursing Home Transition Team (NHT)."  Pls. Opp. at 29.  And at oral argument, plaintiffs explained that when they included the term "other long-term care service programs" in Subpart Two of their proposed injunction, they "recognized, having litigated with the district for quite [ ] a long time on other things, that services move around from agency to agency" within the DACL.  Transcript of Record, Brown v. D.C., Civil Action No. 10-2250 (April 15, 2025) [Dkt. No. 520] at 45:25-46:8.  In plaintiffs' view, the precise programs that "other long-term care service programs" intended to include "were the service providers that will be providing transition assistance" within the DACL.  Id. at 46:9-11.

The Court ordered the parties to submit a "joint proposed revision" of Subpart Two that "clarif[ied] the precise long-term care service programs that the District may use as

---

[7]     Subparts One and Two work in tandem to address opposite sides of the same problem.  Subpart One ensures that the District has an accurate count of how many nursing facility residents are willing and able to transition to the community (the "demand").  And Subpart Two ensures that the District maintains sufficient capacity of community-based long-term care programs for plaintiffs once the transition process begins (the "supply").

enrollment benchmarks to ensure sufficient capacity of community-based long-term care services programs."  See Mem. Op. and Order at 3.  The parties were unable to reach an agreement on a proposed revision to Subpart Two, and instead submitted separate revisions.  See JSR at 2-6.

Upon consideration of the parties' arguments, the Court finds that the term "other long-term care service programs" is sufficiently clear given the Court's findings of fact.  The Court's findings provide adequate context for the terms of Subpart Two:  the Court described the District's community-based, long-term care system at length, including the programs under the EPD waiver, the State Plan PCA services, the MFP grant program, and other long-term care programs like DACL's transition assistance program.  And as this Court explained in its findings of fact, "numerous District agencies collaborate to provide affordable, safe housing to individuals with disabilities and to transition nursing facility residents to community-based housing."  Brown III, 761 F. Supp. 3d at 61.  Though certain teams within the DACL currently supply significant transition assistance services for nursing facility residents, those services may shift around from agency to agency in the future.  The term "other long-term care service programs" therefore affords the District the flexibility to "ensure sufficient capacity of community-based long-term care services for plaintiffs under the EPD, MFP, and PCA programs," and any other District programs that provide community-based, long-term care services to plaintiff class members.  It also alleviates the District's concern regarding having to "freeze in place and maintain indefinitely all of its community-based long-term care services and programs," see Def. Mot at 20, because the term "other long-term care service programs" is broad enough to capture changes in organizational structure within the District's agencies.

In conclusion, because the Court examined the landscape of the District's community-based long-term care programs and services at length in its findings of fact, the

Court finds that the District has received "fair notice" of what is required of it under Subpart Two of the injunction "in light of the circumstances surrounding [the injunction's] entry." Philip Morris, 682 F. Supp. 3d at 46; see also FED. R. CIV. P. 65(d)(1)(C). The District therefore has failed to demonstrate that there is a need to correct "clear error" under Rule 59(e).

Accordingly, it is hereby

ORDERED that the District's Motion to Alter or Amend Judgment [Dkt. No. 508] is DENIED; and it is

FURTHER ORDERED that the stay imposed by the Court in its Memorandum Opinion and Order of April 16, 2025 [Dkt. No. 519] is LIFTED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 8|15|25

33