8UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IVY BROWN**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**DISTRICT OF COLUMBIA**,<br><br>Defendant. | No. 1:10-cv-02250-PLF |

### DEFENDANT'S MOTION FOR STAY OF FEES LITIGATION

Defendant District of Columbia (the District) asks the Court to stay fees litigation pending the District's appeal of the Court's judgment. Pursuant to Local Civil Rule 7(m), counsel conferred with Plaintiffs' counsel, and Plaintiffs do not consent to the relief sought. Pursuant to LCvR 7(a), this Motion includes all supporting points of law and authority. A proposed order follows, as required by LCvR 7(c).

### BACKGROUND

The District assumes the Court's familiarity with the case. Briefly, relevantly, the Court held trial in late 2021 and entered judgment and a permanent injunction against the District on December 31, 2024. *See* Opinion, Findings of Fact, and Conclusions of Law (Judgment), [505]. On January 9, 2025, Plaintiffs moved for an extension of time to file their petition for fees and costs and for a scheduling order regarding their motion. *See* [506]. On January 23, 2025, the District opposed the motion in part, arguing that fees litigation should be stayed in light of the District's pending motion to alter or amend the judgment, and "at least until" the Parties' deadline to appeal had passed. *See* [507]. In response, the Court set a deadline of May 30, 2025 for Plaintiffs to file their fee petition and June 30, 2025, for the Parties to report to the Court

whether they wished to engage in mediation (and if so, how). Order of January 30, 2025, [511]. The District filed its motion to alter or amend judgment on January 28, 2025. *See* [508].

On June 30, 2025, the Parties filed a joint status report in which the District requested an additional 60 days to determine its position on mediation, and Plaintiffs requested a briefing schedule. *See* [528]. The District explained that it required time to review Plaintiffs' 20,000 line items (received just a month before) and that its position on fees would likely depend in part on the results of its still pending motion to alter or amend. The Court directed the Parties to file an additional status report by August 19, 2025. *See* Order of August 5, 2025, [529].

On August 15, 2025, the Court denied the District's motion to alter or amend judgment, upon finding the District's arguments failed to clear the "high hurdle" of Federal Rule of Civil Procedure 59. *See* Order of August 15, 2025, [531] at 10–11. On August 19, 2025, the Parties filed another joint status report concerning fees. Plaintiffs again requested that the District be required to file its opposition to their fee petition in short order. *See* [532] at 2. The District requested 45 days to attempt negotiations with Plaintiffs, and that, if the Court were to set a date for its opposition, the date be set in January 2026, to permit the Parties time to possibly narrow the dispute as well as, failing that, time to prepare the opposition. *Id.* at 4. On September 3, 2025, the Court ordered the District to show cause as to why it should not refer the matter of fees to mediation. Order of September 3, 2025, [533]. The District responded on September 12, 2025, stating in part that it would appeal the Court's judgment and "does not believe that referral to mediation on the issues of attorney's fees and costs would be an efficient use of the Parties' resources at this time." *See* [534]. The District filed a notice of appeal later that day. *See* [535].

On September 17, 2025, Plaintiffs filed a "Motion for a Briefing Schedule on Plaintiffs' Motion for Attorneys' Fees and Expenses," [537]. The District opposed the motion, noting that

it would shortly file a motion to stay fees litigation pending the outcome of its appeal. *See* [538]. On October 3, 2025, the Court ordered the District to file its motion to stay on or before October 20, 2025. *See* Minute Order of October 3, 2025.

## STANDARD OF REVIEW

A court has "inherent" power to stay a case, and to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This includes discretion to decide when fees litigation should begin and end. *Id.*; *Forras v. Rauf*, 74 F. Supp. 3d 1, 2 (D.D.C. 2014). Local Rule 54.2 establishes a default procedure for attempted settlement of fees awards, interim payment upon partial agreement, and final litigation, and it expressly requires the Court to consider the effect of any appeal, and to determine whether, "in the interest of justice, the fees issues, in whole or in part, should be considered or held in abeyance pending the outcome of the appeal." In determining the interest of justice, the Court should consider the "economy of time and effort for itself, for counsel, and for litigants," *Landis*, 299 U.S. at 254–55; the potential effect of any appeal on the fee issue, including likelihood of success, *Forras*, 74 F. Supp. 3d at 3; and the balance of potential harms to both sides if fees litigation proceeds or pauses, *id*.

## ARGUMENT

I.   **The Outcome on Appeal Is Likely to Affect the Fee Award (If Any).**

It is virtually certain that the District's appeal will affect the Plaintiffs' potential fee award, regardless of the outcome of the appeal. *Cf. IMAPizza, LLC v. At Pizza Ltd.*, No. 17-cv-02327 (TJK), 2019 WL 11318342, at *1–2 (D.D.C. July 15, 2019) (reasoning that a defense victory on appeal moots fee dispute and a loss on appeal "[a]t the very least" requires "additional proceedings . . . to factor in the costs of litigating the appeal"). If the District loses its appeal entirely, Plaintiffs' award will presumably only go up; but, given Plaintiffs' existing fee demand,

3

the amount and reasonableness of time expended is also likely to be disputed. *Id.* If the District wins on an issue that overturns its liability, Plaintiffs may be entitled to *no* fees, or their entitlement would again be subject to significant uncertainty on remand for further consideration of liability. *Id.*

Even if the District wins only on an issue that goes to the scope of the relief afforded, the scale and shape of that ultimate relief *must* be taken into account when determining Plaintiffs' fee award (by the Parties in mediation, and/or by the Court in litigation). *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 114–16 (1992) (describing courts' "central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case" as including a comparison of the fee to relief obtained and reiterating that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained") (additional quotation marks omitted); *Washington All. of Tech. Workers v. DHS*, 857 F.3d 907, 912 (D.C. Cir. 2017) (affirming reduction of fees where relief afforded was significantly less than full scope of request); *Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1572 (D.C. Cir. 1993) ("'[A] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.'") (quoting *Hensely v. Eckerhart*, 461 U.S. 424, 440 (1983) (citation modified)).

Here, so far, Plaintiffs are the prevailing party and entitled to some amount of fees, but Plaintiffs did not obtain all of their requested accommodations, and the District has already described reasons why it believes the remaining relief entered is overbroad. As noted above, the Court has already ruled [531] on the District's motion to alter or amend its judgment [508], so it is established that the Court has not been persuaded by these arguments. Even so, the District still intends to raise these arguments again on appeal and believes they are likely to succeed in

4

that posture because they will be subject to a different standard of review.  Following a bench trial, the Circuit will "review the district court's factual findings for clear error and its legal conclusions *de novo*."  *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010); *see* Fed. R. Civ. P. 52(a)(6).  A factual finding is clearly erroneous, "even where there is record evidence to support it, if 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 148 (D.C. Cir. 2015) (quoting *Awad v. Obama*, 608 F.3d 1, 7 (D.C. Cir. 2010)).  The Circuit will review the district court's entry of a permanent injunction for abuse of discretion.  *United States v. Regenerative Scis., LLC*, 741 F.3d 1314, 1318 (D.C. Cir. 2014).

This standard is less demanding than the "very exacting" standard the Court applied to the District's Rule 59(e) motion.  [531] at 8.  To prevail on the Rule 59(e) motion, the Court held that the District had to show not just a legal error, but a "clear error" of law under "extraordinary circumstances."  [531] at 8–9.  On appeal, legal errors will be reviewed *de novo*, a much lower hurdle.  *See Messina v. Krakower*, 439 F.3d 755, 758–62 (D.C. Cir. 2006) (concluding that it was not an abuse of discretion to deny Rule 59(e) motion but then analyzing *de novo* whether summary judgment was properly entered).

To be clear, the District does believe that an overbroad injunction is legally erroneous.  *See* [508]; *Koon v. United States*, 518 U.S. 81, 100 (1996) (explaining that a "district court by definition abuses its discretion when it makes an error of law"); *Jacobs v. Schiffer*, 204 F.3d 259, 264 (D.C. Cir. 2000) ("The district court's failure to make the appropriate inquiry . . . was an error of law, which, by definition, was an abuse of discretion.").  In denying the District's motion to alter or amend, the Court summarized the point as follows:  "The District's arguments are largely premised on the proposition that a broad, systemwide injunction that affords

5

programmatic relief beyond the specific harms suffered by plaintiffs is not narrowly tailored." [531]. That is an accurate description of the argument and is, the District believes, a long-standing legal principle that happened to be reiterated by the Supreme Court while the District's motion to alter or amend was pending. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (granting government's "application to partially stay" preliminary injunctions "to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue"); *id*. at 843–44 (discussing history of "the party-specific principles that permeate our understanding of equity"). The District believes it is likely to succeed in arguments on appeal that the relief afforded is overbroad. And if it does, as explained just above, this change will have to be taken into account to determine Plaintiffs' "reasonable" fees.

The District will also argue on appeal that the Court erred on the merits. Because the Court's opinion is the first in this Circuit to consider in any way whether the District's *Olmstead* Plan is comprehensive and adequately working, as well as the fundamental alteration defense, the District is still refining its arguments on the merits. Regardless, for all the reasons described above, the pending appeal is virtually certain to affect the Plaintiffs' fees.

II.     **Economy of Time and Effort Favors A Stay of Fees Litigation.**

As indicated in status reports filed thus far, the District believes Plaintiffs' fee request is unreasonable and that, if an award is ultimately justified, it should be significantly less than the more than $22 million Plaintiffs currently seek. *See* [528] at 2–3 (citing, for example, a request of nearly $700,000 for the preparation of a *single* document and more than $100,000 to prepare two motions to strike as part of the same briefing, and which made no change in the case). The District would prefer to attempt to settle the question without litigation, but it cannot settle the matter with an appeal pending that, in the District's view, creates so much uncertainty around whether fees will be awarded and if so what would be the appropriate amount. *See supra*; Def.'s

6

Response To Show Cause Order Concerning Mediation, [534] at 2. Plaintiffs, meanwhile, seem intent on litigating their fees. *Cf.* [525] (requesting briefing schedule); [528] at 2 (same); [532] at 2 (same); [537] (same).[1]

Fees litigation in this case is likely to be complex. To start, as discussed above, Plaintiffs did not obtain each accommodation they requested but their fee request fails to discount or address this in any way. *See* generally [525]. Certainly, a significant amount of the time Plaintiffs' counsel spent litigating this case was dedicated to pursuit of an "accommodation" that would force the District to "transition" a set number of Plaintiffs to the community each year, an accommodation they did not obtain. *See* [505] at 98–100. Again, because Plaintiffs have, so far, obtained some relief, they are prevailing—but the "reasonableness" of their fee request must be measured against the scope of their success *and* their failure. *See* Section I, *supra*.

Plaintiffs' litigation choices along the way are also properly subject to scrutiny. The Court "must disallow claims for excessive, redundant, or otherwise unnecessary charges" because "there is a point at which" even "thorough and diligent litigation efforts become overkill." *Goos*, 997 F.2d at 1572 (quoting *Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991)). Indeed, in the *absence* of such scrutiny, fee-shifting statutes appear to create a strong incentive toward "overkill" litigation because there will never be a point when actual clients are scrutinizing legal bills, so if the courts do not do so, no one will. Such incentive also appears to have taken hold here. For example, although *the District* largely bore the burden of proof in the second trial of Plaintiffs' case, the District proffered only 157 exhibits at pretrial, while Plaintiffs proffered *nearly five times* that number, with 763. *See* Final Pretrial

---

[1] One of the Plaintiffs' firms specializes in fee-shifting-statute litigation. *See* Terris, Pravlik & Millian, LLP, https://www.tpmlaw.com/public-interest-attorneys-fee-litigation.

Order, [418] at 2, 4.  Similarly, Plaintiffs' proposed findings of fact and conclusions of law was *three times* longer than the District's, at 232 pages against the District's 72.  (And, again, Plaintiffs seek more in fees for that one document than the entire, successful appeal of the first trial judgment for the District and more than twice as much for this case overall as fees sought in recent, comparable litigation.  [528] at 2–3.)

Where, as here, the outcome of an appeal promises to impact any potential fee award, and the litigation of fees promises to be time-consuming, courts often stay fees litigation in order to preserve economy of time and effort.  *E.g.*, *Forras*, 74 F. Supp. 3d at 3; *accord Cook Inlet Tribal Council v. Mandregan*, No. 14-cv-01835 (EGS), 2019 WL 3816573, at *14 (D.D.C. Aug. 14, 2019); *Hudson v. Am. Fed'n of Gov't Emps.*, No. 17-cv-02094 (JEB), 2021 WL 10382827, at *1 (D.D.C. Dec. 13, 2021) (emphasizing "the complexity and enormity of such request" as a factor) (citing also *Kucera v. Jefferson Cty. Bd. of Sch. Comm'rs*, No. 03-cv-00593, 2013 WL 5701674, at *1–2 (E.D. Tenn. Oct. 18, 2013) (finding that "the substantial amount requested, coupled with the fact that this litigation has been pending for close to a decade, demonstrate that the decision on fees and costs and the necessary review of materials will be substantial" and a contrary decision on appeal makes that all "for naught")); *cf. IMAPizza, LLC*, 2019 WL 11318342, at *1–2 (ordering parties to show cause why litigation should not be stayed after outlining factors favoring stay); *Animal Welfare Inst. v. Feld Ent., Inc.*, 944 F. Supp. 2d 1, 3–4 (D.D.C. 2013) (noting fees litigation was held in abeyance pending appeal).  This Court should do the same.

### III.   The Public Faces Irreparable Harm If Funds Are Unnecessarily Diverted or Set Aside.

Finally, the Court is also to consider the balance of harms to Plaintiffs and the District.  *Forras*, 74 F. Supp. 3d at 3.

8

On the Plaintiffs' part, Plaintiffs' counsel would understandably like to be paid sooner rather than later. *Cf.* [506] at 5–6. They have argued that fees litigation should proceed in tandem with any appeal because it "tends to be time-consuming" and, this way, the fee award might be settled or decided before the appeal and then paid sometime soon after appeal. *Id*. This argument, however, ignores the possibility that the District's appeal as to liability could negate Plaintiffs' fee award entirely, and the possibility that any significant changes just to the relief afforded could easily necessitate reconsideration of any fee determination made before the decision on appeal. *See* Section I, *supra*. This argument also ignores the possibility that, once there is a decision on appeal, the Parties may be able to settle the matter of fees. In any event, Plaintiffs have also made clear that they do not expect to receive payment until the appeal is resolved. *Cf.* [506] at 5–6. They have suggested that other plaintiffs' attorneys might face harm from long period of non-payment, or be disincentivized from participating in the marketplace, *id*. (suggesting such harms in parenthetical quotations from cases), but they have never articulated or supported such concerns on their own behalf.[2]

The District, in contrast, will be harmed by potentially needless fee litigation and the also potentially needless requirement to set aside, while appeal is pending, more than Plaintiffs may actually be owed. The District would likely, for example, engage experts to opine on the reasonableness of Plaintiffs' fee demand—funds the District would never recover and which may be wasted if the Circuit overturns this Court's judgment on appeal. And the District has had to grapple with extraordinary budget challenges this year, including the unexpected and uncontrollable removal of more than one billion dollars by Congress from the District's active

---

[2]  Indeed, Plaintiffs' firm Terris, Pravlik & Millian, LLP alone has collected approximately $11 million in fees from their work on two *other* cases against the District in just the last decade and has others ongoing.

9

operating budget this year. Ex. A, Decl. of Jennifer Reed (Reed Decl.) ¶ 7–8, 15–16. Additional significant costs will force the District to make very difficult choices in its budget, and cuts. *Id.* ¶¶ 3, 4, 10, 14–17. If, as Plaintiffs wish, there were also a fee order pending appeal, *cf.* [506] at 5–6, the District would be forced to find and freeze funds for payment of that judgment, even though some or all of those funds may never be ultimately owed. Those funds would necessarily be unavailable to provide other services that District residents' politically elected representatives have determined necessary or desirable.

This is simply how state budgets work. As other courts have noted, municipal "budgets are zero-sum games." *Am. Ass'n of People with Disabilities v. Hood*, No. 01-cv-01275, 2004 WL 1041536, at *2 (M.D. Fla. Apr. 16, 2004).[3] "With only a finite amount to be spent on all" municipal "services, expending monies toward an effort that is subsequently determined to be unnecessary deprives the public of other government services, perhaps in areas of crucial importance." *Id.* (granting stay of injunction pending appeal); *see also*, *e.g.*, *Rosen v. Goetz*, 410 F.3d 919, 933, 921 (6th Cir. 2005) (acknowledging "the zero-sum fiscal realities of administering a state budget"); *Timpson v. Haley*, No. 16-cv-01174, 2018 WL 1406745, at *4 (D.S.C. Mar. 21, 2018) ("The Court also understands that the State has limited resources, which frequently make governmental decision-making extraordinarily difficult as the budget process is often a zero sum process.").

At least one court in this district has found that a stay of fees pending appeal is warranted when "an improper award of attorney fees would impose irreparable harm on" the appealing

---

[3]   Merriam-Webster defines the term "zero-sum game" to mean a "situation in which one person or group can win something only by causing another person or group to lose it" and its example sentence is, "Dividing up the budget is a zero-sum game." Merriam-Webster's Online Dictionary, available at http://www.merriam-webster.com/dictionary/zero-sum game (last accessed Oct. 20, 2025).

10

party if overturned on appeal (even where Plaintiffs had "not shown a high likelihood of success on the merits"). *Forras*, 74 F. Supp. 3d at 3. This Court should do the same.

## CONCLUSION

For the foregoing reasons, the Court should stay litigation of attorney's fees pending the D.C. Circuit's decision on the District's appeal of the Court's judgment.

Date: October 20, 2025.                    Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Mateya B. Kelley*
MATEYA B. KELLEY [888219451]
CONRAD Z. RISHER [1044678]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 442-5868
Email: mateya.kelley@dc.gov

*Counsel for the District of Columbia*