**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IVY BROWN, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action No. 10-2250 (PLF) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION**
**FOR STAY OF FEES LITIGATION**

  Defendant's Motion for Stay of Fees Litigation (ECF 540) ("Def. Mot.") effectively asks the Court to reconsider issues that were raised and resolved at the beginning of this year. On January 9, 2025, Plaintiffs filed their Motion for an Extension of Time and a Scheduling Order Regarding Their Motion for Attorneys' Fees and Expenses (ECF 506), in which they sought a court-ordered schedule for the fees litigation. In opposing that motion, the District raised a number of arguments, all of which are repeated in some form in its current motion to stay.

  First, the District argued that "the litigation of the District's motion to alter the judgment and any possible appeal will certainly affect the outcome of the fees litigation." Defendant's Partial Opposition to Plaintiffs' Motion for an Extension of Time and a Scheduling Order Regarding Their Motion for Attorneys' Fees and Expenses (ECF 507) ("Def. Partial Opp."), p. 3. The District now similarly argues that the outcome of the appeal, which it explains will address the same issues as its Rule 59(e) motion, is virtually certain to affect the fee award. Def. Mot. 3-6.

  Second, the District argued that "to invest time in fees litigation, before it is even settled whether Plaintiffs are finally entitled to fees, potentially wastes significant resources for the Parties

and Court, and would work more hardship than it may save." Def. Partial Opp. 3. The District echoes this argument in its current motion. Def. Mot. 6-8.

Third, the District argued that proceeding with fees briefing "imposes an irreparable harm on the city and taxpayers" because "[s]uch litigation will require extensive legal work ... and there is no way the District can recoup costs spent on that effort." Def. Partial Opp. 3. Here, the District again argues that it will be "harmed by potentially needless fee litigation and the also potentially needless requirement to set aside, while appeal is pending, more than Plaintiffs may be owed." Def. Mot. 9.

In January, the District requested "that the Court stay fees litigation at least until the appeal deadline has passed." Def. Partial Opp. 7. The Court rejected this request, ordering Plaintiffs to file their application for fees and expenses by May 30, 2025, and for the parties to meet and confer about whether they could proceed to mediation about the application. January 30, 2025 Order (ECF 511), p. 2. For the reasons discussed below, the Court should likewise reject the relief requested in Defendant's Motion and enter an order setting dates to complete the briefing on Plaintiffs' application, as requested in Plaintiffs' Motion for a Briefing Schedule on Plaintiffs' Motion for Attorneys' Fees and Expenses (ECF 537) ("Pl. Mot. for a Fees Briefing Schedule").

## ARGUMENT

## I

### THE DISTRICT'S APPEAL IS UNLIKELY TO AFFECT THE PENDING FEES BRIEFING

The District argues that fees briefing should be stayed because "[i]t is virtually certain that the District's appeal will affect the Plaintiffs' potential fee award, regardless of the outcome of the appeal." Def. Mot. 3. There is no such certainty.

First, the District argues that, even if it loses its appeal entirely, Plaintiffs' fee award would "presumably only go up." Def. Mot. 3. However, Plaintiffs' pending fee application requests an award related to work on this case only through February 28, 2025. Plaintiffs' Motion for Attorneys' Fees and Expenses (ECF 525), p. 1. Any fees sought for work done after that date, including for the District's current appeal, would be requested through a supplemental application and thus have no bearing on Plaintiffs' current application.

Second, the District states that if it wins on an issue that overturns liability, Plaintiffs may be entitled to no fees. Def. Mot. 4. The District further states that it will argue on appeal that the Court erred on the merits, but that it is "still refining its argument" because this Court's December 2024 opinion is the first "to consider in any way whether the District's *Olmstead* Plan is comprehensive and adequately working, as well as the fundamental alteration defense." Def. Mot. 6. This is not accurate. As the Court of Appeals noted in its 2019 decision, this Court "consistently held throughout this litigation that the District *does not* have an adequate '*Olmstead* Plan' in place." *Brown v. D.C.*, 928. F.3d 1070, 1084 (D.C. Cir. 2019) (emphasis in original). The Court of Appeals provided the following examples:

- Following the 2016 trial, the Court of Appeals noted that the Court had rejected the District's 2011 motion for summary judgment because the District had not shown that it had an *Olmstead* Plan that demonstrated a measurable commitment to deinstitutionalization and was therefore not effectively working. *Brown v. D.C.*, 322 F.R.D. 51 (D.D.C. 2017).

- The Court of Appeals also noted that the Court held that, "'[g]iven the fact that, at the time, there were at least 526 physically disabled individuals living in nursing facilities who expressed an interest in living in the community, the undisputed facts demonstrated that the District's *Olmstead* Plan had not been effective.'" *Brown*, 928 F.3d at 1084 (quoting *Brown v. D.C.*, 322 F.R.D. 51, 58 (D.D.C. 2017)).

- The Court of Appeals also noted that "'[i]n 2014, the district court held that the District had yet to demonstrate that its *Olmstead* Plan was an effectively working plan for placing qualified persons with disabilities in less restrictive settings, with a waiting list that moved at a reasonable face not controlled by the State's endeavors

> to keep its institutions fully populated.'" *Brown*, 928 F.3d at 1084 (cleaned up) (quoting *Thorpe v. D.C.*, 303 F.R.D. 120, 138 (2014)).

- Further, in its 2017 decision, this Court held that "'[t]he District has little to be proud regarding its historic inability to comply with *Olmstead's* integration mandate." *Brown*, 928 F.3d at 1084 (quoting *Brown*, 322 F.R.D. at 96).

- Then, following the 2021 trial, this Court issued an over 100-page opinion determine that the District does not have a comprehensive and adequately working *Olmstead* Plan and that the District did not satisfy the fundamental alteration defense. *Brown v. DC*, 761 F. Supp. 3d 34 (D.D.C. 2024).

Whatever refinements are made to its arguments, the District is not likely to succeed in overturning the Court's decision on the merits.

Finally, the District argues that the scope of relief afforded to Plaintiffs may be impacted by the appeal because it will challenge the permanent injunction as overbroad. Def. Mot. 4-6. The District notes that, on appeal, its arguments regarding the scope of the injunctive relief will be subject to a different standard than under their challenge to the injunction under Rule 59(e). Def. Mot. 5-6.[1]

However, in denying the District's Rule 59(e) motion, the Court's analysis was more nuanced than simply concluding that the District did not meet the "extraordinary measure of reconsideration under Rule 59(e)." August 15, 2025 Opinion and Order (ECF 531), p. 23 ("August

---

[1] Contrary to the District's argument, Plaintiffs do not agree that the evaluation of whether an injunction is overbroad is conducted under a *de novo* standard of review for legal error. Def. Mot. 5. While any legal conclusions underlying a preliminary injunction are reviewed for legal error, the decision to grant or deny permanent injunctive relief is evaluated for abuse of discretion. *See, e.g.*, *Anatol Zukerman and Charles Krause Reporting, LLC v. United States Postal Service*, 64 F.4th 1354, 1361 (D.C. Cir. 2023) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *U.S. v. Philip Morris USA Inc.*, 566 F.3d 1095, 1110 (D.C. Cir. 2009) ("To the extent it is not based on legal error, we review the district court's decision to issue an injunction for abuse of discretion." (citation omitted)).

15 Order"). Instead, the Court explained that the injunctive relief that it ordered was not overbroad but was tailored to the widespread inadequacies presented at trial (August 15 Order, pp. 23-24):

> "If this Court were to ask itself the question posed in [*Lewis v. Casey*, 518 U.S. 343 (1996)]"—that is, whether the alleged inadequacies in the District's system of long-term care services and supports for physically disabled individuals are widespread enough to justify systemwide relief—"the answer is clearly yes." *Doe 2 v. Mattis*, 344 F. Supp. 3d 16, 26 (D.D.C. 2018) (citing *Casey*, 518 U.S. at 359). This is not a case where one nursing facility resident who wished to transition—and was capable of transitioning—to the community to receive home- and community-based care faced systemic barriers in doing so. *See Brown III*, 761 F. Supp. 3d [34] at 71 [(D.D.C. 2024)] (detailing systemic and individual barriers to successful transitions). Rather, after considering all admissible evidence from two bench trials, the Court found that the District's "system of long-term care services and supports for physically-disabled individuals ... violated *Olmstead's* integration mandate." *Id*. at 84. And having identified sweeping systemic issues, the Court determined that a systemwide injunction was the appropriate form of relief. *See Dayton Bd. of Ed. V. Brinkman*, 433 U.S. 406, 410 (1977) ("only if there has been a systemwide impact may there be a systemwide remedy.").

While the District may believe that it will succeed in arguing that the injunctive relief entered by the court is overbroad (Def. Mot. 6), the Court's careful and detailed decision following the trial and its August 15 Order suggest that it is speculative at best that the District will be able to convince the Court of Appeals that this Court committed legal error in entering the injunction. This is all the more true since this case has twice before been to the Court of Appeals, and this Court's December 2024 decision hewed closely to the remand instructions in the Court of Appeals' 2019 decision.

## II

### PLAINTIFFS HAVE SOUGHT TO MEDIATE THEIR FEES REQUEST

Before presenting its arguments as to why economy of time and effort favor staying fees litigation, the District first asserts that Plaintiffs are "intent on litigating their fees" while the District would prefer to settle the issue. Def. Mot. 6-7. As this Court is well aware, Plaintiffs repeatedly have made plain their willingness to mediate while the District has engaged in repeated delays scuttling the opportunity for mediation. In their January 9, 2025, Motion for an Extension

of Time and a Scheduling Order Regarding Their Motion for Attorneys' Fees and Expenses (ECF 506), p. 8, Plaintiffs specifically sought an order from the Court that would require a 30-day period, plus longer if the parties so agreed, for the parties to attempt to reach an agreement on fees and expenses after Plaintiffs provided the District with their request. The Court granted that motion in part, requiring that, after Plaintiffs' fee application was filed, the parties had 30 days to discuss whether to mediate the fees and expenses. January 30, 2025 Order (ECF 506), p. 2.

In the June 30, 2025 Joint Status Report Regarding Mediation (ECF 528), p. 1, Plaintiffs stated that they were willing to enter mediation before the Circuit Executive's Mediation Program immediately. It was the District that requested an additional two months to decide whether it was willing to mediate at all. *Id.* at 3. In light of the District's position, Plaintiffs requested a briefing schedule. *Id.* at 2. The Court ordered that another status report be submitted by August 19, 2025, and that "[n]o further extensions will be granted." August 5, 2025 Order (ECF 529), p. 2.

In the Second Joint Status Report Regarding Mediation (ECF 532), p. 1, Plaintiffs again reiterated that they were willing to promptly proceed with mediation before the Circuit Executive's Mediation Program. Plaintiffs objected to the District's request for another 45-day period during which to consider whether to mediate and instead asked the Court for a briefing schedule. *Id.* 2. In response, the Court issued an Order to Show Cause (ECF 533). In that order, the Court agreed with Plaintiffs "that the Circuit Executive's Mediation Program is the best option for the mediation of plaintiffs' attorneys' fees" and ordered the District to show cause why the issue should not be immediately referred to that program. *Id.* at 4. In response, the District stated that, in fact, it had no actual authority to settle the matter "for many reasons," including the time taken to review Plaintiffs' fees records and the outcome of the litigation pending the District's appeal. Defendant

District of Columbia's Response to Show Cause Order Concerning Mediation (ECF 534), pp. 1-2.

The fact that mediation has not proceeded is entirely the result of Defendant's recalcitrance.[2]

## III

**ECONOMY OF TIME AND EFFORT FAVOR PROCEEDING WITH BRIEFING ON FEES UNDER THE CIRCUMSTANCES OF THIS CASE**

In terms of the substantive arguments that the District presents as to why economy of time and effort favor a stay, it argues that the fees litigation is "likely to be complex" and that the District will challenge Plaintiffs' entitlement to their requested fees. Def. Mot. 7.[3] The District continues, stating that when "the outcome of an appeal promises to impact any potential fee award, and the litigation of fees promises to be time-consuming, courts often stay fees litigation in order to preserve economy of time and effort." Def. Mot. 8. However, the circumstances in the cases cited by the District (*id.*) are not analogous to those presented here, where, as outlined below, a stay of

---

[2] The District supports its statement that Plaintiffs are "intent on litigating their fees" (Def. Mot. 7) by noting that one of Plaintiffs' counsel, Terris, Pravlik & Millian, LLP (TPM), "specializes in fee-shifting-statute-litigation" (Def Mot. 7 n.1). As explained on the webpage linked in the District's brief, fee-shifting laws exist to help ensure "there are lawyers who help individuals or groups effectuate their rights and pursue important public policies, without charge, in the hope that the case is successful and their fees are paid by the violator/defendant." Public Interest Attorneys' Fees Litigation, https://www.tpmlaw.com/public-interest-attorneys-fee-litigation (archived here on October 27, 2025). TPM has gained a specialty in litigating fees under these statutes because, if the defendant is unwilling to engage in meaningful mediation or settlement discussions on fees, it is the only way that TPM is compensated for its work, not because it is "intent on litigating" its fees. Consistent with Congress's intent in passing fee shifting statutes, the lawyers representing the nursing facility residents at issue here have not charged their clients and have assumed the risk of litigating these cases in the public interest for the extensive lifetime of this litigation.

[3] The District objects to the length of some of Plaintiffs' documents and the amount of time spent preparing documents and preparing for the 2021 trial. Def. Mot. 6-8. Plaintiffs obviously disagree with the District's contentions, but such disputes are best left for the actual briefing on fees.

fees briefing was previously rejected and briefing on fees has already begun so that both Plaintiffs and Defendant have already expended extensive time and resources.

In January, the District requested a stay on fees briefing in part based on its belief about the purported "errors of law in the judgment … in the Court's opinion" and the fact that it was considering an appeal and would be moving to alter or amend the judgment. Def. Partial Opp. (ECF 507), p. 2. *See also* p. 1, above. In spite of both this potential appeal and the promised motion to alter or amend the judgment, the Court ordered Plaintiffs to file their motion for attorneys' fees (and for the parties to consider mediation). January 30, 2025 Order (ECF 511). Plaintiffs did so.

Plaintiffs' fees motion was a substantial undertaking. *See* Plaintiffs' Motion for Attorneys' Fees and Expenses (ECF 525). Two-and-half months ago, the District asserted that it "has undertaken and is near to completing a line-by-line analysis of the more than 20,000 line items for which Plaintiffs seek attorney's fees and costs." Second Joint Status Report Regarding Mediation (ECF 532), p. 3. Both parties have therefore invested substantial resources into the litigation of Plaintiffs' attorneys' fees motion, after the District made, and the Court rejected, many of the same arguments for a stay that it is now making here. It would accordingly be more efficient to proceed with briefing rather than add significant delay. *See Mazloum v. District of Columbia*, No. 06-0002, 2008 WL 4876156, at *1 (D.D.C. 2008) ("'Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind.'" (quoting 1993 Advisory Committee's Notes to Fed. R. Civ. P. 54)).

In Plaintiffs' Motion for a Fees Briefing Schedule (ECF 537), pp. 5-6, Plaintiffs noted that, in a similarly long-litigated and complex federal case, *DL v. D.C.*, Civ. No. 05-1437 (D.D.C.), fees

briefing proceeded pending an appeal on the merits.[4] The District argued that Plaintiffs' reliance on *DL* was misplaced because, there, the District did not file a motion to stay, but only suggested a stay in response to a motion for a briefing schedule that was filed before the appeal was taken. Defendant's Opposition to Plaintiffs' Motion for a Briefing Schedule on Plaintiffs' Motion for Attorneys' Fees and Expenses (ECF 538), 3-4. However, as noted in Plaintiffs' Motion for a Fees Briefing Schedule (ECF 537) (p. 6), the *DL* appeal was filed before the parties appeared for a status conference and made arguments related to the stay. *See also* Civ. No. 05-1437, ECF 536 ("A status conference was held on June 30, 2016 to discuss the process of briefing the attorneys' fees and expenses (taxable and non-taxable) at issue in this case. Having considered the parties' filings …, arguments of counsel at the status conference, and the entire record of this case, it is hereby ORDERED, that the following schedule shall apply for briefing of plaintiffs' application for attorneys' fees and related expenses[.]"). As is the case here, that was the second appeal on the merits in *DL.* The most important difference between the cases is that, here, at the time that the District is asking to stay briefing, the parties have already put many months of work into the briefing, and the Court previously denied the District's request to stay. In *DL*, fees briefing had not yet begun.

---

[4] TPM was lead counsel in the *DL* litigation. That case was a class action filed in 2005 brought on behalf of three-to-five year-old children against the District for its persistent failure to provide, and failure to timely provide, special education and related services under the Individuals with Disabilities Education Act, the Rehabilitation Act, and District law. *DL*, which did not reach a final decision on the merits until the Court of Appeals issued its decision upholding the district court's injunction in 2017, is one of the cases obliquely referred to by the District for which TPM has received payment in the last decade. Def. Mot. 9, n.2.

## IV

**THE DISTRICT HAS NOT ESTABLISHED THAT IT WILL SUFFER IRREPARABLE HARM IF FEES BRIEFING PROCEEDS**

The District argues that the balance of harms favors staying the fees briefing because it will otherwise face irreparable harm. Def. Mot. 8-11.

First, as discussed above (pp. 2-5), contrary to the District's assertions (Def. Mot. 9), the District is unlikely to succeed on appeal, either in challenging the merits of the Court's decision or the scope of the injunctive relief entered.

Second, the budget issues identified by the District (Def. Mot. 9-10) are not a basis for staying litigation. While Plaintiffs are sympathetic to the significant budget challenges imposed on the District due to the actions of the federal government, those actions are likely to persist well beyond the currently-disputed briefing schedule and should not impact the conduct of this case.[5]

Third, while the District states that it is "likely" to engage experts to opine on the reasonableness of Plaintiffs' fee demand (Def. Mot. 9), that is not a basis to delay the briefing.

Fourth, the District asserts in its brief that, if "there were a fee order pending appeal ...[,] the District would be forced to find and freeze funds for payment of that judgment, even though some or all of those funds may never be ultimately owed." Def. Mot. 10.[6] However, the District

---

[5] The District states that Congress removed one billion dollars from the District's operating budget this year. Def. Mot. 9-10. Director Jenny Reed's declaration more specifically states that the money was removed during FY2025 for that fiscal year's budget. Def. Mot., Ex. A (ECF 540-2), para. 15. Reporting also reflects that the removal largely impacted the FY2025 budget, not the FY2026 budget. *See* "Here's how D.C. solved the billion-dollar budget problem Congress created," https://wamu.org/story/25/10/22/dc-budget-congress/) (archived here on October 27, 2025). The District's FY2026 began on October 1. *See* Mayor Bowser Highlights Key Investments in FY2026 Grow DC Budget, https://mayor.dc.gov/release/mayor-bowser-highlights-key-investments-fy2026-grow-dc-budget (archived here on October 27, 2025).

[6] As Plaintiffs have previously noted, "[a]ny decision on fees that this Court reaches would be contingent on the outcome of the merits appeal." Pl. Mot. for Fees Briefing Schedule (ECF 537) at 5.

provides no support for this assertion. The declaration from Jenny Reed, the Director of the District's Office of Budget and Performance Management, does not make any such claim about freezing funds. Unsupported assertions should not form the basis for the stay of the fees litigation. With respect to the District's statement that funds owed to pay a judgment must come from other services, due to the zero-sum nature of state budgets (Def. Mot. 10), the District neglects to note that there is a Settlement and Judgments Fund that receives allocations in the District's budget from which judgments can be paid. *See* J. Reed Test, Trial Tr., Day 8 (Nov. 8, 2021), AM Session, l650:2-17 (ECF 463).

While the District is dismissive of the effect of delay of this fees litigation (Def. Mot. 9), there are numerous reasons to avoid further delay. While further delay would undoubtedly redound to the District's benefit, as noted above, it would waste the time and effort that the parties have already committed to the issue (months ago, the District represented that it was nearly finished with its review of Plaintiffs' time (*see* p. 8 above)), force the fees to be litigated long after the issues are fresh in the parties and the Court's mind, and is unnecessary given the District's likely lack of success on appeal.

Further, and critically, after more than 15 years of litigation, Plaintiffs' counsel should not need to endure further unnecessary delay to be paid. Postponing further briefing until after the District's pending merits appeal has been resolved would mean that it will likely be several years more before Plaintiffs' counsel will begin to be paid for their work in this case.

On August 5, 2025, the Court ruled, with regard to the District making a representation of its position on fees mediation, that "[n]o further extensions will be granted." Order (ECF 529), p. 2. Based on the District's statement that it has no authority to mediate (Defendant District of

Columbia's Response to Show Cause Order Concerning Mediation (ECF 534), p. 1), mediation of the fee petition will not be possible. Plaintiffs ask that the briefing proceed.

## CONCLUSION

For the foregoing reasons, the District's Motion should be denied and the briefing schedule requested in the attached proposed order should be entered by the Court.

Respectfully submitted,

| | |
|---|---|
| | /s/ *Kelly Bagby* |
| KATHLEEN L. MILLIAN, DC Bar 412350 | KELLY BAGBY, DC Bar 462390 |
| PATRICK A. SHELDON, DC Bar 989369 | MAAME GYAMFI, DC Bar 462842 |
| TODD A. GLUCKMAN, DC Bar 1004129 | REBECCA RODGERS (*pro hac vice*) |
| Terris, Pravlik & Millian, LLP | AARP Foundation |
| 1816 12th Street, NW, Suite 303 | 601 E Street, NW |
| Washington, DC 20009 | Washington, DC 20049 |
| (202) 682-2100 | (202) 434-2103 |
| Fax: (202) 289-6795 | Fax: (202) 434-6424 |
| | kbagby@aarp.org |
| MARJORIE RIFKIN, DC Bar 437076 | |
| (202) 997-3201 | LYNDSAY NILES, DC Bar 1003427 |
| | Disability Rights DC at University Legal Services |
| | 220 I Street NE #130 |
| | Washington, DC 20002 |
| | (202) 527-7032 |
| | Fax: (202) 547-2662 |
| October 27, 2025 | *Counsel for Plaintiffs* |