UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IVY BROWN**, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **DISTRICT OF COLUMBIA,** <br><br> **Defendant.** | No. 1:10-cv-02250-PLF |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR STAY OF FEES LITIGATION**

Defendant District of Columbia (the District) briefly replies in support of its Motion For Stay of Fees Litigation (Motion), [540], and in response to Plaintiffs' opposition, [541].

To start, Plaintiffs do not dispute any of the law described in the District's Motion. Thus, it appears the Parties agree that (1) the Court should consider economy of efforts, the likelihood of success on appeal, and the balance of harms to the Parties in its decision on the Motion and (2) the Court must consider the scope of relief ultimately afforded (if any) in its decision on Plaintiffs' fee petition (if there is, after appeal, a decision to be made). *Compare* Motion at 3–4 (citing cases) *with* Opp'n *generally* (no response).

As to the first stay factor, economy of efforts: Plaintiffs state that, if they are entitled to fees after the District's appeal, they will file a "supplemental application" for fees and costs that will have "no bearing on Plaintiffs' current application." Opp'n at 3. Thus, if Plaintiffs are entitled to fees, their proposed course promises to engage the Parties, and the Court, in *two* rounds of fees litigation. *Id*. And for the same reasons described in the District's Motion—especially, counsels' unreasonable billing practices—the second round of litigation may be

equally contentious. Motion at 7–8. Plaintiffs' counsel billed, for example, about a quarter million dollars for *part* of their defense against the District's Motion to Alter or Amend Judgment (that is, through February 26, 2025). Certainly they will bill more for the preparation of their extensive petition for fees and costs and for efforts on appeal. It is possible that the Parties could mediate the second round of fees—or, better yet, all fees, after appeal. *Cf.* Opp'n at 5–7. The District, again, prefers mediation, but not at this time, because of the uncertainty around key pieces of information necessary to determine Plaintiffs' reasonable fees. *Cf.* Motion at 3–4 (explaining fees depend upon Plaintiffs' success on the merits *and*, even if they prevail, the scope of relief ultimately afforded); Opp'n *generally* (offering no dispute). It appears Plaintiffs prefer serial litigation. *Cf.* Opp'n at 3 (envisioning multiple fee petitions) and 11 (projecting "several years more" *after* decision on the District's appeal before "Plaintiffs' counsel begin to be paid," presumably to account for litigation in lieu of settlement).

      Finally, although it is true that both sides have expended effort on this work, Opp'n at 8–9, full litigation of the fee petition—including, very likely, motions for leave to take discovery, discovery, briefing, argument, decision—will indisputably consume much more time, even while a full appeal is pending. The fact that some work has already been done is not a good reason to do more.[1] And, even so, if Plaintiffs prevail against appeal, the work already done will not have been wasted; the Parties can simply pick up where they left off.

      As explained in the Motion, when faced with a motion to stay fees pending appeal, many courts in this district (at least five) have found that the economy-of-efforts factor weighs

---

[1]   This would be a good example of the "sunk cost fallacy." *See*, *e.g.*, The Decision Lab, "Why Are We Likely To Continue With An Investment Even If It Would Be Rational To Give It Up?", https://thedecisionlab.com/biases/the-sunk-cost-fallacy [last accessed Oct. 28, 2025].

dispositively in favor of a stay. Motion at 8. Plaintiffs' only contrary example, *D.L. v. District of Columbia*, is not comparable because, as Plaintiffs appear to concede, Opp'n at 9, the District *did not* move to stay litigation in that case. If anything, the *D.L.* example goes to show that the District does not reflexively seek to stay fees pending appeal, even when the potential award is many millions of dollars. *See* Joint Status Report, [528] at 2 (arguing Plaintiffs' request for nearly $23 million in fees and costs is unreasonable when compared to the request for $9.76 million in the recent, similar case of *D.L.*). Rather, the question is carefully considered.

As to the second stay factor, likelihood of success on appeal: Plaintiffs cite multiple examples of dicta from opinions *prior* to trial of the District's *Olmstead* plan defense, suggesting they are correct on the merits. Opp'n at 3. But a denial of summary judgment is only an expression of uncertainty, not a final judgment. *Compare id*. (citing 2011 decision denying summary judgment to the District to show Plaintiffs are correct on the merits) *with*, *e.g. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining a genuine dispute of fact prevents summary judgment). Similarly, the fact that in 2017 the D.C. Circuit said that, by 2014, the District "had yet to demonstrate" an effectively working plan, *see* Opp'n at 3, is inconsequential because it came years before the trial of that question. If dicta mattered, the Court would also need to reconcile Plaintiffs' position with the fact that the D.C. Circuit *also* said, in 2019, after an actual trial, that, "in light of the lack of available public housing, the placement of only *one* individual in a given year could be a 'reasonable pace' of movement from the District's waiting list," and that this may be a case in which "a plan producing relatively few successful annual placements . . . can be called effectively working." *Brown v. District of Columbia*, 928 F.3d 1070, 1086 (citation modified).

As to the third factor, balance of harms to the Parties: On the one hand, the District has offered evidence that potentially unnecessary costs—including the cost of fees litigation, and a potentially moot, conditional judgment on fees—will force cuts to some other, to be determined, program or service in a very tight budget environment. Motion at 9–10; Ex. A, Decl. of Jenny Reid [540-1]. Plaintiffs point to the District's "Settlement and Judgments Fund" as a solution. Opp'n at 11. But, because of the size of Plaintiffs' request for fees and costs, and how much larger it is, proportionally speaking, than costs or judgments in general litigation, the Settlements and Judgments Fund is little aid. Plaintiffs' request for nearly $23 million, if granted, would consume 81% of the budget approved for Fiscal Year 2026, and is higher than the total funds approved or actually used—for *all* civil litigation against the District—in each of Fiscal Years 2023, 2024, and 2025. *See Settlements and Judgments*, DISTRICT OF COLUMBIA BUDGET BOOK (showing actual expenditures of $12,565,504 in FY23, $21,023,432 in FY24, and $21,024,759 in FY25; and approved budget of $28,000,000 in FY26), *available at* https://tinyurl.com/mv2fv3dv [last accessed Oct. 28, 2025].

On the other hand, Plaintiffs offer no evidence, not even any claim, of prospective harm to their firms or to anyone else if fees litigation is stayed. *See* Opp'n at 11. They do not argue that delay will impact their litigation of this case or their willingness to continue or take on other similar cases. *Compare* Pls.' Mot. for An Extension of Time And A Scheduling Order Regarding Their Motion For Attorneys' Fees and Expenses, [506] at 5–6 (quoting cases emphasizing uncertainty of fee awards and suggesting that delays on fees "dampens the enthusiasm of the public interest bar for accepting such cases") *with* Opp'n *generally*.

Finally, Plaintiffs' suggestion that the Court has already decided that fees litigation should proceed pending appeal is inaccurate for two reasons. Opp'n at 1–2. First, Plaintiffs

4

have already filed their fee petition because they wanted to do so, not because the Court affirmatively decided that fees litigation should proceed.  *See* Pls.' Mot. for Extension of Time And A Scheduling Order Regarding Their Motion for Attorney's Fees and Expenses, [506] at 2 (seeking extension of time to file petition and schedule for briefing on fees); Def.'s Partial Opp'n, [507] at 1 (consenting to request for extension but opposing the entry of a briefing schedule); Order, [511] at 2 (granting extension and requiring the Parties to provide positions as to mediation in a joint status report).  Second, the District has not, until now, asked the Court to stay fees litigation *pending appeal*.  *Compare* [507] at 2 (seeking stay of briefing deadlines "at least until the District's deadline to appeal has passed") *with* [540] (seeking stay of fees litigation pending appeal).  Thus, the Court has not yet decided the Motion.

## CONCLUSION

For the foregoing reasons, and those in the District's Motion, the Court should stay litigation of attorney's fees pending the D.C. Circuit's decision on the District's appeal of the Court's judgment.

Date:  October 28, 2025.                                  Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

*/s/ Mateya B. Kelley*
MATEYA B. KELLEY [888219451]
CONRAD Z. RISHER [1044678]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW

Washington, D.C. 20001
Phone: (202) 442-5868
Email: mateya.kelley@dc.gov

*Counsel for the District of Columbia*